1    Blake J. Lindemann (State Bar No. 255747)
     **Lindemann Law Firm**
2    433 North Camden Drive, 4th Floor
     Beverly Hills, CA 90210
3    Telephone: (310) 279-5269
     Facsimile:  (310) 300-0267
4    Email:  blake@lawbl.com

5    *Attorneys for Plaintiffs*

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
**10/02/2015** at 04:04:37 PM
Clerk of the Superior Court
By Georgina Ramirez, Deputy Clerk

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                  IN AND FOR THE COUNTY OF ORANGE

8

9

10   PENNY DAVIDI BORSUK, a natural person;
     on behalf of herself and all others similarly
11   situated,

12              Plaintiff,

13

14       vs.

15   THE TRANSPORTATION CORRIDOR
     AGENCIES, a government agency d/b/a "The
16   Toll Roads"; FOOTHILL/EASTERN
     TRANSPORTATION CORRIDOR AGENCY,
17   a government agency; SAN JOAQUIN HILLS
     TRANSPORTATION CORRIDOR AGENCY,
18   a government agency; RHONDA REARDON, a
     natural person; MICHAEL KRAMAN, a
19   natural person; CRAIG YOUNG, a natural
     person; SCOTT SCHOEFFEL, a natural person;
20   ROSS CHUN, a natural person; ORANGE
     COUNTY TRANSPORTATION
21   AUTHORITY, a government agency;
     DARRELL JOHNSON, a natural person; and
22   DOES 1-250, inclusive,

23              Defendants.

24

25

26

27

28

CASE NO.:  30-2015-00812981-CU-BT-CXC
CX-105              Judge Thierry Patrick Colaw

**UNLIMITED JURISDICTION**
**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

**CLASS ACTION COMPLAINT**

**EXHIBIT B**                                    7

## TABLE OF CONTENTS

Page(s)

I.  NATURE OF THE CASE ......................................................................... 1

II. THE PARTIES ...................................................................................... 5
    A. Plaintiffs ...................................................................................... 5
    B. Defendants .................................................................................... 5

III. JURISDICTION AND VENUE .............................................................. 8

IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS ................. 8
    A. The Privatization and Construction of Toll Roads ....................... 8
    B. Systemic Corruption ...................................................................... 9
    C. Procedural Impropriety and Substantial Prejudice ...................... 13

V.  CLASS ACTION ALLEGATIONS ....................................................... 18

VI. CAUSES OF ACTION .......................................................................... 20
    CAUSE OF ACTION I
    42 U.S.C. SECTION 1983 FOR VIOLATION OF DUE PROCESS CLAUSE OF THE FOURTEENTH
    AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA .................... 20
    CAUSE OF ACTION II
    42 U.S.C. SECTION 1983 FOR VIOLATION OF THE EXCESSIVE FINES CLAUSE OF THE EIGHTH
    AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ..................... 23
    CAUSE OF ACTION III
    VIOLATION OF DUE PROCESS CLAUSE OF ARTICLE I, SECTION 7 OF THE CONSTITUTION OF
    THE STATE OF CALIFORNIA ....................................................................... 25
    CAUSE OF ACTION IV
    VIOLATION OF THE EXCESSIVE FINES CLAUSE OF ARTICLE I, SECTION 17 OF THE
    CONSTITUTION OF THE STATE OF CALIFORNIA ............................................... 26
    CAUSE OF ACTION V
    ILLEGAL EXPENDITURE OF FUNDS (CALIFORNIA CODE OF CIVIL PROCEDURE
    SECTION 526A) ....................................................................................... 26
    CAUSE OF ACTION VI
    VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ...................................... 27
    CAUSE OF ACTION VII
    MONEY HAD AND RECEIVED ..................................................................... 29
    CAUSE OF ACTION VIII
    FRAUD AND DECEIT ................................................................................ 29
    CAUSE OF ACTION IX
    VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ............. 30
    CAUSE OF ACTION X
    UNFAIR COMPETITION ............................................................................. 32

VII. PRAYER FOR RELIEF ........................................................................ 34

VIII. DEMAND FOR JURY TRIAL ............................................................. 35

CLASS ACTION COMPLAINT                                                              i

**EXHIBIT B**

8

1   Penny Davidi Borsuk, a natural person ("Plaintiff"), on behalf of herself and all others

2   similarly situated, and on behalf of the general public, complains against the above-captioned

3   defendants as follows:

4   **I.**

5   **NATURE OF THE CASE**

6   1.     This lawsuit challenges the constitutionality of *Vehicle Code* sections 40250 *et seq.*

7   and the practices of the defendants herein pertaining to the assessment, enforcement and collection

8   of tolls and civil penalties for alleged toll road payment violations by commuters in Orange

9   County, California.

10  2.     In or about May of 2014, the defendants implemented unmanned cashless toll

11  systems across at least fifty one (51) miles of California state highways, throughout Orange

12  County.

13  3.     These systems do not adequately notify commuters they are entering a toll road, do

14  not advise them of the amount of the tolls they would incur by driving on them, practically require

15  a commuter to record specific entry and exit information while driving, require a consumer to have

16  access to and log on to a computer and the internet, and to locate, proceed to and navigate through

17  a complex web interface to pay the toll assessed by defendants electronically, prior to or within

18  forty eight (48) hours thereof, or to contest it through an unreasonably proscribed, skewed

19  administrative proceeding facially antithetical to any cognizable tenet of due process.

20  4.     Defendants' systems are designed to eliminate their costs of manning toll roads,

21  and shift them to the unwitting consumer.  Moreover, they are designed to reap an unjust windfall

22  to the defendants and their hordes of wealthy private investors.

23  5.     Deceptively, the defendants hatched a plan that holds:  if they inadequately notify

24  the consumer of the onset of toll roads but force him or her to affirmatively discover when he or

25  she has entered them, to affirmatively discover how much he or she has to pay for having done so,

26  to make payment within forty eight (48) hours (if not earlier) through a remote computer interface

27  which presupposes ownership of or access to a computer, an internet connection and sufficient

28

**CLASS ACTION COMPLAINT**                                                    1

**EXHIBIT B**

knowledge of how to use both, to provide exact entry and exit information in a cryptic and highly particularized manner, and then penalize the consumer severely if she does not virtually instantaneously meet each and every one of these challenges, a substantial number of consumers will fail, will incur exorbitant fines and penalties, and the defendants thereby will have established a highly profitable enterprise.

6.    Indeed, defendants' cynical plan has succeeded.  Their toll roads have become highly profitable, tremendously rewarding to their wealthy private investors, generating, directly and indirectly, billions of dollars in returns, and to their executive staff who realize substantial salaries and other benefits for administering a despicable ruse upon consumers.

7.    The mass confusion and outrage caused by the defendants and the laws emboldening them have been chronicled in the broad media.  Defendants and the unconstitutional laws complained of herein deprive not just ordinary citizens, but most pointedly the elderly, indigent and those lacking an advanced education (particularly in computer literacy), of their most fundamental rights to due process and protections against excessive fines.

8.    In the Plaintiff's particular circumstance, she was cited for tolls and penalties she was not even aware of until it was too late to administratively contest them.  In fact, by the time Plaintiff discovered that her vehicle had been driven on defendants' toll roads in the first place, and that tolls were being assessed against her, the tolls, together with draconian penalties thereon she could not afford to pay, had been levied against her as a *de facto* judgment.

9.    The defendants then unceremoniously imposed and perfected a lien for the ill-imputed charges against the registration of Plaintiff's vehicle with the California Department of Motor Vehicles (irrespective of who, if anyone, allegedly drove that vehicle on the toll roads at issue in the first place); Plaintiff could not afford to renew such registration as a result; and Plaintiff since has been unable to legally drive her vehicle, borrow against or sell it. Plaintiff has five children who she regularly must transport to and from school, and a job which requires her frequent use of a vehicle.

EXHIBIT B

10.     Plaintiff's is no isolated case.  Public officials – and even some of the defendants' most senior officers – have overtly and repeatedly derided the defendants' toll road systems, admitting, throughout the local and national media, that they are confusing, prejudicial and defective.  So many complaints have been registered by consumers, telephonically, in writing and throughout the broad media, concerning the defendants' toll roads and charges that the defendants have been forced to offer rebates and waive penalties *en masse*, though they have done so selectively and at their whim.  Defendants' mercy, however, has been spared on Plaintiff and, indubitably, countless others.

11.     What defendants' rebates and waivers underscore and evidence is not only the inherent impropriety of the entire toll system the defendants have implemented, but of the legislative regime which supports it and which is being aggressively, desperately propped up by the defendants.  Transparently, the defendants' selective enforcement (*e.g.*, rebates and waivers) of the toll roads' statutory framework at issue in this action evince defendants' ultimate objective of deterring, or at least deferring, its judicial invalidation so that the defendants' illicit profit-making machine can continue to print money over the longer term.

12.     On June 24, 2014, updated on August 3, 2014, in an article titled "Drivers rack up tickets on toll roads," the Orange County Register reported in pertinent part:

> The switch to a cash-free payment collection system is turning into a potential moneymaker for county toll roads, in the form of a jump in the number of penalties from toll violations.  [¶.]  The new system also has sparked confusion for drivers and a customer service crisis at the Transportation Corridor Agencies, with tens of thousands of people calling help lines only to face long waits, and often no answer at all, according to documents presented at June 12 board meetings of TCA directors.  [¶.]  One statistic in the new, cash-free world could lead to a revenue boost for the financially-challenged toll roads. More than 15,000 violations a day – twice the previous average – were logged in the first two weeks after the May 14 switch from manned toll booths to automatic license plate readers.

13.     In that same article, Jim Gallagher, reportedly chief toll operations officer for TCA at the time, is quoted as saying during the TCA's June 12, 2014 board of directors meeting that "If you look at the violation number, it looks like it doubled, and it did … [t]hat is a result of people

CLASS ACTION COMPLAINT                                                                    3

**EXHIBIT B**

11

1   not getting the word, or being confused by the signs, or not being able to understand the signing

2   and how the program works."

3       14.   On June 24, 2014, updated June 26, 2014, the <u>Orange County Register</u> reported, in

4   pertinent part:

> With the new all-electronic payment system on four Orange County toll roads off
> to a rocky start, the agency that manages the roads has agreed to waive penalties for
> first-time violators until Labor Day.  [¶.]  The move is part of a campaign by the
> Transportation Corridor Agencies to ease driver confusion and fend off complaints
> a month after manned toll booths were close [sic] and cash payments were no
> longer accepted. [¶.]  The May 14 switch to a cashless system has led to widespread
> confusion about how to pay tolls online and doubled the number of toll violations
> to about 15,000 a day. More than 7 percent of all drivers who should have paid a
> toll did not, according to TCA statistics.  [¶.]  The switch also has put the road
> agencies in the awkward position of appearing to profit from driver confusion. If
> collected, fines from the jump in violations could boost the agencies' revenue by up
> to $460,000 a day.  [¶.]  "If you're going to transition to cashless, you have to give
> people an opportunity to make that transition. And you cannot – I repeat, cannot –
> exploit people's confusion," said Orange County Supervisor Todd Spitzer, who is
> also a member of the boards of the Transportation Corridor Agencies.  [¶.]  Spitzer
> called for a 100-day moratorium on collecting fines from first-time violators if they
> pay their tolls within 30 days of receiving a notice. The agency previously was
> waiving those fines, but without saying when the grace period would end. [¶.]  It's
> unclear what will happen to first-time violators who in the past month have
> received toll notices and paid fines of $57.50 per violation. Spitzer said he would
> support finding some way to give those drivers refunds or toll credit to use in the
> future. [¶.]  Spitzer and TCA spokeswoman Lisa Telles said Tuesday that managers
> of the roads aren't trying to boost revenue by installing a potentially confusing
> cashless system.  [¶.]  Last year, fees and violations generated $22 million in
> revenue for the four Orange County toll roads managed by TCA, according to Amy
> Potter, the organization's chief financial officer.

    15.   On June 25, 2014, the <u>Los Angeles Times</u> reported that since the defendants'

changed to a cashless toll system pursuant to which "motorists are suppose [sic] to pay their tolls

with 48 hours or be hit with a penalty … about 13,500 violation notices had been sent out daily."

    16.   On August 20, 2014, updated August 22, 2014, the <u>Orange County Register</u>

reported, in pertinent part:

> Drivers continue to rack up more than 17,000 violations a day three months after
> the roads switched to all-electronic collections.  Violations and dropped calls to
> customer service lines are running at about the same clip as they were in mid-May,
> despite efforts by the toll road agencies to teach drivers how to pay via the

---

CLASS ACTION COMPLAINT                                                       4

electronic system ... "This is a classic example where we underestimated the number of folks who were going to be confused by our change, despite a ton of outreach and everything else," said TCA board member and Orange City Councilman Mark Murphy.

17.  On March 23, 2015, updated on March 24, 2015, the Orange County Register reported: "Since eliminating manned collection booths last May, the Orange County toll roads' huge spike in unpaid tolls has continued unabated."

18.  A law that is unconstitutional is not made any less so by virtue of its selective enforcement, forbearance or forgiveness.  Consumers must not be forced to rely upon the whimsical mercy or selective and arbitrary acts of enforcement, or non-enforcement, of an unconstitutional law by agencies whose interest it is to preserve that law and thereby maximize revenues at the cost of consumers on the whole.

19.  The defendants' situation is analogous to that of a thief who posits he is not one and is immune from prosecution because he elects, at his discretion, to return some stolen goods to some victims some of the time.

20.  *Vehicle Code* sections 40250 *et seq.* must be judicially invalidated and the defendants must pay for having knowingly deprived consumers of their fundamental rights for an extended period of time.  Absent the relief sought hereby, there can be no doubt the defendants will continue to perpetrate a mass fraud upon consumers through the guise of improperly assessed tolls and excessive fines.

## II.

## THE PARTIES

**A.**  **Plaintiff**

21.  Plaintiff Penny Davidi Borsuk is a natural person residing in the County of Los Angeles, State of California.

**B.**  **Defendants**

22.  Plaintiff is informed and believes and thereon alleges that defendant Transportation Corridor Agencies (sometimes referred to in this complaint as "TCA") is an association of two joint power authorities formed by the California legislature in the year 1986 to plan, finance,

CLASS ACTION COMPLAINT                                                                5

construct and operate Orange County, California's 67-mile public toll road system, including but not necessarily limited to California highways 73, 133, 241 and 261 ("Toll Roads"). Plaintiff is informed and believes and thereon alleges that those two joint power authorities are defendant Foothill/Eastern Transportation Corridor Agency ("Foothill") and defendant San Joaquin Transportation Corridor Agency ("San Joaquin"). Plaintiff is further informed and believes and thereon and thereon alleges TCA does business from time to time under the name "The Toll Roads".

23.     Plaintiff is informed and believes and thereon alleges that defendant Foothill is a governmental agency and association or similar entity responsible for the operation of Toll Roads on California highways 133, 241 and 261, and the assessment and administration of tolls and penalties thereon.

24.     Defendant Michael Kraman ("Kraman") is a natural person and, on information and belief, was at all times relevant hereto the Chief Executive Officer of Foothill and San Joaquin, respectively.

25.     Defendant Rhonda Reardon ("Reardon") is a natural person and, on information and belief, was at all times relevant hereto the Chairman (or Chairperson) of Foothill.

26.     Defendant Craig Young ("Young") is a natural person and, on information and belief, is the current Chairman of Foothill.

27.     Plaintiff is informed and believes and thereon alleges that defendant San Joaquin is a governmental agency and association or similar entity responsible for the operation of Toll Roads on California highway 73, and the assessment and administration of tolls and penalties thereon.

28.     Defendant Scott Schoeffel ("Schoeffel") is a natural person and, on information and belief, was at all times relevant hereto the Chairman of San Joaquin.

29.     Defendant Ross Chun ("Chun") is a natural person and, on information and belief, is the current Chairman of San Joaquin.

**CLASS ACTION COMPLAINT**                                                6

**EXHIBIT B**

14

30.    Plaintiff is informed and believes and thereon alleges that defendant Orange County Transportation Authority ("OCTA") is a governmental agency and association or similar entity responsible for the operation of Toll Roads, and the express lanes, on California highways 91, and the assessment and administration of tolls and penalties thereon.

31.    Defendant Darrell Johnson ("Johnson") is a natural person and, on information and belief, is and was at all times relevant hereto the Chief Executive Officer of OCTA and responsible for, among other things, planning, coordinating, and financing freeways in Orange County California, including but not limited to Toll Roads, and the express lanes, on California highways 91.

32.    Plaintiff is ignorant of the true identities and capacities of fictitiously named defendants designated as Does 1-250, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof.  On information and belief, each and every Doe defendant is in some manner responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff.   Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all defendants sued under fictitious names.

33.    Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, each of the defendants was the agent, employee and or representative of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the authorized course and scope of this agency and employment with the full knowledge and consent of the remaining defendants.  Plaintiff is further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

34.    Plaintiff is informed and believes and thereon alleges that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means)

**CLASS ACTION COMPLAINT**                                                                           7

**EXHIBIT B**

1   described in this complaint.  The desired effect of the conspiracy was to defraud and otherwise

2   deprive Plaintiff of her constitutionally protected rights to property, and of her rights under other

3   laws as set forth herein.  Each of the defendants herein committed an act in furtherance of the

4   agreement.  Injury was caused to the Plaintiff by the defendants as a consequence.

5                                                      III.

6                                   **JURISDICTION AND VENUE**

7           35.     Each defendant has sufficient minimum contacts with California or otherwise

8   purposefully avails his, her or its self of the benefits from California or has property in California

9   so as to render the exercise of jurisdiction over it by the California courts consistent with

10  traditional notions of fair play and substantial justice.

11          36.     Jurisdiction and venue are proper in this Court because the amount in controversy

12  exceeds the minimum of this Court, and by virtue of the fact that the complained-of acts and

13  practices giving rise to this action took place in the State of California and, at least in part, in the

14  County of Orange.

15                                                     IV.

16                   **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

17          A.      **The Construction and Privatization of Toll Roads**

18          37.     Acting pursuant to legislative mandate, the defendants (or predecessors in interest)

19  caused the Toll Roads to be built in Orange County, California with the stated intention of

20  reducing vehicular traffic congestion and improving the quality of life of California commuters

21  and residents.

22          38.     The Toll Roads were built pursuant to California state laws that, purportedly due to

23  shortages in funding to build new highways and roads, permit private companies, county

24  government agencies, transportation districts, associations and other similar entities to sell non-

25  recourse bonds to private investors to raise money to build and maintain them (the "Private

26  Bonds").

27

28

**CLASS ACTION COMPLAINT**                                                        8

39.     While the Toll Roads are owned by the State of California, they are operated and maintained pursuant to a franchise it has issued to one or more of the defendants. California highways 91 are sometimes referred to herein as the "OCTA Operated Toll Road" and highways 73, 91, 133, 241 and 261 are sometimes referred to herein as the "TCA Operated Toll Roads".

40.     The Private Bonds are issued to investors on a for-profit basis. Specifically, the investors seek a rate of return in addition to their initial investment on these bonds. The bonds are repaid, however, solely from toll revenues and not general taxpayer dollars.

41.     Pursuant to this revenue scheme, a private company built and operated the California highways 91 express lanes (the "91 Express Lanes") from their inception in 1995 until January 2003, when it sold its franchise for these lanes to OCTA.

42.     San Joaquin and Foothill jointly administer tolls and penalties on their toll roads and under an association commonly known as the "Transportation Corridor Agencies". The TCA, pursuant to a franchise, built and opened the toll roads on California highways 73, 133, 241 and 261 in phases between October 1997 and February 1999. The TCA continues to operate these toll roads.

43.     In 1995, to coincide with the private building of toll lanes in California, *Vehicle Code* sections 40250 *et seq.* were enacted making toll violations civil in nature and their collection and administration subject to civil procedures set forth in those *Vehicle Code* sections, so that they could be handled by the private and local entities that operate the toll roads.

B.     **Systemic Corruption**

44.     Unfortunately, however, the system of Toll Roads, their tolls and penalties, and the related statutory scheme, as set forth herein and chronicled throughout the media, lack key procedural and substantive constitutional protections, violate other laws protective of consumers in the United States and the State of California, and have been subject to widespread abuse by defendants with regard to their administration of tolls and penalties for toll violations. Defendants have acted as though they possess, and until now have appeared to have been sanctioned with, a

CLASS ACTION COMPLAINT                                                    9

**EXHIBIT B**

1  license to oppress and steal from ordinary citizens whose automobiles have intentionally or

2  otherwise been driven on Toll Roads.

3      45.    At the threshold, signage forewarning commuters of the onset of the Toll Roads is

4  woefully inadequate.  Signage locations and language do not provide adequate advance notice of

5  the Toll Roads or any notice whatsoever of the amount of tolls to be assessed for entering them.

6      46.    Once on the Toll Roads, even inadvertently, a toll is electronically assessed, and

7  there is no reasonable means by which to mitigate or contest that assessment.   California

8  commuters or travelers, particularly those who may be elderly, indigent, lost or otherwise

9  reasonably confused, are trapped into paying a toll of whatever sum the defendants have

10  determined to be appropriate, however they must do even more than that to avoid substantial

11  penalty.

12      47.    Commuters accessing the Toll Roads without a pre-arranged account must record

13  the precise locations of their entry to and exit from the applicable Toll Roads, the precise times

14  thereof, and then access a computer website to enter that information so that the toll may be

15  calculated and paid.  The only defense commuters can put forth through this computerized system,

16  is an averment of total non-liability – essentially that the commuter did not drive through the Toll

17  Roads at all or that its account was in fact charged, *i.e.*, system error.

18      48.    In fact, *Vehicle Code* section 40255 facially evinces multiple constitutionally

19  protected due-process violations.  To wit, subsection (4) of Vehicle Code section 40255, titled

20  "Toll Evasion Administrative Review" provides as follows:

21      The officer or person authorized to issue a notice of toll evasion violation shall not
22      be required to participate in an administrative review. The issuing agency shall not
    be required to produce any evidence other than the notice of toll evasion violation
23      or copy thereof, information received from the department identifying the
    registered owner of the vehicle, and a statement under penalty of perjury from the
24      person reporting the violation. The documentation in proper form shall be
    considered prima facie evidence of the violation.
25
26      49.    In the foregoing manners the Toll Roads system not only traps unwary commuters

27  who happen upon the Toll Roads, or are reasonably unaware of their costs or alternatives, it

28  assesses profit-motivated charges and penalties upon those that may not be computer-literate, may

---

**CLASS ACTION COMPLAINT**               10

1   have been unable to remember, write down or otherwise record – while driving or thereafter – the

2   precise locations at which they entered and exited the applicable Toll Roads, and the precise times

3   of such entry and exit.

4       50.     Phone calls to defendants in good faith to resolve such concerns routinely go

5   unanswered and unreturned.  Even a website electronic mail template facially established by the

6   defendants to field such concerns is routinely unheeded.

7       51.     One might ask, why institute such a complex, challenging, unsympathetic and

8   punitive toll payment and collection system?  Why not have any humans man the Toll Roads or

9   reasonably accessible to commuters to resolve toll-related issues?  The answer to both questions is

10  simple:  the TCA answers to holders of Private Bonds that are motivated solely by profit.  The

11  OCTA employs some 1,500 people, the TCA, in turn, reports a payroll of some $7 million per

12  year.  Defendants' game is extracting the maximum profits from commuters, not establishing toll

13  road operations that are fair or reasonable to them or for their purported legislative purpose.

14      52.     Thus, emboldened by *Vehicle Code* sections 40250 *et seq.*, and in violation of, *inter*

15  *alia*, the United States Constitution and California Constitution, the defendants have run amuck,

16  engaging in wide-scale abuse of ordinary – and even more so society's less privileged –

17  consumers through their self-serving, profit-motivated assessment and collection of tolls and toll

18  penalties.

19      53.     Wealthy holders of Private Bonds have realized profits and capital returns in the

20  billions of dollars off of the backs of individual commuters trapped by and unable to navigate

21  away from or reasonably mitigate the defendants' unconscionable charges.  Defendants have

22  assessed hundreds of thousands of individual consumers, including Plaintiff, with thousands, and

23  even hundreds of thousands of dollars, of tolls and penalties without according them any

24  reasonable opportunity to be heard regarding the propriety or reasonableness of the tolls in the first

25  place, and the penalties assessed upon them.

26      54.     That is because the Toll Roads system does not provide a practical means by which

27  individuals can explain the circumstances surrounding any toll violation that may have occurred or

28

---

**CLASS ACTION COMPLAINT**                                                                11

**EXHIBIT B**

1   been assessed against them, such as whether the violation was inadvertent and/or unintentional,

2   whether the amount of penalties is beyond their individual abilities to pay based on financial

3   situation, or whether there was a system error or deficiency that hindered the commuter's response

4   in time to avoid the toll or penalty assessed.

5       55.   It may be just as well since the first step of the ruse of a review process arranged by

6   the defendants constitutes an internal assessment of the propriety of the toll charges at issue.  Tolls

7   and penalties are thus established by parties with an inherent conflict of interest, and without any

8   reasonable judicial oversight or regard to what is just and fair under the circumstances.

9       56.   More specifically, and as described below in greater detail, once simple liability is

10  assessed – *i.e.*, by computer system almost immediately after the commuter merely drives through

11  one of Toll Roads and does not either (1)  simultaneously pay the toll rate through a prearranged

12  account on cyberspace (as there are no human operators on the Toll Roads), or (2) within some

13  five (5) days or less locate the TCA website and enter virtually every detail surrounding his or her

14  entry to and exit from the Toll Roads, and immediately pay the entirety of the toll – the defendants

15  are able to (a) assess excessive penalties bearing no rational relationship to the amount of the

16  original toll; (b) obtain *ex parte* judgments against the commuter for the total toll plus such

17  unconscionable penalties; and (c) record their egregious charges as holds on vehicle registration

18  renewals with the California Department of Motor Vehicles.

19      57.   This entirely oppressive and essentially extra-judicial collection scheme coerces

20  elderly, indigent and other so-called violators to pay trumped-up charges and penalties to the

21  defendants or submit to judgment debtor examinations and discovery, asset seizures, deprivation

22  of property such as cars, homes and bank accounts most urgently needed for personal and family

23  health, safety and welfare, and destruction of near- and long-term personal and business credit.

24      58.   A copy of notices of toll violations, with penalties, received by the Plaintiff is

25  annexed hereto as Exhibit A and incorporated in its entirety herein by this reference.  These utterly

26  disputed purported violations, and attendant charges, serve as a basis for Plaintiff's claims against

27

28

**CLASS ACTION COMPLAINT**                                                    12

# EXHIBIT B

20

1  Defendants described herein, evidencing the assessment of penalties aggregating over two

2  thousand dollars ($2,000) on tolls of approximately one hundred and fifty six dollars ($156).

3      59.    At all times relevant hereto, the penalty assessed for payment of a $3.50 toll

4  assessed on the Toll Roads more than forty-eight (48) hours after purportedly incurred was

5  $57.50, and penalties increase therefrom. For example, for one alleged toll alone, in the amount of

6  $6.15, Plaintiff was charged penalties of $100.00. Moreover, these charges were made subject to

7  a vehicle registration lien against Plaintiff's automobile, even though no allegation or averment

8  was made, much less evidence proffered, that she was in fact the driver on the Toll Roads for

9  which the purported toll was assessed. Exhibit A, p.1.

10

11

12      **C.**    **Procedural Impropriety and Substantial Prejudice**

13      60.    At all times relevant hereto, the defendants, with respect to the Toll Roads, applied

14  the "FasTrak" system of toll collection. "FasTrak" is the name of an electronic toll collection

15  system that enables commuters to drive on the toll lanes without having to stop at tollbooths, and

16  eliminates the expense of hiring personnel to collect the tolls.

17      61.    For commuters to use the FasTrak, they have to establish an account with the

18  OCTA or the TCA, either by providing a credit or debit card for automatic charges, or by setting

19  up a pre-paid account. Commuters must also mount a pocket-sized, agency-issued, battery-

20  operated transponder on their windshields. The transponder identifies the customer's account.

21  Pursuant to an agreement between the OCTA and the TCA, a commuter who signs up with the

22  OCTA for the 91 Express Lanes can use the same transponder for the TCA tolls and *vice versa*.

23      62.    When traveling through the toll zone, the transponder is read by an overhead

24  antenna on the road, and the posted toll amount is then automatically deducted from the

25  customer's account. The FasTrak system also has an electronic enforcement system that records

26  the license plates of commuters that travel the road without a transponder, or without an active

27  account with the agency. The license plates of those who pass the toll zone either without a

28

CLASS ACTION COMPLAINT                         13

1    transponder, or without an active account, are electronically sent to the Department of Motor

2    Vehicles, which reports the authorized owners of the vehicles to the issuing agency or its

3    processing agency. Defendants then issue a citation to such owner for a toll violation.

4         63.    Pursuant to *Vehicle Code* section 40258, civil penalty assessments on the tolls are

5    limited to $100 for the first offense, $250 for the second offense within the same year, and $500

6    for each subsequent offense within the same year. Defendants have complete discretion regarding

7    the amount of the penalty they will assess in the aggregate for cumulative violations, provided that

8    the per violation maximums set forth in *Vehicle Code* section 40258 are not exceeded.

9         64.    Toll charges can occur for a variety of reasons including, for instance, inadequate

10   signage forewarning a commuter of the Toll Roads, inadequate notice of the amount of toll

11   charges to be assessed, if the commuter's credit card has expired, if the commuter canceled his or

12   her credit or debit card due to theft and did not replace the card with the agency before passing

13   through the toll zone, if the credit or debit card issuer mistakenly or for security reasons rejected a

14   charge, if a charge was not properly processed by Defendants, or if the transponder was not

15   properly placed on the windshield or did not function.

16        65.    The FasTrak system is set up so that a violation can be incurred in each direction of

17   the toll zone. A commuter who violates the toll in both directions of a round-trip journey (within

18   one year) is automatically liable for two violations, and could receive a $400 penalty assessment in

19   addition to the toll fee. There is no limit on the number of times that these penalties can be

20   imposed within one year or over several years. This is especially problematic given that the

21   defendants have, under statute, up to 90 days to notify consumers of a violation. Therefore, the

22   assessment of penalties can climb to astronomical amounts before the commuter even knows that

23   he or she is incurring violations. The astronomical amounts that accumulate in maximum

24   penalties cease to bear any rational relationship to the amount of the alleged toll itself and the

25   legislative purpose behind *Vehicle Code* section 40258.

26        66.    While individuals may be provided some form of notice that penalties may be

27   imposed, they routinely do not receive notice that the penalties have actually been imposed until

28

CLASS ACTION COMPLAINT                                                              14

**EXHIBIT B**

22

after the deadline for contesting the violation has passed.  The increased amounts are imposed without any consideration for the financial circumstances of the commuter or vehicle owner, and without any ability to show hardship or lack of malice, or to have the penalties reduced or waived.

67.     Commuters have no adequate opportunity to be heard regarding the amount of the civil penalty assessments for the following reasons (among others):

- Under *Vehicle Code* section 40255, commuters (and/or registered owners of the vehicles) may contest their toll violations only on the issue of liability for the toll fines (*i.e.,* whether or not they drove on the Toll Roads), but not on the issue of the amount of the toll or civil assessment penalties, or any hardship caused by their imposition.  Indeed, to obtain any investigation or hearing regarding the violation, the commuter must first sign an affidavit of non-liability, or a request for investigation which can only be made if the liability is contested (*i.e.,* if the commuter essentially alleges that he or she did not drive on the applicable Toll Roads or already paid the applicable toll).  Therefore, commuters and registered owners of the vehicles who wish to contest the issues of adequate notice of the Toll Roads and their attendant charges, or the amount of the penalty itself, would be unable to seek such a hearing without perjuring themselves.  For all practical purposes, this procedure eliminates any reasonable opportunity to contest the appropriateness of the toll charges or penalties for any reason other than system error.

- Even if commuters (and/or registered owners of the vehicles) can contest the amount of penalties imposed, the entire review process is unfair and denies the commuter due process.  While defendants purport to have a three-level review process to contest violations, in actuality, if the first level of review is not timely invoked, *i.e.,* within 21 days of the issuance of the notice of toll evasion violation, or 15 days from the mailing of the notice of delinquent toll evasion, then no other level of review is available.  The defendants can then automatically obtain a civil judgment for the full amount of the tolls, penalties and other costs assessed, without any administrative hearing or judicial review.

CLASS ACTION COMPLAINT                                                    15

**EXHIBIT B**

- As stated above, and as if to make the process even more difficult for those challenging tolls and violations, the defendants' policies and ordinances require the commuter (and/or the registered owner of the vehicle) to contest each violation in writing, and permit the agency to disregard commuters' telephone calls contesting the violations. This disadvantages indigents and others who are unable to contest the violations in writing within the short allotted time frames.

- Even if commuters manage to timely invoke the first level of review – an internal investigation by the defendants -- they are required to pay the full amount of the tolls and penalties before they can get a second level of review – an administrative hearing. There is no exception or consideration for those who are unable to post the full amount of the tolls and penalties. This effectively forecloses upon the opportunity for administrative review by many purported violators.

68. *Vehicle Code* section 40267 states that in any case in which unpaid penalties exceed $400 (*e.g.*, a round-trip violation on the toll lanes which remains unpaid), the processing agency may file with the court proof of the fact that the penalties exceed $400 and that such filing shall have the same effect as a civil judgment, which is subject to execution. In other words, defendants may obtain an *ex parte* judgment against the commuter or the registered owner of the vehicle as soon as one round-trip violation is incurred within one year. In addition, as previously mentioned, *Vehicle Code* section 40250 *et seq.* contemplates the placement of holds on vehicle registrations by the Department of Motor Vehicles.

69. Clearly, the system of inadequate notice of Toll Roads, their attendant tolls, of penalties, and the amounts thereof, appear to be more motivated by the defendants' desire to maximize returns for themselves and the private investors who finance the Toll Roads, than by defendants' desire to impose a reasonable toll violation structure to reasonably deter future violations.

70. In sum and substance, the defendants maintain a roadway system subjecting commuters to concealed and unconscionable toll-road liabilities. Plaintiff's tolls and penalties are

CLASS ACTION COMPLAINT                                                  16

**EXHIBIT B**                                                          24

nothing less than unconstitutionally excessive fines.  The procedures for notifying commuters of Toll Roads, toll charges, toll violations and the woefully inadequate procedures to contest the arbitrary, uniform tolls and penalty amounts defendants assess are designed to, and do, trap unwary, ordinary citizens into debts which threaten their homes, property, credit, and psychological well-being, all because they did not pay toll fees, often for innocent and understandable reasons.

71.   In particular, the automated nature of defendants' toll collections system allows individuals to unknowingly incur numerous toll violations and thousands of dollars in penalties before ever learning of their mistake (or a mistake made by defendants for that matter).  When an individual finally does learn of the mistake, he or she has a very short time period in which to request an administrative review.  However, this administrative review is limited to contesting strict liability and not the amount of the penalties assessed.  Thus, the commuter who makes an innocent mistake but is nevertheless liable cannot invoke the administrative and judicial review process to excuse the tolls and reduce the amount of the penalties assessed against him or her based on his or her good faith and/or financial condition.

72.   Moreover, if the individual fails to timely request an administrative investigation for whatever reason (*e.g.*, vacation, notices sent to wrong address, lost mail, *etc.*), he or she is precluded from receiving any administrative or judicial review and defendants can immediately institute collection procedures, which include placing holds on registration renewals with the California Department of Motor Vehicles, obtaining judgments from the courts without a noticed hearing, or both.  The same result will occur if an individual cannot post the full amount of penalties assessed against him or her, which is a prerequisite to obtaining an administrative hearing in the first place.

73.   Pursuant to *Vehicle Code* sections 40250 *et seq.*, and in violation of the Constitutions of the United States of America and the State of California, and other laws, the defendants have engaged in wide-scale abuse in their assessment of toll penalties.  Defendants have assessed thousands, and even hundreds of thousands of dollars in penalties, against

CLASS ACTION COMPLAINT                                                                    17

**EXHIBIT B**

25

individual violators without any opportunity for the violator to be heard regarding the amount of penalties assessed.  In particular, individuals cannot explain circumstances surrounding any toll violation that may have occurred, including whether the violation was inadvertent and/or unintentional, nor can they present evidence of the amount of penalties they are able to pay based on their financial situation prior to defendants' assessment of penalties.  Penalties are thus assessed without regard to what is just and fair under the circumstances.

74.     After assessing these enormous penalties, and without regard to the reasons the toll violation occurred or the individual's ability to pay, defendants then obtain *ex parte* judgments for these huge amounts, require the elderly and other violators to submit to judgment debtor examinations and discovery, and then seize their assets, including cars, homes, bank accounts and other property in satisfaction of these judgments.  In addition, defendants have refused to discharge the penalties in bankruptcy, which can lead to a violator's lifelong financial ruin.

75.     Defendants' and the *Vehicle Code*'s policies pertaining to the imposition of tolls, penalties, and the defendants' defective unmanned cashless toll systems, violate procedural due process requirements of the Federal and State Constitutions.  Indeed, these civil penalties are assessed in a manner unlike in traffic infraction cases, civil or criminal government forfeiture cases, or even civil punitive damages cases where parties defendant are found to have engaged in oppression, fraud or malice, and yet still have the opportunity to be heard with regard to the amount of punitive damages assessed.

76.     The cumulative penalties assessed by the defendants are so excessive that they also violate consumers' rights under the due process and excessive fines clauses of the Federal and State Constitutions.  In traffic infractions, civil and criminal forfeiture actions and even punitive damages actions, the multiple used to assess the amount of penalty compared to the original fine or harm, is significantly lower than the multiples the defendants use in penalties for toll violations.  As assessed by the defendants, the cumulative penalties lose all reasonable relationship or proportionality to the amount of the tolls, or to the harm caused by the violations.

**EXHIBIT B**

## V.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action on behalf of herself and, pursuant to section 382 of the *California Code of Civil Procedure*, all persons similarly situated.  The class of persons that Plaintiff seeks to represent (herein referred to as the "Class") were charged tolls and penalties by defendants on the Toll Roads.

78.     This class action seeks disgorgement of profits, restitution, injunctive relief and damages, including attorneys' fees, where allowed.  Excluded from the Class are the defendants, members of defendants' immediate families, officers, directors, employees of defendants and any subsidiary or affiliate entity in which any of the defendants have a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person or entity.  Also excluded from the Class are the Judge to whom this case is assigned and the Judge's immediate family, any person who executes and files a timely request for exclusion from the Class, and any persons who have had their claims in this matter finally adjudicated and/or otherwise released.

79.     Plaintiff's claims are typical of the claims of the Class because the Plaintiff and all Class members sustained damages which arise out of defendants' pattern of deceptive, malicious and unfair business practices throughout the State of California, and affecting interstate commerce, and out of the unconstitutional laws at issue in this case.

80.     Plaintiff is a representative party who will fully and adequately protect the interests of the Class members, and who has retained class counsel experienced and competent in both class action and unfair business practices litigation.  Plaintiff has no interests which are contrary to or in conflict with those of the Class she seeks to represent.

81.     The number and identity of the members of the Class are determinable from defendants' records, however Plaintiff is informed and believe that there are thousands of members of the Class, if not tens of thousands of members of the Class, thus the numbers are so numerous that joinder is impractical.

CLASS ACTION COMPLAINT                                                                                      19

**EXHIBIT B**

27

82.     Even if any Class member could afford individual litigation, it would be unduly burdensome to the individual courts.  Individual litigation magnifies the delay and expense to all parties.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.  Concentrating this litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual class members as well as judicial consistency.

83.     A class action presents fewer management difficulties than individual litigation, conserves the resources of the parties and the court system and protects the rights of each class member.  Notice of the pendency of any resolution of this action can be provided to class members by mail, print, broadcast, internet and multimedia publication.  A class action will be more efficient, and save judicial resources and reduce litigation costs, so that defendants are able to pay more of any recovery or other relief to class members as opposed to paying attorneys' fees and costs in duplicative litigation.

84.     There is a well-defined community of interests in the questions of law and fact between Plaintiff and the Class.  Questions of law and fact common to the members of the aforesaid Class predominate over any questions which may affect only individual members, in that defendants have acted on grounds generally applicable to the entire Class.

## VI.

### CAUSES OF ACTION

### CAUSE OF ACTION I

**42 U.S.C. SECTION 1983 FOR VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA**

**(By Plaintiff and each of member of the Class against each of the defendants)**

85.     Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

CLASS ACTION COMPLAINT                                                    20

86.     The civil penalty scheme of *Vehicle Code* sections 40250 *et seq.*, on its face and/or as applied by defendants, violate the due process clause of the Fourteenth Amendment to the Constitution of the United States of America for the following reasons, among others:

- Pursuant to *Vehicle Code* § 40254, the defendants have 21 to 90 days to notify commuters of a "violation." By then, commuters may have passed through the Toll Roads dozens of times unknowingly racking up thousands of dollars in penalties. Unlike the case with parking tickets, violators are not immediately notified of the violation.

- Defendants often send the violation notices only to the vehicle owner's last address on file with the Department of Motor Vehicles, even if the actual commuter is not the registered vehicle owner, or even if the actual commuter has a FasTrak account with the defendants and has a different and/or more current address on file therewith.

- There is no adequate opportunity to be heard on the amount of the civil penalty assessments despite the fact that the statutes give defendants the discretion to determine the amount of the penalties (provided the amount does not exceed the maximum per violation penalties listed in *Vehicle Code* § 40258. Specifically:

  i. While defendants claim to have a three-level review process to contest "violations", the fact is that if the first level of review is not timely invoked, *i.e.*, within 21 days of the issuance of the notice of toll evasion violation, or 15 days from the mailing of the notice of delinquent toll evasion, then no other level of review is available. Defendants can automatically obtain a civil judgment for the full amount of the tolls, penalties and other costs, without any hearing.

  ii. The defendants require the commuter (and/or the registered owner of the vehicle) to contest each violation in writing, and permits the agency to disregard telephonic challenges to the violations. This disadvantages

**EXHIBIT B**

indigents and those who are unable to contest the violations in writing within the short allotted time frames.

iii. Even if commuters manage to timely invoke the first level of review (an internal investigation by the respective defendants themselves), they are required to pay the full amount of the tolls and penalties before they can get a second level of review (an administrative hearing). There is no exception or alternative for those who are unable to post the full amount of the tolls and penalties. This effectively forecloses the opportunity for administrative review for many purported violators.

iv. Once the penalties are deemed owing, the defendants retroactively impose additional penalties. This retroactive assessment of additional penalties is made without a hearing and without consideration of culpability or the commuter's ability to pay.

v. Under *Vehicle Code* § 40255, commuters (and/or registered owners of the vehicles) may contest their toll violations on liability issues only, and not on the amount of the civil assessment penalties, nor the cumulative amount or effect of such penalties if liability is not contested. There is no opportunity to show hardship, or to otherwise have the penalties reduced or waived.

vi. *Vehicle Code* § 40267 states that in any case in which unpaid penalties exceed $400 (essentially, any round trip unpaid fines and penalties), the processing agency may file with the court proof of the fact that the penalties exceed $400 and that such filing shall have the same effect as a civil judgment, which is subject to execution. This entry of judgment is again, without any hearing on the issue of penalties.

87.    The above procedures set forth in *Vehicle Code* § 40250 et seq. fail to provide adequate procedural protection for the due process rights accorded under the Fourteenth Amendment of the United States Constitution.

**EXHIBIT B**

88.     The deprivations of the procedural due process rights of Plaintiff and members of the Class as described above were a proximate result of the policies, procedures, and/or customs maintained by the defendants.  As a direct and legal result of the acts and omissions of the defendants, and each of them, Plaintiff and members of the Class have suffered damages, and/or are entitled to restitution, in an amount to be proven at trial.

89.     Plaintiff and members of the Class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned policies, procedures, practices and/or customs of defendants are allowed to continue.  Henceforth, Plaintiff and members of the Class seek injunctive relief, both preliminary and permanent, to enjoin the defendants' unlawful policies, procedures, practices and/or customs described above.

90.     In addition, there is a real dispute between the parties as to whether *Vehicle Code* § 40250 *et seq.* and defendants' practices violate the due process clause of the Fourteenth Amendment to the United States Constitution.  Plaintiffs maintain that the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by defendants, violates the due process clause of the Fourteenth Amendment to the United States Constitution.  Defendants claim that the penalty scheme and their actions do not violate the due process clause and are constitutional.  Plaintiff and the members of the Class therefore seek declaratory relief to declare the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by the defendants, unconstitutional.

91.     Pursuant to 42 U.S.C. section 1988, Plaintiff and members of the Class further seek their costs and attorneys fees in curred as a result of this lawsuit.

### CAUSE OF ACTION II
**42 U.S.C. SECTION 1983 FOR VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA**

**(By Plaintiff and each of member of the Class against each of the defendants)**

92.     Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

**CLASS ACTION COMPLAINT**                                                          23

**EXHIBIT B**

93.     *Vehicle Code* § 40258 provides for civil penalties for toll violations in the maximum sum of one hundred dollars ($100) for the first violation, two hundred and fifty dollars ($250) for the second violation within one year, and five hundred dollars ($500) for each additional violation within one year.   There is no limited on the number of times that these penalties can be imposed within one year or over several years.   Indeed, the incentive to defendants would be to permit commuters to violate the tolls as many times as possible to maximize their revenues, particularly since there is no opportunity to be heard regarding the total amount of penalties imposed.

94.     The aforementioned penalties are punitive in nature, and are grossly excessive and disproportionate, particularly when accumulated with maximums, in light of the legislative goal, the nature of the violations, the amount of the tolls and the cumulative effect of the toll violations.

95.     The enforcement of these civil penalty assessments constitutes a violation of the Eighth Amendment's and Fourteenth Amendment's protection against excessive fines.   Indeed, the Plaintiff and each member of the Class were assessed enormous fines and penalties that bear no relationship to the harm caused and are therefore unconstitutional.

96.     In addition, the plaintiffs herein are informed and believe and thereon allege that the defendants have employed the imposition of these civil penalty assessments so as to maximize their respective revenues.   Specifically, defendants do not advise alleged violators (including registered owners of the vehicles allegedly involved) of the amounts imposed on the account until it has gone to collection, at which time it is too late to contest them, and there is no proper mechanism to contest such amounts in any event.   Moreover, the plaintiffs herein are informed and believe and thereon allege that defendants do not arrange to place a hold on commuters' registration with the Department of Motor Vehicles before assessing and obtaining judgments for the maximum penalties.

97.     The deprivations of the Eighth and Fourteenth Amendment rights of Plaintiff and members of the Class as described above were a proximate result of the policies, procedures, and/or customs maintained by the defendants.   As a direct and legal result of the acts and

CLASS ACTION COMPLAINT                                                                24

**EXHIBIT B**

32

1  omissions of the defendants, and each of them, Plaintiff and members of the Class have suffered

2  damages, and/or are entitled to restitution, in an amount to be proven at trial.

3      98.    Plaintiff and members of the Class will suffer immediate and irreparable injury for

4  which there is no adequate remedy at law if the aforementioned policies, procedures, practices

5  and/or customs of defendants are allowed to continue.  Henceforth, Plaintiff and members of the

6  Class seek injunctive relief, both preliminary and permanent, to enjoin the defendants' unlawful

7  policies, procedures, practices and/or customs described above.

8      99.    In addition, there is a real dispute between the parties as to whether *Vehicle Code* §

9  40250 *et seq.* and defendants' practices violate the Eighth and Fourteenth Amendment's

10  prohibition of excessive fines.  Plaintiffs maintain that the penalty scheme of *Vehicle Code* §

11  40250 *et seq.*, on its face and as applied by defendants, violates the excessive fines clause of the

12  Eighth and Fourteenth Amendments to the United States Constitution.  Defendants claim that the

13  penalty scheme and their actions do not violate the excessive fines clause of the Eighth and

14  Fourteenth Amendments.  Plaintiff and the members of the Class therefore seek declaratory relief

15  to declare the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by the

16  defendants, unconstitutional.

17      100.   Pursuant to 42 U.S.C. section 1988. Plaintiff and members of the Class further seek

18  their costs and attorneys fees incurred as a result of this lawsuit.

19  //

20  //

21  //

22              **CAUSE OF ACTION III**

23  **VIOLATION OF THE DUE PROCESS CLAUSE OF ARTICLE I, SECTION 7 OF THE CONSTITUTION OF THE STATE OF CALIFORNIA**

24      **(By Plaintiff and each of member of the Class against each of the defendants)**

25      101.   Plaintiffs hereby refer to and incorporate by reference each and every allegation

26  contained in the preceding paragraphs.

27

28

CLASS ACTION COMPLAINT                                          25

**EXHIBIT B**

102.    The aforementioned acts of defendants violated the due process rights of the Plaintiff and members of the Class as guaranteed by Article I, Section 7 of the California Constitution.

103.    Plaintiff and members of the Class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned policies, procedures, practices and/or customs of defendants are allowed to continue.  Henceforth, Plaintiff and members of the Class seek injunctive relief, both preliminary and permanent, to enjoin the defendants' unlawful policies, procedures, practices and/or customs described above.

104.    In addition, there is a real dispute between the parties as to whether *Vehicle Code* § 40250 *et seq.* and defendants' practices violate Article I, Section 7 of the California Constitution. Plaintiff maintains that the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by defendants, violates Article I, Section 7 of the California Constitution.  Defendants claim that the penalty scheme and their actions do not violate the due process clause of Article I, Section 7 of the California Constitution and are constitutional.  Plaintiff and the members of the Class therefore seek declaratory relief to declare the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by the defendants, unconstitutional.

105.    Plaintiff and members of the Class are further entitled to recover from the defendants their reasonable costs and attorney fees incurred in bringing this action pursuant to section 1021.5 of the *California Code of Civil Procedure*.

//

//

//

//

## CAUSE OF ACTION IV
### VIOLATION OF THE EXCESSIVE FINES CLAUSE OF ARTICLE I, SECTION 17 OF THE CONSTITUTION OF THE STATE OF CALIFORNIA

**(By Plaintiff and each of member of the Class against each of the defendants)**

CLASS ACTION COMPLAINT                                                                26

**EXHIBIT B**

34

106.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

107.    The aforementioned acts of defendants violated the excessive fines clause protecting the Plaintiff and members of the Class pursuant to Article I, Section 17 of the California Constitution.

108.    Plaintiff and members of the Class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned policies, procedures, practices and/or customs of defendants are allowed to continue.  Henceforth, Plaintiff and members of the Class seek injunctive relief, both preliminary and permanent, to enjoin the defendants' unlawful policies, procedures, practices and/or customs described above.

109.    In addition, there is a real dispute between the parties as to whether *Vehicle Code* § 40250 *et seq.* and defendants' practices violate Article I, Section 17 of the California Constitution. Plaintiff maintains that the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by defendants, violates Article I, Section 17 of the California Constitution.  Defendants claim that the penalty scheme and their actions do not violate the excessive fines clause of Article I, Section 17 of the California Constitution and are constitutional.  Plaintiff and the members of the Class therefore seek declaratory relief to declare the penalty scheme of *Vehicle Code* § 40250 *et seq.*, on its face and as applied by the defendants, unconstitutional.

110.    Plaintiff and members of the Class are further entitled to recover from the defendants their reasonable costs and attorney fees incurred in bringing this action pursuant to section 1021.5 of the *California Code of Civil Procedure*.

## CAUSE OF ACTION V
### ILLEGAL EXPENDITURE OF FUNDS (CALIFORNIA CODE OF CIVIL PROCEDURE § 526A)

**(By Plaintiff and each of member of the Class against Rhonda Reardon, Michael Kraman, Craig Young, Scott Schoeffel, Ross Chun, Darrel Johnson and DOES 1-100)**

111.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

**EXHIBIT B**

35

112. Plaintiff and members of the Class have paid state and local taxes within the past year.

113. The expenditure of public funds towards the activities described herein, including, but not limited to, the assessment and collection of tolls and penalties for alleged toll violations described above, is illegal. The activities of defendants Rhonda Reardon, Michael Kraman, Craig Young, Scott Schoeffel, Ross Chun, Darrel Johnson and DOES 1-100 (the "Representative Defendants"), in connection with their duties for the other defendants, have resulted in, and unless restrained will continue to result in, the illegal expenditure, waste of the tax revenues, or injury to the tax paying residents of the State of California and County of Orange.

114. An injunction against the Representative Defendants is therefore warranted to restrain the illegal expenditure, waste of tax revenues, or injury to the tax paying residents of the State of California and the County of Orange.

115. The conduct of the Representative Defendants and will continue to cause immediate injury to the State of California and County of Orange unless restrained by this Court, and the plaintiffs herein have no adequate remedy at law.

116. Plaintiff and members of the Class are further entitled to recover from the defendants their reasonable costs and attorney fees incurred in bringing this action pursuant to section 1021.5 of the *California Code of Civil Procedure*.

### CAUSE OF ACTION VI
#### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

**(By Plaintiff and each of member of the Class against each of the defendants)**

117. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

118. Defendants each are "persons" as defined by *Civil Code* section 1761(c). The plaintiffs herein are consumers within the meaning of *Civil Code* section 1761(d).

119. The Consumer Legal Remedies Act applies to defendants' conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to

---

CLASS ACTION COMPLAINT                                           28

**EXHIBIT B**

36

1  consumers, or do result in such sales or leases.  The use of the Toll Roads constitutes such sale or

2  lease of goods or services.

3      120.  In violation of *Civil Code* section 1170(a)(16), the defendants represented that the

4  subject of a Toll Roads transaction was supplied in accordance with a previous representation

5  when it was not, defendants have failed to disclose material facts to the plaintiffs herein by billing

6  them for services that were not in fact provided, and by billing them at rates higher than disclosed

7  or allowed by law, or through billing errors.

8      121.  Defendants had a duty to disclose the omitted facts because they had exclusive

9  knowledge of material facts not known to the plaintiffs herein (that they were billing for services

10  that they did not in fact provide and/or that they were billing at rates higher than disclosed or at

11  rates permitted by law), because they actively concealed material facts, and because they did not

12  provide the plaintiffs, ordinary consumers, proper notice of the Toll Roads, toll charges, penalties,

13  the processes by which could be assessed and contested, and otherwise suppressing true material

14  facts.  The facts, which defendants misrepresented and concealed as alleged in the preceding

15  paragraphs, were material to the decision about whether to use the Toll Roads and pay bills

16  rendered by or for the defendants.  Defendants are liable under the Consumer Legal Remedies Act

17  for these material omissions.

18      122.  Under *Civil Code* section 1780, the plaintiffs herein are entitled to appropriate

19  equitable relief, including an order enjoining defendants from the unlawful practices described

20  herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual

21  damages (but in no event less than one thousand dollars) punitive damages and any other relief the

22  court deems proper.  Additionally, any of the plaintiffs herein that are senior citizens or disabled

23  persons, as defined in subdivision (f) and (g) of *Civil Code* section 1781, may seek and be

24  awarded up to five thousand dollars additional for physical, emotional, or economic damage.

25

26              **CAUSE OF ACTION VII**
               MONEY HAD AND RECEIVED

27

28      **(By Plaintiff and each of member of the Class against each of the defendants)**

CLASS ACTION COMPLAINT                                  29

**EXHIBIT B**

123.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

124.   Defendants collected more money than that to which they were legally entitled.

125.   The payment by the plaintiffs herein for the improper charges discussed above was done through mistake, pursuant to a void contract, by such plaintiffs' performance of an express contract or contracts, in a greater amount or amounts than necessary, and/or in ignorance of law, and thus created a specific indebtedness – in specific amounts reflected in defendants' records – on the part of defendants to the plaintiffs herein for all money so charged and collected by the defendants.

126.   The plaintiffs herein are entitled to recover said interest and other charges, monies, and assets from defendants as money had and received by defendants from the plaintiffs herein, and as damage for it, in amounts to be proven at trial.

127.   Defendants' conduct also constitutes unjust enrichment.  Defendants charged and collected more monies than duly provided for by law or by contract.  Plaintiffs are therefore entitled to restitution in such sums as to be proven at trial.

### CAUSE OF ACTION VIII
#### FRAUD AND DECEIT

**(By Plaintiff and each of member of the Class against each of the defendants)**

128.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

129.   Defendants willfully failed to disclose, omitted, and concealed material facts from the plaintiffs herein, while knowing the true facts, and with the intent to deceive the plaintiffs.

130.   Notwithstanding that they knew, or should have known, that they were not entitled to charge the plaintiffs herein in the amounts they have charged in connection with the Toll Roads, the defendants continued to charge such persons, and/or to charge such improper amounts, without disclosing that, in fact, they had no right to charge and collect such amounts.

131.   The defendants have not paid the plaintiffs herein all the monies due and owing to them as a result of the illegal and improper billing and collections discussed herein.

CLASS ACTION COMPLAINT                                                  30

**EXHIBIT B**

132. Defendants allegedly refunded some of the money to some of the members of the Class or offered to do so by providing credit balances or reductions, thus admitting that they had wrongfully billed and collected amounts from them.

133. Defendants' unlawful, unfair and fraudulent business acts and practices, and unfair, deceptive, untrue and misleading advertising, as described above, present a continuing threat to the plaintiffs and of the general public, in that the defendants continue to sell their services in violation of the law. This Court is empowered to, and should, grant preliminary and permanent injunctive relief against such acts and practices.

134. As a result of defendants' conduct set forth herein, Plaintiffs have suffered and will continue to suffer economic loss in an amount to be proven at trial, together with interest thereon, but in any event in excess of the jurisdictional minimum of this Court. Plaintiffs seek damages and an injunction barring the defendants' illegal and unfair business practices.

135. Moreover, in undertaking the fraudulent acts and omissions described above, the defendants acted with full knowledge of the consequences thereof and of the damage being caused to the plaintiffs herein, and to the general public. The defendants' conduct was extreme, and was oppressive and malicious within the meaning of *Civil Code* § 3294 in that it was despicable and subjected the plaintiffs to cruel and unjust hardship in willful and conscious disregard of their rights, thereby entitling the plaintiffs herein to an award of punitive damages to the extent otherwise permitted by law.

**CAUSE OF ACTION IX**

**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**

**(By Plaintiff and each of member of the Class against each of the defendants)**

136. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

137. Defendants are respective "debt collectors" within the meaning of *Civil Code* § 1788.2. The tolls, penalties and other debts asserted by the Defendants constitute "consumer debts" pursuant to said section.

CLASS ACTION COMPLAINT

31

**EXHIBIT B**

39

138. Defendants have violated, and are violating, the Rosenthal Fair Debt Collection Practices Act, *Civil Code* section 1788 *et seq.*, in that they are making (i) false representations of the true nature of the business or services being rendered by the debt collector (*Civil Code* § 1788.13(i)); and (ii) false representations that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation (*Civil Code* § 1788.13(e)).

139. Additionally, *Civil Code* section 1788.17 requires every debt collector to comply with the provisions of sections 1692b to 1692 j, inclusive, and that the same shall be subject to the remedies in section 1692k, of Title 15 of the United States Code. To wit:

- Section 1692d prohibits a debt collector from engaging in any conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt.

- Section 1692e(8) prohibits a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

- Section 1692e(10) prohibits a debt collector from the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

- Section 1692e(11) prohibits a debt collector from failing to disclose (a) in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and (b) in subsequent communications that the communication is from a debt collector.

**CLASS ACTION COMPLAINT**                                                                      32

**EXHIBIT B**

40

1       •      Section 1692g requires additional written notices be provided by debt collectors

2             and provides circumstances under which a debt collector must cease collection

3             of debts when disputed.

4     140.     Defendants have violated, and continue to violate, the foregoing provisions of the

5 Rosenthal Fair Debt Collection Practices Act. As a consequence, the plaintiffs herein are entitled

6 to appropriate equitable relief, including an order enjoining defendants from the unlawful practices

7 described herein, as well as recovery of attorneys' fees and costs of litigation (including but not

8 limited to pursuant to *Civil Code* §§ 1788.17 and 1788.30(c)), restitution of property, actual

9 damages, statutory damages, punitive damages (as may otherwise be permitted by law) and any

10 other relief the court deems proper.

11                               **CAUSE OF ACTION X**
                                **UNFAIR COMPETITION**

12

13          **(By Plaintiff and each of member of the Class against each of the defendants)**

14     141.     Plaintiffs hereby refer to and incorporate by reference each and every allegation

15 contained in the preceding paragraphs.

16     142.     The defendants have engaged in a pattern and practice of acts of unfair competition

17 in violation of the California unfair competition laws, including the practices alleged herein.

18     143.     By violating the plaintiffs' federal and state constitutional due process rights and

19 prohibition against excessive fines, and engaging in the collection activity recited above, the

20 defendants have committed and continue to commit and engage in "unlawful, unfair or fraudulent

21 business acts or practices" as defined in *California Business & Professions Code* sections 17200 *et*

22 *seq.*

23     144.     *Cal. Bus. & Prof. Code* § 17200 provides:

24            As used in this chapter, unfair competition shall mean and include any unlawful or
           fraudulent business act or practice and unfair, deceptive, untrue or misleading

25            advertising and any act prohibited by Chapter 1 (commencing with section 17500)
           of Part 3 of Division 7 of the Business and Professions Code.

26

27     145.     *Cal. Bus. & Prof. Code* § 17204 provides that an action for violation of California's

28 unfair competition law may be brought by persons who have suffered injury in fact and have lost

**EXHIBIT B**

money or property as a result of such unfair competition and *Cal. Bus. & Prof. Code* § 17203 provides that a court may grant injunctive and equitable relief to such persons.

146.    The unlawful conduct of the defendants alleged herein, are acts of unfair competition under *Cal. Bus. & Prof. Code* §§ 17200, *et seq.*, for which the defendants are liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to *Cal. Bus. & Prof. Code* § 17203.

147.    Through their conduct, the defendants have engaged in unfair business practices in California by employing and utilizing the practices complained of herein.  The defendants' use of such unfair business practices constitutes unfair competition that has provided and continues to provide defendants' with an unfair advantage over their competitors.

148.    The defendants' conduct as alleged herein are unlawful, unfair and fraudulent.

149.    The defendants' conduct as alleged herein is "unlawful" in that, among other things, it violates the duties they owe to the plaintiffs herein.

150.    The defendants' conduct as alleged herein is also "unfair" because, among other things, it was designed to deprive the plaintiffs of their constitutionally protected rights, their property for less than adequate consideration, and to unjustly punish and penalize the plaintiffs.

151.    The defendants' scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead.  The defendants had actual knowledge of the egregious penalties they were charging, the means by which they sought to conceal and apply them, the coercive judgments and liens they were placing on plaintiffs' assets to submit them to the payment of unjustified charges, and have continued to take steps to perpetuate these deceitful practices as against the plaintiffs.

152.    In this regard, the defendants have, among other things, uniformly omitted to provide plaintiffs with timely and informative remittance statements so that the plaintiffs would incur penalties beyond their control.  Defendants' policies and patterns of conduct were accomplished with the advance knowledge and designed by defendants to garner them and their investors millions – if not billions – of dollars and cause harm to the plaintiffs herein.

CLASS ACTION COMPLAINT                                                                34

**EXHIBIT B**

153.   Unless enjoined, the defendants will continue to harm the plaintiffs and the general public.  Plaintiffs have suffered injuries in fact and lost money as a result of defendants' conduct as more specifically alleged above.

154.   As a result of Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of the plaintiffs herein.  Defendants should be made to disgorge their ill-gotten gains and restore such monies to such plaintiffs.

155.   Defendants' unfair business practices furthermore entitle the plaintiffs herein to obtain preliminary and permanent injunctive relief, including but not limited to, orders that the defendants cease their complained-of practices, and account for, disgorge and restore to the plaintiffs the compensation unlawfully obtained from them.

## VII.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiffs herein pray for judgment against the defendants as follows:

1.   Certification of the proposed Class and notice thereto to be paid by defendants;

2.   For damages, restitution, and all other appropriate legal and equitable relief;

3.   For declaratory relief;

4.   For pre-judgment and post-judgment interest;

5.   For civil penalties, as requested herein;

6.   For punitive and exemplary damages, as requested herein;

7.   For reasonable attorneys' fees and litigation expenses;

8.   For attorney fees and costs pursuant to 42 U.S.C. section 1988 and *California Code of Civil Procedure* section 1021.5;

9.   For appropriate injunctive relief;

10.   For costs of suit herein; and

11.   For such other and further relief as this Court may deem just and proper.

## VIII.

### DEMAND FOR JURY TRIAL

CLASS ACTION COMPLAINT                                                                35

**EXHIBIT B**

43

1        The plaintiffs herein hereby demand a trial by jury on all causes of action so triable.

2  Dated:   October 2, 2015                        Respectfully submitted,

3                                       LINDEMANN LAW GROUP

6                                       BLAKE J. LINDEMANN (#255747)

7                                       433 North Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile: (310) 300-0267
Email:  blake@lawbl.com

*Attorneys for Plaintiffs*

**EXHIBIT B**