1  ZELDES HAEGGQUIST & ECK, LLP
2  HELEN I. ZELDES (220051)
     helenz@zhlaw.com
3  ALREEN HAEGGQUIST (221858)
     alreenh@zhlaw.com
4  AARON M. OLSEN (259923)
     aarono@zhlaw.com
5  225 Broadway, Suite 2050
   San Diego, CA  92101
6  Telephone: (619) 342-8000
7  Facsimile: (619) 342-7878
8
9  Attorneys for Plaintiffs and Interim Co-Lead Class Counsel
   [Additional counsel appear on signature page.]

10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA

12  IN RE: TOLL ROADS LITIGATION              No.: 8:16-cv-00262 AG (JCGx)
    PENNY DAVIDI BORSUK; DAVID
13  COULTER; EBRAHIM E. MAHDA;               CLASS ACTION
    TODD QUARLES; TODD CARPENTER;
14  LORI MYERS; DAN GOLKA; and JAMES         FIRST AMENDED
15  WATKINS on Behalf of Themselves and      CONSOLIDATED CLASS
    All Others Similarly Situated,           ACTION COMPLAINT
16                  Plaintiffs,
17          v.                                Judge: Hon. Andrew J. Guilford
18  FOOTHILL/EASTERN                          Mag. Judge: Hon. Jay C. Gandhi
    TRANSPORTATION CORRIDOR
19  AGENCY; SAN JOAQUIN HILLS
20  TRANSPORTATION CORRIDOR
    AGENCY; ORANGE COUNTY
21  TRANSPORTATION AUTHORITY; 3M
    COMPANY; BRiC-TPS LLC; RHONDA
22  REARDON; MICHAEL KRAMAN;
23  CRAIG YOUNG; SCOTT SCHOEFFEL;
    ROSS CHUN; DARREL JOHNSON; LORI
24  DONCHAK; WILLIAM P. DUFFY;
25  COFIROUTE SR 91 CORP; COFIROUTE
    CORPORATION; and DOES 3-10,
26  inclusive,
27                  Defendants.               DEMAND FOR JURY TRIAL
28

ZELDES HAEGGQUIST & ECK, LLP

1.     Plaintiffs Penny Davidi Borsuk, David Coulter, Ebrahim E. Mahda, Todd Quarles, Todd Carpenter, Lori Myers, Dan Golka, and James Watkins (collectively, the "Plaintiffs") bring this action, and file this first amended consolidated class action complaint ("Complaint"), on behalf of themselves and all others similarly situated, against Defendants Foothill/Eastern Transportation Corridor Agency ("FTCA"), San Joaquin Hills Transportation Corridor Agency ("SJTCA") (collectively, the "TCA" or "TCA Defendants"), Orange County Transportation Authority ("OCTA"), 3M Company, BRiC-TPS LLC, Rhonda Reardon, Michael Kraman, Craig Young, Scott Schoeffel, Ross Chun, Darrel Johnson, Lori Donchak, William P. Duffy, Cofiroute SR 91 Corp, Cofiroute Corporation, and DOES 3-10 (collectively "Defendants"). Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to themselves.

## NATURE OF THE CASE

2.     Since their inception in 1995, tolls assessed to drivers on California Highways 73, 133, 241 and 261 (collectively with California Highway 91, the "Toll Roads," and each, a "Toll Road") have been collected at manned and unmanned toll booths located on the Toll Roads themselves. The recent conversion in May of 2014 of the Toll Roads to an all-electronic cashless system (the "System") unfairly penalizes unsuspecting drivers who do not have "FasTrak" passes or "ExpressAccounts" by citing them in route. The new System fails to provide drivers with proper notice (of the toll, penalties, citation, or threatened vehicle registration liens) and ambushes them with cryptic and confusing roadside warnings that they hazardously and, impracticably or impossibly, must respond to while driving.

3.     Before conversion to an unmanned and cashless system, conspicuous signage and the toll booths themselves provided notice of impending Toll Roads and their tolls. At a minimum, they ensured notice and prevention of toll violations

ZELDES HAEGGQUIST & ECK, LLP

and ensuing penalties. However, the TCA removed signage and toll booths from the Toll Roads. Tested safeguards to avoid inadvertent tolls and toll violations were eliminated and in their place the TCA installed video cameras and digital systems to record commuters' movements (including travel pattern data, location, dates and times of entering/exiting the system) and collect their personally identifiable information ("PII").

4.     The new cashless system imposed a new array of confusing (and counterintuitive) affirmative obligations on all commuters, which most drivers are required to apprehend while they are driving, NAMLEY: (1) all who enter the Toll Roads (knowingly or otherwise) must have a computer; (2) must understand without any signage forewarning them whatsoever, or from vague and confusing roadside signage (listing an Internet URL web page address that drivers must notice, interpret as a directive to take action, remember or write down while driving some 55 miles per hour) in order for them to go online within a specified time and the precise addresses of their entry on and exit from the Toll Road in question to set up an account and pay a toll; or (3) must establish an electronic account with the Defendants, funded or secured with cash or a credit card for the payment of tolls *prior* to driving on the Toll Roads.

5.     If a driver does not have a computer, does not have an account set up with the Toll Roads, or a does not understand that they must go online to pay the toll within a set period of time, or how to do so, or does not have the precise time and address of their entry on and exit from the Toll Roads, a Notice of Violation would issue in 48 hours[1] threatening a lien on the vehicle owner's automobile registration, generally if not paid within 30 days. In many cases, a penalty would exceed tens if not hundreds of times the amount of underlying toll. In some

---

[1]     Extended to five days in or about January 2015.

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

1    instances, class members have had their automobiles impounded over *de minimis*

2    tolls.

3        6.    The confluence of these defective notice procedures, the coercive

4    extra-judicial collection procedures employed by Defendants, and the use of PII

5    obtained from the System's cameras and sent to the DMV, enables Defendants to

6    reap an extraordinary increase in the amount of fines assessed and coerce hundreds

7    of millions of dollars in excessive fines from commuters across California.

8        7.    The conversion to a cashless System was deceptively and negligently

9    designed and implemented by Defendants to cause a radical increase in violations

10   (and thus revenue) for Defendants. Defendants have exploited the statutory

11   scheme under which toll roads were authorized in California to ensnare

12   unsuspecting California commuters in a confusing maze. This exploitation has

13   exposed how untenable the statutory scheme is.

14       8.    This class action seeks damages and declaratory and injunctive relief

15   for violations by Defendants of the Excessive Fines and Due Process Clauses of

16   the Constitution of the United States of America and analogous provisions of the

17   Constitution of the State of California arising from Defendants' assessment,

18   enforcement, and collection of tolls and excessive civil penalties for alleged Toll

19   Road payment violations by a class of persons that commuted (or were alleged to

20   have commuted) on Toll Roads from October 21, 2009 to the present.

21       9.    This class action also seeks redress for Defendants' violation of rights

22   to privacy and protection of private information of the Plaintiffs and those

23   similarly situated they seek to represent when their PII was provided by

24   Defendants to third parties including, but not limited to, the California Department

25   of Motor Vehicles ("DMV") and the California Franchise Tax Board ("FTB"), in

26   violation of California Streets and Highways Code §31490; the Fair Credit

27   Reporting Act, 15 U.S.C. §§1681, *et seq*.; and Article I, §1 of the California

28   Constitution. Neither the DMV, the FTB, Car Rental Agencies, the Law

Enforcement Agencies, or any of the other Unauthorized Parties are a "transportation agency" within the meaning of California Streets and Highways Code §31490(l).[2]

## THE PARTIES

### Plaintiffs

10.     Plaintiff Penny Davidi Borsuk ("Borsuk") is an individual residing in the State of California. Plaintiff Borsuk's vehicle was driven on Toll Roads 73, 133, and 241. Borsuk later discovered that she received $1,700 in penalties for tolls of $100.63, more than 1,000% of the underlying toll. For example, Borsuk was assessed an initial penalty of $57.50 for a $2.00 toll on the Toll Roads, and penalties increased therefrom. For one $2.00 toll alone, Borsuk was charged penalties of $100.00. Moreover, these charges were made subject to a vehicle registration lien against Plaintiff Borsuk's automobile. Borsuk's financial circumstances did not permit her to pay the penalties of $1,700.

11.     Borsuk was provided notice of her alleged tolls and penalties only after any opportunity to administratively contest them had been foreclosed by Defendants.

12.     Defendants provided Borsuk's PII, including, without limitation, her license plate information (which constitutes PII) to Unauthorized Parties, including the DMV, the FTB, the Beverly Hills Police Department and other Law

---

[2]     The following entities and persons (collectively, "Unauthorized Parties") are "Law Enforcement Agencies" including the DMV, the FTB, the Beverly Hills Police Department and other city, state, county, and federal Law Enforcement Agencies located in the State of California; "Banking Institutions," including, without limitation, Wells Fargo Bank, N.A.; "Car Rental Agencies," including without limitation Ace Rent-A-Car, Advantage, Alamo, Avis, Budget, Dollar, Economy, Enterprise, Europcar, Rent-a-car, Firefly, Fox; out-of-state collection agencies and other unauthorized third persons and entities to be ascertained through discovery ("Other Unauthorized Parties").

ZELDES HAEGGQUIST & ECK, LLP

4

Enforcement Agencies, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, as an alleged toll violator, on at least two occasions per month from May of 2015 to December of 2015. Borsuk's vehicle was towed and repossessed, and her credit has been damaged, as a direct and proximate result of Defendants' conduct complained of herein.

13.     Plaintiff David Coulter ("Coulter") is an individual residing in the State of California. Plaintiff Coulter drove on Toll Road 91 and other Toll Roads, from November of 2014 through 2015. Plaintiff Coulter received Notices of Toll Evasion informing him that he owed penalties of $55,203.63 for Toll Road fees of $3,542.63, a factor of over 1,000%. Plaintiff Coulter's financial circumstances did not permit him to pay $55,203.63, or any amount close thereto. A lien was imposed against Coulter and his vehicle. Plaintiff Coulter had no choice but to accept a reduction in the penalties owed, and a lien remained on his vehicle and against his registration until payment was made, though the parties did not release one another of any liability, and in fact, mutually tolled all claims. On July 28, 2015, Coulter made a partial payment of $1,414 to the OCTA Defendants.[3]

14.     Upon information and belief, Defendants provided Coulter's PII, including, without limitation, his license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties on at least two instances per month, from July of 2015 to September of 2015, and potentially at other times. Coulter also believes his PII

_____

[3]     Coulter and the Toll Roads executed a letter agreement whereby all statutes of limitations were tolled "during the time the agreement was in effect" [April of 2015 through April of 2016]. The letter does not provide a waiver of the penalties and tolls but implies that the balance of all amounts owed to the Toll Roads will be reduced to $3,542.63 if Coulter agrees to pay ten percent interest on that amount. The letter also states that a DMV hold will remain on Coulter's vehicle until he pays the entire $3,542.63. Coulter and the Toll Roads did not release each other of any claims each may have against the other.

ZELDES HAEGGQUIST & ECK, LLP

may have been provided to other government agencies, including, without limitation, the FTB.

15.    Plaintiff Ebrahim E. Mahda ("Mahda") is an individual residing in the State of California. Mahda received a Notice of Toll Evasion from the TCA dated December 10, 2015. Mahda operated his vehicle on Toll Road 73 on November 26 and 28, 2015. Mahda's vehicle was not equipped with a FasTrak electronic toll paying transponder. Mahda's Notice of Toll Evasion imposed penalties of $57.50 on each $6.00 toll. Plaintiff Mahda paid penalties of approximately $212, or over 1,000% of the underlying tolls.

16.    Upon information and belief, Defendants provided Mahda's PII, including, without limitation, his license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, including Law Enforcement Agencies, on multiple occasions, including, without limitation, December of 2015 and January of 2016.

17.    Plaintiff Todd Quarles ("Quarles") is an individual residing in the State of California. Plaintiff Quarles drove on Toll Road 73 in 2016. Quarles received a Notice of Toll Evasion in the mail with a significant penalty already assessed even though he never had a chance to pay the toll itself. Faced with either paying the penalty or being subject to further penalties for non-payment and threats that his vehicle registration would be subjected to a lien if he did not respond, Quarles mailed in payment for the penalty. The Notice informed Quarles that the toll amount for his drive on the Toll Road on February 22, 2016 was $6.00, assessed a significant penalty and warned him that he must respond by April 30, 2016 or a lien would be placed on his vehicle registration. The Notice also threatened a civil judgment and other collection efforts if Quarles did not pay the fine. Quarles paid the $6.00 toll plus a penalty in the amount of $57.50, for a total fine of $63.50, more than 1,000% of the underlying toll.

Case No. 8:16-cv-00262 AG (JCGx)                    FIRST AMENDED CONS CLASS ACTION COMPLAINT

ZELDES HAEGGQUIST & ECK, LLP

18.     Upon information and belief, Defendants provided Plaintiff Quarles' PII, including, without limitation, his license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, including Law Enforcement Agencies, on multiple occasions including without limitation April of 2016.

19.     Plaintiff Todd Carpenter ("Carpenter") resides in San Diego, California. Carpenter drove on Toll Road 73 on November 13, 2015, and received a Notice of Toll Evasion in the mail shortly thereafter ordering him to pay $7.78, plus a significant penalty, and warning him that his vehicle registration would be subjected to a lien if he did not respond by January 23, 2016. The Notice also threatened a civil judgment and other collection efforts if Carpenter did not pay the fine. Carpenter paid the toll and a penalty in the amount of $100.00, for a total of $107.78, more than 1,000% of the underlying toll.

20.     Upon information and belief, Defendants provided Carpenter's PII, including, without limitation, his license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, including Law Enforcement Agencies, on multiple occasions including in December of 2015 and January of 2016.

21.     Plaintiff Lori Myers ("Myers") is an individual residing in the State of California. Plaintiff Myers commuted on Toll Road 241 almost daily for work. Plaintiff Myers has a FasTrak transponder and an account with the Toll Roads. Over the past year, Myers' Toll Roads account balance dropped below the daily toll amount, and she was issued multiple Notices of Toll Evasion. Since Myers was a Toll Roads account holder, her payments had been automatically deducted from her bank account. Plaintiff Myers was not aware that she was being issued citations for non-payment until she received a Notice of Toll Evasion with multiple citations in the mail. Plaintiff Myers' Notice of Toll Evasion informed her that she owed hundreds of dollars in penalties for non-payment of tolls in relatively

minimal amounts and warned her that her vehicle registration would be subjected to a lien if she did not respond in a timely manner. Plaintiff Myers paid excessive penalties in April of 2016, aggregating over 1,000% of the underlying tolls.

22.    Upon information and belief, Defendants provided Plaintiff Myers' PII, including, without limitation, her license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, including Law Enforcement Agencies, on multiple occasions.

23.    Plaintiff Dan Golka ("Golka") is an individual residing in the State of California. Plaintiff Golka operated a business that involved driving vehicles on the Toll Roads between 2011 and 2013. Golka's vehicles were not equipped with FasTrak electronic toll paying transponders. During that time period, Plaintiff Golka and his vehicles were cited for driving on several different Toll Roads, including, but not limited to, Toll Roads 73, 91, and 241. Plaintiff Golka received a total of 92 Notices of Toll Evasion, which included penalties amounting to $9,584.20, over 1,000% of the underlying tolls. Golka eventually paid a reduced amount of $3,899.44 via a payment plan to the TCA and made his last payment on or around August of 2015.

24.    Upon information and belief, Defendants provided Plaintiff Golka's PII, including, without limitation, his license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, including Law Enforcement Agencies, on multiple occasions.

25.    Plaintiff James Watkins ("Watkins") is an individual residing in the State of California. Watkins is currently 84 years of age. Watkins' vehicles were not equipped with FasTrak electronic toll paying transponders. In 2015, Plaintiff Watkins and his vehicles were cited for driving on several different Toll Roads, including, but not limited to, Toll Road 73. Watkins received Notices of Toll

ZELDES HAEGGQUIST & ECK, LLP

Evasion, which included fines amounting to $1,231, or approximately six times the underlying tolls aggregating $212.30. Watkins has been financially unable to pay any of the amounts requested, and a hold has been placed on his vehicle registration.

26.    Upon information and belief, Defendants provided Plaintiff Watkins' PII, including without limitation, his license plate information (which constitutes PII), to the DMV, the FTB, Car Rental Agencies, Banking Institutions, and Other Unauthorized Parties, including Law Enforcement Agencies, on multiple occasions.

27.    Since the time Watkins was named to this action, the TCA Defendants (by and through other persons) have attempted to repossess Watkins' vehicle, and have caused a banking institution, Wells Fargo Bank, N.A., to place an administrative hold on an account related to Mr. Watkins' family member.

### Defendants

28.    Defendant Foothill/Eastern Transportation Corridor Agency ("FTCA") manages Toll Roads 133, 241 and 261, which link the 91 freeways near the Orange County/Riverside County border to Interstate 5 in Irvine and to communities in South Orange County.

29.    Defendant San Joaquin Hills Transportation Corridor Agency ("SJTCA") manages Toll Road 73, which stretches 15 miles from Newport Beach to San Juan Capistrano in southwest Orange County.

30.    Upon information and belief, Defendants the FTCA and SJTCA direct the TCA's policy and decision making, including the implementation of the System and the assessment and administration of tolls and penalties.

31.    Defendant Orange County Transportation Authority ("OCTA") is an entity responsible for the operation of Toll Road 91, and the assessment and administration of tolls and penalties thereon.

ZELDES HAEGGQUIST & ECK, LLP

32.     Defendant 3M Company is a Delaware corporation ("3M"), located in St. Paul, Minnesota. 3M is a multinational diversified technology company. TCA and OCTA outsourced many of the Toll Roads functions to 3M, formerly VESystems LLC, for nearly 15 years.[4] 3M provided the TCA and OCTA with customer service and toll compliance services, including the operation of the customer service center; toll processing, review, and processing of vehicle plate images; and violation collection processing services. The customer service and violation processing contract expired on June 30, 2015. 3M received approximately $6.7 million under its contract with TCA for Fiscal Year ending June 30, 2015. Defendant 3M is a "government actor" for purposes of Plaintiffs' California constitutional claims herein.

33.     Defendant BRiC-TPS LLC ("BRiC") is a California limited liability company, located at 19600 Fairchild Road, Irvine, California 92612. BRiC provides transaction management services to the transportation industry. On July 1, 2015, BRiC entered into an interim 18-month contract with TCA to maintain the existing back office software and to employ customer service and violation processing staff on an interim basis while TCA work through procurement for a new back office system and customer service, violation processing and operations system maintenance contracts. Defendant BRiC is a "government actor" for purposes of Plaintiffs' California constitutional claims herein.

34.     Defendant Rhonda Reardon ("Reardon") is an individual who was the Chairman (or Chairperson) of the FTCA.

35.     Defendant Michael Kraman ("Kraman") is an individual who was the Chief Executive Officer ("CEO") of both the FTCA and SJTCA.

---

[4]     TCA originally contracted with VESystems LLC to provide the agency with customer service and toll compliance services. On information and belief, VESystems LLC was acquired by Federal Signal Corporate in 2010 and later by 3M in September 2012.

Case No. 8:16-cv-00262 AG (JCGx)                    FIRST AMENDED CONS CLASS ACTION COMPLAINT

ZELDES HAEGGQUIST & ECK, LLP

36.    Defendant Craig Young ("Young") is an individual who is the current Chairman of the FTCA.

37.    Defendant Scott Schoeffel ("Schoeffel") is an individual who was the Chairman of SJTCA.

38.    Defendant Ross Chun ("Chun") is an individual who is the current Chairman of SJTCA.

39.    Defendant Darrell Johnson ("Johnson") is an individual who is the Chief Executive Officer of OCTA and responsible for, among other things, planning, coordinating, and financing freeways in Orange County, California, including, but not limited to, Toll Road 91.

40.    Defendant Lori Donchak ("Donchak") is an individual who was the Chair of OCTA.

41.    Defendant William P. Duffy ("Duffy") is the CEO of BRiC.

42.    Reardon, Kraman, Young, Schoeffel, Chun, Johnson, Donchak, and Duffy (collectively, the "Individual Defendants"), are being sued in their representative capacities only.

43.    On December 9, 2016, certain of the Defendants and the Plaintiffs entered into a stipulation amending the Complaint to add Cofiroute SR 91 Corp. as DOE No. 1. Cofiroute SR 91 Corp. is a California corporation located at 20 Pacifica, Suite 420, Irvine, California 92618.

44.    On December 9, 2016, certain of the Defendants and the Plaintiffs entered into a stipulation amending the Complaint to add Cofiroute Corporation as DOE No. 2. Cofiroute Corporation is a California corporation located at 20 Pacifica, Suite 420, Irvine, California 92618. As used herein, "Cofiroute" refers to Cofiroute SR 91 Corp and Cofiroute Corporation, collectively.

45.    OCTA formally outsourced many of its functions to Cofiroute including lane monitoring, maintenance of highway equipment, supervision of the toll system, back-office and customer service management. Cofiroute has been

ZELDES HAEGGQUIST & ECK, LLP

11

participating in the OCTA's toll system since the project started in 1995, and the ten-mile stretch of Toll Road 91 has been operated by Cofiroute for the OCTA since 2002. Cofiroute was party to OCTA's $38.5 million contract to make administrative functions electronic and Cofiroute has served as a processing agency (within the meaning of the California Vehicle Code) for the OCTA at all relevant times.

46.     Plaintiffs are presently unaware of the true identities and capacities of fictitiously named Defendants designated as DOES 3 through 10, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every DOE defendant is in some manner responsible for the acts and conduct of the other Defendants herein, and each DOE was, and is, responsible for the injuries, damages, and harm incurred by Plaintiffs. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant, refers also to all of the named Defendants and those unknown parties sued under fictitious names.

47.     Plaintiffs are informed and believe and thereon allege that, at all times relevant hereto, all of the Defendants together were members of a single unincorporated association, named the "Transportation Corridor Agencies" and "The Toll Roads," with each member exercising control over the operations of the association. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant, refers also to the above-referenced unincorporated association as a jural entity and each Defendant herein is sued in its additional capacity as an active and participating member thereof. Based upon the allegations set forth in this Complaint, fairness requires the association of defendants to be recognized as a legal entity, as the association has violated Plaintiffs and Class Members' legal rights.

ZELDES HAEGGQUIST & ECK, LLP

48.     Plaintiffs are further informed and believe and thereon allege that each and all of the acts herein alleged as to each Defendant was authorized and directed by the remaining Defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

49.     Plaintiffs are informed and believe and thereon allege that each of the Defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this Complaint. The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiffs and Class Members (as hereinafter defined) of their constitutionally protected rights to property, and of their rights under other laws as set forth herein. Each of the Defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiffs and Class Members by Defendants as a consequence.

## JURISDICTION AND VENUE

50.     This action was commenced in the Superior Court for the State of California for the County of Orange on October 2, 2015. On or about February 16, 2016, it was removed to this Court.

51.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1332(d)(2), 1343, 1441(a) and 1446. Supplemental jurisdiction exists over the state law claims herein under 28 U.S.C. §1367. Venue is proper in the Central District pursuant to 28 U.S.C. §§1391(b)-(c) and 1441(a).

52.     This Court has jurisdiction over Defendants because they are residents of, or are doing business in the State of California. The Toll Roads and Toll Roads Service Center are located in Orange County, California. Vehicle owners who wish to contest their toll evasion violations or associated penalties are instructed to do so by contacting the Toll Roads customer service office located in Irvine, California.

Case No. 8:16-cv-00262 AG (JCGx)          FIRST AMENDED CONS CLASS ACTION COMPLAINT

53.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction in this District.

## PRESENTMENT

54.     Plaintiffs have complied with all administrative requirements for filing suit against the Defendants, including, without limitation, pursuant to California Government Code §§910, *et seq.* Each of the Plaintiffs presented their claims to the applicable Defendants more than 45 days prior to filing this First Amended Consolidated Class Action Complaint and the Defendants and Plaintiffs have agreed that premature presentment is not a basis to dismiss any of the party Plaintiffs or their claims herein.

55.     Plaintiff Borsuk filed a claim on her behalf, and on behalf of all others similarly situated, with the applicable Defendants on or about February 16, 2015 by sending them a letter via registered and certified mail, return receipt requested. Defendants denied the claims pursuant to California Government Code §911.6. Based on additional injuries Borsuk suffered and further incidents that accrued, Borsuk filed a second precautionary claim with the applicable Defendants, on her own behalf and on behalf of all others similarly situated, regarding the applicable Defendants' improper dissemination and provision of PII, other privacy violations, and violations of the California Streets and Highways Code, by sending a letter on or about April 12, 2016, via registered and certified mail, return receipt requested. Many, if not all, of the damages Borsuk sustained were based on claims that accrued during the one-year period prior to the submission of Borsuk's class claim letters.

56.     Plaintiff Coulter filed a claim on his behalf, and on behalf of all others similarly situated, with OCTA and TCA, on or about June 28, 2016, by sending a letter via certified mail, return receipt requested. OCTA, TCA, and Coulter have

14

ZELDES HAEGGQUIST & ECK, LLP

1    agreed that Plaintiff Coulter's claims would be automatically denied pursuant to
2    California Government Code §911.6 and the 45-day wait period would be waived.
3    Many, if not all, of the damages Coulter sustained were based on claims that
4    accrued during the one-year period prior to the submission of Coulter's class claim
5    letters.

6        57.   Plaintiffs Quarles and Carpenter filed a claim on their behalf, and on
7    behalf of all others similarly situated, with the TCA, on or about May 6, 2016, by
8    sending a letter via registered mail, return receipt requested. Plaintiffs Quarles and
9    Carpenter subsequently filed a class action complaint in federal court on May 26,
10   2016, but were waiting for the 45-day presentment period to expire before serving
11   their complaint on Defendants. In the interim, Plaintiffs learned of the other two
12   pending actions before this Court, received a Notice of Related Case from Plaintiff
13   Borsuk, and agreed to dismiss their complaint and voluntarily coordinate with the
14   pending *Borsuk* and *Mahda* actions. The parties moved for consolidation on June
15   30, 2016. The 45-day presentment period passed before Quarles and Carpenter
16   joined in the consolidated complaint filed before this Court on August 23, 2016.

17       58.   Additionally, on July 25, 2016, Plaintiffs Quarles, Carpenter, Myers,
18   Mahda, and Golka filed new or amended claims on their behalves, and on behalf
19   of all others similarly situated, with certain Defendants by sending a letter via
20   registered mail, return receipt requested. OCTA, TCA, and Carpenter have agreed
21   that Plaintiffs' Quarles, Carpenter, Myers, Mahda, and Golka's claims would be
22   automatically denied pursuant to California Government Code §911.6 and the 45-
23   day wait period would be waived. Many, if not all, of the damages Quarles,
24   Carpenter, Myers, Mahda, and Golka sustained were based on claims that accrued
25   during the one-year period prior to the submission of their class claim letter.

26       59.   Plaintiff Watkins filed a claim on his behalf, and on behalf of all
27   others similarly situated, with the applicable Defendants on or about August 17,
28   2016 by sending a letter via certified mail, return receipt requested. TCA and

ZELDES HAEGGQUIST & ECK, LLP

1  Watkins have agreed that Watkins' claims would be automatically denied pursuant
2  to California Government Code §911.6 and that the 45-day wait period would be
3  waived. Many, if not all, of the damages Watkins sustained were based on claims
4  that accrued during the one-year period prior to the submission of Watkins' class
5  claim letters.

6      60.    Notwithstanding their presentment of claims out of an abundance of
7  caution, Plaintiffs are under no obligation to submit a government claim in
8  reference to any of their requests for injunctive relief.

9      61.    Notwithstanding their presentment out of an abundance of caution,
10  Plaintiffs are under no obligation to submit a government claim in reference to the
11  claims under the United States Constitution against Defendants based on
12  Constitutional privacy violations, excessive penalties, whether the Defendants'
13  process is lacking in due process and other related claims to the foregoing.

14      62.    Notwithstanding their presentment out of abundance of caution, the
15  accrual period for the claims is one year prior to submission of the government
16  claims because the harms to all Plaintiffs at issue represent economic or other
17  injuries that are not physical injuries to their persons.

18  **FACTUAL BACKGROUND TO THE TOLL ROADS**

19      63.    Toll roads in the United States have been in use for more than two
20  centuries. Payment of tolls thereon has, until most recently, been unmistakable.
21  Commuters were physically stopped by a barrier at a toll plaza where payment was
22  made to an agent or in a receptacle. The system of California's toll roads was no
23  different.

24      64.    The Transportation Corridor Agencies were formed as joint powers
25  by the California legislature in 1986 to plan, finance, construct and operate the
26  Toll Roads. As a consequence, they now operate a 67-mile public Toll Road
27  System including Toll Roads 73, 133, 241, and 261.

28

ZELDES HAEGGQUIST & ECK, LLP

16

65.     The Toll Roads were built pursuant to state laws that, due to shortages in funding to build new highways and roads, permitted privately owned companies, county government agencies, transportation districts and other entities to sell non-recourse bonds to private investors to raise money to build and maintain toll roads. The Toll Roads are legally owned by the State of California but are operated and maintained by the TCA pursuant to a franchise issued by the State.

66.     The private bonds are issued to investors on a for-profit basis, such that the investors receive a rate of return from the bonds. The revenue on the bonds are paid, however, solely from toll revenues.

67.     Pursuant to this revenue scheme, the TCA built and opened Toll Roads 73, 133, 241, and 261 in phases between October 1997 and February 1999. The TCA continues to operate these Toll Roads and the OCTA built and opened Toll Road 91 in 1995 – the first privately financed toll road built in the United States.

68.     In 2003, the OCTA purchased the 91 Express Lanes from the California Private Transportation Corporation. The 91 Express Lanes are a four-lane, ten-mile road in the median of the Riverside Freeway between the Orange County and Riverside County line and the Costa Mesa Freeway.

69.     In 1995, to coincide with the private building of toll lanes in Southern California, California Vehicle Code §§40250, *et. seq*. was enacted, making toll violations civil in nature and their collection and administration subject to civil procedures, so that they could be handled by the private and local entities that operate toll roads.

70.     These statutes, however, lack key procedural and substantive constitutional protections and have been subject to widespread abuse by Defendants in their assessment of tolls and administration of penalties for alleged toll violations. This has been exposed by the most recent change to the System and

ZELDES HAEGGQUIST & ECK, LLP

17

1    Defendants' exploitation of their authorizing statutes to profiteer and exact a

2    windfall through penalties coerced from unsuspecting vehicle owners.

3                              **HOW THE TOLL ROADS WORK**

4            71.    California Vehicle Code §23301, is applicable to all vehicle crossings

5    and Toll Roads in California. Section 23301 provides that "each vehicle that enters

6    into or upon a vehicular crossing immediately becomes liable for those tolls and

7    other charges as may from time to time be prescribed by the California

8    Transportation Commission."

9            72.    California Vehicle Code §40250(b) makes the registered owner of the

10   vehicle involved in the violation jointly and severally liable with the driver of such

11   vehicle.

12           73.    In California, at the present time, tolling agencies accept payment for

13   tolls by offering an electronic toll collection system (*e.g.*, FasTrak), a pay-by-

14   license-plate method of payment, or both.

15           74.    "FasTrak" is an electronic toll collection system where consumers

16   establish a FasTrak account with a tolling agency and then receive a transponder,

17   which they are instructed to place on their vehicle's windshield. When traveling

18   through a toll zone, the transponder is read by an overhead antenna on the road,

19   and the posted toll amount is then automatically deducted from the customer's

20   account. While consumers are allowed to use their FasTrak transponders

21   throughout the state, they are encouraged to obtain a transponder from the agency

22   that operates the road, lane, or bridge that they will use the most.

23           75.    California Vehicle Code §23302(e) defines a pay-by-plate payment

24   as "an issuing agency's use of on-road vehicle license plate identification

25   recognition technology to accept payment of tolls in accordance with policies

26   adopted by the issuing agency."

27           76.    California Vehicle Code §23301.8 regulates pay-by-plate programs

28   as follows:

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

Where an issuing agency permits pay-by-plate toll payment as described in subdivision (e) of Section 23302, it shall communicate, as practicable, the pay-by-plate toll amount in the same manner as it communicates other toll payment methods. The issuing agency shall provide publicly available information on how pay-by-plate toll payment works, including the toll amount, process for payment, and period of time a vehicle has to resolve the payment before an issuing agency may process the trip as a violation under Section 40255. Communication of this information may include the Department of Transportation's approved signage, posting of information on the issuing agency's Internet Web site, media advertising, public meeting or disclosure as required by the issuing agency's policies, or other methods of communication. Except where the issuing agency has an agreement with a vehicle owner that specifies in advance any administrative fees that will be imposed on the owner for pay-by-plate toll payment, administrative costs shall be incorporated into the pay-by-plate toll amount, and no additional administrative costs shall be added above the posted pay-by-plate toll amount.

77. California Vehicle Code §23301.8 requires Defendants to communicate to the public both the toll payment and how the pay-by-plate toll payment program works. Additionally, any additional administrative costs must be paid by Defendants and cannot be added to the pay-by-plate toll amount.

78. From its inception some 20 years ago, the Toll Roads deployed the pay-by-plate method of payment involving manned toll booths where drivers were stopped and paid the toll in cash. However, Defendants recently converted to an all-electronic (cashless) System and eliminated all toll booths. Under the new electronic system, license plate imaging technology is now employed to assess tolls. When vehicles pass through a toll zone without a transponder (or if the

19

transponder is not active), license plate readers record images of the vehicles' license plates which are taken, stored, transferred and disseminated by the Transportation Agencies (including their processing agencies).

**A Radical Departure:  Defendants' New "Electronic" Tolling System**

79.     On May 14, 2014, the Toll Roads converted to an all-electronic System, effecting a radical change in use and operation of the Toll Roads. Under this new System, vehicle owners must proactively pay their tolls via an online portal within five days of passing through the toll zone regardless of if he or she even knows (a) that he or she is travelling on a Toll Road or (b) how to pay the toll.[5]

80.     Defendants do not provide vehicle owners with adequate advance notice of the unpaid toll prior to charging them a penalty. Rather, in a feigned effort to notify, but with a true intent to ambush commuters, Defendants installed, at unreasonably distant intervals at the side of Toll Roads, confusing guideposts, bearing logos and cryptic acronyms, which are ineffective and hazardous to commuters in at least two ways. First, when viewed, the guideposts are dangerously distracting to drivers that must read and try to understand them while driving (usually at high speeds), and are otherwise ineffective as notice of the Toll Roads, their tolls, penalties, and available means by which to pay or mitigate them. Second, when unseen, notice is entirely absent. None of the signage warns, *inter alia*, of vehicle registration liens, that drivers' movement/travel pattern data on the Toll Roads is being recorded, that their PII will be taken and disseminated, and by merely driving on a Toll Road without a pre-arranged account, they are considered toll violators subject not only to tolls, but the imposition of excessive penalties.

---

[5]     Initially, Defendants set the time limit at 48 hours but changed it in January 2015 to five days.

20

ZELDES HAEGGQUIST & ECK, LLP

81.   Vehicle owners who do not pay their tolls within the five days are quickly charged with toll evasion and assessed a $57.50 penalty. Defendants then purport to send a Notice of Toll Evasion to the vehicle owner. Vehicle owners who fail to pay the toll and the $57.50 penalty within 15 days are assessed an additional $42.50 delinquency penalty, regardless of whether the vehicle owners have been sent or timely receive a Notice of Toll Evasion (the mailing from the Toll Roads notably does not have a date stamp on it).

82.   The Notice of Toll Evasion also threatens a civil judgment and other collection efforts if drivers do not pay the fine. As a result, on a $7.78 toll, vehicle owners may be required to pay $103.50 or over 1,000% the amount of the original toll, for one trip on a Toll Road. If this amount is unpaid, Defendants transmit Class Members' PII to the DMV with an application that the DMV place a "lien" on the automobile registration until the amount is paid.

83.   TCA outsourced Toll Roads administrative functions to Defendants 3M and now, BRiC, from June 30, 2015 to the present. Defendant 3M provided the Toll Roads with customer service and toll compliance services for nearly 15 years until its contract expired on June 30, 2015. Thereafter, TCA retained BRiC to provide customer service and toll compliance services to the Toll Roads.

## STATE ACTION

84.   TCA and OCTA are "state actors" who have gone to great lengths to hold themselves out as such by:

(a)   Not disclosing their identity as private contractors in communications with the public, but instead acting as if they are, and representing themselves as, government agencies through the Toll Roads website, its office, and all its customer service materials;

(b)   Sending out Notices of Toll Evasion to Class Members appearing to be from the State of California;

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

(c)     Threatening to place liens on Class Members' vehicle registrations in the Notice of Toll Evasion;

(d)     Threatening to impose civil judgments and other collection efforts on Class Members if they do not pay the fines set forth in the Notice of Toll Evasion;

(e)     Contracting with each other and with 3M, BRiC, and Cofiroute, to become "processing agenc[ies]" as that term is used and defined in California Vehicle Code §§40252 and 40253;

(f)     Contracting with each other and 3M, BRiC, and Cofiroute becoming willing participants in a joint venture with a state actor; and

(g)     Processing, reviewing, and collecting toll violation and evasion penalties, resulting from their exercise of the coercive power of the State of California.

85.     TCA and OCTA's purposeful operation of toll collections, and their processing of the Notices of Toll Evasion and Notices of Delinquent Toll Evasion, along with 3M, BRiC, and Cofiroute, entwines them in governmental policy.

86.     TCA and OCTA's purposeful participation in a joint venture with state actors as "processing agenc[ies]," within the meaning of the California Vehicle Code, 3M, Cofiroute, and BRiC, obligate them to comply with California Vehicle Code §40250, *et seq*. and the Constitution of the State of California.

87.     TCA and OCTA are integrally entwined with, and directly managed, 3M's, Cofiroute's, and BRiC's activities that are challenged in this Complaint.

## DEFENDANTS' ALL-ELECTRONIC SYSTEM FAILS TO PROVIDE DRIVERS WITH ADEQUATE NOTICE

88.     Defendants 3M and BRiC had independent obligations towards vehicle owners against whom they administered toll penalties for violations on the Toll Roads. As alleged below, they violated such obligations and engaged in deceptive and unfair business practices damaging to the Class Members.

ZELDES HAEGGQUIST & ECK, LLP

89.   After Defendants eliminated all manual toll collection on the Toll Roads and implemented the System, TCA effected three methods for payment of tolls: (a) the FasTrak method as described above; (b) by use of a pre-established "ExpressAccount"; or (c) by an Internet-based so-called "One-Time" toll payment process.

90.   According to TCA's policies, vehicle owners using the Toll Roads that are enrolled in the FasTrak program or have an ExpressAccount are not required to notify Defendants when they travel the Toll Roads. The toll is calculated by the agency and is charged to the owner's account. By comparison, vehicle owners using the Toll Roads who do not have a pre-arranged account must pay by utilizing the One-Time toll payment process which requires they proactively notify Defendants when they use the Toll Roads.

91.   Using the Toll Roads prior to May 2014 was very simple and well established:  at some point on any given Toll Road, a driver was required to pull up to a toll booth and pay a fee, whether a booth was manned or not. Toll Roads operated this way since they first opened in 1997, and the mandate to drivers was obvious: stop here and pay your toll.

92.   After the May 14, 2014 Toll Roads' conversion to an all-electronic (cashless) tolling System, TCA's license plate imaging technology scans and photographs the vehicle's license plate as the person drives past a former toll booth, unless the vehicle owner has a functioning FasTrak transponder. If the license plate number does not match a pre-established account, it starts a five-day window where the vehicle owner is required (without adequate notice) to go online to the TCA's website at www.thetollroads.com and pay the toll, in order to avoid being issued a citation and assessed a penalty.[6]

---

[6]   Prior to January 2015, drivers had only a 48-hour window to respond.

23

93.     The TCA's fumbled attempt to communicate their One-Time Toll program consisted of placing a few inept signs along the Toll Roads – some notifying drivers to turn their radio to a particular station for more information. The signs advising vehicle owners that they are entering a Toll Road do not put drivers on notice. They are often small and simply tell drivers "no cash."

94.     The signs provide no warning or notice that a vehicle owner will be photographed and cited. Furthermore, a vehicle owner needs to figure out from these vague and confusing signs that they must now go online and pay the Toll Road fee within a set time period or be issued a significant penalty – up to 1,000 percent more than the original toll itself – and have a lien placed on their registration.

95.     Many vehicle owners do not realize that they are driving on a Toll Road until it is too late and they are already on the Toll Road, with nowhere to turn around, at which point, they may (or may not) notice one of Defendants' signs.

96.     Bombarded with information after it is already too late, a driver has seconds to recognize, process, and act on the signage they see. Assuming a driver even sees this information, he or she must either try to remember detailed information including the exact point of entry when the driver already has passed it, write down a lengthy URL Internet web page address, or immediately go to the website – all while driving.[7]

---

[7]     A distracted driver is far more likely to get into an accident. The National Highway Transportation Safety Administration says texting while driving is the same as driving after having four beers. In fact, doing so makes you 23 times more likely to crash. *See* http://www.textinganddrivingsafety.com/texting-and-driving-stats/. Many states – like California – are enacting laws to help prevent such accidents from happening. California Vehicle Code §21701 prohibits driving while distracted and prohibits someone else from distracting a driver: "No person shall willfully interfere with the driver of a vehicle or with the mechanism thereof in such manner as to affect the driver's control of the vehicle." Yet that is precisely what the Defendants' encourage, if not *de facto* require, drivers do.

1    97.    Plaintiffs and Class Members who do not see, read, or understand the

2  signs' purported warning that they have already been cited for a toll violation and

3  must take action within a short period of time (or those who otherwise cannot

4  comply with Defendants' requirements because, for example, they do not have

5  access to the Internet) will receive a penalty in the mail and can have liens placed

6  on their vehicle registrations.

7    98.    Since the conversion to the all-electronic System, the first actual

8  notice that many vehicle owners receive of the One-Time Toll program is not until

9  they receive a Notice of Toll Evasion in the mail, or in some cases, not until they

10  try to renew their registration at the DMV.

11    99.    Defendants' method of providing "notice" of the One-Time toll

12  payment option places many tourists, business travelers, seniors and disabled at a

13  distinct disadvantage as they are often unfamiliar with the area and may be

14  confused or focused on things other than road signs that are not directly in front of

15  them.

16    100.   Defendants' System further discriminates against tourists, seniors,

17  economically disadvantaged individuals, disabled, and people without computers

18  or smartphones, who may not have immediate access to the Internet or the ability

19  to operate the same.

20    101.   Additionally, drivers have had difficulty navigating Defendants'

21  System and figuring out how to pay their tolls and any associated penalties online.

22  Indeed, many have complained it was difficult for them to even locate the customer

23  service center number from its website as it was not readily available. This can be

24  especially challenging for someone who is not technology savvy or does not have

25  access to the Internet.

26    102.   Moreover, in order to pay a toll online via the One-Time toll payment

27  option, a vehicle owner is required to recall the specific entrance and exit that he

28  or she took on the Toll Road, the vehicle's license plate number, and state of

ZELDES HAEGGQUIST & ECK, LLP

registration (information may not be readily available to someone with a rental car), otherwise payment is not available and penalties accrue. The specific toll is calculated based on a driver's ability to recall all of this information, and if a driver overpays the toll, it is not refundable and becomes property of the TCA.

103.   Additionally, Defendants failed to provide adequate staff to respond to mailed, online, and telephonic inquiries. One of the major complaints from drivers as Defendants transitioned to the all-electronic System has been issues with the customer service center. The TCA's customer service center is short-staffed on the whole, and staffed with inadequately trained personnel, so vehicle owners who call the service center to pay toll invoices or challenge toll evasion violations suffer through dropped calls, seemingly-endless hold times and often receive inaccurate information about their rights and obligations. Frustrated vehicle owners have had to deal with repeatedly calling and emailing Defendants without receiving any response.

104.   With conversion to the cashless System, Defendants saw a 400% increase in calls to its customer line and a 300% increase in emails. From June 16, 2014 to August 2, 2014, the TCA experienced on average 2,200 answered calls per day and 11,100 unanswered calls per day. Even by March 2015, after Defendants allegedly took steps to correct the deficiencies, customer service remained an unresolved problem. Staff at *The Orange County Register* randomly placed six phone calls to the customer-service line. Out of the six calls, two resulted in the caller being told that the volume was too high and to try again later and four resulted in estimated wait times of between 11 to 17 minutes.[8]

105.   Other California entities have implemented toll road fee collection systems. For example, the Golden Gate Bridge ("GGB") in San Francisco converted to an all-electronic system in March 2013. The GGB offers a fourth

_____

[8]   http://www.ocregister.com/articles/toll-655207-tca-violations.html.

26

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

method of payment, which is by Toll Invoice. If a vehicle owner does not pay the toll through a pre-established account or via a one-time payment option, then the GGB will mail a Toll Invoice to the vehicle owner with no additional fees.

106.   According to the TCA, it studied how other agencies, including the GGB, handled toll collection in a cashless system, but rejected this type of toll invoicing system because it "wasn't a very efficient process and it was very costly," despite the fact that this type of system would provide unsuspecting vehicle owners with notice and an opportunity to pay the toll prior to being assessed a penalty.[9]

107.   Under the guise of California Vehicle Code §40250, the OCTA also assesses millions of dollars in civil penalties against commuters that are excessive, without proper notice and without a fair hearing.

108.   Under California Vehicle Code §§40250, *et seq.*, OCTA may assess civil penalties for "toll evasion" violations for a variety of reasons, including inadvertent mistakes, such as if the commuter's card has expired, if the credit card was declined, or the transponder was not properly placed on the windshield.

109.   Notices of toll violations are sent by U.S. Mail to the last address issued with the DMV, even though at the time of opening an account with OCTA commuters are required to provide e-mail addresses and telephone numbers. Under California Vehicle Code §40254(e), "[t]he processing agent shall use its best efforts to obtain accurate information concerning the identity and address of the registered owner for the purpose of forwarding a notice of toll evasion violation pursuant to subdivision (a)." Despite the clear intent of the Legislature to use all means necessary to provide notice to commuters, OCTA and the TCA fail and refuse to send any notices by e-mail or telephone after months of no contact with the commuter. Meanwhile, the commuter racks up thousands of dollars in civil

[9]   *See* http://www.ocregister.com/articles/toll-642283-system-pay.html.

penalties and unwittingly waives due process rights by failing to timely submit an affidavit to contest the violations. Plaintiffs are informed and believe the failure of OCTA and TCA to use "best efforts" is, and has been, a willful and deliberate scheme to generate greater penalty assessments and judgments against commuters.

110.   Under California Vehicle Code §40254, Defendants have between 21 to 90 days to serve notices of the toll violations. However, within this time, many commuters have already passed through the toll lanes and incurred enormous civil penalties without any notice of the toll violations. For example, even if notice is sent within one week after the violation, the commuter could potentially be assessed several thousands of dollars within that one week. This 21-to-90-day notice window encourages Defendants to delay sending notices in a conscious effort to increase penalties and generate a financial return.

111.   The notices are also deliberately vague and ambiguous as to what law the commuter violated. For example, with respect to the OCTA, every notice provides basically the same language indicating that "the vehicle identified above was traveling on the 91 express lane with no transponder reading detected." Thus, for example, if a commuter is assessed a penalty because his or her account is in default, the notice does not inform the commuter of his or her account being in default. Instead, the notice provides boilerplate language which does not adequately put the commuter on notice of the actual alleged violation.

## THE AUTOMATED ENFORCEMENT SYSTEM
## LEADS TO ADDITIONAL PENALTIES

112.   Even though many Class Members are unaware that they may have incurred a toll, they are required under the law to contact Defendants, to obtain use of a computer, and to make payment within five days (if not earlier) of the alleged violation. There is no advance notice of these burdens before motorists enter the Toll Road driving at high speeds.

ZELDES HAEGGQUIST & ECK, LLP

113.   Phone calls to Defendants to inquire in good faith as to alleged toll violations frequently go unanswered and unreturned. Even an electronic mail template on the TCA website is unmonitored and non-responsive during all relevant times.

114.   If a Class Member does not know of the alleged violation and cannot locate the TCA website in five days from the alleged violation, and have detailed information at his or her disposal obtained while driving at high speeds, and then manage to pay the toll in full, Defendants: (a) assess excessive penalties disproportionate to the amount of the original toll; (b) obtain *ex parte* judgments against the commuter for the total toll plus unconscionable and/or excessive penalties; and/or (c) place liens on vehicle registration renewals with the DMV if those excessive penalties are not paid within 30 days.

115. Defendants' operation of the Toll Roads has become an unconscionable profit center, unfairly rewarding them and their private investors at an oppressive cost to consumers, generating, directly and indirectly, billions of dollars in returns. Defendants' executive staff realize substantial salaries and other benefits while consumers' vehicle registrations can be put on hold – or worse – for what started from as little as a $2.00 toll.

## DEFENDANTS' WRONGDOING IS WELL-DOCUMENTED

116.   The mass confusion and outrage caused by Defendants' unfair and deceptive operation of the Toll Roads have been publicly chronicled. Defendants and the unconstitutional laws and procedures complained of herein deprive Class Members of their most fundamental rights to due process and protections against excessive fines.

117.   Public officials – and even some of Defendants' most senior officers – have derided Defendants' Toll Roads and cashless System, admitting, throughout the local and national media, that they are operated in a manner that is confusing, prejudicial, and defective.

29

ZELDES HAEGGQUIST & ECK, LLP

118.   On June 24, 2014 (updated on August 3, 2014) in an article titled "Drivers rack up tickets on toll roads," *The Orange County Register* reported in pertinent part:

> The switch to a cash-free payment collection system is turning into a potential moneymaker for county toll roads, in the form of a jump in the number of penalties from toll violations. [¶.] The new system also has sparked confusion for drivers and a customer service crisis at the Transportation Corridor Agencies, with tens of thousands of people calling help lines only to face long waits, and often no answer at all, according to documents presented at June 12 board meetings of TCA directors. [¶.] One statistic in the new, cash-free world could lead to a revenue boost for the financially-challenged toll roads. More than 15,000 violations a day – twice the previous average – were logged in the first two weeks after the May 14 switch from manned toll booths to automatic license plate readers.

119.   In that same article, Jim Gallagher, reportedly chief toll operations officer for TCA, stated at a Board Meeting that "[i]f you look at the violation number, it looks like it doubled, and it did … [t]hat is a result of people not getting the word, or being confused by the signs, or not being able to understand the signing and how the program works."

120.   On June 24, 2014 (updated June 26, 2014), *The Orange County Register* reported, in pertinent part:

> With the new all-electronic payment system on four Orange County toll roads off to a rocky start, the agency that manages the roads has agreed to waive penalties for first-time violators until Labor Day. [¶.] The move is part of a campaign by the Transportation Corridor Agencies to ease driver confusion and fend off complaints a month after manned toll booths were close [sic] and cash payments were no

ZELDES HAEGGQUIST & ECK, LLP

longer accepted. [¶.]  The May 14 switch to a cashless system has led to widespread confusion about how to pay tolls online and doubled the number of toll violations to about 15,000 a day. More than 7 percent of all drivers who should have paid a toll did not, according to TCA statistics. [¶.]  The switch also has put the road agencies in the awkward position of appearing to profit from driver confusion. If collected, fines from the jump in violations could boost the agencies' revenue by up to $460,000 a day. [¶.]  "If you're going to transition to cashless, you have to give people an opportunity to make that transition. And you cannot – I repeat, cannot – exploit people's confusion," said Orange County Supervisor Todd Spitzer, who is also a member of the boards of the Transportation Corridor Agencies. [¶.] Spitzer called for a 100-day moratorium on collecting fines from first-time violators if they pay their tolls within 30 days of receiving a notice. The agency previously was waiving those fines, but without saying when the grace period would end. [¶.]  It's unclear what will happen to first-time violators who in the past month have received toll notices and paid fines of $57.50 per violation. Spitzer said he would support finding some way to give those drivers refunds or toll credit to use in the future. [¶.]  Spitzer and TCA spokeswoman Lisa Telles said Tuesday that managers of the roads aren't trying to boost revenue by installing a potentially confusing cashless system. [¶.] Last year, fees and violations generated $22 million in revenue for the four Orange County toll roads managed by TCA, according to Amy Potter, the organization's chief financial officer.

121.  On June 25, 2014, *The Los Angeles Times* reported that since Defendants' changed to a cashless toll system pursuant to which "motorists are

suppose [sic] to pay their tolls with 48 hours or be hit with a penalty … about 13,500 violation notices had been sent out daily."

122. On August 20, 2014 (updated August 22, 2014), *The Orange County Register* reported, in pertinent part:

> Drivers continue to rack up more than 17,000 violations a day three months after the roads switched to all-electronic collections. Violations and dropped calls to customer service lines are running at about the same clip as they were in mid-May, despite efforts by the toll road agencies to teach drivers how to pay via the electronic system.… "This is a classic example where we underestimated the number of folks who were going to be confused by our change, despite a ton of outreach and everything else," said TCA board member and Orange City Councilman Mark Murphy.

123. On March 23, 2015 (updated on March 24, 2015), *The Orange County Register* reported: "Since eliminating manned collection booths last May, the Orange County toll roads' huge spike in unpaid tolls has continued unabated."

**BRIC-TPS, 3M AND COFIROUTE OPERATE THE TOLL ROADS**

124. From October of 2009 to sometime on or about 2015, Defendant 3M was responsible for providing the following functions to the TCA and in fact operated the Toll Roads for the TCA:

(a) Customer service/call center operation (staff to hand enrollment, respond to calls, complaints, resolve violations, payment processing);

(b) Account maintenance (update accounts, research new accounts to resolve unpaid violations, suspend accounts, reinstate or revoke accounts, prepare and mail customer notices, investigate accounts);

(c) Inventory (transponders and supplies related to transponders);

(d) Mail room;

(e) Payment processing;

ZELDES HAEGGQUIST & ECK, LLP

(f)     Reports (aging, FasTrak revenue and activity reports, financial reporting);

(g)     Special projects;

(h)     Toll enforcement processing including actually conducting and/or overseeing any initial internal administrative review proceeding conducted concerning a toll violation by the TCA, actually conducting any administrative review (the second tier of the three tier review process) image review services, maintenance of electronic data exchange with the DMV, electronically produce file to mail, process violation inquiries, process affidavits of non-liability, place registration holds, resolve customer violation issues, perform judgment recovery services;

(i)     SOP's configuration Control & Documentation (library catalog, training manuals, system software changes tracking, update software source code, test, maintain and schedule software changes as required, test configuration platform, develop and maintains disaster recovery plan, document security audits);

(j)     System support (provide complete system administrative and support service for the operation of the customer service system, violation, imaging, reporting, webs services and other FasTrak related software system – including generating account statements, processing auto debiting, posting all tolls, penalties, and charges and credits, maintain compliance with interoperability transfer, archive account and image data, ensure the daily transfer of violations for the image processing systems and more);

(k)     Program Management (provide overall program management for each item in the contract between the parties).  ((a) through (k), are collectively referred to as the "Functions.")

ZELDES HAEGGQUIST & ECK, LLP

125.   From some time on or about 2015, Defendant BRiC was responsible for providing the Functions to the TCA and in fact operated the Toll Roads for the TCA.

126.   From October of 2009 to present date, Defendant Cofiroute was responsible for providing the Functions to the OCTA and in fact operated the Toll Roads for the OCTA.

127.   At all relevant times during the period, which damages were incurred by Class Members, Defendants 3M, Bric-TPS, and Cofiroute served as a "Processing Agency" for TCA and OCTA, respectively, under California's Vehicle Code and Streets and Highways Code.

128.   From October of 2009 to present date, BRiC, 3M, and Cofiroute participated in determining the amount of the penalties assessed, collected, and charged against Plaintiffs and Class Members.

129.   From October of 2009 to present date, BRiC, 3M and Cofiroute actually provided PII of Class Members to Other Unauthorized Parties.

## DEFENDANTS' ADMINISTRATIVE PROCESS IS FATALLY FLAWED AND UNCONSTITUTIONAL AND THUS PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE PROCEDURES

130.   In the first instance, the doctrine of exhaustion does not apply to constitutional claims under 42 U.S.C. §1983, and Plaintiffs' Counts I-V need not be exhausted because Plaintiffs are seeking redress under said §1983 as clarified in this amended pleading.

131.   Exhaustion is also excused as to Plaintiffs' Counts I-V because exhaustion would be futile, idle or useless. Plaintiffs' pursuit of the administrative process would be "futile" because nothing in the administrative proceeding would decide whether Defendants should be enjoined from issuing unconstitutional penalties, which they seek in this action, or whether they should be entitled to

34

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

restitution damages for tolls they may have already paid, or whether penalties were excessive. *See*, *e.g*., California Constitution, article III, §3.5.[10]

132.   Exhaustion is excused based on futility when no findings of fact will be made by the "administrative review" process. The entire review process does not involve a fact-finding mission, and singularly addresses whether somebody traveled on the Toll Roads. If they did and did not pay, for whatever reason, there is no consideration as to factual questions concerning the penalties.

133.   Exceptional circumstances also excuse exhaustion because alleged violators were precluded them from exhausting this administrative scheme, because they were unaware not only of its existence, but that they were implicated as toll violators, until after they were foreclosed from invoking its provisions.

134.   The administrative scheme itself, conditioned on payment in advance of penalties Plaintiffs could not afford, were they to have been aware of them in the first place, is preclusive. It is, thus, not only evincing of Constitutional due process violations, it presents exceptional circumstances to relieve the Plaintiff of any requisite of administrative exhaustion.

135.   The entire administrative scheme set forth in the California Vehicle Code is unconstitutional, as its delegation to Defendants (and to processing agencies) of the appointment of adjudicative persons that constitute inferior officers, and their undertaking of judicial functions, violate the separation of

---

[10]     "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:
(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;
(b) To declare a statute unconstitutional;
(c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

1   powers doctrines and appointments clauses of article III, section 3, and article VI,

2   section 1, of the California Constitution, and article II, section 2 of the United

3   States Constitution.

4      136.   Finally, Plaintiffs were not required to exhaust the administrative

5   process in the California Vehicle Code because Defendants' administrative

6   procedures are the very source of the asserted injury. Plaintiffs challenge the

7   constitutionality of the tolls and penalties as being excessive and assessed by the

8   Defendants in violation of due process on their face, and as applied, pursuant to

9   Counts I-IV of this Complaint. Thus, the Defendants' administrative procedures

10  are the very source of their injury, and Plaintiffs cannot attack the excessive

11  penalties, and whether they were given notice they were entering a toll road before

12  a toll was being imposed, which are wrapped into the notices of toll violations.

13  The OCTA ordinance or the State Vehicle Code do not give the administrative

14  body authority to adjudicate a constitutional claim pertaining to whether the tolls

15  and penalties were properly assessed.

16     137.   The administrative process provides an inadequate venue, excusing

17  Plaintiffs' requirement to exhaust Defendants' review process before asserting

18  Counts I-IV in this lawsuit. The administrative process does not afford Plaintiffs

19  and absent Class Members the fair procedural rights, including rights to be heard.

20  As stated above, until 2015, a commuter on the Toll Roads had 48 hours from their

21  vehicle photograph being taken to pay their tolls. However, they would not receive

22  their toll violation in the mail until a significant time after the 48 hour significant

23  penalty had already been assessed.

24     138.   The review process is inadequate to require Plaintiffs to exhaust

25  before asserting Counts I-IV because an alleged violator has only "15 days to

26  initiate an investigation from mailing." Here, Borsuk, Watkins, and others

27  similarly situated, did not receive the notice of violation before the 15 days had

28  expired for them to request an investigation. But even if the 15 days had not

ZELDES HAEGGQUIST & ECK, LLP

36

ZELDES HAEGGQUIST & ECK, LLP

expired, Borsuk and Watkins could not invoke the second tier, because they did not have funds to invoke the second-tier review, and in the alternative, requiring them to do so is unconstitutional. Coulter had 15 more days to respond to initiate an investigation under the OCTA's ordinance, but that did not constitute adequate time to respond and prepare as provided in the administrative proceedings. Coulter could not invoke the second tier because he did not have funds to invoke the second tier of review under the OCTA's ordinance, and in the alternative, requiring him to do so, amounts to an unconstitutional bond.

139.   The TCA's remedy is also "inadequate" as to Borsuk and Watkins because the second tier contradictorily promises a hearing, but then indicates that the review may be conducted by "mail." Moreover, the review process is inadequate, because a "commissioner" may preside over the matter at the third tier and may only evaluate the rulings under the California Vehicle Code *de novo*, and without consideration as to whether any "factual" findings are clearly erroneous. Also the review process is inadequate because it is not conducted with "fairness and impartiality" as required by the California Vehicle Code. Instead, in practice, no investigation takes place and the processing agency serves as prosecutor, arbiter, and executioner. The processing agency for the OCTA and TCA also fail to hire a person who is not compensated based on penalties to conduct the second tier of the review.

140.   The remedies Plaintiffs seek pursuant to Counts I-V are unavailable in the administrative process, excusing Plaintiff's requirement to exhaust the Defendants' review process before asserting Counts I-V in this lawsuit. Plaintiffs can only challenge whether there was a system error, and not the constitutionality of the actual amount of the penalties incurred under the "review" system. This is signified in many ways from the required contours of the investigation (tier one), the minimal documents to create a "prima facie" case (tier two), and that review can only be conducted *de novo* (tier three) and not based on "questions of fact"

37

considering whether the extent by which the penalties are assessed is disproportionate to the toll assessed. The remedy is also unavailable because the administrative proceedings do not permit the Plaintiffs to challenge that they did not get adequate notice of the cashless, man-less system when the toll road were rolled out.

141. OCTA's administrative proceeding is also independently inadequate because it does not even provide for review by the Superior Court, which is promised under the California Vehicle Code.

142. Counts V through X were not required to be exhausted by administrative proceedings because these causes involve wrongful transmission of PII, and not the assessment of a toll under the California Vehicle Code or the OCTA Ordinance.

## CLASS ACTION ALLEGATIONS

143. Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rule of Civil Procedure Rule 23.

144. The proposed class consists of the following two sub-classes (a) all consumers who, between October 21, 2009 and the present, were assessed and/or paid a penalty amount, or were charged with a toll evasion violation in connection with the Toll Roads' One-Time Toll program by the Defendants; and (b) all consumers who between October 21, 2009 and the present, had their PII provided to any person who was not authorized to receive the PII pursuant to California Streets and Highways Code §31490, privacy rights under the United States Constitution/California Constitution, in violation of the Defendants' privacy policy and/or transponder agreements and/or the Rosenthal Act (collectively, the "Class Members").

145. This action is properly brought as a class action for, *inter alia*, the following reasons:

ZELDES HAEGGQUIST & ECK, LLP

(a)      The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiffs do not know the exact number and identity of all Class Members, Plaintiffs are informed and believe that there are millions of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

(b)      The disposition of Plaintiffs' and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)      The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

(d)      There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

(1)      Whether the tolls and Toll Road penalties, as assessed by Defendants, constitute an unconstitutional penalty;

(2)      Whether the tolls and Toll Road penalties, as assessed by Defendants, constitute "excessive fines" under the United States and California Constitutions;

(3)      Whether Defendants provided or sold PII as a practice, policy, or pattern including, but not limited to, as part and parcel of their collection activity;

(4)      Whether Defendants violated California's unfair competition law, Business and Professions Code §§17200, *et seq*. ("UCL");

(5)      Whether Defendants violated California's Consumer Legal Remedies Act, Civil Code §§1750, *et seq*. ("CLRA");

(6)      Whether Defendants have received funds from Plaintiffs and Class Members unjustly;

ZELDES HAEGGQUIST & ECK, LLP

(7)     Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

(8)     Whether Plaintiffs and Class Members are entitled to an award of punitive damages, attorneys' fees, and expenses against Defendants;

(9)     Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief; and

(10)    Whether Plaintiffs' PII was provided in violation of California Streets and Highways Code §31490, privacy rights under the United States Constitution/California Constitution, the Defendants' privacy policy, and the Rosenthal Act;

(e)     Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)     Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel; and

(g)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(1)     Given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(2)     This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of

ZELDES HAEGGQUIST & ECK, LLP

time, effort and resources will be fostered and uniformity of decisions will be insured;

(3)     Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct; and

(4)     Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

146.   Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

147.   Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

## CAUSES OF ACTION

## COUNT I

**42 U.S.C. §1983 FOR VIOLATION OF THE 8TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION (EXCESSIVE FINES) (By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)**

148.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

149.   In light of the minor nature of the alleged toll violations and their financial effect on Class Members, the aforementioned penalties are punitive in nature (in multiples as high as 20 times or 2,000% of the underlying tolls), and are grossly excessive and disproportionate to the amount of the tolls assessed against each of the Plaintiffs. These penalties are also disproportionate to any legitimate public purpose, and are assessed by Defendants merely to generate profit, without

41

any particularized consideration of drivers' or vehicle owners' financial circumstances.

150.   The dollar amount and enforcement of these penalties constitute a violation of the prohibition in the Eighth Amendment to the U.S. Constitution of ***excessive fines***, as incorporated in the Fourteenth Amendment. Each of the Plaintiffs was assessed a penalty by OCTA/TCA more than 10 times the amount of the toll violation incurred.

151.   The Vehicle Code permitting penalties to be charged by TCA of up to 20 times the toll either expressly or implicitly, constitutes an excessive fine, and is thus, unconstitutional. As applied, the TCA routinely charged putative Class Members (including the named representatives) penalties in excess of 10 times the amount of the toll, or 1,000%.

152.   The OCTA Ordinance permitting penalties of up to 20 times the OCTA's highest system toll in effect, constitutes an excessive fine, and is thus unconstitutional. As applied, the OCTA routinely charged putative Class Members (including Coulter and Golka) penalties in excess of 10 times the amount of the toll, or 1,000%.

153.   In assessing these penalties, Defendants failed to engage in any inquiry into the financial conditions of Plaintiffs and Class Members. Instead, Defendants established a draconian, automated scheme to drive up their own revenue without regard to the undue hardships imposed upon certain Toll Roads' drivers.

154.   Additionally, in a multitude of instances, Plaintiffs did not receive notice of any alleged toll violations until after all administrative remedies were foreclosed.

155.   As a direct result of said constitutional violations on the part of Defendants, Plaintiffs and the Class Members have been damaged and are entitled

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

1    to damages, including restitution of the amounts of any penalties and collection

2    fees paid to Defendants.

3    156. Plaintiffs and the Class Members will suffer immediate and

4    irreparable injury for which there is no adequate remedy at law if the

5    aforementioned penalties and policies to enforce them are allowed to continue.

6    Plaintiffs and the Class Members seek injunctive relief, both preliminary and

7    permanent, to stop Defendants' unlawful conduct described above.

8    157. There is a real and actual controversy between the parties and a

9    dispute for the trier of fact as to whether the penalties described above violate the

10   Eighth and Fourteenth Amendment's prohibition of excessive fines. Plaintiffs

11   maintain that the penalties violate the excessive fines clause of the Eighth and

12   Fourteenth Amendments. This imposition of, and continued effort to collect, such

13   penalties constitute a legal injury, which is concrete and particularized. It is likely

14   that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs

15   and the Class Members therefore seek declaratory relief declaring that the toll and

16   penalty scheme are unconstitutional and that they did not and do not owe and need

17   not pay said tolls, penalties, and attendant collection costs.

18   158. By engaging in the herein-mentioned acts and omissions, Defendants

19   interfered by threat, intimidation, and coercion, and attempted to interfere by

20   threat, intimidation, and coercion, with the exercise and enjoyment by Plaintiffs

21   and each of the Class Members of their rights secured by the Constitution or laws

22   of the United States, and of their rights secured by the Constitution or laws of the

23   State of California, entitling them to damages under, *inter alia*, California Civil

24   Code §52.1(b). These coercive acts include, without limitation, the imposition of

25   arbitrary, inadequate deadlines and grossly disproportionate penalties, as well as

26   the threatened or actual placement of liens on motorists' DMV vehicle

27   registrations.

28

43

ZELDES HAEGGQUIST & ECK, LLP

159.   Plaintiffs are informed and believe and thereon allege that the acts of the Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Plaintiffs' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**COUNT II**

**VIOLATION OF ARTICLE I, §17 OF THE CALIFORNIA
CONSTITUTION (EXCESSIVE FINES)
(By All Plaintiffs, Individually and On Behalf of All Class Members,
Against All Defendants)**

160.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

161.   This claim for relief is brought under the California Constitution and under California Civil Code ("Civil Code") §52.1(b).

162.   The dollar amount and enforcement of these penalties constitute violations of the prohibition in Article 1, §17 of the California Constitution against the imposition of excessive fines.

163.   The Vehicle Code permitting penalties to be charged by TCA of up to 20 times the toll either expressly or implicitly, constitute excessive fines, and are thus, unconstitutional. As applied, the TCA routinely charged putative Class Members (including the named class representatives) penalties in excess of 10 times the amount of the toll, or 1,000%.

164.   The OCTA Ordinance permitting penalties of up to 20 times the OCTA's highest system toll in effect, constitutes an excessive fine, and is thus unconstitutional. As applied, the OCTA routinely charged putative Plaintiffs and (including Coulter and Golka) penalties in excess of 10 times the amount of the toll, or 1,000%.

165.   As a direct result of said constitutional violations on the part of Defendants, Plaintiffs and the Class Members have been damaged and are entitled

ZELDES HAEGGQUIST & ECK, LLP

to damages, including restitution of the amounts of any penalties and collection fees paid to Defendants or assessed by Defendants.

166. Plaintiffs and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiffs and the Class Members seek injunctive relief, both preliminary and permanent, to stop Defendants' unlawful conduct described above.

167. There is a real and actual controversy between the parties as to whether the toll penalties described above violate the prohibition in Article 1, §17 of the California Constitution against the imposition of excessive fines. This imposition of, and continued effort to collect, penalties constitute a legal injury which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs and the Class Members therefore seek declaratory relief declaring that the toll and penalty scheme are unconstitutional and that they did not and do not owe and need not pay the tolls, penalties, and attendant collection fees.

168. Plaintiffs are informed and believe and thereon allege that the acts of the Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Plaintiffs' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**COUNT III**

**42 U.S.C. §1983 FOR VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION (DUE PROCESS)**
**(By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)**

169. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

1    170.   There is inadequate (if any) notice of the entry to the Toll Roads or

2   the incurring of tolls and penalties thereon.

3    171.   The civil penalty scheme of California Vehicle Code §§40250, *et*

4   *seq.*, on its face and as applied by Defendants against Plaintiffs and the Class

5   Members, violates the Due Process Clause of the Fourteenth Amendment to the

6   U.S. Constitution for the following reasons, among others set forth in this

7   Complaint:

8    (a)   Defendants failed to provide adequate notice to Plaintiffs and

9   Class Members of the manner in which toll charges must be paid and the

10   consequences of non-payment;

11    (b)   Defendants failed to inform Plaintiffs and Class Members

12   promptly and reliably about alleged toll violations in time for them to avoid large

13   penalties;

14    (c)   Defendants failed to provide Plaintiffs and the Class Members

15   with an adequate amount of time to be heard on the amount of the civil penalty

16   assessments;

17    (d)   Defendants prevented Plaintiffs and Class Members from

18   challenging tolls and penalties by the use of inadequate time periods in which to

19   make such challenges;

20    (e)   Defendants failed to take into account the inadequacy of DMV

21   records to locate Plaintiffs and Class Members reliably;

22    (f)   Defendants failed to adequately inform Plaintiffs and Class

23   Members of the electronic means by which they must pay their tolls and failed to

24   take into account the needs of persons without easy access to computers;

25    (g)   Defendants allowed for *ex parte* judgments to be entered

26   against Plaintiffs and Class Members without giving them notice and based on the

27   other due process violations listed above;

28

*Left margin (vertical):* ZELDES HAEGGQUIST & ECK, LLP

(h)     California Vehicle Code §40267 states that, in any case in which unpaid penalties exceed $400 (essentially, any round trip's unpaid fines and penalties), the processing agency may file with the court proof of the fact that the penalties exceed $400 and that such filing shall have the same effect as a civil judgment, which is subject to execution. This entry of judgment occurs without any hearing on the issue of penalties incurred. The entry of judgment is final and may not be contested.

172.   Defendants' enforcement system, as authorized and set forth in California Vehicle Code §§40250, *et seq*., results in widespread due process violations against motorists alleged to have failed to pay their tolls. These violations and the injuries suffered by the Plaintiffs and class can be avoided or substantially limited by modifying Defendants' systems without undue cost or inconvenience to Defendants.

173.   Section 1 of Fourteenth Amendment to the U.S. Constitution prohibits any government actor from depriving any person of life, liberty, or property, without due process of law. Defendants' enforcement system, as alleged above, has deprived Plaintiffs and the Class Members of property without due process.

174.   As a direct result of such due process violations, Plaintiffs and the Class Members have been damaged. Plaintiffs and the Class Members are entitled to the recovery of damages, and appropriate injunctive and declaratory relief, as alleged above.

175.   The deprivations of the procedural due process rights of Plaintiffs and the Class Members as described above were a proximate result of the policies, procedures, and customs maintained by Defendants. As a direct and legal result of the acts and omissions of Defendants, Plaintiffs and the Class Members have suffered damages, and are entitled to restitution, in an amount to be proven at trial.

ZELDES HAEGGQUIST & ECK, LLP

176.   By engaging in the herein-mentioned acts and omissions, Defendants interfered by threat, intimidation, and coercion, and attempted to interfere by threat, intimidation, and coercion, with the exercise and enjoyment by Plaintiffs and each of the Class Members of their rights secured by the Constitution or laws of the United States, and of their rights secured by the Constitution or laws of the State of California, entitling them to damages under, *inter alia*, Civil Code §52.1(b). These coercive acts include, without limitation, the imposition of arbitrary, inadequate deadlines and grossly disproportionate penalties, as well as the threatened or actual placement of liens on motorists' DMV vehicle registrations. Plaintiffs and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and unconstitutional enforcement scheme are allowed to continue. Plaintiffs and the Class Members seek injunctive relief, both preliminary and permanent, to stop Defendants' unlawful conduct described above.

177.   Plaintiffs are informed and believe and thereon allege that the acts of the Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Plaintiffs' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. Pursuant, *inter alia*, to 42 U.S.C. §1988, Plaintiffs and the Class Members further seek their costs and attorneys' fees incurred as a result of this lawsuit.

**COUNT IV**

**VIOLATION OF ARTICLE I, §7 OF THE CALIFORNIA CONSTITUTION (DUE PROCESS)**
**(By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)**

178.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

179.   Article 1, §7(a) of the California Constitution provides that a person may not be deprived of life, liberty, or property without due process of law. Defendants' excessive penalties scheme and their enforcement, as above alleged, have deprived Plaintiffs and the Class Members of property without due process.

180.   Plaintiffs and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned policies, procedures, practices, and customs of Defendants are allowed to continue. Henceforth, Plaintiffs and the Class Members seek injunctive relief, both preliminary and permanent, to enjoin Defendants' unlawful policies, procedures, practices and customs described herein.

181.   In addition, there is a real dispute between the parties as to whether California Vehicle Code §§40250, *et seq.* and Defendants' practices violate Article I, §7 of the California Constitution. Plaintiffs maintain that the penalty scheme of California Vehicle Code §§40250, *et seq.*, on its face and as applied by Defendants, violates Article I, §7 of the California Constitution. Defendants claim that the penalty scheme and their actions do not violate the due process clause of Article I, §7 of the California Constitution and are constitutional. Plaintiffs and the Class Members therefore seek declaratory relief to declare the penalty scheme of California Vehicle Code §§40250, *et seq.*, on its face and as applied by Defendants, as unconstitutional.

182.   By engaging in the herein-mentioned acts and omissions, Defendants interfered by threat, intimidation, and coercion, and attempted to interfere by threat, intimidation, and coercion, with the exercise and enjoyment by Plaintiffs and each Class Members of their rights secured by the Constitution or laws of the United States, and of the rights secured by the Constitution or laws of the State of California, entitling them to damages under, *inter alia*, Civil Code §52.1(b). These coercive acts include, without limitation, the imposition of arbitrary, inadequate

ZELDES HAEGGQUIST & ECK, LLP

deadlines and grossly disproportionate penalties, as well as the threatened or actual placement of liens on motorists' DMV vehicle registrations.

## COUNT V

## VIOLATION OF CALIFORNIA STREETS AND HIGHWAYS CODE §31490
### (By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)

183.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

184.   California Streets and Highways Code §31490 provides that:

(a)   Except as otherwise provided in this section, a transportation agency may not sell or otherwise provide to any other person or entity personally identifiable information of any person who subscribes to an electronic toll or electronic transit fare collection system or who uses a toll bridge, toll lane, or toll highway that employs an electronic toll collection system.

185.   All Plaintiffs and Class Members are either "subscribers" or "users" of Defendants Toll Roads pursuant to California Streets and Highways Code §31490(a).

186.   California Streets and Highways Code §31490(h) provides that: This section, with respect to an electronic toll collection system, does not prohibit a transportation agency from sharing data with another transportation agency solely to comply with interoperability specifications and standards adopted pursuant to Section 37565 regarding electronic toll collection devices and technologies. A third-party vendor may not use personally identifiable information obtained under this subdivision for a purpose other than described in this subdivision.

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

187.   California Streets and Highways Code §31490(l) provides:

For purposes of this section, "transportation agency" means the Department of Transportation, the Bay Area Toll Authority, any entity operating a toll bridge, toll lane, or toll highway within the state, any entity administering an electronic transit fare collection system and any transit operator participating in that system, or any entity under contract with any of the above entities.

188.   California Streets and Highways Code §31490(o) provides that:

For purposes of this section, "personally identifiable information" means any information that identifies or describes a person including, but not limited to, travel pattern data, address, telephone number, email address, license plate number, photograph, bank account information or credit card number.

189.   California Streets and Highways Code §31490(p) provides that:

For purposes of this section, "interoperability" means the sharing of data, including personally identifiable information, across multiple transportation agencies for the sole purpose of creating an integrated transit fare payment system, integrated toll payment system, or both.

190.   Defendants operate an "electronic toll collection system" within the meaning of California Streets and Highways Code §31490(m).

191.   Defendants TCA, OCTA, BRiC, 3M, and Cofiroute provided Plaintiffs' and Class Members' PII, within the meaning of California Streets and Highways Code §31490(o), to the following Unauthorized Parties: Law Enforcement Agencies, including the DMV, the FTB, the Beverly Hills Police Department and other city, state, county, and federal Law Enforcement Agencies located in the State of California; Banking Institutions, including, without limitation, Wells Fargo Bank, N.A.; Car Rental Agencies, including without limitation Ace Rent-A-Car, Advantage, Alamo, Avis, Budget, Dollar, Economy,

51

1 Enterprise, Europcar, Rent-a-car, Firefly, Fox; out-of-state collection agencies and
2 other unauthorized third persons and entities to be ascertained through discovery
3 (Other Unauthorized Parties).

4     192. *Ad nauseum*, the TCA provided to BRiC, 3M, Cofiroute, OCTA, LA
5 Metro Express, Bay Area Toll Authority ("BATA"), South Bay Expressway,
6 SANDAG, the PII of Plaintiffs and the Class Members (*i.e.*, their plate images) for
7 non-interoperability purposes.

8     193. *Ad nauseum*, the OCTA provided to BRiC, 3M, and TCA, and
9 Cofiroute, LA Metro Express, BATA, South Bay Expressway, SANDAG, the PII
10 of Plaintiffs and the Class Members (*i.e.*, their plate images) for non-
11 interoperability purposes.

12     194. *Ad nauseum*, 3M provided to BRiC, OCTA, TCA, LA Metro Express,
13 BATA, South Bay Expressway, SANDAG, and Cofiroute the PII of Plaintiffs and
14 the Class Members (i.e., their plate images) for non-interoperability purposes.

15     195. *Ad nauseum*, Cofiroute provided to 3M, TCA, BRiC, LA Metro
16 Express, BATA, South Bay Expressway, SANDAG and OCTA, the PII of
17 Plaintiffs and the Class Members (*i.e.*, their plate images) for non-interoperability
18 purposes.

19     196. *Ad nauseum*, BRiC provided to 3M, TCA, Cofiroute, LA Metro
20 Express, BATA, South Bay Expressway, SANDAG, and OCTA, the PII of
21 Plaintiffs and the Class Members (*i.e.*, their plate images) for non-interoperability
22 purposes.

23     197. Such PII of Plaintiffs and Class Members included, without
24 limitation, information that identified or described Plaintiffs and Class Members
25 as Toll Road toll violators, data of their travel patterns on the Toll Roads, and
26 images of license plates of vehicles they owned or were driving.

27     198. California Streets and Highways Code §31490(i) is not a defense or
28 excuse of liability pursuant to §31490(a) or (h) because §31490(i) refers to,

ZELDES HAEGGQUIST & ECK, LLP

incorporates, and implicates subsection (d) which contemplates purging that may take place under the California Streets and Highways Code, which has nothing to do with the "providing" of PII. In other words, the statute contemplates that collection may still occur even if the transportation agency has purged documents, but this is no defense to the Defendants' express violation of §31490(a) and (h).

199.   By providing the Unauthorized Parties with the PII of Plaintiffs and the Class Members, Defendants' purpose was to track Plaintiffs' and Class Members' comings and goings, and to interfere with Plaintiffs' and Class Members' rights to use their vehicles.

200.   Defendants did not receive a search warrant from any law enforcement agency under California Streets and Highways Code §31490 prior to making any of the above-referenced transmissions of PII.

201.   Defendants did not have authorization under the transponder agreements with commuters to make any of the above transmissions of PII.

202.   OCTA and TCA completed separate forms with the DMV prior to transmitting PII for different purposes – albeit both were illegal. OCTA, TCA, BRiC, 3M, and Cofiroute would first file requests (in certain circumstances only) to provide plate images to the DMV to obtain information about commuters, even though the named Defendants already had the information of commuters based on their completed transponder agreements, the availability of public information and databases that indicate information for registration of car owners, private investigation, the right to subpoena under California Streets and Highways Code, the right of publication, and other means to obtain information.

203.   Based on DMV procedures and practices, the DMV did not maintain a database of the images of Class Members. OCTA, TCA, BRiC, 3M, and Cofiroute would then provide plate images subsequently thereto to the DMV to place a hold on commuters' registration, which was an entirely independent request and function from providing plate images to obtain information about

1   commuters. In other words, the Defendants did not need to make subsequent

2   transmission of image files and PII to obtain the address of a commuter.

3          204.   Based on the fact that the OCTA, TCA, BRiC, 3M, and Cofiroute

4   provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in

5   violation of California Streets and Highways Code§31490(a), pursuant to

6   §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each

7   individual violation, attorney's fees, reasonable costs from OCTA, TCA, BRiC,

8   3M, and Cofiroute, and for Plaintiffs and those Class Members who had their

9   information provided three or more times, $4,000 for each individual violation,

10  attorney's fees, and reasonable costs from OCTA, TCA, BRiC, 3M, and Cofiroute.

11  California Streets and Highways Code §31490(p)(2).

12  **DEFENDANTS ARE LIABLE BECAUSE THE PURPOSE BY WHICH PII**
    **WAS PROVIDED TO UNAUTHORIZED PARTIES WAS NOT FOR**
13  **"INTEROPERABILITY PURPOSES"**

14         205.   When each of the Plaintiffs and Class Members drove on the Toll

15  Roads, each of them was a "user" of the Toll Roads pursuant to §31490(a).

16         206.   Each of the named Defendants is independently a "transportation

17  agency" pursuant to California Streets and Highways Code §31490(l).

18         207.   TCA, OCTA, 3M, BRiC, and Cofiroute are each independently,

19  "entities" operating a toll bridge, toll lane or toll highway within the state of

20  California based on their contractual and actual roles in the operations of the joint

21  enterprise.

22         208.   Each of the Toll Roads (as previously defined) is a "Toll Highway"

23  and/or "Toll Lane" under §31490(n).

24         209.   Defendants provided to the Unauthorized Parties PII for purposes that

25  were not, and could not have been, for "interoperability purposes" in that none of

26  the transmittals were for the "sole purpose of creating an integrated transit fare

27  payment system, integrated toll payment system, or both." In fact, none of

28

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

Defendants' providing PII to Unauthorized Parties alleged hereinabove had anything to do with creating any system, much less an "integrated transit fare payment system, integrated toll payment system, or both," but were instead meant to place holds on commuters' vehicle registrations as an illicit collection device.

210.   As defined in §31490(m), for purposes of this section:

"[E]lectronic toll collection system" is a system where a transponder, camera-based vehicle identification system, or other electronic medium is used to deduct payment of a toll from a subscriber's account or to establish an obligation to pay a toll, and "electronic transit fare collection system" means a system for issuing an electronic transit pass that enables a transit passenger subscriber to use the transit systems of one or more participating transit operators without having to pay individual fares, where fares are instead deducted from the subscriber's account as loaded onto the electronic transit pass.

The transmissions described above were not provided pursuant to a collection system of interoperability, but were instead disseminated to unlawfully implement impermissible collection devices, place holds through the DMV, interfere with property rights, and to track commuters' comings and goings. *See* Streets and Highways Code §27565.

211.   Thus, regardless of whether any of the Unauthorized Parties are themselves "transportation agencies," the named Defendants are liable for violations of California Streets and Highways Code §31490(a), (h), and (l) because their provisions of Plaintiffs' and Class Members' PII were not for "interoperability purposes."

212.   Based on the fact that the OCTA, TCA, BRiC, 3M, and Cofiroute's provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code §31490(a), pursuant to

55

1  §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each

2  individual violation, attorney's fees, reasonable costs from OCTA, TCA, BRiC,

3  3M, and Cofiroute, and for Plaintiffs and those Class Members who had their

4  information provided three or more times, $4,000 for each individual violation,

5  attorney's fees, and reasonable costs from OCTA, TCA, BRiC, 3M, and Cofiroute.

6  California Streets and Highways Code §31490(p)(2).

**DEFENDANTS ARE ALTERNATIVELY LIABLE
BECAUSE THE UNAUTHORIZED PARTIES WERE NOT
PERMITTED RECIPIENTS OF PLAINTIFFS' AND CLASS
MEMBERS' PII REGARDLESS OF THE PURPOSE**

213.  Plaintiffs are informed and believe, and on that basis allege, that neither the TCA, OCTA, BRiC, 3M, or Cofiroute, was under contract with any of the Unauthorized Third Parties, within the meaning and purpose of California Streets and Highways Code §31490(l), at the time they provided Plaintiffs' and Class Members' PII to the Unauthorized Persons, with the exception of contracts by and between Cofiroute and OCTA, contracts between TCA and BRiC, and contracts between TCA and 3M.

214.  Specifically, Plaintiffs are informed and believe, and based thereon allege that neither 3M, BRiC nor Cofiroute executed any contract with the DMV at all.

215.  The DMV is not a "transportation agency." Specifically, the TCA and OCTA were not "under contract" with the DMV for the purposes of California Streets and Highways Code §31490(l). The DMV has not been a signatory to any writing with TCA and OCTA concerning TCA and/or OCTA providing PII under the unlawful transmissions described above. The DMV has no continuing contractual obligation with any party such that it would be said to be "under contract."

ZELDES HAEGGQUIST & ECK, LLP

216.   The DMV is a law enforcement agency within the meaning of the California Streets and Highways Code and thus, cannot be a "transportation agency" thereunder.

217.   None of the Law Enforcement Agencies are "under contract" with TCA, OCTA, 3M, BRiC nor Cofiroute pursuant to California Streets and Highways Code §31490(l).

218.   The FTB is not "under contract" with TCA, OCTA, 3M, BRiC nor Cofiroute under California Streets and Highways Code§31490(l). The OCTA transmitted Coulter's, and Golka's PII, and the PII of at least hundreds of thousands of Class Members, to the FTB.

219.   None of the Banking Institutions are "under contract" with TCA, OCTA, 3M, BRiC nor Cofiroute pursuant to California Streets and Highways Code §31490(l).

220.   None of the Other Unauthorized Parties are "under contract" with TCA, OCTA, 3M, BRiC nor Cofiroute pursuant to California Streets and Highways Code §31490(l).

221.   None of the Car Rental Agencies are "under contract" with TCA, OCTA, 3M, BRiC nor Cofiroute pursuant to California Streets and Highways Code §31490(l). OCTA, 3M, BRiC nor Cofiroute pursuant to California Streets and Highways Code §31490(l).

222.   Thus, none of the Unauthorized Parties was a "transportation agency" within the meaning of California Streets and Highways Code §31490(l).

223.   Consequently, Defendants' provision of PII to the Unauthorized Parties was in violation of California Streets and Highways Code §31490 for this independent reason, irrespective of whether providing the PII was provided for interoperability purposes.

ZELDES HAEGGQUIST & ECK, LLP

**DEFENDANTS ARE INDEPENDENTLY LIABLE BECAUSE THEY PROVIDED PII TO LAW ENFORCEMENT AGENCIES WITHOUT A SEARCH WARRANT**

224.   California Streets and Highways Code §31490(e)(1) provides: A transportation agency may make personally identifiable information of a person available to a law enforcement agency only pursuant to a search warrant. Absent a provision in the search warrant to the contrary, the law enforcement agency shall immediately, but in any event within no more than five days, notify the person that his or her records have been obtained and shall provide the person with a copy of the search warrant and the identity of the law enforcement agency or peace officer to whom the records were provided.

225.   Each of the DMV and Beverly Hills Police Department, and other Law Enforcement Agencies in California, is a law enforcement agency within the meaning of California Streets and Highways Code §31490(e)(1).

226.   Plaintiffs are informed and believe, and on that basis allege, that none of the Defendants obtained a search warrant and otherwise complied with California Streets and Highways Code §31490(e)(1) when providing Plaintiffs' and Class Members' PII to the DMV, the Beverly Hills Police Department, and other Law Enforcement Agencies.

227.   Consequently, Defendants' provision to the DMV, other Law Enforcement Agencies, and Beverly Hills Police Department of Plaintiffs' and Class Members' PII was in violation of California Streets and Highways Code §31490.

228.   Plaintiffs are informed and believe, and thereon allege, that Defendants have violated, and conspired to violate, California Streets and Highways Code §31490 by unlawfully transmitting Plaintiffs' and the Class Members' PII, within the meaning of California Streets and Highways Code

58

ZELDES HAEGGQUIST & ECK, LLP

§31490(o), to other agencies and individuals including, but not limited to, the Unauthorized Parties. Further, Defendants ratified, authorized, directed, and approved that the DMV place a hold on Plaintiffs' and Class Members' vehicles and that the DMV transfer Plaintiffs' and Class Members' PII to other Law Enforcement Agencies, and that the Beverly Hills Police Department do the same, thereby intentionally and illicitly circumventing the law.

229.   Specifically, on at least two occasions per week, Defendants have transmitted and continue to transmit to Unauthorized Parties a list of all users and subscribers, that contains PII of each user and subscriber, whose registration should be placed on hold.

**DEFENDANTS ARE INDEPENDENTLY AND ADDITIONALLY LIABLE BASED ON THEIR NON-COMPLIANT PRIVACY POLICIES IN VIOLATION OF CALIFORNIA STREETS AND HIGHWAYS CODE §31940(B) AND (P)**

230.   California Streets and Highways Code §31940(b) provides that:

(b)  A transportation agency that employs an electronic toll collection system *shall* establish a privacy policy regarding *the collection and use of personally identifiable information* and provide to subscribers of that system a copy of the privacy policy in a manner that is conspicuous and meaningful, such as by providing a copy to the subscriber with the transponder or other device used as an electronic toll collection mechanism, or, if the system does not use a mechanism, with the application materials. A transportation agency shall conspicuously post its privacy policy on its Internet Web site. For purposes of this subdivision, "conspicuously post" has the same meaning as that term is defined in paragraphs (1) to (4), inclusive, of subdivision (b) of Section 22577 of the Business and Professions Code. The *policy shall include*, but need not be limited to, a description of the following:

59

ZELDES HAEGGQUIST & ECK, LLP

(1) The types of personally identifiable information that is collected by the agency.

(2) The categories of third-party persons or entities with whom the agency may share personally identifiable information.

(3) The process by which a transportation agency notifies subscribers of material changes to its privacy policy.

(4) The effective date of the privacy policy.

(5) The process by which a subscriber may review and request changes to any of his or her personally identifiable information.

Emphasis added.

231. Each of the named Defendants are transportation agencies that employ an electronic toll collection system.

232. The TCA's "Toll Roads Privacy Policy," set forth in a back-page footer of TCA's website at https://www.thetollroads.com/footer/privacy#2, fails to comply with California Streets and Highways Code §31940(b)(1). The policy fails to completely and accurately identify the types of personally identifiable information that is collected by the TCA. In fact, the TCA's privacy policy does not identify anything about the "personally identifiable information" that is collected, and the TCA privacy policy never mentions the phrase "personally identifiable information." As alleged above, the TCA actually captures the plate image of Class Member vehicles that pass through the Toll Roads. Specifically, in contravention to the manner in which TCA collects and disseminates PII, TCA falsely discloses as follows:

**What type of information we gather**:

In order to provide the services you requested, we need your first and last name, address, telephone number, email address, vehicle information and license plate number, credit card number and/or other bank account or payment information, billing address, and other

ZELDES HAEGGQUIST & ECK, LLP

1    basic account information required to perform account functions such

2    as billing, account settlement, or enforcement activities.

3    233.   Further, the TCA has violated California Streets and Highways Code

4    §31940(b) because even though the TCA "shall" establish a privacy policy

5    regarding the "collection and use" of PII, the TCA failed to do so. Specifically,

6    TCA's privacy policy fails to state that PII (the license plate images of Class

7    Members and other PII of Class Members), as previously alleged, is provided by

8    the TCA to a multitude of persons and entities to place holds on Class Members'

9    registration, to collect debts, to monitor movements, and for other purposes.

10   234.   Based on the fact that the TCA, BRiC, and 3M failed to comply with

11   §31940(b) in regards to TCA's privacy policy (which each party had authority and

12   control over drafting, implementing, and publishing) before TCA, BRiC, and 3M

13   provided Class Members' PII to any third person, the TCA, BRiC, and 3M have

14   "otherwise provided information in violation of this section" pursuant to California

15   Streets and Highways Code §31940(p). Thus, Plaintiffs and Class Members are

16   entitled to $2,500 for each individual violation, attorney's fees, reasonable costs

17   from TCA, BRiC, 3M, and for Plaintiffs and those Class Members who had their

18   information provided three or more times, $4,000 for each individual violation,

19   attorney's fees, and reasonable costs from TCA, BRiC, 3M.

20   235.   In addition, TCA's policy makes false statements of material fact (by

21   representation and by omission) which are independently and additionally

22   violative of California Streets and Highways Code §31940, as it is rife with false

23   statements which Defendants knew were false when made, and knew Plaintiffs

24   and Class Members would justifiably rely on them to their detriment, which they

25   did, as follows:

26   **How we use what we know about you**:

27   We treat what we know about you confidentially. Our

28   employees are told to take care in handling your information. They

ZELDES HAEGGQUIST & ECK, LLP

1   may get information about you only when there is good reason to do

2   so. We take steps to make our computer databases secure and to

3   safeguard the information we have about you.

4           **How we use and disclose what we know about you**

5       and categories of third-party persons or entities with whom we

6       may share customer information:

7           We may use anything we know about you to help us

8       serve you better. We only use it and disclose it to others to the

9       extent legally authorized. We may share your information to

10      the extent legally authorized."[11]

11  236.  The OCTA's privacy policy also violates §31940(b). First, the

12  OCTA's privacy policy does not identify the PII that the OCTA in fact collects.

13  The OCTA's privacy policy provides: "The Authority does not automatically

14  collect personally identifiable information about visitors who do no more than

15  browse this site or download information from it." OCTA's privacy policy fails to

16  completely and accurately identify the types of personally identifiable information

17  that is collected by the OCTA, including the fact that OCTA actually captures the

18  plate image of Class Members' vehicles that pass through the Toll Roads.

19  237.  The OCTA's privacy policy also violates §31940(b)(2) in that the

20  policy fails to identify the various Unauthorized Parties it provides information to.

21  Instead, OCTA's policy falsely states "[w]e do not release information about the

22  collection of IP addresses to any third party, except under court order." This was

23  a patently false statement as alleged above, based on OCTA's providing PII to a

24  multitude of Unauthorized Parties.

25

26

27

28

---

[11]   The privacy policy stating this allegation was in effect at all times during
the Class period. *See* http://www.thetollroads.com/footer/privacy.

ZELDES HAEGGQUIST & ECK, LLP

238. The OCTA's privacy policy also violates §31940(b)(3) and §31940(b)(5) in that it fails to identify the process by which a transportation agency notifies subscribers of material changes to its privacy policy and fails to identify the process by which a subscriber may review and request changes to any of his or her personally identifiable information.

239. Further, the OTCA has violated §31940(b) because even though OTCA "shall" establish a privacy policy regarding the "collection and use" of PII, OCTA failed to do so. Specifically, OCTA's privacy policy fails to state that PII (the license plate images of Class Members and other PII of Class Members), as previously alleged, is provided by OCTA to a multitude of persons and entities to place holds on users' registration, to collect debts, to monitor movements, and for other purposes.

240. Based on the fact that the OCTA and Cofiroute failed to comply with §31940(b) in regards to OCTA's privacy policy (which each party had authority and control over) before providing PII to any third person, OCTA and Cofiroute have provided "information in violation of this section" pursuant to §31940(p). Thus, Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from OCTA, Cofiroute for Plaintiffs and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from OCTA and Cofiroute.

241. Defendants made materially false representations of material facts, and failed to disclose material facts, to Plaintiffs and the Class Members, including, but not limited to, omitting that Plaintiffs' and Class Members' PII would not be used to "serve [them] better" but would instead be used and disclosed in manners not "legally authorized;" disseminating information to others who, among other things, could and would impound Plaintiffs and other Class Members' vehicles; and for retaliatory, coercive and oppressive purposes.

ZELDES HAEGGQUIST & ECK, LLP

242.   Defendants thus violated California Streets and Highways Code §31490 by failing to establish, follow, and maintain the required privacy protocols.

243.   Plaintiffs and the Class Members are entitled to the greater of actual and statutory damages and attorneys' fees and costs, in accordance with California Streets and Highways Code §31490, which includes a stepped statutory damages structure.

## COUNT VI

## VIOLATION OF ARTICLE I, §1 OF THE CALIFORNIA CONSTITUTION (RIGHT TO PRIVACY)
### (By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)

244.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

245.   Article I, §1 of the California Constitution ensures individuals' inalienable rights to privacy.

246.   Plaintiffs and Class Members had a reasonable expectation of privacy. For one, California Streets and Highways Code §31490 was enacted to ensure it. Moreover, the Toll Roads Privacy Policy manifests an intent to maintain Toll Roads users' privacy or, at a bare minimum, does not reduce from the reasonable expectation of privacy of vehicle owners and operators who do not expect driving down a street to expose their PII to unbridled dissemination.

247.   Plaintiffs and Class Members had a reasonable expectation of privacy that, when a vehicle is merely driven down the road, its owner's PII (including travel pattern data) will not be captured for broad dissemination to third parties, including but not limited to Unauthorized Parties, for the purposes of obtaining DMV registration liens and *ex parte* judgments against them.

248.   The privacy rights of Plaintiffs and Class Members, in and to their PII, are serious, underscored by statute, the active participation in relevant

ZELDES HAEGGQUIST & ECK, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Legislative proceedings by the American Civil Liberties Union, the Privacy Rights Clearinghouse, the Consumer Federation of California, CALPIRG and the enactment of laws to reflect such concerns about the collection and dissemination of this data. By their conduct described above, these established, serious privacy rights were seriously invaded by the Defendants.

249.   By the aforementioned acts and omissions, Defendants have violated the privacy rights of Plaintiffs and other Class Members. As a consequence, Plaintiffs and the Class Members have suffered, and seek hereby from Defendants, their actual damages. Plaintiffs and Class Members additionally seek attorneys' fees, and costs, as may be allowed.

## COUNT VII

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CIVIL CODE §§1750, *ET SEQ.*
### (By All Plaintiffs, Individually and On Behalf of All Class Members, Against 3M, BRiC and Cofiroute)

250.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

251.   Defendants each are "persons" as defined by Civil Code §1761(c). Each of the Defendants are part of an unincorporated association with each other known as "The Toll Roads" and "Transportation Corridor Agencies" and are sued in that capacity.

252.   Plaintiffs and the Class Members are consumers within the meaning of Civil Code §1761(d).

253.   The Consumer Legal Remedies Act ("CLRA") applies to Defendants' conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to consumers, or do result in such sales or leases. The use of the Toll Roads constitutes such sale or lease of goods or services.

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

254.   Defendants had a duty to truthfully disclose how they truly intended to operate Toll Roads and their related charges and payments, use and disclose personally identifiable information of Plaintiffs and the Class Members, and disclose the omitted facts regarding such use and disclosure. Defendants had exclusive knowledge of material facts not known to Plaintiffs and the Class Members. Specifically, Defendants operate Toll Roads and related charges and payments in a manner that defrauds Plaintiffs and the Class Members, unjustly enriches Defendants, and uses and discloses Plaintiffs' and the Class Members' PII contrary to law and for improper purposes.

255.   Defendants, however, actively concealed material facts and did not provide Plaintiffs or the Class Members proper notice of their actual intentions for use and disclosure of Plaintiffs' and Class Members' PII.

256.   The facts, which Defendants misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiffs' and Class Members' decisions about whether to use the Toll Roads (when such use was known) and pay bills rendered by or for Defendants. Defendants are liable under the CLRA for these material misrepresentations and omissions.

257.   In violation of Civil Code §1770(a)(16), Defendants represented that the subject of a Toll Roads transaction was supplied in accordance with a previous representation when it was not. Defendants have failed to disclose material facts to Plaintiffs and the Class Members by billing them for services that were not in fact provided, by billing them at rates higher than were disclosed or allowed by law, and through billing errors.

258.   Additionally, by their conduct described in this Complaint, Defendants 3M and BRiC have violated Civil Code §1770(a)(5), (7), (9), (13), (14), (17), and (19).

259.   Defendants had a duty to disclose the omitted facts because they had exclusive knowledge of material facts not known to Plaintiffs and the Class

Members (that they were billing for services that they did not in fact provide and were billing at rates higher than disclosed or permitted by law), because they actively concealed material facts, and because they did not provide Plaintiffs and the Class Members proper notice of the Toll Roads, toll charges, penalties, the processes by which charges and penalties could be assessed and contested, and because they otherwise suppressed true material facts.

260. Under Civil Code §1780, Plaintiffs and the Class Members seek appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages and any other relief the Court deems proper.

261. Additionally, any of the Plaintiffs or Class Members that are senior citizens or disabled persons, as defined in Civil Code §§1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

## COUNT VIII

### UNFAIR COMPETITION, VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200 ET SEQ.
### (By All Plaintiffs, Individually and On Behalf of All Class Members, Against 3M, BRiC and Cofiroute)

262. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

263. Each of the Defendants are part of an unincorporated association with each other known as "The Toll Roads" and "Transportation Corridor Agencies" and are sued in that capacity.

264. Defendants have engaged in a pattern and practice of acts of unfair competition in violation of the California's UCL, including the practices alleged herein.

ZELDES HAEGGQUIST & ECK, LLP

265.   By violating the Plaintiffs and other Class Members' federal and state constitutional due process rights and prohibitions against excessive fines, and engaging in the collection activity recited above, Defendants have committed and continue to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in the UCL.

266.   California Business and Professions Code §17200 provides:

As used in this chapter, unfair competition shall mean and include any unlawful or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

267.   California Business and Professions Code §17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and §17203 provides that a court may grant injunctive and equitable relief to such persons.

268.   The unlawful conduct of Defendants alleged herein are acts of unfair competition under the UCL for which Defendants are liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to California Business and Professions Code §17203.

269.   Through their conduct, Defendants have engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendants' use of such unfair business practices constitutes unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

270.   Defendants' conduct as alleged herein is unlawful, unfair, and fraudulent.

ZELDES HAEGGQUIST & ECK, LLP

271.   Defendants conduct as alleged herein is "unlawful" in that, among other things, it violates the duties they owe to Plaintiffs and the Class Members.

272.   Defendants' conduct as alleged herein is also "unfair" because, among other things, it was designed to deprive Plaintiffs and the Class Members of their constitutionally protected rights and their property for less than adequate consideration and to unjustly punish and penalize Plaintiffs and the Class.

273.   Defendants' scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead. Defendants had actual knowledge of the egregious penalties they were charging, the means by which they sought to conceal and apply them, the coercive judgments and liens they were placing on Plaintiffs and Class Members' assets, and the illicit and reckless plans they possessed and concealed from Plaintiffs and the Class Members to obtain and misuse their personal and private information. Defendants have continued to take steps to perpetuate these deceitful practices against the Plaintiffs and the Class Members and other members of the public at large.

274.   Unless enjoined, Defendants will continue to harm the Plaintiffs, the other Class Members, and the general public. Plaintiffs and the Class Members have suffered injuries in fact and lost money because of Defendants' conduct, as more specifically alleged above.

275.   As a result of Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and the Class Members. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiffs and Class Members.

276.   Defendants' unfair business practices furthermore entitle Plaintiffs and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendants cease their complained-of practices and account for, disgorge and restore to Plaintiffs and the Class Members the compensation unlawfully obtained from them.

ZELDES HAEGGQUIST & ECK, LLP

**COUNT IX**

**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CALIFORNIA CIVIL CODE §§1788, *ET SEQ.***
**(By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)**

277.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

278.    Defendants are respective "debt collectors" within the meaning of California Civil Code §1788.2. The tolls, penalties and other debts asserted by the Defendants constitute "consumer debts" pursuant to said section.

279.    Defendants have violated, and are violating, the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788, *et seq.*, in that they are making (i) false representations of the true nature of the business or services being rendered by the debt collector (Civil Code §1788.13(i)); and (ii) false representations that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation (Civil Code §1788.13(e)).

280.    Additionally, California Civil Code §1788.17 requires every debt collector to comply with the provisions of §§1692b to 1692j, inclusive, and that the same shall be subject to the remedies in §1692k, of Title 15 of the United States Code. To wit:

(a)    Section 1692d prohibits a debt collector from engaging in any conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt.

(b)    Section 1692e(8) prohibits a debt collector from communicating or threatening to communicate to any person credit information

ZELDES HAEGGQUIST & ECK, LLP

which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(c)     Section 1692e(10) prohibits a debt collector from the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(d)     Section 1692e(11) prohibits a debt collector from failing to disclose (a) in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and (b) in subsequent communications that the communication is from a debt collector.

(e)     Section 1692g requires additional written notices be provided by debt collectors and provides circumstances under which a debt collector must cease collection of debts when disputed.

281.   Defendants have violated, and continue to violate, the foregoing provisions of the Rosenthal Fair Debt Collection Practices Act. As a consequence, the Plaintiffs and Class Members herein are entitled to appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation (including but not limited to pursuant to California Civil Code §§1788.17 and 1788.30(c)), restitution of property, actual damages, statutory damages, punitive damages (as may otherwise be permitted by law) and any other relief the court deems proper.

## COUNT X

## NEGLIGENCE
**(By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)**

282.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

71

ZELDES HAEGGQUIST & ECK, LLP

283.   California Civil Code §1714(a) provides in part:

Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

284.   Defendants owed a duty to Plaintiffs and the Class Members to exercise due care in their own actions so as not to create an unreasonable risk of injury to them.

285.   Defendants also owe Plaintiffs and Class Members duties that arose from *inter alia*: (1) the contracts and associated documents to which TCA or OCTA were party pursuant to which BRiC and 3M accepted responsibility for the operation of the all-electronic tolling System of the Toll Roads, including all associated duties to send toll invoices and notices of toll evasions and to process, collect, and review disputes of such invoices and notices; (2) their role as a processing agency, as defined in California Vehicle Code §§40252-40253; (3) the provisions of Civil Code §52.1 precluding them from using threats or coercion (such as fines, loss of property, or loss of use of vehicles) to interfere with the exercise and enjoyment of Plaintiffs and Class Members' statutory and constitutional rights; and (4) the duty of ordinary persons not to collect or attempt collection of funds to which they are not legally entitled, through coercive or unfair process.

286.   Defendants owed a duty to Plaintiffs and Class Members because: (1) they were processing toll violations and notices of violations that were intended to affect Plaintiffs and Class Members; (2) it was easily foreseeable that if such invoices and notices were processed incorrectly or unfairly, Plaintiffs and the Class Members would suffer harm including the loss of their automobiles; (3) there is a high degree of certainty that Plaintiffs and Class Members suffered harm alleged,

ZELDES HAEGGQUIST & ECK, LLP

because fines and DMV holds were imposed on them; (4) Defendants' conduct is closely connected to, and indeed proximately caused, the injuries; (5) a high degree of moral blame attaches to Defendants' conduct because it acted arbitrarily, capriciously, unfairly, and in violation of public policy as described in the Complaint; and (6) there is need to prevent future harm to Plaintiffs and the Class Members.

287.   Defendants breached these duties of care by negligently failing to train their employees; adequately staff themselves; or develop, maintain, and enforce policies, systems, procedures and guidelines, including, without limitation, as follows:

(a)   To provide meaningful toll evasion citation review and to effectively resolve complaints;

(b)   To use "best efforts" to "obtain" accurate information concerning the identity and address of the registered owner for the sending of toll invoices and notice of toll evasion violations;

(c)   To provide vehicle owners with notice of toll violations within 21 days of the violation, the facts associated with the violation, and all required disclosures, including the process for contesting the violation and appealing an adverse decision;

(d)   To provide vehicle owners with notice of delinquency toll evasion violations, including all required disclosures, and the process for contesting the violation and appealing an adverse decision;

(e)   To provide fair, neutral, and adequate administrative review of toll evasion violations and delinquency toll evasion violations in which vehicle owners are permitted to submit evidence; and

(f)   To correct or update their system and databases in a reasonable fashion.

ZELDES HAEGGQUIST & ECK, LLP

Case No. 8:16-cv-00262 AG (JCGx)          FIRST AMENDED CONS CLASS ACTION COMPLAINT

288.   Defendants owed a duty when rolling out a cashless toll System to give adequate notice to consumers of violations. This is particularly true since many persons who use these Toll Roads are out-of-state tourists on vacation.

289.   Defendants have engaged in a pattern and practice of acts of unfair competition in violation of the UCL, including the practices alleged herein.

290.   Defendants issued penalties and tolls against Plaintiffs and the Class Members that were excessive, pursuant to a cashless System designed by Defendants, and based on negligence and errors in design of the Toll Road system.

291.   As a foreseeable and proximate result of Defendants' negligent acts, Plaintiffs and the Class Members were injured, including by being forced to pay exorbitant fees, fines, and penalties; suffering injury to their property and the use and enjoyment of such property; and losing their freedom to move about.

292.   This injury was directly and substantially caused by Defendants' negligence, as alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all Class Members, pray for judgment against Defendants as follows:

A.     That this action and the proposed class be certified and maintained as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.     For actual damages, restitution, and all other appropriate legal and equitable relief;

C.     For declaratory relief;

D.     For pre-judgment and post-judgment interest;

E.     For civil penalties, as requested herein;

F.     For punitive and exemplary damages, as requested herein;

ZELDES HAEGGQUIST & ECK, LLP

G.     For attorneys' fees and costs pursuant, inter alia, to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5, Civil Code §§1788.17 and 1788.30(c), California Streets and Highways Code §31490, and 15 U.S.C. §1681n(a);

H.     For appropriate injunctive relief;

I.     For statutory damages in the amount of no less than $2,500 or $4,000 (as applicable) per provision of each of Plaintiffs' and Class Members' PII to Unauthorized Parties, and more as allowed, pursuant to California Streets and Highways Code §31490; and

J.     For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members hereby demand a trial by jury on all causes of action so triable.

Dated: January 17, 2017          ZELDES HAEGGQUIST & ECK, LLP
                                 HELEN I. ZELDES (220051)
                                 ALREEN HAEGGQUIST (221858)
                                 AARON M. OLSEN (259923)


                                 By          /s/Helen I. Zeldes
                                        HELEN I. ZELDES

                                 225 Broadway, Suite 2050
                                 San Diego, CA  92101
                                 Telephone: (619) 342-8000
                                 Facsimile: (619) 342-7878
                                  helenz@zhlaw.com
                                  alreenh@zhlaw.com
                                  aarono@zhlaw.com

                                 Attorneys for Plaintiffs Todd Quarles, Todd Carpenter, Lori Myers, and Interim Co-Lead Class Counsel

ZELDES HAEGGQUIST & ECK, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ZELDES HAEGGQUIST & ECK, LLP

LINDEMANN LAW FIRM, APC
BLAKE J. LINDEMANN (255747)
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile: (310) 300-0267
  blake@lawbl.com

Attorneys for Plaintiffs Penny Davidi Borsuk,
David Coulter, James Watkins, and Interim
Co-Lead Class Counsel

CUNEO GILBERT & LADUCA LLP
MICHAEL J. FLANNERY (196266)
MATTHEW T. PREWITT (291593)
7733 Forsyth Boulevard, Suite 1675
Clayton, MO 63105
Telephone: (314) 226-1015
Facsimile: (202) 789-1813
  mflannery@cuneolaw.com
  mprewitt@cuneolaw.com

Attorneys for Plaintiffs Ebrahim E. Mahda,
Dan Golka, and Interim Co-Lead Class
Counsel

SCHONBRUN SEPLOW HARRIS
  & HOFFMAN, LLP
PAUL L. HOFFMAN (71244)
723 Ocean Front Walk, Suite 100
Venice, CA 90291
Telephone: (310) 396-0731
Facsimile: (310) 399-7040
  hoffpaul@aol.com

Attorneys for Plaintiffs Todd Quarles, Todd
Carpenter, and Lori Myers

76

ZELDES HAEGGQUIST & ECK, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGINS LAW FIRM
GAIL J. HIGGINS (164989)
9663 Santa Monica Blvd., Suite 149
Beverly Hills, CA 90210
Telephone:  (213) 999-2351
Facsimile:  (310) 388-1018
  ghigginse@aol.com

Attorneys for Plaintiffs Penny Davidi Borsuk,
David Coulter, and James Watkins

AUDET & PARTNERS, LLP
MICHAEL McSHANE (127944)
S. CLINTON WOODS (246054)
711 Van Ness Ave., Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
  mmcshane@audetlaw.com
  cwoods@audetlaw.com

AARON DOLGIN LAW OFFICES
AARON DOLGIN (101652)
19831 Redwing Street
Woodland Hills, CA 91364
Telephone: (818) 515-0573
  dolgin1@juno.com

Attorneys for Plaintiffs Ebrahim E. Mahda
and Dan Golka

Case No. 8:16-cv-00262 AG (JCGx)        FIRST AMENDED CONS CLASS ACTION COMPLAINT

1

## CERTIFICATE OF SERVICE

2

  I hereby certify that on January 17, 2017, I electronically filed the foregoing

3

with the Clerk of the Court using the CM/ECF system which will send notification

4

of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

5

  I certify under penalty of perjury under the laws of the United States of

6

America that the foregoing is true and correct. Executed on January 17, 2017.

7

8

        /s/Helen I. Zeldes
        HELEN I. ZELDES

9

10

       ZELDES HAEGGQUIST & ECK, LLP
       HELEN I. ZELDES (220051)

11

       225 Broadway, Suite 2050
       San Diego, CA 92101

12

       Telephone: 619-342-8000

13

       Facsimile: 619-342-7878
       helenz@zhlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*ZELDES HAEGGQUIST & ECK, LLP*