NOSSAMAN LLP
E. GEORGE JOSEPH (SBN 110797)
gjoseph@nossaman.com
BENJAMIN Z. RUBIN (SBN 249630)
brubin@nossaman.com
ASHLEY J. REMILLARD (SBN 252374)
aremillard@nossaman.com
STEPHANIE N. CLARK (SBN 299657)
sclark@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878

ATTORNEYS FOR DEFENDANTS
FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY, SAN
JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY; RHONDA
REARDON; MICHAEL KRAMAN; CRAIG YOUNG; SCOTT SCHOEFFEL;
AND ROSS CHUN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOLL ROADS LITIGATION<br><br>———————————————<br>PENNY DAVIDI BORSUK; DAVID COULTER; EBRAHIM E. MAHDA; TODD QUARLES; TODD CARPENTER; LORI MYERS; DAN GOLKA; and JAMES WATKINS on Behalf of Themselves and All Others Similarly Situated,<br><br>           Plaintiffs,<br><br>       vs.<br><br>FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY; SAN JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY; ORANGE COUNTY TRANSPORTATION AUTHORITY; 3M COMPANY; BRiC-TPS LLC; RHONDA REARDON; MICHAEL KRAMAN; CRAIG YOUNG; SCOTT SCHOEFFEL; ROSS CHUN; DARRELL JOHNSON; LORI DONCHAK; WILLIAM P. DUFFY; COFIROUTE USA, LLC; and DOES 3-10, inclusive,<br><br>           Defendants. | Case No: 8:16-cv-00262 AG (JCGx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY, SAN JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY, RHONDA REARDON, MICHAEL KRAMAN, CRAIG YOUNG, SCOTT SCHOEFFEL, ROSS CHUN, 3M COMPANY, BRIC-TPS LLC, AND WILLIAM P. DUFFY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE FIFTH CLAIM FOR RELIEF**<br><br>Date:       October 23, 2017<br>Time:      10:00 a.m.<br>Judge:     Hon. Andrew J. Guilford<br>Courtroom:   10D<br>Complaint Served: Jan. 15, 2016<br>Removed: Feb. 16, 2016 |

## <u>TABLE OF CONTENTS</u>

<u>Page:</u>

1. INTRODUCTION. ............................................................................. 1

2. CALIFORNIA'S TOLL ROAD STATUTES ................................................ 3

    2.1   Toll agencies are required to use PII to inform vehicle owners of toll violations and attempt to collect tolls. ......................................... 3

    2.2   Section 31490 was enacted to prevent toll agencies from providing PII to third parties for marketing and other inappropriate uses. ..................... 5

3. PLAINTIFFS DO NOT HAVE ANY CLAIM FOR STATUTORY DAMAGES AGAINST DEFENDANTS UNDER SECTION 31490. ............ 7

    3.1   Statutory damages are available only under Section 31490(q), and only if an agency knowingly sells or other provides PII to another entity in violation of Section 31490(a). .................................................... 8

    3.2   Plaintiffs cannot prove any violation of Section 31490(a). ...................... 8

        3.2.1   Using PII to collect and enforce tolls does not violate Section 31490(a). ....................................................................9

            3.2.1.1.   The text of Section 31490 repeatedly indicates the intent to allow toll agencies to use PII to collect and enforce tolls. ...........................................................9

            3.2.1.2.   The legislative history shows that Section 31490 is intended to allow toll agencies to use PII to collect and enforce tolls. ......................................................12

            3.2.1.3.   The broader statutory context confirms that Section 31490 allows toll agencies to use PII to collect and enforce tolls. ......................................................13

            3.2.1.4.   It would be absurd to interpret Section 31490 as imposing a statutory penalty on the use of PII to collect and enforce tolls. ....................................15

        3.2.2   Transmitting PII within and between transportation agencies does not violate Section 31490(a). ........................................16

        3.2.3   Transmitting PII to a requesting law enforcement agency does not violate Section 31490(a). ...............................................17

    3.3   Plaintiffs' claims that Defendants violated other provisions of Section 31490 do not implicate alleged selling or otherwise providing PII to another entity, and hence they cannot support statutory damages. ......... 17

        3.3.1   Communicating with customers does not involve selling or otherwise providing PII to another entity. ......................................18

        3.3.2   Creating and posting a privacy policy does not involve selling or otherwise providing PII to another entity. ........................................20

4. DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFFS' CLAIM FOR STATUTORY DAMAGES AS TO EVERY USE OF PLAINTIFFS' PII. ............................ 21

i

5.  CONCLUSION. ................................................................................................ 25

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

**Page(s):**

**Cases**

*City of Colton v. Am. Promotional Events, Inc.-W.*,
   614 F.3d 998 (9th Cir. 2010) ................................................................. 8

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
   62 Cal. Rptr. 2d 620 (Cal. Ct. App. 1997) ......................................... 8

*Doe v. GTE Corp.*,
   347 F.3d 655 (7th Cir. 2003) ............................................................. 19

*Donaldson v. United States*,
   653 F.2d 414 (9th Cir. 1981) ............................................................. 14

*Elsenheimer v. Elsenheimer*,
   22 Cal. Rptr. 3d 447 (Cal. Ct. App. 2004) ....................................... 11

*Even Zohar Const. & Remodeling, Inc. v. Bellaire Townhouses, LLC*,
   352 P.3d 391 (Cal. 2015) ................................................................... 11

*Grindstone Butte Project v. Kleppe*,
   638 F.2d 100 (9th Cir. 1981) ............................................................. 14

*Hernandez v. Williams, Zinman & Parham PC*,
   829 F.3d 1068 (9th Cir. 2016) ........................................................... 13

*Imperial Merch. Servs., Inc. v. Hunt*,
   212 P.3d 736 (Cal. 2009) ....................................................... 12, 13, 15

*Kaatz v. City of Seaside*,
   49 Cal. Rptr. 3d 95 (Cal. Ct. App. 2006) ......................................... 10

*Lungren v. Deukmejian*,
   755 P.2d 299 (Cal. 1988) ................................................................... 12

*Maracich v. Spears*,
   133 S. Ct. 2191 (2013) ...................................................................... 10

*Martin v. Holiday Inns, Inc.*,
   245 Cal. Rptr. 717 (Cal. Ct. App. 1988) .......................................... 10

iii

*Moradi–Shalal v. Fireman's Fund Ins. Cos.*,
   758 P.2d 58 (Cal. 1988) ........................................................................ 8

*People v. Garcia*,
   365 P.3d 928 (Cal. 2016) ..................................................................... 10

*People v. Jenkins*,
   893 P.2d 1224 (Cal. 1995) ................................................................... 13

*Poole v. Orange Cty. Fire Auth.*,
   354 P.3d 346 (Cal. 2015) ..................................................................... 10

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) .............................................................................. 8

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
   444 U.S. 11 (1979) ................................................................................ 8

**Statutes**

Cal. Gov't Code § 911.2 ........................................................................ 22

Cal. Gov't Code § 12419.10 ......................................................... 5, 22, 23

Cal. Gov't Code § 12419.12 ............................................................. 5, 23

Cal. Penal Code § 1524.2(a)(2)(A)-(E) ................................................ 24

Cal. Sts. & High. Code § 31490 ................................................... *passim*

Cal. Veh. Code § 4760 .......................................................................... 22

Cal. Veh. Code § 4766 .......................................................................... 22

Cal. Veh. Code § 4767 .......................................................................... 15

Cal. Veh. Code § 4770 ................................................................. 4, 14, 22

Cal. Veh. Code § 4773 .......................................................................... 15

Cal. Veh. Code § 4774 .......................................................................... 14

Cal. Veh. Code § 23302 .......................................................................... 3

Cal. Veh. Code § 23302.5 ....................................................................... 3

iv

Cal. Veh. Code § 40002.1 ................................................................. 22

Cal. Veh. Code § 40220 ................................................................... 22

Cal. Veh. Code § 40250 ................................................................. 3, 4

Cal. Veh. Code § 40254 ............................................................... 3, 13

Cal. Veh. Code § 40255 ..................................................................... 4

Cal. Veh. Code § 40265 ............................................................... 4, 14

Cal. Veh. Code § 40267 ............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................... 21

Merriam-Webster Dictionary, http://www.merriam-
webster.com/dictionary/provide ...................................................... 10

U.S. Const. art. VI, cl. 2 ................................................................. 17

## 1. INTRODUCTION.

Plaintiffs claim that a toll agency's routine operation of a toll road triggers billions of dollars in statutory damages that the toll agency must pay to toll violators under Streets & Highways Code § 31490 ("Section 31490").[1] For example, Plaintiffs argue that every time a toll agency tries to collect a toll from a violator by transmitting a license plate number to the Department of Motor Vehicles ("DMV"), it breaches the privacy provision of Section 31490(a), triggering statutory damages of at least $2,500 under Section 31490(q). Under this absurd view of the law, toll roads would cease to exist, as violators could never be pursued, and toll agencies would have to pay thousands of dollars in statutory damages every time they tried to collect a toll from someone who broke the law.

Defendants[2] move for partial summary judgment against Plaintiffs' claims for statutory damages under Section 31490, brought in Count 5. For the following reasons, the Court should grant the motion.

**A. Toll agencies do not incur statutory damages under Section 31490(a) and (q) by using PII to collect and enforce tolls and penalties.** Section 31490 was enacted in 2011 to prevent toll agencies from providing drivers' personally identifiable information ("PII") to third parties for inappropriate use by those parties unrelated to operation of the toll roads. Section 31490(a) implements that core purpose by stating that "a transportation agency may not ***sell or otherwise provide*** to any other person or entity [PII] of any person . . . who uses a toll bridge, toll lane, or toll highway that employs an electronic collection system." *Id.* (emphasis added). Section 31490(q) creates a matching private right of action, providing that a person "whose [PII] has been ***knowingly sold or otherwise provided***" in violation of the statute may sue for statutory damages. *Id.* (emphasis

---

[1] Unless otherwise indicated, all code references are to California codes.
[2] The movants are Foothill/Eastern Transportation Corridor Agency, San Joaquin Hills Transportation Corridor Agency, Rhonda Reardon, Michael Kraman, Craig Young, Scott Schoeffel, and Ross Chun (collectively, "TCA"), 3M Company, BRiC-TPS LLC, and William P. Duffy (collectively "Defendants").

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | added).

2 |      Plaintiffs argue that Defendants violate Section 31490(a) whenever they

3 | transmit license plate numbers and other PII to the DMV and other entities in the

4 | course of their ordinary operations, taking steps to collect and enforce tolls. This

5 | argument fails as a matter of law, as multiple statutes authorize toll agencies to use

6 | driver information to collect unpaid tolls, and additional statutes require the DMV

7 | and other agencies to assist in the collection process. Section 31490 does not repeal

8 | those statutes. Indeed, Section 31490's author repeatedly declared that its

9 | enactment would not hinder toll enforcement or operations.

10 |      In addition, Section 31490(l) defines "transportation agency" to make it

11 | clear that using PII to operate the toll roads is not providing it to an "other entity"

12 | in violation of Section 31490(a). A "transportation agency" is defined to include

13 | not just "any entity operating a toll bridge, toll lane, or toll highway within the

14 | state" but also "any entity under contract with such an entity." Thus, when toll

15 | agencies share PII with entities that they contract with to operate the toll roads,

16 | they are keeping the PII within the "transportation agency" for purposes of Section

17 | 31490(a) and are *not* providing it to an "other entity" in violation of that section.

18 |      To implement the clear legislative intent to allow toll agencies to use PII to

19 | perform the ordinary activities required to operate and manage toll roads, the Court

20 | should hold that those activities do not violate Section 31490(a) and therefore do

21 | not give rise to statutory damages under Section 31490(q).

22 |      **B. Statutory damages are not available for violations of Section 31490**

23 | **that do not involve providing PII to third parties for their benefit.** Plaintiffs

24 | argue that they are entitled to statutory damages for alleged violations of Section

25 | 31490 beyond subsection (a), but that is incorrect. The language of Section

26 | 31490(q) limits statutory damages to instances where an agency "knowingly sold

27 | or otherwise provided" PII to third parties in violation of the statute. This language

28 | precisely mirrors the language in Section 31490(a), and it does not cover alleged

2

1   violations of Section 31490 where PII is not provided to a third party, such as

2   alleged violations of subsection (b) (related to privacy policies) or subsection (j)

3   (governing communications with toll-road subscribers). The Court should therefore

4   hold that statutory damages are not available under these subsections.

5   **C. Plaintiffs lack standing to pursue several aspects of their Section**

6   **31490 claims.** Finally, it has become clear that Plaintiffs were not subject to many

7   of the practices they attempt to challenge under Section 31490, such as sharing PII

8   to obtain a civil judgment. The Court should hold that Plaintiffs lack standing to

9   challenge these practices.

10   In short, the undisputed facts and law demonstrate that Plaintiffs have no

11   claim for statutory damages under Section 31490(q), and that they lack standing to

12   pursue various aspects of their Section 31490 claims. Thus, the Court should grant

13   partial summary judgment in favor of Defendants.

14   **2.    CALIFORNIA'S TOLL ROAD STATUTES.**

15   Toll agencies operate under an extensive statutory regime that requires them

16   to use license plate numbers and other PII to collect tolls, but limits their ability to

17   sell or provide that information to third parties for purposes unrelated to toll-road

18   operation unless it falls within a specific exception.

19   **2.1   Toll agencies are required to use PII to inform vehicle owners of toll**

20   **violations and attempt to collect tolls.**

21   It is a violation of California law for a driver to evade or refuse to pay a toll

22   on a toll road. Veh. Code §§ 23302, 23302.5, 40250. If a toll agency finds, "by

23   automated devices, by visual observation, or otherwise," that a vehicle has "evaded

24   tolls on any toll road," the agency is required to send a notice of the violation "to

25   the registered owner" of the vehicle. *Id.* § 40254(a). The notice of violation must

26   include, among other things, the "vehicle license plate number" and, if practicable,

27   "the registration expiration date and the make of the vehicle." *Id*.

28   To send the required "notice of violation," a toll agency uses license plate

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  numbers—the only information about the violators it initially has—to obtain

2  registered-owner name and address information from entities such as the DMV.

3  *See* Veh. Code. § 40250(e)(2)(B). If an owner contests a toll and the dispute

4  reaches an administrative hearing, the toll agency may use the "information

5  received from the [DMV] identifying the registered owner of the vehicle" to

6  establish the validity of the toll. *Id.* § 40255(b)(4). Similarly, if a person submits an

7  "affidavit of nonliability" indicating that the vehicle was sold or transferred before

8  the date of the violation, the toll agency is required to "obtain verification from the

9  [DMV] that the registered owner" has submitted a proper notice of the sale. *Id.*

10 § 40265(a).

11     If a toll remains unpaid following delivery of the violation notices, the

12 Vehicle Code states that a toll agency "*shall* proceed under one or more of the

13 following options to collect an unpaid toll evasion penalty . . . ." Veh. Code

14 § 40267 (emphasis added). The first collection option is for the toll agency to "file

15 an itemization of unpaid toll evasion penalties and administrative and service fees

16 with the [DMV] for collection with the registration of the vehicle." *Id.* § 40267(a).

17 If such an itemization, called a "DMV hold," is filed, the DMV must "refuse to

18 renew the registration of a vehicle . . . unless the full amount of all outstanding toll

19 evasion penalties and administrative fees" is paid. *Id.* § 4770(a). The second

20 collection option is to "file proof of [the unpaid tolls and penalties] with the court

21 with the same effect as a civil judgment." *Id.* § 40267(b)(1) (for amounts due in

22 excess of $400); *see also id.* § 40267(c) (authorizing a similar process when

23 amounts due are less than $400). Once the judgment is entered, "[e]xecution may

24 be levied and other measures may be taken for the collection of the judgment as are

25 authorized for the collection of an unpaid civil judgment entered against a

26 defendant in an action on a debt." *Id.* § 40267(b)(1). The third collection option is

27 to "contract with a collection agency to collect unpaid toll evasion penalties, fees,

28 and charges." *Id.* § 40267(d).

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Finally, in conjunction with one or more of the options above, a toll agency

2    can notify the Franchise Tax Board ("FTB") of unpaid toll and penalty amounts.

3    Gov. Code §§ 12419.10(a)(1), 12419.12(a)(1). The FTB is then required to

4    "offset" that amount from any tax refund or lottery winnings. *Id.*

5    **2.2    Section 31490 was enacted to prevent toll agencies from providing PII**

6    **to third parties for marketing and other inappropriate uses.**

7    In 2010, California State Senator Joseph Simitian became concerned that

8    driver and owner information acquired for "toll collection uses" could be given to

9    third parties "for marketing purposes, or other inappropriate uses." Decl. of Ben

10   Rubin ("Rubin Decl.") ¶ 3, Ex. 1; *see also id.* ¶ 3, Ex. 2. Senator Simitian

11   introduced Senate Bill 1268, later codified as Section 31490, to address that

12   concern.

13   Section 31490's core provision states that, "[e]xcept as otherwise provided

14   in this section, a transportation agency may not sell or otherwise provide to any

15   other person or entity [PII] of any person . . . who uses a toll bridge, toll lane, or

16   toll highway that employs an electronic collection system." Sts. & High. Code

17   § 31490(a). PII is defined to mean "any information that identifies or describes a

18   person including, but not limited to, travel pattern data, address, telephone number,

19   e-mail address, license plate number, photograph, bank account information, or

20   credit card number." *Id.* § 31490(o). Entities that a transportation agency has a

21   "contract with" are defined by statute to be part of the agency for purposes of

22   Section 31490 (*id.* § 31490(l)) so providing PII to them is not providing it to

23   another "person or entity" under Section 31490(a).

24   In discussing Section 31490, the legislators repeatedly acknowledged and

25   approved of toll agencies' use of PII to collect tolls and penalties from toll

26   violators.[3] As one committee noted, "[i]f your vehicle does not have a toll tag, the

27   
28   _____
     [3] Rubin Decl. ¶ 3, Ex. 3 ("[t]he bill generally permits the release of the information to other transportation agencies in order to allow for interoperability of the systems"); *id.* ¶ 3, Ex. 2 (noting that "video cameras . . . capture vehicles' license

system classifies you as a violator and cameras take photos of your vehicle and your license plate for processing." Rubin Decl. ¶ 3, Ex. 5.

Senator Simitian explained shortly after he introduced the bill that it "<u>does not</u>: . . . Prohibit a transportation agency, or its designee, from performing financial and accounting functions such as billing, account settlement, enforcement, or other financial activities required to operate and manage toll facilities." Rubin Decl. ¶ 3, Ex. 1 (underline in original). He also emphasized that the bill does not prohibit "a transportation agency from sharing data with another transportation agency solely to comply with interoperability specifications and standards." *Id.*

In April 2010, the Senate Judiciary Committee specifically recognized that transportation agencies have the right to obtain name and address information from the DMV for purposes of collecting tolls: "In the event that the transportation agency captures a user's license plate, however, the agency is able, through the [DMV], to obtain [PII] (such as name and address) about the user." Rubin Decl. ¶ 3, Ex. 5. The Committee expressed no intent to prohibit these collection efforts. *Id.*

The next month, the Senate Rules Committee declared that "the bill does not prohibit a transportation agency from . . . billing, account settlement, enforcement, or other financial activities required to operate and manage the toll facilities." Rubin Decl. ¶ 3, Ex. 2. The Committee also identified "[s]haring data with another transportation agency solely to comply with interoperability specifications and standards" as another expressly permitted use. *Id.* When the final version of the bill was before the Committee a few months later, the Committee again confirmed that it did not prohibit sharing information for purposes of billing, toll enforcement, or interoperability. Rubin Decl. ¶ 3, Ex. 4.

In his position paper supporting the final version of the bill, Senator Simitian made it unmistakably clear that Section 31490 would not prohibit toll agencies

plates to identify toll evaders," and describing "FasTrak-type systems," "pay-by-plate toll payment," and "pre-paid account"); *id.* ¶ 3, Ex. 4 (same).

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  from sending PII to other entities to collect and enforce tolls:

2  **Argument 4**: What if operators have an agreement with DMV about

3  the use of [PII] the toll agency obtains when attempting to determine

4  the name and address of a vehicle's registered owner when it failed to

5  pay a toll for purposes of issuing a notice of toll violation?

6  **Rebuttal 1**: The bill does not prohibit a transportation agency, or its

7  designee, from performing financial and accounting functions such as

8  billing, account settlement, _enforcement_, or other financial activities

9  required to operate and manage toll facilities. [see subdivision (i) on

10  page 5, line 1]

11  Rubin Decl. ¶ 3, Ex. 6 (alterations and brackets in original). Likewise, Senator

12  Simitian explained that the bill would not "negatively effect [sic] existing

13  agreements among and between toll operators." _Id._ Rather, "[t]he intent of the bill

14  is to allow toll operators to share data (the way they do currently) so that a

15  subscriber with an account in one jurisdiction can use a toll facility operated by a

16  different agency; while ensuring that the same privacy protections apply

17  throughout the state." _Id._

18  **3.   PLAINTIFFS DO NOT HAVE ANY CLAIM FOR STATUTORY**

19  **DAMAGES AGAINST DEFENDANTS UNDER SECTION 31490.**

20  Plaintiffs each used the toll roads without paying the required tolls. They

21  now claim that they are entitled to statutory damages because Defendants allegedly

22  used their license plate numbers and other PII in the ordinary course of operating

23  the toll roads to levy fines. Defendants are entitled to summary judgment on this

24  claim because Section 31490(q) provides statutory damages _only_ for violations of

25  Section 31490 that involve selling or providing information to third parties, which

26  is addressed by Section 31490(a), and the undisputed facts show that Defendants

27  did not violate Section 31490(a). Plaintiffs' remaining allegations do not qualify

28  for statutory damages.

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### 3.1 Statutory damages are available only under Section 31490(q), and only if an agency knowingly sells or other provides PII to another entity in violation of Section 31490(a).

The Legislature both created a private right of action to enforce Section 31490 and placed limits on that right. Private rights of action are created by the legislature and extend only as far as the legislature intends. *See Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 758 P.2d 58, 68 (Cal. 1988); *Crusader Ins. Co. v. Scottsdale Ins. Co*., 62 Cal. Rptr. 2d 620, 626-28 (Cal. Ct. App. 1997). When the legislature places limits on a right of action, the limits must be respected and enforced equally with the right itself. *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 23-25 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-79 (1979); *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1007-08 (9th Cir. 2010).

In Section 31490(q), the Legislature created a private right of action to enforce Section 31490 but limited that right to violations of Section 31490(a). Section 31490(a) provides that a transportation agency "may not ***sell or otherwise provide***" a toll road user's PII "to any other person or entity," and Section 31490(q) provides a matched remedy, stating: "a person whose [PII] has been ***knowingly sold or otherwise provided*** in violation of this section may bring an action." *Id.* (emphasis added). If a person's PII has been wrongly sold or provided once or twice, the person may recover "either actual damages or two thousand five hundred dollars ($2,500) for each individual violation, whichever is greater . . . ." *Id.* § 31490(q)(1). For three or more violations, the penalty increases to $4,000. *Id.* § 31490(q)(2). Section 31490(q) does not, however, impose statutory damages for violations of the statute that do not involve knowingly selling or otherwise providing PII to another person or entity.

### 3.2 Plaintiffs cannot prove any violation of Section 31490(a).

Plaintiffs cannot prove that Defendants committed any violation of Section

31490(a) in connection with Plaintiffs' use of the toll roads.

### 3.2.1  Using PII to collect and enforce tolls does not violate Section 31490(a).

Plaintiffs cannot establish a violation of Section 31490(a) by pointing to Defendants' use of Plaintiffs' PII to collect and enforce tolls. These uses are expressly permitted—indeed, required—by California law.

Plaintiffs argue that Section 31490(a) must be interpreted to prohibit toll agencies from (1) sending license plate numbers to other entities (*e.g.*, the DMV) to obtain vehicle-owner information, (2) sending owner information to the DMV and FTB to collect unpaid tolls, and (3) taking any other step using PII to collect tolls and penalties from violators. Corrected First Am. Consolidated Compl. ("Compl."), ECF No. 119-1, ¶¶ 183-229. This interpretation of Section 31490 violates every precept of statutory interpretation and would bankrupt every toll agency in the State by prohibiting their ordinary operations. The Court should instead interpret Section 31490 to allow toll agencies to use PII to perform their core functions of operating toll roads and collecting and enforcing tolls without being subject to statutory damages.

#### 3.2.1.1.  The text of Section 31490 repeatedly indicates the intent to allow toll agencies to use PII to collect and enforce tolls.

The text of Section 31490 repeatedly reflects the Legislature's intent to allow toll roads to use PII to collect and enforce tolls without being subject to statutory penalties. At their core, Sections 31490(a) and (q) prohibit toll agencies from selling or otherwise providing PII to third parties for marketing and other non-toll related purposes. They do not prohibit the ordinary operation of toll roads.

Plaintiffs seek to give "otherwise provide" in Section 31490(a) an unbounded meaning that forbids any use of PII to collect tolls through the DMV, the FTB, or any other mechanism expressly authorized by statute. *See* Compl.

¶¶ 197-204. But terms that are "capable of many meanings" should be construed "in light of their accompanying words in order to avoid giving [a statute] unintended breadth." *Maracich v. Spears*, 133 S. Ct. 2191, 2201 (2013) (quotations and citations omitted). California courts have applied this principle repeatedly to limit overly broad proposed meanings of general terms, including an overly broad use of the word "other." *See Martin v. Holiday Inns, Inc.*, 245 Cal. Rptr. 717, 719 (Cal. Ct. App. 1988) ("'The words 'other' or 'any other,' following an enumeration of particular classes, are therefore to be read as 'other such like,' and to include only others of like kind or character.'" (citation omitted)); *People v. Garcia*, 365 P.3d 928, 932 (Cal. 2016) (interpreting "room"); *Poole v. Orange Cty. Fire Auth.*, 354 P.3d 346, 350-51 (Cal. 2015) (interpreting files "used for any personnel purposes"); *Kaatz v. City of Seaside*, 49 Cal. Rptr. 3d 95, 111–12 (Cal. Ct. App. 2006) (interpreting "contract"). Moreover, the term "provide," as commonly defined, refers to items that are wanted or needed by other parties for their own use. *E.g., Definition of Provide,* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/provide (last visited Sept. 6, 2017) ("provide" means "to supply or make available (something wanted or needed)").

Here, the phrase "otherwise provide" is used in a statute concerned with preventing the use of PII for inappropriate reasons, and it is used in two provisions that make it impermissible to sell or otherwise provide that PII to others. In this context, "otherwise provide" means to provide PII to a third party for inappropriate use by that party unrelated to the operation of the toll roads. *See* Rubin Decl. ¶ 3, Ex. 8 (there is a need for the bill because "[t]here is a legitimate concern that information originally collected for toll collection uses could be disseminated to other individuals, companies or organizations for marketing purposes, or other inappropriate uses"); *id.,* ¶ 3, Ex. 5 ("There is a legitimate concern that information originally collected for FasTrak uses . . . could be disseminated to other companies or organizations for marketing purposes."); *id.* ¶ 3, Ex. 9 (same).

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    The other subdivisions of Section 31490 make it abundantly clear that

2    subdivision (a) was not intended to prevent toll agencies from collecting and

3    enforcing tolls. For example, Section 31490(c) authorizes a toll agency to store PII

4    as "required to perform account functions such as billing, account settlement, or

5    enforcement activities." *Id.* It would be absurd to assert that the Legislature

6    authorized toll agencies to *store* PII as required for billing, collection, and

7    enforcement but prohibited them from *using* PII for those same purposes.

8    Section 31490(i) makes the same point. It expressly exempts agencies from

9    a duty to destroy PII that is more than four years and six months old when they

10   need to retain the information to perform "financial and accounting functions such

11   as billing, account settlement, enforcement, or other financial activities required to

12   operate and manage the electronic toll collection system." *Id.* Once again, if

13   agencies may *retain* PII for billing, collection, and enforcement, they must be able

14   to *use* PII for the same purposes.

15   Finally, Section 31490(m) defines an "electronic toll collection system" to

16   include a system in which "camera-based vehicle identification" equipment is used

17   "to establish an obligation to pay." *Id.* If a toll agency is allowed to *collect* PII by

18   taking a photo of a license plate number to establish an obligation to pay, it must

19   be permitted to *use* that PII to collect the payment.

20   When interpreting statutory text, "[t]he words of the statute must be

21   construed in context, keeping in mind the statutory purpose, and statutes or

22   statutory sections relating to the same subject must be harmonized, both internally

23   and with each other, to the extent possible." *Elsenheimer v. Elsenheimer*, 22 Cal.

24   Rptr. 3d 447, 449 (Cal. Ct. App. 2004) (citations omitted); *see also Even Zohar*

25   *Const. & Remodeling, Inc. v. Bellaire Townhouses, LLC*, 352 P.3d 391, 396 (Cal.

26   2015) ("[A] court must, where reasonably possible, harmonize statutes, reconcile

27   seeming inconsistences in them, and construe them to give force and effect to all of

28   their provisions" (internal alterations and quotations omitted)). A court should

11

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

"select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results." *Imperial Merch. Servs., Inc. v. Hunt*, 212 P.3d 736, 740 (Cal. 2009). A "construction should not prevail if it is contrary to the legislative intent apparent in the statute." *Lungren v. Deukmejian*, 755 P.2d 299, 304 (Cal. 1988).

Under these principles, Section 31490(a) must be interpreted, consistent with Section 31490(c), (i), and (m), to allow toll agencies to collect and enforce tolls.

### 3.2.1.2. **The legislative history shows that Section 31490 is intended to allow toll agencies to use PII to collect and enforce tolls.**

The intent to allow toll collection and enforcement is equally clear in Section 31490's legislative history.

Shortly after Senator Simitian introduced Section 31490, he emphasized that it would not prohibit toll agencies from using PII for billing and enforcement activities. Rubin Decl. ¶ 3, Ex. 1. Both the Senate Rules Committee and the Senate Judiciary Committee expressed this same intent. *Id.,* ¶ 3, Exs. 2, 4, 5. And Senator Simitian's position paper in support of the final version of the bill made it unmistakably clear that Section 31490 would not prohibit toll agencies from using PII to collect and enforce tolls, explaining:

> The bill does not prohibit a transportation agency, or its designee, from performing financial and accounting functions such as billing, account settlement, <u>enforcement</u>, or other financial activities required to operate and manage toll facilities. [see subdivision (i) on page 5, line 1]

*Id*., ¶ 3, Ex. 6 (alterations and brackets in original).

When the Legislature expanded Section 31490 in 2013 to encompass transit fares, it confirmed that "[e]xisting law"—which included Section 31490—"*permits*

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    a transportation agency to . . . perform financial and accounting functions such as

2    *billing*, account settlement, *enforcement*, or other financial activities required to

3    operate and manage the toll facilities." Rubin Decl. ¶ 3, Ex. 7 (emphasis added).

4         The "canons of statutory construction require that, in construing a statute, a

5    court ascertain the intent of the Legislature so as to effectuate the purpose of the

6    law." *People v. Jenkins*, 893 P.2d 1224, 1231 (Cal. 1995). From start to finish, the

7    Legislature's intent to allow for collection and enforcement of tolls was clear.

8              3.2.1.3.  **The broader statutory context confirms that Section**

9                       **31490 allows toll agencies to use PII to collect and**

10                      **enforce tolls.**

11        The broader statutory context in which Section 31490 was enacted confirms

12   that Section 31490 must be interpreted to allow toll agencies to use PII to collect

13   and enforce tolls.

14        "It is a well-settled rule of statutory construction that, if possible, the codes

15   are to be read together and blended into each other as though there was but a single

16   statute . . . ." *Imperial Merch. Servs., Inc.*, 212 P.3d at 741 (internal quotations and

17   alterations omitted). Each section must be read in context to yield a coherent

18   regulatory scheme that fits all parts into a harmonious whole. *Hernandez v.*

19   *Williams, Zinman & Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016).

20        As detailed above, the Legislature enacted Section 31490 against a backdrop

21   of existing statutes that not only authorize but require toll agencies to use and share

22   PII to obtain the information they need to collect and enforce tolls. For example,

23   the Vehicle Code requires an agency to "forward to the registered owner a notice

24   of toll evasion violation . . . ." Veh. Code § 40254(a). This requires the agency to

25   obtain the violator's name and address, which it can do only by sharing the PII it

26   has (a license plate number) with others, such as the DMV. Similarly, if a person

27   submits an "affidavit of nonliability" indicating that a vehicle was sold or

28   transferred before the date of the violation, the toll agency is required to "obtain

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    verification from the [DMV] that the registered owner" has submitted the proper

2    notice of the sale. *Id.* § 40265(a). This again requires the agency to send PII to the

3    DMV. If a toll and penalty remain unpaid and undisputed, the Vehicle Code states

4    that the agency "*shall* proceed under one or more options to collect" it. *Id.* § 40267

5    (emphasis added). All of these options, as detailed above, require sharing PII in the

6    form of name, address, registration, or other information with entities such as the

7    DMV, the FTB, or a court.

8         By arguing that Section 31490 not only prohibits toll agencies from using

9    PII to collect and enforce tolls, but imposes statutory damages for doing so,

10   Plaintiffs are asking this Court to hold that Section 31490 repealed all these other

11   provisions of the Vehicle and Government Codes. But Section 31490 says nothing

12   about repealing other laws, and "[r]epeals by implication . . . are not favored and

13   will only be found when the new statute is clearly repugnant, in words or purpose,

14   to the old statute, and when Congressional intent to repeal is clear." *Grindstone*

15   *Butte Project v. Kleppe*, 638 F.2d 100, 102 (9th Cir. 1981) (internal quotations and

16   citation omitted). When two statutes are capable of coexisting, they should be

17   interpreted in a way that allows each to be effective. *Donaldson v. United States*,

18   653 F.2d 414, 418 (9th Cir. 1981). Here, Section 31490 can readily be made

19   consistent with the other code provisions by interpreting it to allow toll agencies to

20   share PII for the purpose of collecting and enforcing tolls.

21        Moreover, if the Legislature had intended for Section 31490 to repeal all

22   these other statutes, that intent would have been expressed in the legislative history

23   and manifested in subsequent amendments to those other statutes. But this is not

24   what happened. Rather, the Legislature has repeatedly affirmed the validity of

25   sharing PII for purposes of toll collection and enforcement.

26        For example, Vehicle Code sections 4770-4775 require the DMV to place a

27   hold on a vehicle's registration until tolls and penalties are paid. Long after the

28   Legislature passed Section 31490, it amended Vehicle Code Section 4774(a), and

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

the amended version continues to authorize toll agencies to file DMV holds, affirming the ability of toll agencies to share PII with the DMV.

After it passed Section 31490, the Legislature enacted Vehicle Code section 4767 to prevent toll violators from transferring a vehicle's registration to a family member to avoid paying tolls and penalties. The Senate Floor Analysis explains that this "closes a loophole that allows a scofflaw to continue registering his/her vehicle without paying delinquent parking or toll evasion citations" and should "help cities, counties, and toll road operators to collect unpaid citations." Rubin Decl. ¶ 4, Ex. 10. This again affirms the use of PII to collect tolls.

Even more recently, Assembly Bill 516, approved by Governor Brown on July 25, 2016, requires the DMV to develop an electronic system to track vehicle sales so that "vehicles are identifiable to . . . toll operators during the period between the point of sale and when permanent license plates are received by the purchaser." Rubin Decl. ¶ 5, Ex. 11. The bill also authorizes the DMV to charge toll agencies a fee to pay for this new system. *Id.*; *see also* Veh. Code § 4773 (codifying AB 516). The Senate Floor Analysis explained that "[t]he major beneficiaries of this bill are tolling agencies, which will recoup tens of millions of dollars in lost revenue. The major losers are the toll evaders, who will now have to pay like everyone else." Rubin Decl. ¶ 6, Ex. 12. Once again, this affirms toll agencies' ability to share PII with other entities to collect tolls.

In sum, the post-Section 31490 legislative enactments reinforce the inexorable conclusion that Section 31490 does not ban or impose statutory penalties on the use of PII to collect and enforce tolls.

3.2.1.4. **It would be absurd to interpret Section 31490 as imposing a statutory penalty on the use of PII to collect and enforce tolls.**

Courts are supposed "to avoid a construction that would lead to unreasonable, impractical, or arbitrary results." *Imperial Merch. Servs., Inc.*, 212

P.3d at 740. But unreasonable, impractical, and arbitrary are the only ways to describe Plaintiffs' interpretation of Section 31490.

Under Plaintiffs' view, a toll agency that sends a license plate number to the DMV to get the registered owner's name and address violates Section 31490(a) and is subject to a $2,500 penalty under Section 31490(q)(1). If the toll agency uses that information to place a DMV vehicle registration hold, it is subject to another penalty. If it follows state law and files an offset request with the FTB to collect the toll and penalty from the owner's tax refund, it is subject to yet another penalty, now $4,000. Since a license plate number is PII under Section 31490(o), and since a toll agency must use that number as part of *any* process to collect and enforce a toll, Plaintiffs' interpretation would put toll roads out of business.

### 3.2.2  Transmitting PII within and between transportation agencies does not violate Section 31490(a).

There are two additional reasons why Plaintiffs cannot establish a violation of Section 31490(a) by pointing to the transmission of PII within or between transportation agencies: (1) transmission within an agency does not fall within Section 31490(a)'s plain language; and (2) transmission between agencies is expressly allowed by Sections 31490(i) and (p).

As to transmission within an agency, Section 31490(a) applies only if a transportation agency provides PII to "any *other* person or entity." *Id.* (emphasis added). There is no prohibition on a transportation agency transmitting PII internally, and Section 31490(l) defines "transportation agency" broadly to include not just "any entity operating a toll bridge, toll lane, or toll highway within the state," but also "*any entity under contract with any of the above entities*." *Id.* (emphasis added). Thus, any entity that contracts with TCA to help it perform its duties of assessing, collecting, and enforcing tolls is considered to be part of the transportation agency for purposes of Section 31490. It is undisputed that TCA has contracts with all of the entities that it uses to facilitate toll road operations. Defs.'

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 73.

2  Transmitting PII to those entities is permitted—not prohibited—by Section 31490.

3       In addition, transportation agencies are expressly allowed to share PII with

4  other transportation agencies. Section 31490(i) provides for the "sharing of data

5  between transportation agencies for the purpose of interoperability between those

6  agencies," and Section 31490(p) defines "interoperability" as "the sharing of data,

7  *including [PII], across multiple transportation agencies* for the sole purpose of

8  creating an integrated transit fare payment system, integrated toll payment system,

9  or both." Sts. & High. Code §§ 31490(i), (p) (emphasis added); *see also* Rubin

10  Decl. ¶ 3, Ex. 1 (legislative history stating that the bill does not prohibit "a

11  transportation agency from sharing data with another transportation agency solely

12  to comply with interoperability specifications and standards"). Thus, to the extent

13  that Defendants transmit PII to another transportation agency for purposes of

14  interoperability under Section 31490(i), they do not violate Section 31490(a). *See*

15  Order on Mots. to Dismiss Consolidated Class Action Compl., Dkt. 116 at 9.

16       **3.2.3  Transmitting PII to a requesting law enforcement agency does**

17              **not violate Section 31490(a).**

18       Finally, to the extent that Plaintiffs claim that Defendants violate Section

19  31490(a) by responding to law enforcement requests, that claim is baseless.

20  Section 31490(e) states that a "transportation agency may make [PII] of a person

21  available to a law enforcement agency" pursuant to a search warrant or when

22  exigent circumstances exist. Transportation agencies may also provide PII when

23  required by federal law. U.S. Const. art. VI, cl. 2. Defendants' transmission of PII

24  in such circumstances does not give rise to liability under Section 31490(q).

25       **3.3  Plaintiffs' claims that Defendants violated other provisions of Section**

26          **31490 do not implicate alleged selling or otherwise providing PII to**

27          **another entity, and hence they cannot support statutory damages.**

28       Plaintiffs challenge two other aspects of Defendants' use of PII, but those

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1   challenges do not involve allegations that Defendants "knowingly sold or

2   otherwise provided" PII to another entity, and hence they cannot support statutory

3   damages under Section 31490(q).

4       ### 3.3.1  Communicating with customers does not involve selling or

5       ### otherwise providing PII to another entity.

6       First, Plaintiffs complain about Defendants' use of PII to communicate with

7   Plaintiffs themselves. This claim does not qualify for statutory damages because

8   communications between a toll agency and its customers does not involve selling

9   or otherwise providing PII to another entity under Section 31490(q).

10      Section 31490(j) governs a transportation agency's use of PII to

11  communicate with its customers and provides as follows:

12      This section does not prohibit a transportation agency from

13      communicating, ***either directly or through a contracted third-party***

14      ***vendor***, to subscribers of an electronic toll collection system . . .,

15      using [PII] limited to the subscriber's name, address, and electronic

16      mail address, provided that the transportation agency has received the

17      subscriber's express written consent to receive the communications.

18  *Id.* (emphasis added).

19      As demonstrated above, a transportation agency's vendors are defined to be

20  part of the agency itself under Section 31490(l), and hence transmitting PII to a

21  vendor does not violate Section 31490(a)'s prohibition on providing PII to an

22  "other entity." Section 31490(j) makes this doubly clear with respect to

23  communications with customers, expressly permitting communications "either

24  directly or through a contracted third-party vendor." And of course, providing a

25  customer's PII to that customer does not violate the statute. Plaintiffs therefore

26  cannot use customer communications to prove any violation of Section 31490(a).

27      Section 31490(j)'s reference to third-party vendors makes perfect sense,

28  because third parties are used by every government agency in the United States to

transmit communications. For example, public agencies use the U.S. Postal Service to transmit paper communications, the telephone company to transmit oral communications, and companies like Microsoft Outlook and iContact to transmit email communications. It would be absurd to deny transportation agencies the ability to use vendors to assist with communications, just as it would be absurd to penalize vendors for helping transportation agencies do something the agencies themselves are permitted to do. *Cf. Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) ("Just as the telephone company is not liable as an aider and abettor for [illegal items] sold by phone, and the Postal Service is not liable for [illegal items] sold (and delivered) by mail, so a web host cannot be classified as an aider and abettor of criminal activities conducted through access to the Internet.").

Here, TCA periodically uses PII to communicate with its customers regarding road alerts, promotions, road use, newsletters, information about TCA, the toll roads rewards program, and account maintenance. SUF ¶ 29. TCA utilizes contracted vendors—iContact and the mail houses (QuestMark Information Management, Inc., CSG Systems, Inc. or DataProse, Inc., depending on the relevant time period)—to facilitate sending these customer communications. SUF ¶ 65. Contrary to Plaintiffs' unsupported allegations, TCA does not share, and has never shared, PII with any local businesses, including Bristol Farms, Sea World, Yogurtland, or other similar entities. SUF ¶ 75.

TCA's use of contracted vendors to communicate with the TCA's own customers falls squarely within Section 31490(j) and squarely outside Section 31490(a).[4] Accordingly, TCA's communications to its customers do not violate Section 31490(a) and cannot support a claim for statutory damages.

---

[4] TCA acknowledges that whether it received express written consent from each customer with respect to customer communications involves a disputed issue of fact. Accordingly, Defendants have not moved for summary judgment regarding this issue, and it is not currently before the Court. However, resolution of that factual issue is not required for purposes of this motion, because the undisputed facts demonstrate that TCA's communications with its customers do not violate Section 31490(a), and thus there can be no liability under Section 31490(q).

### 3.3.2 Creating and posting a privacy policy does not involve selling or otherwise providing PII to another entity.

Plaintiffs allege that TCA's privacy policy does not comply with Section 31490(b). But this cannot sustain a claim for statutory damages, because creating and posting a privacy policy does not involve selling or otherwise providing PII to another person or entity under Section 31490(q). Defendants are therefore entitled to summary judgment on Plaintiffs' claim of entitlement to statutory damages based on TCA's privacy policy.

In addition, Defendants are entitled to summary judgment on the merits because the undisputed factual record shows that TCA's privacy policy satisfies each of the five requirements of Section 31490(b).

First, TCA's privacy policy explains that TCA needs to know "personal information" about its customers and that the information it gathers includes a customer's "first and last name, address, telephone number, email address, vehicle information and license plate number, credit card number and/or other bank account or payment information, billing address, and other basic account information required to perform account functions such as billing, account settlement, or enforcement activities." SUF ¶ 66. This satisfies Section 31490(b)(1).[5]

Second, TCA's privacy policy explains that customer information may be "use[d]" and "disclose[d]" to "third party entities such as law enforcement, government entities, and other FasTrak toll operators as deemed necessary" to, among other things, "[h]elp [TCA] process claims and other transactions," "[h]elp us run our [toll road] business," "process data and financial transactions," and "comply with the law." SUF ¶ 67. The policy also states that TCA may need to contact "other sources" to obtain additional information regarding its customers,

---

[5] There is no difference between a "license plate image" and a "license plate number." *See, e.g.,* Compl. ¶¶ 197, 202. It is the same information, just transmitted in a different form. *See* Decl. of Rick Carrier, ¶ 7.

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  which may "include the California [DMV] and public records." SUF ¶ 68. This

2  satisfies Section 31490(b)(2).

3      Third, TCA's privacy policy states that, with respect to how TCA will

4  "notify [customers] of any material changes" in the policy: "We reserve the right to

5  modify this Privacy Policy at any time. If we make material changes to this policy,

6  we will notify our customers and users via email, mail or by means of a notice on

7  our website." SUF ¶ 69. This satisfies Section 31490(b)(3).

8      Fourth, TCA's privacy policy states: "Effective Date: 11/8/2004; Last

9  updated 12/13/2010." SUF ¶ 70. This satisfies Section 31490(b)(4).

10     Finally, TCA's privacy policy states: "You may review or request changes

11 to your personal information by accessing your FasTrak® or ExpressAccount®

12 information online or you may call (949) 727-4800 during normal business hours."

13 SUF ¶ 71. This satisfies Section 31490(b)(5).

14     Based on the foregoing undisputed facts, Defendants are entitled to summary

15 judgment on all claims regarding TCA's privacy policy.

16 **4.    DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY**

17 **JUDGMENT AGAINST PLAINTIFFS' CLAIM FOR STATUTORY**

18 **DAMAGES AS TO EVERY USE OF PLAINTIFFS' PII.**

19     Plaintiffs' discovery responses demonstrate that the eight named Plaintiffs

20 were not subject to many of the practices that they attempt to challenge under

21 Section 31490. As to the practices they did not experience, Defendants are entitled

22 to summary judgment against their individuals claims simply because Plaintiffs

23 cannot prove a "genuine dispute as to any material fact" supporting a claimed

24 violation of the statute. Fed. R. Civ. P. 56(a). As to the practices Plaintiffs did

25 experience, all of them fall within the categories described above, and Defendants

26 are therefore entitled to partial summary judgment against all claims for statutory

27 damages under Section 31490(q).

28

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

The facts show that one or more Defendants may have used[6] one or more Plaintiffs' PII in the following ways during the relevant time period:[7]

(1) If a vehicle with a California license plate travels through a TCA toll plaza and the license plate for the vehicle is not linked to a FasTrak account, an ExpressAccount, or a Missed-a-Toll[8] or One-Time-Toll payment,[9] PII is transmitted to the California DMV to identify the registered owner of the vehicle. SUF ¶ 9.

(2) PII is transmitted to TCA's mail house to complete and mail Notices of Toll Evasion, Notices of Delinquent Toll Evasion, and invoices.[10] SUF ¶ 26.

(3) PII is transmitted to the California DMV to place or withdraw a vehicle registration hold under Vehicle Code §§ 40267 and 4770-4775. SUF ¶ 30.[11]

(4) PII is transmitted to LexisNexis to obtain an individual's social security number so that a tax offset request may be submitted to the FTB under Government Code §§ 12419.10 and 12419.12. SUF ¶ 31.

(5) PII is transmitted to the FTB to place, renew or withdraw a tax offset request

---

[6] Based on discovery to date, it is unclear whether any of Plaintiffs' PII was transmitted in the manner set forth in paragraphs 5-6 and 8-11.

[7] A claim for damages against a public agency must be submitted to the public agency within one year of "the accrual of the cause of action." Gov't Code § 911.2. The first claim notice asserting a Section 31490 violation was dated April 12, 2016. Therefore, the relevant time period is from April 12, 2015 to the present. The way in which Defendants have used and/or shared PII, however, has been consistent since January 2011, the date Section 31490 became operative.

[8] Before January 2014, TCA offered Missed-a-Toll, which allowed a toll road user to pay after-the-fact without incurring a penalty, subject to certain restrictions. Decl. of Stephen Lee, ¶ 7. The Missed-a-Toll program was terminated in January 2014. *Id.* ¶ 10. In January 2014, the One-Time Toll program was initiated. *Id.* ¶ 11. A user can use the One-Time-Toll program to prepay a toll. *Id.*

[9] TCA determines whether a license plate is linked to a valid account by reviewing license plate images. SUF ¶¶ 61, 63. PII is transmitted to Global Agility (manual review) or Q-Free America, Inc. (electronic review) for these purposes. *Id.*

[10] QuestMark Information Management, Inc. is currently responsible for preparing and mailing of the notices. SUF ¶ 27. Before QuestMark, CSG Systems, Inc. and DataProse, Inc. were responsible for preparing and mailing the notices. *Id.* ¶ 28.

[11] Numerous agencies in addition to toll agencies use the DMV hold process. For example, DMV holds are also available to recover unpaid parking tickets, Veh. Code §§ 4760, 40220(a), to recover unpaid traffic related fines, penalties, assessments, or bails, *id.* § 4760.1(b), and to force compliance with a notice to appear in court. *Id.* §§ 4766 & 40002.1.

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1      under Government Code §§ 12419.10 and 12419.12. SUF ¶ 33.

2   (6)   PII is transmitted to LexisNexis, Microbilt Corporation (previously DataFax,

3         Inc.), and/or Julinne Von Kleinsmid to assist with performing a skiptrace

4         before pursuing a civil judgment under Vehicle Code § 40267. SUF ¶ 39.

5   (7)   PII is transmitted to financial institutions to process cash, check, or credit

6         card transactions. SUF ¶ 74.

7   (8)   TCA transmits PII to TransCore and Traffic Technologies, Inc., for purposes

8         of maintaining its toll lane systems. SUF ¶ 53.

9   (9)   PII is transmitted to QAS/Experian when TCA verifies mailing addresses

10        using a tool provided by QAS/Experian. SUF ¶ 43.

11  (10)  Decton Staffing Services, Faneuil, Inc., Volt Management Corp., and

12        Ultimate Staffing Services are, or were, provided access to PII for purposes

13        of performing customer service responsibilities. SUF ¶ 8.

14  (11)  If a rental car travels through a TCA toll plaza and the license plate appears

15        on a list of license plates sent to TCA by the rental car agency, and if the toll

16        payment is not made within the established grace period, PII is transmitted

17        to the rental car agency to identify the individual who rented the vehicle. If a

18        rental car travels through a TCA toll plaza and the license plate appears on a

19        fleet account for Highway Toll Administration LLC or ATS Processing

20        Services LLC, PII is transmitted to deduct payment from the fleet account

21        and invoice. SUF ¶¶ 15, 18.

22  (12)  To facilitate the posting of tolls to the appropriate FasTrak account, TCA

23        and other California toll agencies[12] exchange PII for their respective FasTrak

24        accounts. SUF ¶¶ 1, 11, 13.

25  _____

26  [12] The other California toll agencies that hold FasTrak accounts are the Bay Area Toll Authority, the San Diego Association of Governments, the Orange County Transportation Authority, and the Los Angeles County Metropolitan

27  Transportation Authority. SUF ¶ 13. Between 2007 and 2011, South Bay Expressway also held FasTrak accounts. SUF ¶ 14. TCA has or had agreements

28  with all of these entities for the relevant time period. SUF ¶¶ 13-14.

For the reasons explained above, none of the foregoing activities violate Section 31490(a), and hence none give rise to statutory damages under Section 31490(q).

Plaintiffs challenge the following uses of PII, but it is undisputed that none of their PII has been used in any of these ways:

(1)    If a vehicle with an out-of-state license plate travels through a TCA toll plaza and the license plate for the vehicle is not linked to a FasTrak account, an ExpressAccount, or a Missed-a-Toll or One-Time-Toll payment, and the toll payment is not made within the established grace period, PII is transmitted to the Arizona DMV (for Arizona license plates) or Law Enforcement Systems, LLC (for non-Arizona license plates) to identify the registered owner of the vehicle.[13] SUF ¶¶ 20, 21.

(2)    PII is transmitted to the California Highway Patrol to assist with toll enforcement, including for vehicles without license plates. SUF ¶ 35.

(3)    PII is made available to law enforcement agencies pursuant to search warrants[14], or when otherwise required by federal law. SUF ¶ 36.

(4)    PII is made available to law enforcement agencies when conducting a criminal investigation or traffic collision investigation when an officer has good cause to believe that a delay in obtaining PII by seeking a search warrant would cause an adverse result, as defined by Penal Code § 1524.2(a)(2)(A)-(E). SUF ¶ 37.

(5)    PII is transmitted to TCA's outside counsel when the Vehicle Code § 40267

---

[13] Before August 2016, TCA used DataTicket for non-Arizona, out-of-state license plates. SUF ¶¶ 22, 24.

[14] Contrary to Plaintiffs' allegation (Compl., ¶ 191), TCA never transmitted PII to the Beverly Hills Police Department. SUF ¶ 12. In fact, Plaintiffs Mahda, Quarles, Carpenter, Myers, and Golka admit that they have no evidence that license numbers or license plates were transmitted to the Beverly Hills Police Department, the California Highway Patrol, or any other federal law enforcement agency between 2009 and the present. *See* Rubin Decl., ¶ 8, Ex. 14 at 105:26-107:10. Moreover, as established by Plaintiffs' deposition testimony, the allegations in the complaint are demonstrably false. For example, the allegation that toll booths were removed by May 2014 (*see* Compl., ¶¶ 3, 78) was expressly contradicted by Plaintiffs' deposition testimony.

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

civil judgment packet is provided to TCA's outside counsel for review prior to submittal to the Orange County Superior Court. SUF ¶ 44.

(6) PII is transmitted to the Orange County Superior Court when the Vehicle Code § 40267 civil judgment packet is filed with the Court. SUF ¶ 46.

(7) Between 2011 and 2016, to collect on civil judgments entered under Vehicle Code § 40267, the civil judgments (which include PII) were transmitted to TCA's collections agent, Judgment Recovery Assistance, LLC.[15] SUF ¶ 49.

(8) TCA transmits PII to the City of Irvine for purposes of conducting toll violation hearing services. SUF ¶ 48.

Because no named Plaintiff has experienced any of these alleged uses, Defendants are entitled to summary judgment as to all claims based on such uses. In the alternative, Defendants are entitled to partial summary judgment as to statutory damages based on such uses because none of them violates Section 31490(a), and hence they cannot support statutory damages under Section 31490(q).

## 5.   CONCLUSION.

Plaintiffs' claim that Defendants' ordinary operation of toll roads violates Section 31490(a) and gives rise to billions of dollars of statutory damages under Section 31490(q) fails. The undisputed facts, the law, the legislative history, subsequent legislative enactments and amendments, and public policy all require that this claim be rejected. Defendants therefore request that the Court grant their motion for partial summary judgment and hold that Plaintiffs are not entitled to any statutory damages under Section 31490(q). Alternatively, Defendants request that the Court summarily adjudicate the issues set forth in the Proposed Order.

---

[15] From 2006 through 2009, TCA contracted with Rex L. Brady, Attorney at Law, to assist with post judgment collection. Mr. Brady had access to the same PII as Judgment Recovery Assistance, LLC. SUF ¶¶ 50-51. TCA's contract with Judgment Recovery Assistance, LLC expired in 2016, and TCA currently does not transmit PII to any entity for judgment recovery purposes. SUF ¶¶ 52, 78.

| | | |
|---|---|---|
| 1 | Date:    September 6, 2017 | NOSSAMAN LLP |
| 2 | | E. GEORGE JOSEPH<br>BENJAMIN Z. RUBIN |
| 3 | | ASHLEY J. REMILLARD<br>STEPHANIE N. CLARK |
| 4 | | By:  */s/ E. George Joseph* |
| 5 | | E. George Joseph |
| 6 | | Attorneys for Defendants<br>FOOTHILL/EASTERN |
| 7 | | TRANSPORTATION CORRIDOR<br>AGENCY, SAN JOAQUIN HILLS |
| 8 | | TRANSPORTATION CORRIDOR<br>AGENCY; RHONDA REARDON; |
| 9 | | MICHAEL KRAMAN; CRAIG<br>YOUNG; SCOTT SCHOEFFEL; AND |
| 10 | | ROSS CHUN |
| 11 | Date:    September 6, 2017 | ROPERS, MAJESKI, KOHN &<br>BENTLEY |
| 12 | | STEPHEN J. ERIGERO<br>TIMOTHY J. LEPORE |
| 13 | | By:  */s/ Timothy J. Lepore* |
| 14 | | Timothy J. Lepore |
| 15 | | Attorneys for Defendants |
| 16 | | BRIC-TPS LLC and WILLIAM P.<br>DUFFY |
| 17 | Date:    September 6, 2017 | FAGRE BAKER DANIELS LLP<br>TARIFA B. LADDON |
| 18 | | AARON D. VAN OORT<br>TYLER A. YOUNG |
| 19 | | |
| 20 | | By:  */s/ Aaron D. Van Oort* |
| 21 | | Aaron D. Van Oort |
| 22 | | Attorneys for Defendants<br>3M COMPANY |

23   I hereby certify that, consistent with L.R. 5-4.3.4(a)(2)(i), all other

24  signatories listed, and on whose behalf this filing is submitted, concur in the

25  filing's content and have authorized this filing on their behalf.  Executed this 6th

26  day of September, 2017 in Irvine, California.

27            */s/ E. George Joseph*
             E. George Joseph
28

MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT