UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Melissa Kunig | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |

**[IN CHAMBERS] ORDER REGARDING DEFENDANTS' MOTION TO DECIDE KEY LEGAL QUESTIONS (DKT. 527)**

Eight plaintiffs filed this class action challenging the operation of two sets of toll roads in Southern California. One set is operated by the Foothill/Eastern Transportation Corridor Agency and San Joaquin Hills Transportation Corridor Agency (collectively, "TCA entities"). It includes several California Highway Routes. The other set is operated by the Orange County Transportation Authority ("OCTA") and is commonly called the 91 Express Lanes.

The Court certified a class of drivers who used the roads and whose personally identifiable information (PII) was transmitted by Defendants to other entities in specific ways. (Dkt. 439 at 19.) The Court has explained the factual background of this case several times, including in its first summary judgment order (Dkt. 297), so this order provides only a brief reiteration.

As this aging case has progressed, the Court has noted that a decision on the key legal issues would bring about a clearer and more efficient resolution. *See, e.g.*, March 25, 2019 Order (Dkt. 515) at 2 ("The Court has held since the beginning of this case that all parties would benefit from definitive rulings on key substantive issues.") The Court thus invited briefing on any purely legal matters of statutory interpretation that could be resolved before trial. (Dkt. 525.) Defendants filed such a consolidated motion, and that motion has now been fully briefed. In the meantime, Plaintiffs and Defendant 3M reached an agreement to settle all claims against 3M on a classwide basis. (Joint Statement, Dkt. 530.) As requested in the settling parties' Joint Statement, *this ruling does not apply to 3M*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

In this order, the Court addresses the eight questions raised in Defendants' Motion to Determine Key Questions And, If Necessary, Certify Them for Appeal. (Dkt. 527.) As stated in more detail in the disposition section, Defendants prevail on several questions.

## 1. BRIEF BACKGROUND

Southern California toll road companies use electronic transponders to collect tolls from subscribers, rather than having each car stop and pay at a booth. Toll road cameras assist in collection by associating a trip with a subscriber's account and by recording images of cars and license plates that are on the toll roads without a subscription. If a toll agency finds "by automated devices, by visual observation, or otherwise" that a vehicle has "evaded tolls on any toll road," the agency "shall, within 21 days of the violation," send notice of the violation to the registered owner of the vehicle. Veh. Code § 40254. (Emphasis added).

Somehow, the toll road agencies must take the limited information they have – namely license plate numbers and the time and location of the violation – and connect this information with a person and address. Toll agencies are permitted by statute to send license plate numbers and violation dates to the California DMV or other entities with registered owner information in other states. *Id.* § 40250(e)(2)(B). Under some circumstances, California law also permits "DMV holds" (holds on registration renewal for unpaid toll evasion penalties), interceptions of tax refunds and lottery winnings, and use of collection agencies. *See* Veh. Code § 40267(a), (d); Gov. Code §§ 12419.10(a)(1), 12419.12(a)(1). Further, the toll agencies "shall use [their] best efforts to obtain accurate information concerning the identity and address of the registered owner for the purpose of forwarding a notice of toll evasion violation . . . ." (*Id.* § 40267, emphasis added.)

This lawsuit challenges the methods the toll road agencies in Southern California have used to collect and enforce tolls, and specifically Defendants' transfer of drivers' personally identifiable information ("PII") to other companies that assist in toll collection and enforcement. California Streets and Highways Code § 31490 governs the transfer of drivers' PII and was enacted in 2010 to prevent misuse of the information captured by the toll agencies. Section 31490 was animated by a concern that "information originally collected for toll collection uses could be disseminated to other individuals, companies or organizations for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

marketing purposes, or other inappropriate uses." *See* Fact Sheet: California State Senate Bill 1268 (Dkt. 207-7) at 1.

When a toll agency makes a user's PII available to another entity or person, the agency is liable to the user for actual and statutory damages unless an exception applies. *See* Summary Judgment Order (Dkt. 297) at 5-14. There are two major exceptions to Section 31490's restrictions on data sharing – one for interoperability between toll road agencies and another for toll enforcement and collection. (*Id.*, 10-11.) And whether an exception applies depends on the scope and purpose of the PII transfer. *See* Class Certification Order, Dkt. 501 at 11-12.

The main inquiry underpinning each of the questions presented by Defendants is thus whether specific types of PII transfers are within the permitted scope and purpose of enforcement, collection, interoperability, or any other exception. Defendants' Key Questions address some of the issues for trial, but not all.

## 2. KEY QUESTIONS PRESENTED

Some clarifications are in order. First, arguments from both sides about the potential financial impact of the Court's ruling are unpersuasive. Such arguments haven't impacted the Court's decisions here. Second, the Court disagrees with some of Plaintiffs' characterization of its previous orders and their impact on the pending motion. For example, the Court did not find that Streets & Highways Code section 27565(e) provided an exhaustive list of the types of transfers that are necessary for interoperability. *See* Summary Judgment Order (Dkt. 297) at 10 ("Section 27565 gives *examples* of the types of PII that may be involved . . . .") (Emphasis added.)

Also, the Court previously deferred ruling on aspects of Plaintiffs' Section 31490 claims where it found that factual disputes and excessive complexity made summary judgment premature. *See* Summary Judgment Order (Dkt. 297) at 15 ("[T]he scope of the legal and factual issues involved in the TCA motion is unwieldy, a sentiment expressed by counsel for Plaintiffs and Defendants at the hearing. When issues are particularly complex, courts may determine that summary judgment isn't the proper method to dispose of claims . . . . The Court determines

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

that summary judgment isn't the proper method to dispose of Plaintiffs' transfer-based claims *at this time*.") (Emphasis added.)

The requested supplemental briefing has clarified certain legal questions and made judgment appropriate on some issues. *See* Fed. R. Civ. Proc. 56(f). The Key Questions motion was not a new summary judgment motion requiring new statements of fact – Plaintiffs seem to have misunderstood this. The Court isn't answering whether Defendants acted solely according to the fact patterns embedded in each Key Question, nor does this order automatically dispose of all claims. Instead, it provides guidance on how the interpretation of Section 31490 applies to several real scenarios in this case. It's true that district courts may not decide questions "that cannot affect the rights of litigants in the case before them" or give advice on "a hypothetical state of facts." *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013). But the answers here can and will affect the litigants' rights here, and the factual scenarios are not hypothetical.

Finally, the Court expects that the answers here may promote a more informed settlement between the parties on remaining issues. The parties are ORDERED to continue settlement negotiations, their positions informed by the Court's findings here.

> 2.1 "Does Section 31490 permit transportation agencies to send the license plate number and violation date to a DMV or vendor each time there is a violation to get the registered owner's name and address, so the agency can send a notice of violation to "the registered owner," as required by Vehicle Code section 40254(a)?"

Yes.

The Court first addresses this question as it relates to TCA toll roads. TCA captures the license plate numbers of all vehicles that use TCA tolls roads without paying. The agencies then use this information to find the name and address of the registered owner. For California plates, TCA sends the license plate number and date of violation to the California DMV. A similar procedure is used for Arizona plates. For all other state plates, TCA sends the plate and date of violation to a vendor with access to state DMV records.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

The parties agree that Defendants may send a license plate numbers to the California DMV to identify drivers and get their addresses. (Opp'n, Dkt. 528 at 19.) But Plaintiffs argue Defendants aren't "required" to send the date of a violation to the DMV. *See* Section 31490(c), (i) ("PII transfers must be limited depending on what is 'required to operate and manage' the toll rolls.") The Court disagrees. "Required" in this context does not mean "indispensable," but "useful and appropriate." The Supreme Court considered what "required" means in the context of transportation operations in *National R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407 (1992). In that case, the Court held that a property "owned by the railroad and required for intercity rail passenger service" was one that was "useful and appropriate [for Amtrak] to accomplish its goals." (*Id.* at 419.) Justice Kennedy noted that the "existence of alternative dictionary definitions of the word 'required,' each making some sense under the statute, itself indicate[d] that the statute [w]as open to interpretation." (*Id.* at 418.) And the Court held that in the context of a statute that created a "presumption . . . of Amtrak's need for the property sought," there was a strong basis for finding the statute "authorize[d] Amtrak to make a reasonable business judgment that [the 'required' action] [w]as advisable." (*Id.* at 420-21.)

While this case doesn't involve judicial deference to an agency's interpretation, the Supreme Court's reasoning in *National R.R. Passenger Corp.* provides guidance here. Like the statute there, Section 31490 contains a presumption of need – toll agencies need efficient access to the names and addresses of the owners of offending vehicles. In this context and considering the legislative history the Court has reviewed, the most reasonable interpretation of "required" in subsections (c) and (i) is "reasonably necessary," not "indispensable."

For purposes of collection, the toll agencies must be able to access the address of a vehicle's registered owner as of the date of the violation, not the date that the DMV receives or processes a request for a name and address. Vehicles may change ownership and owners may change addresses between the time of the violation and the DMV's response to a request. (Dkt. 416-1 ¶ 113.) TCA's practice of sending the plate number and violation date to the DMV is thus consistent with its duty to "obtain accurate information concerning the identity" of the registered owner. Veh. Code § 40254(e). Plaintiffs assert that travel pattern data is unnecessary for the DMV to do an address lookup (*see* Dkt. 407-22 at 14-18). But that doesn't

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

say it's unnecessary to ensure that the address found corresponds with a violation from a specific date.

To the extent Plaintiffs challenge Defendants' alleged practice of sending PII to the DMV for the purpose of advertising – or any purpose other than sending a notice of violation to the registered owner – that issue is not before the Court in the Key Questions.

The parties also dispute whether the date of a violation is protected "travel pattern data" under Section 31490(o). But it's unnecessary for the Court to resolve this dispute, since either way, this transfer falls within an exception in Section 31490(i).

Next, the parties dispute whether OCTA and TCA may send a license plate to the California DMV more than once. For similar reasons to those already stated, and mainly the "best efforts" requirement of § 40256, the Court finds these transfers are permissible. Again, they help ensure that license plates are accurately connected to names and addresses, considering vehicle transfers and personal address changes. Also, the "registered owner" (who must get notice from the toll agencies) is defined as the person registered with the California DMV or other state DMVs, and "information received from the department identifying the registered owner of the vehicle" is prima facie proof of a violation in an administrative hearing. Veh. Code § 40255(b)(4). The Court is thus unpersuaded by Plaintiffs' argument that the toll agencies may have more accurate name and address information than DMVs, such that "best efforts" don't require more than one request from the DMV per license plate.

The Court's answer to Question 1 is YES.

    2.2    "Does Section 31490 permit transportation agencies to send to the California DMV the information it requires to prevent the vehicle's registration from being renewed until outstanding tolls and penalties are paid, as authorized by Vehicle Code sections 40267(a), 4770(a)?"

Yes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

The California Vehicle Code provides that toll agencies *shall* proceed under one or more of the following options to collect an unpaid toll evasion penalty, Veh. Code § 40267:

(1) A toll agency may "file an itemization of unpaid toll evasion penalties and administrative and service fees with the [DMV] for collection with the registration of the vehicle." *Id.* § 40267(a). If such an itemization, called a "DMV hold," is filed, the DMV must "refuse to renew the registration of a vehicle . . . unless the full amount of all outstanding toll evasion penalties and administrative fees" is paid. *Id.* § 4770(a).

(2) An agency may "file proof of [the unpaid tolls and penalties] with the court with the same effect as a civil judgment." *Id.* § 40267(b)(1) and (c).

(3) A toll agency may "contract with a collection agency to collect unpaid toll evasion penalties, fees, and charges." *Id.* § 40267(d).

Defendants assert that to place a "hold" with the California DMV, as expressly allowed by statute, the DMV requires a toll agency to send it the license plate number, violation number, unique agency identifier, date(s) of violation, total amount due, make of vehicle, and first four characters of the last name. (Mot., Dkt. 527 at 26.) And they claim that is the only information they send.

Plaintiffs argue that Section 40267(a) "states, and limits, what Defendants may send to the DMV." But that subsection merely provides that an agency "may file an itemization of unpaid toll evasion penalties and administrative and service fees with the department for collection with the registration of the vehicle." Limiting words like "only" or "exclusively" do not appear, and the statute doesn't specify what information the itemized list should contain. Defendants read "itemization" to mean a list of registered owners and tolls. Plaintiffs' definition, meanwhile, is unclear and unnatural – do they believe toll agencies may send only a list of violation numbers, or do they simply mean to argue that the information currently transferred is excessive, without specifying further? Considering the broader purpose of the statute, which is to facilitate vehicle registration holds for unpaid toll evasion penalties, the natural meaning of "itemization of . . . penalties and . . . fees" is an itemized list of information about toll evasion penalties. Indeed, what use would a list of penalties divorced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

from any identifying owner or vehicle information be to the DMV? The statute must be interpreted in a way that makes it functional.

As discussed in Section 2.1, toll agencies may send to the DMV the PII that is required, meaning reasonably necessary, to collect and enforce toll penalties. Vehicle registration holds are one such statutorily approved method of collection and enforcement. And Defendants have offered unrebutted proof that the DMV requests a license plate number, violation number, unique agency identifier, date of violation, total amount due, make of vehicle, and first four characters of the last name. *See* Mot., Dkt. 527 at 26; Declaration of Rick Carrier (Dkt. 374-2), ¶ 5. Plaintiffs don't genuinely dispute this. But neither have Defendants proven that the DMV requests only what it requires for registration holds.

The Court's answer to Question 2 is YES.

    **2.3**     **"Does Section 31490 permit transportation agencies to send the California Franchise Tax Board ("FTB") the information it requires to "intercept" a violator's tax refund or lottery winnings and use them to pay outstanding tolls and penalties, as authorized by Government Code sections 12419.10 and 12419.12?"**

Yes, subject to certain limitations.

In addition to the three options outlined in Section 2.2, a toll agency may notify the Franchise Tax Board ("FTB") of unpaid toll and penalty amounts. Gov. Code §§ 12419.10(a)(1), 12419.12(a)(1). The FTB must then intercept that amount from the violator's tax refund or lottery winnings. This much Plaintiffs have conceded. *See* Dkt. 408, 22:6-7. Defendants assert that the FTB requires toll agencies to send a social security number, the last four letters of the violator's last name, the violator's address, the amount of tax offset request, and the transportation agency's internal ID number, and further that they only send that information. (Mot., 28.) Plaintiffs counter that the TCA sends the FTB more information than is required to accomplish an intercept of tax refunds or lottery winnings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

As already noted, Plaintiffs recently conceded that "Gov't Code § 12419.10 and § 12419.12 allow Defendants to place tax intercepts with the Franchise Tax Board." (Dkt. 408 at 22.) To the extent they try to change course now, the Court finds their arguments unpersuasive. For example, Plaintiffs argue that the TCA Defendants are not covered as operators of "toll bridges or high-occupancy toll lanes" under Government Code Section 12419.12. But regardless, this case involves amounts "overdue and unpaid for a fine, penalty, assessment, [*etc*]," making Section 12419.10 applicable. Plaintiffs also assert the statute applies to the Controller, not to toll entities. But under the statute the Controller plays an important intermediary role – it must somehow get the information required to perform that role. The statute expressly contemplates that the Controller will be receiving "requests for offset" from the entities that issued the fines or penalties. Thus, the Court reads the relevant Government Code provisions as authorizing the Controller to place FTB intercepts on behalf of toll agencies.

Now, on to the PII transferred by Defendants to the FTB for this purpose of interception. As with Question 2, it is uncontroversial for the Court to answer Question 3 as presented in the affirmative, because it uses the word "requires," the same word used in the statute. It doesn't ask, for example, whether Section 31490 permits transportation agencies to send the FTB social security numbers. California law permits the toll agencies to transfer PII to perform "financial and accounting functions such as billing, account settlement, enforcement, or other financial activities **required** to operate and manage the electronic toll collection system." Sts. & High. Code § 31490(i). (Emphasis added.) It is somewhat axiomatic to say that the statute allows the transfers that it allows.

So an affirmative answer to Question 3, as posed, doesn't get the Defendants very far. The real controversy arises in determining what information is required. Defendants again point to the declaration of TCA's Director of Tolling Systems, Rick Carrier, which states that "the TCA provides only the information requested by the FTB for the placement of the intercept." (Dkt. 374-2 ¶ 4.) How do Defendants leap from "requested" to "required"? Except for a statement on the FTB's website regarding use of social security numbers, Defendants haven't provided any further argument or factual support than in their summary judgment motion. *See* Reply, 22 (improperly citing for the first time in a reply brief evidence that was omitted from Defendants' earlier statements of fact). Nor have Plaintiffs. So there is no more basis for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

ruling that the specific TCA's transfers are "required" now than there was at summary judgment, when the Court found the record inadequate to do so.

The Court's answer to Question 3 is YES, subject to the limitations just described.

> 2.4   "Does Section 31490 permit transportation agencies to send to a vendor available name and address information to obtain a social security number to place a tax intercept, as authorized by Government Code sections 12419.10 and 12419.12?"

As already discussed, the Government Code allows the FTB to place a tax intercept to offset "any amount overdue and unpaid for a bridge toll or a high-occupancy toll lane fee." Gov. Code §§ 12419.10, 12419.12. Further, Section 12419.10 provides that "[n]either the Controller nor the Franchise Tax Board shall condition a request for offset on the submission of a person's social security number."

The parties seem to agree that the answer to Question 3 determines the outcome of Question 4 – if the law allows toll agencies to place FTB intercepts, it allows them to obtain the information required to do so, and *vice versa*.

True, if a particular method of collection or enforcement of tolls is permissible, the toll agencies may transfer the PII required to perform that method. But the parties haven't come any closer in this briefing to showing whether social security numbers are required by the FTB. And the statute's prohibition on "condition[ing]" a request for offset on submission of a social security number suggests that such PII can't properly be required by a vendor.

The record is insufficient for the Court to answer Question 4.

> 2.5   "Does Section 31490 permit transportation agencies to send to a vendor a toll violator's name and address to obtain an updated address to send a notice of toll evasion, per the duty in Vehicle Code section 40254(e) to use 'best efforts to obtain accurate information concerning the identity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

and address of the registered owner for purposes of forwarding a notice of toll evasion'?"

Yes.

The Court refers to its answer to Question 1, which entails similar considerations. When a notice of toll evasion is returned as undeliverable, TCA sends the name and address it has for the violator to a vendor (LexisNexis) to get updated address information. (Dkt. 416-1 ¶ 119.) As already explained, the exceptions to Section 31490 cover transfers undertaken for the purpose of collecting and enforcing toll penalties. Getting accurate, updated address information is crucial to sending notices of violations, which is in turn a necessary part of collection and enforcement. These transfers thus fall squarely within the statutory exceptions to Section 31490 and the toll agencies' duty to use "best efforts to obtain accurate information concerning the identity and address of the registered owner." See Veh. Code § 40254(f).

Plaintiffs' opposition is weak on this point. They essentially dispute that "best efforts" could ever be determined as a matter of law. But both discovery and the record on summary judgment have closed, and Plaintiffs haven't shown any genuine dispute exists regarding whether Defendants' method – which reliably produces accurate address information without excessive cost – represents best efforts. The issue is thus ripe for judgment.

Though not cited by the parties here, *Republican National Committee v. Federal Election Commission* sheds some light on the nature of the "best efforts" question. 76 F.3d 400 (D.C. Cir. 1996). In that case, the Court considered what it meant for political committees to use "best efforts" to get certain campaign donation information from donors who weren't required by any other law to disclose it. The trial court didn't throw up its hands at the factual complexity of such an inquiry; it granted summary judgment for the Commission regarding its interpretation of "best efforts." The appellate court then affirmed in part and reversed in part, finding that certain practices required by the FEC were a reasonable interpretation of the phrase "best efforts," and others were not. (*Id.* at 405-06.) In our case, the toll agencies have interpreted "best efforts" to mean sending a toll violator's name and address to a vendor *after* an initial attempted notice has been returned as undeliverable. Plaintiffs offer no authority for their position that "best efforts" requires Defendants to show they've exhausted other options

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

before sending PII to a vendor, nor do they name any options that would work as well, much less as efficiently.

The Court's answer to Question 5 is YES.

> **2.6** **"Does Section 31490 permit transportation agencies to send to a car rental company the information required to be included in a toll violation notice when a vehicle owned by that car rental company incurs a toll violation, as required by Vehicle Code section 40254(a)?"**

Yes.

When a rental car uses a toll road without paying, and the company that owns it doesn't have an agreement with the toll agency, the toll agency sends the rental company (as the registered owner) a notice of toll evasion. The rental company then has two options. It can pay the toll and any penalty itself, or it can file an affidavit of non-liability, along with "a written rental agreement . . . which identifies the rentee or lessee and provides the driver's license number, name, and address of the rentee or lessee." Veh. Code § 40264. In the second scenario, the toll agency must send notice to the renter under Vehicle Code § 40250(c).

This process is cumbersome, and Defendants claim to have found an efficient practice that's consistent with statutory requirements. Rather than waiting to receive notices of individual violations, some rental car companies provide toll agencies with lists of their license plate numbers. When a violation matches one of those plates, the toll agency sends the rental company an *electronic* violation notice, including plate number, state, plaza, lane, date and time, and toll amount. The content and form of the notice that is then sent to the driver of the rental car aren't affected by this practice.

Plaintiffs express a misguided concern that toll agencies send rental car companies "ALL the PII that they send to a CTOC member in a Notice of Violation." But rental car companies are the registered owners of the offending vehicles, and under a plain reading of Vehicle Code section 40254(a) toll agencies are required to send them such notices. Plaintiffs haven't shown the rental car companies receive any PII beyond what the toll agencies are required to send in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

notices of violation under that statute. Plaintiffs argue that rental car companies are inappropriately stepping into the role of transportation agencies, without being similarly regulated. But they appear to misunderstand the statutory authority for the toll agencies' initial transmission of PII to the rental companies. It's not for interoperability between transportation agencies, it's for collection of a toll or penalty from a registered owner.

If anything, Defendants' practice of exchanging license plate information with rental companies *reduces* unnecessary PII transmissions, because it avoids intermediary DMV lookups.

For all these reasons, the Court's answer to Question 6 is YES.

  **2.7**   **"Does Section 31490 permit transportation agencies to send a toll evader's PII to a collection agency to collect tolls and penalties, as authorized by Vehicle Code section 40267(d)?"**

California law permits toll agencies to "contract with a collection agency to collect unpaid toll evasion penalties, fees, and charges." Veh. Code § 40267(d). Defendant Cofiroute contracts with Linebarger, Goggan, Blair & Sampson to this end. The PII Cofiroute transfers is the name and address of the violator, date and time of violations, license plate number, and basic vehicle description. (Mot., 33.)

As already stated, Section 31490 allows toll agencies to transfer PII to the extent required for collection, enforcement, interoperability, and other exceptions. But Defendants haven't shown that the PII Cofiroute sends to Linebarger is required – the letters they cite from Linebarger to Plaintiff Coulter don't even contain all the categories of PII Cofiroute transfers to Linebarger, much less show they are required. On the other hand, Plaintiffs haven't shown the PII transferred is excessive.

In short, the Court is presented with insufficient information to answer Question 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

    **2.8**    **"Does Section 31490 permit a transportation agency to send to another transportation agency the date and time, toll plaza, and lane of that other agency's accountholder's use of its toll road for purposes of interoperability, as authorized by Streets & Highways Code section 27565(a)(2) and required by the CTOC interoperability specifications?"**

Yes.

Section 31490 expressly provides that it "does not prohibit a transportation agency from sharing data with another transportation agency solely to comply with interoperability specifications and standards adopted pursuant to Section 27565." Streets & Highways Code Section 27565, in the meantime, <u>requires</u> the Department of Transportation, "in cooperation with the district and all known entities planning to implement a toll facility in this state, [to] develop and adopt functional specifications and standards for an automatic vehicle identification system, in compliance with all of the following objectives." One of those objectives is that vehicle owners "shall not be required to purchase or install more than one device to use on all toll facilities." Sts. & High. Code § 27565(a)(2).

In other words, if a vehicle owner has a transponder-based account, such as FasTrak, that device must be usable on toll roads across California. In application, this means that different toll agencies in the state must share information between themselves. The legislature made such interoperability standards mandatory, not just permissive, for the benefit of drivers who would otherwise incur the burden of maintaining multiple accounts. The California Toll Operators Committee was formed to carry out this mandate. Defendants transfer transponder numbers, dates, times, locations, and toll amounts to each other, so that a driver's use of all California toll roads is ultimately consolidated into a single monthly statement.

As State Senator Joseph Simitian, who sponsored Section 31490, stated in his position paper, interoperability remains a viable concern that should not be impeded by privacy restrictions: "We don't want to limit interoperability. The intent of the bill is to allow toll operators to share data *(the way they do currently)* so that a subscriber with an account in one jurisdiction can use a toll facility operated by a different agency[.]" (Dkt. 207-12 at 2.) (Emphasis added.) At the time Senator Simitian made this statement, toll agencies were already sharing date, time, plaza, and lane information with each other. While legislative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

history isn't always reliable or complete, and Senator Simitian's extratextual statements certainly aren't dispositive of the statute's meaning, the statements do provide some useful context.

Plaintiffs challenge Defendants' transmission of the location and accounting data the toll agencies share between themselves, namely plaza, lane, and toll amount information. They argue that the objectives listed in Section 27565 concern "actual hardware and lane-side equipment," not the PII to be shared. (Opp'n, Dkt. 528 at 31.) Even accepting this argument as true, mandates regarding toll agencies' use of devices have direct implications for PII sharing, as is expressly noted in Section 31490(h) and (i). So the Court must consider how Section 31490 and 27565 may be understood together.

Section 27565(e) – to the extent it even applies to intrastate as opposed to interstate transportation agencies, *see* Dkt. 235-8 at 51 ("[AB 493] prohibits the sharing of [PII] . . . with toll agencies outside of California") – provides a list of PII transfers authorized by *that statute*. It then provides that toll agencies must "otherwise comply with all federal and state privacy protection laws, including, but not limited to, Section 31490 . . . ." Section 31490, as discussed, allows PII transmissions to the extent required for interoperability. In subsection (h) the statute clarifies that it doesn't interfere with the interoperability specifications and standards adopted under Section 27565, but in subsection (i) it goes a step further. Subsection (i) states more broadly that toll agencies may share data "for the purpose of interoperability," without referring to Section 27565. Taking all this together, toll agencies in California may share with each other the information required for interoperability, and this information is not necessarily limited to the four types of data listed in Section 27565.

This interpretation is especially reasonable in light of the *requirement* under Section 27565(a) that toll agencies "develop and adopt functional specifications and standards." A more limiting reading of Section 27565(e) would thus undermine this earlier section. For example, it is impossible to imagine functional specifications and standards that don't allow toll agencies to share toll amounts – how else would one toll agency provide an accounting to its customer for use of another toll agency's road? And yet, toll amounts are not listed in Section 27565(e). That subsection cannot be read to prohibit transmissions of the PII required for intrastate interoperability under subsection (a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

The Court's answer to Question 8 is YES.

### 3. DISPOSITION

The Court answers Defendants' Key Questions as follows:

Question 1: Yes.

Question 2: Yes, subject to the limitations stated in Section 2.2.

Question 3: Yes, subject to the limitations stated in Section 2.3.

Question 4: No answer (insufficient information in the record).

Question 5: Yes.

Question 6: Yes.

Question 7: No answer (insufficient information in the record).

Question 8: Yes.

These answers do not apply to Defendant 3M.

At the conclusion of this analysis, certain factual issues that are embedded in Defendants' questions and insufficiently resolved in the motion prevent judgment for the Defendants. Mainly, Defendants haven't shown what information they are "required" to send to the DMV, FTB, or collection agencies to perform functions that the Court has found to be permitted under Section 31490. *See* Answers to Questions 2, 3, 4, and 7. The evidence Defendants presented in their summary judgment papers was also lacking on this question. Since there is no judgment on these issues, there can be no appeal on them, either.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

The supplemental briefing filed for this motion has, however, made it possible for the Court to adjudicate certain issues in this case that it could not adjudicate before. *See* Summary Judgment Order (Dkt. 297 at 15-16) ("[T]he scope of the legal and factual issues involved in the TCA motion is unwieldy . . . When issues are particularly complex, courts may determine that summary judgment isn't the proper method to dispose of claims . . . summary judgment isn't the proper method to dispose of Plaintiffs' transfer-based claims *at this time*.") (Emphasis added.) The Courts answers to Questions 1, 5, 6, and 8 result in partial judgment for the Defendants. The Court GRANTS judgment under Federal Rule of Civil Procedure 56(f) in favor of Defendants on:

(1) All Plaintiffs' claims under Section 31490 based on transferring date of toll violation information to the California DMV (*see* Class Certification Order (Dkt. 501) at 19, second bullet);

(2) All Plaintiffs' claims under Section 31490 based on transferring license plate numbers to the California DMV for a second inquiry, the Arizona DMV, DataTicket Incorporated, or Law Enforcement Systems, LLC (*see* Class Cert. at 20, third bullet);

(3) Golka's claims under Section 31490 based on transferring name and address information to a vendor to send notice of toll evasion (*see* Class Cert. at 20, sixth bullet);

(4) All Plaintiffs' claims under Section 31490 based on transferring toll violation information to a rental car company, whether electronically or otherwise (*see* Class Cert. at 20, sixth bullet);

(5) All Plaintiffs' claims under Section 31490 based on one California Toll Operator Committee agency's transfer of transponder numbers, dates, times, locations, and toll amounts to another CTOC agency.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SACV 16-00262 AG (JCGx); consolidated with SACV 16-00940 AG (JCGx) | Date | August 26, 2019 |
|---|---|---|---|
| Title | IN RE TOLL ROADS LITIGATION | | |

Because the Court has not found in this order that any of the practices listed in the Key Questions necessarily constitutes a violation of Section 31490, Defendants' request for certification under 28 U.S.C. § 1292(b) is moot.

                                                    : 0

Initials of Preparer    mku