1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (220051)
hzeldes@sshhzlaw.com
BEN TRAVIS (305641)
btravis@sshhzlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990
Facsimile: (310) 399-7040

*Co-Lead Class Counsel*

[*Additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

IN RE: TOLL ROADS LITIGATION
_____

PENNY DAVIDI BORSUK; DAVID COULTER; EBRAHIM E. MAHDA; TODD QUARLES; TODD CARPENTER; LORI MYERS; DAN GOLKA; and JAMES WATKINS on behalf of themselves and all others similarly situated,

　　　　　Plaintiffs,

　　vs.

FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY; SAN JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY; ORANGE COUNTY TRANSPORTATION AUTHORITY; 3M COMPANY; BRiC-TPS LLC; RHONDA REARDON; MICHAEL KRAMAN; CRAIG YOUNG; SCOTT SCHOEFFEL; ROSS CHUN; DARRELL JOHNSON; LORI DONCHAK; COFIROUTE USA, LLC; and DOES 3-10; inclusive,

　　　　　Defendants.

Case No:  8:16-cv-00262-ODW(ADSx)

Hon. Otis D. Wright II

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date:   December 10, 2020
Time:  10:30 a.m.
Location:   Judicate West
　　　　55 Park Plaza, Suite 400
　　　　Irvine, CA 92614

Special Master: Hon. Andrew J. Guilford (ret.)

[Filed Concurrently with Declarations and Proposed Order]

---

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................... 1

II.     BACKGROUND AND PROCEDURAL HISTORY ................................ 3

    A.    The Complaint............................................................................. 3

    B.    Discovery .................................................................................... 4

    C.    Class Certification....................................................................... 4

    D.    Judgment on the Pleadings.......................................................... 4

    E.    Summary Judgment...................................................................... 4

    F.    Ruling on Key Questions ............................................................ 5

    G.    The Parties' Extensive Mediation Efforts .................................. 5

    H.    Board Approval of the TCA Settlement ..................................... 6

III.    TERMS OF THE SETTLEMENT AGREEMENTS ............................... 7

    The TCA Settlement

    A.    The TCA Settlement Class Definition ........................................ 7

    B.    The Settlement Benefits .............................................................. 8

        1.    Cash Payments to Class Members............................................. 7

        2.    Penalty Forgiveness to TCA Class Members............................ 8

        3.    Remedial Measures Attributable to the Settlement................... 8

            a.    Increase the TCA's Grace Period from Five to Seven
               Days to Pay Tolls ....................................................... 9

            b.    Editing TCA's Private Policy to Provide More
               Information about Third Party Transmissions of PII ....... 9

            c.    Reset ALL TCA Advertising Opt-Ins to Opt-Out ........... 9

            d.    Limitations on the TCA's PII Transmissions Going
               Forward...................................................................... 9

            e.    Miscellaneous Remedial Measures ............................... 10

4. The TCA Settlement's Value to Class Members ...................... 10

C. Plan of Distribution to the TCA Settlement Class ............................ 11

D. Notice to the TCA Class ................................................................ 11

E. Proposed TCA Class Representative Service Awards ........................ 12

F. Attorneys' Fees and Costs ............................................................. 12

G. The Settlement Administrator ......................................................... 13

The 3M Settlement

A. The 3M Settlement Class Definition ................................................ 14

B. The 3M Settlement Benefits .......................................................... 14

1. Cash Payments to 3M Class Members ..................................... 15

C. Plan of Distribution to the 3M Settlement Class ............................... 15

D. Notice to the 3M Settlement Class ................................................. 15

E. Proposed 3M Class Representative Service Awards ......................... 15

F. Attorneys' Fees and Costs ............................................................. 16

G. The 3M Settlement Administrator ................................................... 17

IV. PRELIMINARY APPROVAL IS APPROPRIATE ..................................... 17

A. Legal Standards ........................................................................... 17

1. Class Certification ................................................................. 18

2. Fairness of the Proposed Class Action Settlement ................... 18

B. Discussion .................................................................................... 19

1. Class Certification .................................................................. 19

a. The Classes are Sufficiently Numerous .......................... 20

b. There are Common Questions of Law and Fact ............... 20

c. The Class Representatives' Claims Are Typical of Those of Other Class Members ...................................... 21

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

d.   Class Representatives and Class Counsel Adequately Represent Class Members ............................................... 21

e.   Common Issues of Law and Fact Predominate ............. 22

f.   Superior Method of Adjudication ................................. 23

2.   The Proposed Settlements Should be Preliminarily Approved. 23

a.   The Class Representatives and Class Counsel have Adequately Represented the Settlement Classes ........... 23

b.   The Proposals were Negotiated at Arm's Length ........... 23

c.   The Relief Provided for the Class is Adequate ............. 24

i.   The Costs, Risks, and Delay of Trial and Appeal ......................................................... 24

ii.   The Effectiveness of any Proposed Method of Distributing Relief to the Class, including the Method of Processing Class-Member Claims ....................................................... 25

iii.   The Terms of Any Proposed Award of Attorney's Fees, including Timing of Payment ..................................................... 25

d.   The Proposal Treats Class Members Equitably Relative to Each Other................................................................. 25

3.   The Proposed Notice is Appropriate ...................................... 26

4.   The Claims Process is not Cumbersome ................................ 29

5.   The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing........................................................ 30

V.   ENJOINING SUIT FOR THE PROVISION OF NOTICE .......................... 30

VI.   CONCLUSION ............................................................................. 32

# **TABLE OF AUTHORITIES**

**Cases**                                                                      **Page(s)**

*Class Plaintiffs. v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................. 18

*Deluca v. Farmers Insurance Exchange*,
   2020 WL 5071700 (N.D. Cal. August 24, 2020) .......................................... 13, 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................... 21, 22

*In re HP Inkjet Printer Litigation*,
   2014 WL 4949584 (N.D. Cal, Sep, 30, 2014) ..................................... 27

*In re Hyundai and Kia Fuel Economy Litigation*,
   926 F.3d 539 (9th Cir. 2019) ............................................................... 18

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ....................................................... 13, 16

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) ............................................................... 22

*Jacobs v. CSAA Inter-Ins.*,
   No. C07-00362MHP, 2009 WL 1201996 (N.D. Cal. May 1, 2009)................... 31

*Keith v. Volpe*,
   118 F.3d 1386 (9th Cir. 1997)............................................................... 31

*Kenneth Glover, et al. v. City of Laguna Beach, et al.*,
   2018 WL 6131601 (C.D. Cal. 2018) ................................................... 19

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014)........................................................ 27

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010) ..................................................... 13, 17, 29

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................ 27

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ............................ 27

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal., September 15, 2015) ............................ 27

*Officers for Justice v. Civil Service Comm'n of the City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................ 18

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................ 21

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................ 26

*Schulein v. Petroleum Dev. Corp., No. SACV 11-1891 AG*
   (ANX), 2015 WL 12698312 (C.D. Cal. Mar. 16, 2015) ............................ 13, 16

*Spann v. J.C. Penney Corporation*
   (C.D. Cal. 2016) 314 F.R.D. 312 ............................ 27

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................ 18

*United States v. New York Tel. Co.*,
   434 U.S. 159 (1977) ............................ 31

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................ 13, 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, (2011) ............................ 8

*Wright v. Linkus Enterprises, Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ............................ 31

**Statutes**

28 USC § 1651 ...................................................................................................... 30

Federal Rules of Civil Procedure 23 ................................................................. *passim*

Streets and Highways Code § 31490 ................................................................ *passim*

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

After five years of contentious litigation, Plaintiffs are pleased to announce that they have reached agreements with the Settling Defendants[1] to resolve all claims and end the litigation. In this motion, Plaintiffs seek preliminary approval of two outstanding class settlements, which they believe are fair, reasonable and adequate, as described in more detail below.[2]

This litigation concerns Plaintiffs' claim – and the claims of the certified Class of toll road drivers on State Routes 73, 133, 241, 261, and the 91 Express Lanes that Plaintiffs represent – that defendants improperly share their personally identifiable information ("PII") with third parties in violation of Streets and Highways Code § 31490, as well as several other consumer, constitutional and common law claims. Plaintiffs' claims have been vigorously prosecuted by their counsel and aggressively challenged by the five defendants in this action. Agreements to settle were reached only after multiple extensive and lengthy arms' length negotiations over a period of more than a year.

The two class settlements provide significant and meaningful relief to their respective classes: the total monetary value of the settlements is at least $175.95 million, consisting of cash (non-reversionary funds of $29 million from the TCA and $11.95 million from 3M) as well as penalty forgiveness ($135 million from the TCA).

---

[1] Defendants Foothill/Eastern Transportation Corridor Agency, San Joaquin Hills Transportation Corridor Agency, Michael Kraman, Craig Young, Scott Schoeffel, Ross Chun, Rhonda Reardon (collectively "TCA") and BRiC-TPS, LLC ("BRiC") are referred to collectively herein as "TCA Defendants". The TCA Defendants and 3M Company ("3M") are collectively referred to as "Settling Defendants" or "Defendants". Plaintiffs are in the process of finalizing a negotiated settlement with the remaining Defendants (Orange County Transportation Authority ("OCTA"), Cofiroute USA, LLC, Darrell Johnson and Lori Donchak). Those defendants are not the subject of this Motion.

[2] There are two settlement agreements because the settlements were reached separately.  Plaintiffs reached settlements in principle with: 3M on July 16, 2019 and the TCA Defendants on August 22, 2019.  However, to avoid confusing Settlement Class members, the parties have endeavored to coordinate approval and notice.

The TCA settlement also provides important injunctive and programmatic relief relating to, among other things, how TCA will safeguard driver's PII going forward. For example, the TCA will provide, among other things:  a one-time reset of all class members' status to "opt-out" of advertising; substantive programmatic changes to the TCA's practices going forward including increased disclosures in their privacy policy about where consumers' PII is sent; limits on the PII sent to third parties to only that information that is in the Notice of Violation or that is required by the state entity (*e.g.*, the DMV or FTB); and an increase in the grace period by which all drivers have to pay their tolls from five days to seven days.

These settlements were only achieved after five years of hard-fought litigation which included multiple Motions to Dismiss, Motions for Judgment on the Pleadings, three rounds of Motions for Summary Judgment, Class Certification, a 23(f) petition to the Ninth Circuit (which denied the petition), a Motion to Decide Key Questions, production and review of over 500,000 pages of documents, 34 depositions, expert discovery, contested discovery disputes, and third party depositions across the country.  The settlement negotiations were just as intense and hard-fought, including three rounds of good faith, arms'-length mediation before two highly respected mediators, including one session that started at 9:00 a.m. and ended at 4:30 a.m. the following morning (and ultimately resulted in a settlement in principle with the TCA Defendants).  The history of the litigation is described in more detail in the Declaration of Helen I. Zeldes ("Zeldes Decl."), one of the three Co-Lead Class Counsel, filed concurrently with this Memorandum.

The TCA Settlement Class is comprised of individuals whose PII was shared during the complete Class Period, while the 3M Settlement Class covers individuals whose PII was shared during the sub-portion of the Class Period when 3M was the contracted vendor for the TCA (a subset of the TCA Settlement Class). All 3M Settlement Class members are also TCA Settlement Class members and will be eligible to receive relief from both settlements.

Class Counsel believe that the Settlement amounts reached here are an excellent result for the Settlement Classes, particularly given the risks attendant to further litigation. The settlements provide meaningful monetary, programmatic and injunctive relief.  In particular, in light of the valuable benefits conveyed to members of the Settlement Classes, and the significant risks the Settlement Classes would face if the litigation continued - including taking into account the Court's recent order on Key Legal Questions dismissing some of Plaintiffs' claims during the settlement process - the terms of the Settlement are "fair, reasonable, and adequate" and merit preliminary approval.  Class Counsel therefore respectfully request that this Court grant preliminary approval of the Settlements.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    The Complaint

This action was initially filed in California state court on or about October 2, 2015, and later removed to federal court on February 16, 2016. Two additional federal actions were filed and eventually consolidated into the current litigation in 2016.  The TCA filed Motions to Dismiss that were granted in part and denied in part on December 20, 2016. Plaintiffs amended the operative Complaint on January 19, 2017, and Defendants answered that Complaint on February 14, 2017

Plaintiffs' Complaint brought a claim under Streets and Highways Code § 31490 (the only cause of action to which class certification was granted) which alleged that Defendants improperly provided PII of users and subscribers of the Toll Roads (including Plaintiffs) to dozens of third parties in violation of § 31490(a), subjecting them to statutory damages of $2,500 per violation under § 31490(q). Plaintiffs also alleged that Defendants violated other laws and statutes, including an excessive fines claim (stemming from penalties they imposed), a due process claim (stemming from their violation notices, administrative review procedures and lack of signage) as well as several other claims.

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

### B.   Discovery

The parties engaged in extensive discovery and motion practice, including the production of and review of over 500,000 pages of documents, depositions of 34 witnesses, expert discovery, and a site inspection of TCA's VTX System. *See* Zeldes Decl. at ¶ 8. Discovery took place over the course of 40 months, with multiple motions filed and fully litigated during that time. *Id*. Third party subpoenas were issued to 15 parties, and depositions of those third parties were also undertaken. *Id*.

### C.   Class Certification

Plaintiffs' Motion for Class Certification was filed on April 27, 2018 and fully briefed over the course of the next two months, leading to a full class certification hearing on July 31, 2018. *Id*. at ¶ 11. The Court certified Plaintiffs' proposed Privacy Class and amended the class definition a few months later, but declined to certify any other claims. Dkt Nos. 439, 501. Defendants filed a motion for reconsideration, which the Court denied, and then filed an appeal to the Ninth Circuit, which was also denied in April of 2019.

### D.   Judgment on the Pleadings

Defendants filed Motions for Judgment on the Pleadings on March 24, 2017. After extensive briefing and oral argument, the Court granted in part and denied in part each motion on August 2, 2017. Dkt. 204. The Court dismissed Plaintiffs' Rosenthal Act claim and also dismissed Plaintiffs' claims against 3M for damages under the California Constitution. The parties continued with discovery on Plaintiffs' § 31490, negligence, constitutional privacy, due process and excessive fines claims.

### E.   Summary Judgment

Defendants sought summary judgment on multiple occasions, requiring extensive briefing each time, and sought reconsideration after the Court ruled. Zeldes Decl. at ¶ 12. Motions for partial summary judgment were first filed in March of 2017, but later withdrawn, only to be renewed in September of 2017. At issue in the summary judgment motions were Plaintiffs' claims under § 31490, which, over time,

became the focus of the litigation.

On January 12, 2018, the Court granted summary judgment on the portion of Plaintiffs' claim based on alleged violations of the privacy policy but denied the motion without prejudice as to the rest of Plaintiffs' claim for improper sharing of PII. Dkt. 297. Discovery continued on the remainder of the claims.

Defendants' Third Motions for Summary Judgment were filed on June 18, 2018. On July 31, 2018, Plaintiffs' CLRA, UCL, and constitutional claims and request for injunctive relief against 3M were dismissed. Dkt. 440. The excessive fines claim against TCA was dismissed, but the individual due process claim survived. Almost immediately after the Court ruled on the summary judgment motions, Defendants filed extensive motions for reconsideration. The Court's tentative ruling denied those motions and after argument on those motions in late September of 2018, were taken under submission.

**F.    Ruling on Key Questions**

Over the course of the litigation, Defendants suggested to the Court that, with respect to certain issues in the case, concerning elements of the § 31490 claim, resolution of particular "key questions" would help to resolve the matter. Defendants ultimately filed their motion on June 10, 2019, and the parties briefed the motion, but the Court withheld its ruling on the matter for several months, which provided an impetus for settlement negotiations, leading ultimately to the 3M settlement in July 2019, followed by the TCA settlement in August 2019.

On January 17, 2020, the Court issued its ruling on the Key Questions Motion. In its ruling, the Court found that certain types of transmissions for interoperability and/or collection and enforcement did not violate Section 31490. [Dkt. No. 566] With respect to intrastate interoperability, the Court found that Section 31490 permits Defendants to send to another transportation agency the information established for interoperability under subsection (a) of section 27565 of the Streets and Highways Code, including, but not limited to, the date and time, toll plaza, and lane of that other

agency's accountholder's use of its toll road.  The Court additionally found that certain other transmissions for collection and enforcement purposes, such as transmissions of information to the DMV or vendors to identify the registered owner and address or to car rental companies, did not violate Section 31490.  The Court found that providing information to a third party collection agency to collect unpaid delinquent tolls and penalties was permitted by Section 31490 but insufficient information had been presented to show whether or not the information provided was required for enforcement and collection purposes.  With respect to certain other transmissions, the Court found that it was unable to make a ruling due to unresolved factual issues.

### G.    The Parties' Extensive Mediation Efforts

On February 25, 2019, Plaintiffs and all defendants participated in a mediation with Robert Kaplan. Hard fought, intensive and arms' length negotiations over the course of a full day did not result in a settlement. On April 25, 2019, Plaintiffs and 3M participated in a second mediation with Mr. Kaplan. The parties made progress toward a resolution and agreed to continue settlement discussions with the assistance of Mr. Kaplan. Over the course of the next three months, involving multiple arms' length communications and further negotiations between and among the parties and Mr. Kaplan, the parties reached a settlement in principle on July 16, 2019.  *See* Zeldes Decl. at ¶ 13. On August 21, 2019, Plaintiffs and the TCA Defendants participated in a mediation with Rachel Ehrlich, which lasted for 19 hours concluding at 4:30 a.m. in the morning.  *Id*. at ¶ 14. The mediation resulted in a settlement in principle with the signing of a term sheet. Over the course of the next several months, Plaintiffs and the TCA Defendants spent considerable time with the assistance of Ms. Ehrlich working out the details of the Settlement Agreement. *Id.*

### H.    Board Approval of the TCA Settlement

The TCA settlement was subject to the approval of the boards that oversee their operations, and was put to a vote of the boards following the conclusion of the mediation efforts described above.  The settlement was approved by the TCA boards.

### III.   TERMS OF THE SETTLEMENT AGREEMENTS

### The TCA Settlement

### A.   The TCA Settlement Class Definition

The proposed TCA Settlement Class is defined as follows:

- All individuals whose PII was provided by Defendants to any other individual or entity between April 13, 2015 and the Settlement Class Period End Date[3], except as otherwise specified. The Settlement Class consists of:

- Any person with a transponder account with a Toll Agency whose PII was sent by Defendants to another Toll Agency between April 13, 2015 and the Settlement Class Period End Date (The Interoperability Subclass");

- Any person who used any of the TCA Toll Roads whose PII was sent by Defendants to a third party between April 13, 2015 and the Settlement Class Period End Date in connection with TCA Defendants' efforts to collect tolls and/or penalties (the "Collection/Enforcement Subclass"); and

- Any person whose PII was sent by Defendants to a third party between April 13, 2015 and the Settlement Class Period End Date for any reason other than those listed above (the "Communications Subclass").

Excluded from the Settlement Class are: (1) employees of TCA Defendants, including their current and former directors, officers and counsel; (2) any entity that has a controlling interest in TCA Defendants; (3) TCA Defendants' affiliates and subsidiaries; and (4) the judge to whom this case is or was assigned, any member of the judge's immediate family, and any member of the judge's staff.

---

[3] Settlement Class Period End Date is defined as thirty (30) days after the Court issues the Preliminary Approval Order.

### B.     The Settlement Benefits

The total TCA settlement includes $29 million dollars in cash, $135 million dollars in penalty forgiveness and substantial injunctive and programmatic relief (changes to the TCA's practices).  Specifically, the TCA settlement provides:

### 1.     Cash Payments to Class Members

The TCA will contribute $29 million dollars to a non-reversionary cash Settlement Fund.  All Settlement Class Members who submit valid Claim Forms and are not eligible for penalty forgiveness will receive Cash Awards from the TCA Settlement Fund on a pro-rata basis[4].

### 2.     Penalty Forgiveness to TCA Class Members

The TCA will also provide a substantial $135 million dollars in penalty forgiveness to Settlement Class Members with outstanding penalties.  The Penalty Forgiveness amount will be distributed in two steps:  First, all Participating Penalty Forgiveness Class Members will receive the lesser of the total of their outstanding penalties or $57.50 (the equivalent of at least one penalty assessment) in penalty forgiveness.   Second, the remainder of the Penalty Forgiveness Fund will be distributed to Penalty Forgiveness Class Members from those with the oldest outstanding penalties to the newest. There is no requirement to submit a Claim Form to receive penalty forgiveness, it will be electronically pushed out to Penalty Forgiveness Class Members.

### 3.     Remedial Measures Attributable to the Settlement

In addition to the cash and penalty forgiveness, additional benefits of the Settlement are the remedial measures that the TCA will enact as a result of this litigation, which will benefit all Class Members regardless of whether they submit a claim.  The remedial measures include, but are not limited to:

---

[4] The Settlement provides that unconfirmed claims will receive half of a pro rata share. An unconfirmed claim is a claim submitted attesting to membership in the Settlement Class but whose identifying information does not allow the Class Administrator to either confirm or reject membership in the Settlement Class.

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### a. Increasing the TCA's Grace Period from Five to Seven Days to Pay Tolls

The TCA has agreed to increase the time that drivers have to pay their tolls before a Notice of Toll Evasion is issued from 5 days to 7 days (a 40% increase in the grace period).

### b. Editing the TCA's Privacy Policy to Provide More Information about Third Party Transmissions of PII

The TCA has agreed to change their privacy policy to include a list of the categories of PII sent to any third party, including but not limited to entities that belong to the California Toll Operators Committee ("CTOC"), and a separate list of the categories of PII the TCA receives from other Toll Agencies.

### c. Reset ALL TCA Advertising Opt-Ins to Opt-Out

The TCA will remove the opt-in status all for all current subscribers in the VTX system (governing opt-ins for communications by TCA) if the Court approves that they can send (i) a single email to all account holders notifying them that they have been opted out and asking them to select their communications preferences in their online account; and (ii) a statement to be included in any other communications that would otherwise be sent to TCA customers advising them to update their communications preferences and/or containing a link to a website that allows TCA customers to update their communications preferences.

### d. Limitations on the TCA's PII Transmissions Going Forward

The TCA has agreed on a going forward basis to the following limitations on its PII transmissions:

1. When the TCA sends PII to the Franchise Tax Board ("FTB") for the purpose of placing a tax intercept, the TCA will send only the PII that the FTB requires to place such tax intercept.

2.    When the TCA transmits PII to a rental car company as a result of a rental car traveling on State Routes 73, 133, 241, or 261 and failing to pay a toll associated with travel on such Route, the TCA will transmit only such PII as is contained in the toll violation notice resulting from the aforementioned failure to pay a toll.

3.    The TCA shall use skip tracers only in instances where: (i) mail is returned to the TCA as undeliverable, or (ii) the TCA requires the use of skip tracers to obtain information that the FTB requires to place a tax intercept. Notwithstanding the foregoing, if legislation is enacted that provides for the use of skip tracers in additional instances, the TCA shall also be permitted to use skip tracers in those additional instances.

4.    When the TCA sends PII to the California Department of Motor Vehicles ("DMV") for the purpose of causing the DMV to place a DMV registration hold, the TCA shall only send the PII that the DMV requires to place a DMV registration hold.

### e.    Miscellaneous Remedial Measures

Since the filing of this lawsuit, the TCA has undertaken significant signage enhancement projects, including, in the spring of 2019, sign enhancements along the 73, 133, 241, and 261 and, in 2020, updating and modifying nearly 600 roadway signs on the 73, 133, 241, and 261 Toll Roads, including connecting highways and arterials. The TCA has also provided significant revisions and improvements to its privacy policy to now disclose its current collection, and sharing PII practices. *See* https://thetollroads.com/sites/default/files/Privacy_Policy_01_01_2020.pdf (last visited October 28, 2020).

### 4.    The TCA Settlement's Value to Class Members

The total cash fund that will be distributed to Settlement Class Members (after class notice and administration costs, cost of a Special Master, Class Counsel's attorneys' fees and reasonable costs and Service Awards to the Class Representatives)

is $29 million dollars.  The total penalty forgiveness is $135 million dollars.  The total monetary value of the TCA settlement is thus approximately $164 million.  The value of remedial measures for consumers is not included in these numbers, but is clearly of significant meaningful value to drivers on the toll roads.

### C.     Plan of Distribution to the TCA Settlement Class

Subject to the Court's approval, the $29 million cash will be used to fund the Cash Awards, class notice and administration costs, cost of a Special Master, Class Counsel's attorneys' fees and reasonable costs and Service Awards to the Class Representatives.  Class members will claim in for cash.  Penalty Forgiveness will be automatically allocated to class members, no claim process will be necessary.  As discussed above, the TCA will electronically forgive outstanding penalties in two steps:  first, TCA will forgive the lesser of the Settlement Class Member's total outstanding penalties or $57.50 (the equivalent of one penalty).  Secondly, TCA will forgive up to 100% of the Settlement Class's remaining outstanding penalties, starting with the Settlement Class's oldest penalties and proceeding to the newest. This is the way to get the most penalty forgiveness for the Class and will help get relief to class members who have been unable to renew their vehicle registrations the longest due to DMV liens as well as to those who have been subjected to FTB liens.

### D.     Notice to the TCA Class

Pursuant to Rule 23(c)(2)(B), the Settlement Administrator will provide Class Members with the Settlement Notice via U.S. Mail or email to each Class Member's last known address.  (Settlement Agreement ¶8.01; Declaration of Cameron Azari of Epiq Class Action & Claims Solutions, Inc. ("Azari Decl.") ¶¶ 6-7. The printed Settlement Notice will contain a detachable Claim Form allowing participating Class Members to claim in for a cash distribution.  The printed Settlement Notice will also list the website where Class Members may electronically submit a claim form.  Class Members who receive Settlement Notice by email will receive a link in the email that will take them directly to the easy-to-submit Settlement Website online claim form.

For those who are members of both the TCA and 3M Settlement Classes, the Notice
will include both the TCA and 3M Settlements so that a Class Member only needs to
submit one claim form to be considered for cash payments from both Settlements. In
addition, publication notice will also be utilized to reach the small portion of the class
for whom the TCA does not have their contact information.

### E.     Proposed TCA Class Representative Service Awards

Subject to Court approval, Class Counsel will seek payment of up to $15,000
service awards to each Plaintiff for their service as Class Representatives.[5] (Settlement
Agreement ¶ 4.02).   These Plaintiffs have been enthusiastic and active class
representatives. They have actively participated in the prosecution of this action by:
reviewing and approving their original complaints and the Consolidated Complaint;
sitting for a full-day deposition; responding to multiple lengthy sets of written
discovery including ones that delved into their finances; communicating regularly
with class counsel; submitting declarations in opposition to Defendants' motions for
summary adjudication; and generally staying informed about the progress of the
litigation and acting in the interests of the proposed classes. Each put their name and
reputation on the line for the sake of the Class, and no recovery would have been
possible without their critical role. Zeldes Decl. ¶ 30.   The proposed maximum
$15,000 service awards are consistent with those approved in other consumer class
action settlements that have been pending as long as this one has.

### F.     Attorneys' Fees and Costs

As part of the TCA Settlement, Class Counsel stated that they would not seek
an award of fees in excess of one-third of the Settlement Value (Settlement Agreement
¶ 4.01).  The Settlement Value of the monetary component of the settlement is $164
million, which includes cash and monetary forgiveness.  Class Counsel will seek no
more than $17.5 million – less than a third of the maximum amount that Class Counsel

---

[5] Plaintiff James Watkins is not a party to either Settlement Agreement.

stated they would seek pursuant to Settlement Agreement. This amount represents 10.7% of the minimum estimated Settlement Value. Such a request is well below the Ninth Circuit's 25% "benchmark" percentage for such awards. *See, e.g.*, *Deluca v. Farmers Insurance Exchange*, 2020 WL 5071700 (N.D. Cal. August 24, 2020); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *see also Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANX), 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (30% of the settlement is "certainly not unique, especially in common fund cases" and "is similar to awards in other cases, which favors granting the motion."). Nonetheless, an upward adjustment above the benchmark percentage would have been warranted under these circumstances.

The Proposed Order for preliminary approval provides that Class Counsel will file a motion for payment of attorneys' fees and expenses prior to the Final Fairness Hearing. As that motion will make clear, the $17.5 million sought is reasonable as a percentage of the fund and is also commensurate with the substantial lodestar attorneys' fees plus expenses incurred in this matter. Class Members will have the opportunity to comment on or object to the fee petition under Rule 23(h), consistent with Ninth Circuit authority. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

### G.    The Settlement Administrator

The Parties propose that Epiq Class Action & Claims Solutions, Inc.—an experienced and reputable national class action administrator—serve as Settlement Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the Settlement. (Settlement Agreement ¶¶ 6.01, 6.03, 7.01, 7.02, 8.01, 8.02, 8.04, 8.05, 8.06.) The costs of the Settlement Administrator will be

paid out of the Settlement Fund, which costs are estimated to be $1,648,346.94[6]
(Settlement Agreement, ¶ 12.01(a)).

## THE 3M SETTLEMENT

### A.    The 3M Settlement Class Definition

The proposed 3M Settlement Class is a subset of the TCA Settlement Class (the same class, just for a shorter period of time) and is defined as follows:

All individuals whose PII was provided by 3M or TCA to any other individual or entity from April 13, 2015 to June 30, 2015, including:

- Any person with a transponder account with a Toll Agency whose PII was sent by 3M or TCA from April 13, 2015 to June 30, 2015 to another Toll Agency (interoperability transmissions);

- Any person who used any of the TCA Toll Roads whose PII was sent by 3M or TCA to a third party from April 13, 2015 to June 30, 2015 in connection with efforts to collect tolls or penalties (collection transmissions); and

- Any person whose PII was sent by 3M or TCA to a third party from April 13, 2015 to June 30, 2015 for any reason other than those listed above (other transmissions).

Excluded from the Settlement Class are: (1) employees of Defendant, including their current and former directors, officers and counsel; (2) any entity that has a controlling interest in Defendant; (3) Defendant's affiliates and subsidiaries; and (4) the judge to whom this case is assigned, any member of the judge's immediate family, and any member of the judge's staff.

### B.    The 3M Settlement Benefits

The total 3M settlement includes $11.95 million dollars in cash. Specifically, the 3M settlement provides:

---

[6] The costs of the Settlement Administrator will be apportioned equitably between the two Settlements.

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

### 1.     Cash Payments to 3M Class Members

Defendant 3M Company will contribute $11.95 million dollars to a non-reversionary Settlement Fund. All Class Members who submit a valid Claim Form will be eligible to receive a cash payment on a pro rata basis[7].

### C.     Plan of Distribution to the 3M Settlement Class

Subject to the Court's approval, the $11.95 million cash will be used to fund the Cash Awards, class notice and administration costs, cost of a Special Master, Class Counsel's attorneys' fees and reasonable costs and Service Awards to the Class Representatives.  3M Class members will submit claims for eligibility for a pro rata share of the cash fund (the total fund, minus costs, divided by the total number of claims) as set forth in the attached Class Notice Plan.  If there are any remaining funds after the initial distribution, a second round of checks will also be allocated on a pro rata basis to the claimants who have cashed their settlement checks.

### D.     Notice to the 3M Settlement Class

As described above, 3M Class Members will receive a single notice describing both the TCA Class Settlement and the 3M Class Settlement and allowing them to make claims in either or both settlements.

### E.     Proposed 3M Class Representative Service Awards

Subject to Court approval, Defendant 3M agrees not to oppose the payment of $3,000 service awards to each settling Plaintiff (excluding Quarles and Mahda, whose claims against 3M were dismissed) for their service as Class Representatives. (3M Settlement Agreement ¶ 5.02). These Plaintiffs have been enthusiastic and active class representatives. They have actively participated in the prosecution of this action by: reviewing and approving their original complaints and the Consolidated Complaint;

---

[7] The Settlement provides that unconfirmed claims will receive half of a pro rata share. An unconfirmed claim is a claim submitted attesting to membership in the Settlement Class but whose identifying information does not allow the Class Administrator to either confirm or reject membership in the Settlement Class.

sitting for a full-day deposition; responding to multiple lengthy sets of written discovery including ones that delved into their finances; communicating regularly with class counsel; submitting declarations in opposition to Defendants' motions for summary adjudication; and generally staying informed about the progress of the litigation and acting in the interests of the proposed classes. Each put their name and reputation on the line for the sake of the Class, and no recovery would have been possible without their critical role. Zeldes Decl. ¶30  The proposed $3,000 service awards are consistent with those approved in other consumer class action settlements that have been pending as long as this one has.

## F.    Attorneys' Fees and Costs

As part of the Settlement, Class Counsel stated that they would not seek an award of fees in excess of one-third of the Settlement Value. (3M Settlement Agreement ¶ 5.01). The Settlement Value is $11.95 million.  Class Counsel will only request 25% of the Settlement Value, which equals approximately $2.99 million. Such a request is consistent with the Ninth Circuit's 25% "benchmark" percentage for such awards. *See, e.g.*, *Deluca v. Farmers Insurance Exchange*, 2020 WL 5071700 (N.D. Cal. August 24, 2020); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *see also Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANX), 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (30% of the settlement is "certainly not unique, especially in common fund cases" and "is similar to awards in other cases, which favors granting the motion.").

The Proposed Order for preliminary approval provides that Class Counsel will file a motion for payment of attorneys' fees and expenses prior to the Final Fairness Hearing. As that motion will make clear, the approximately $2.99 million sought is reasonable as a percentage of the fund and is also commensurate with the lodestar attorneys' fees plus expenses incurred in this matter. Class Members will have the opportunity to comment on or object to the fee petition under Rule 23(h), consistent

with Ninth Circuit authority. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

### G.     The 3M Settlement Administrator

The Parties propose that Epiq Class Action & Claims Solutions, Inc.—an experienced and reputable national class action administrator—serve as Settlement Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the Settlement. (Settlement Agreement ¶¶ 7.01, 7.02, 7.03, 8.01, 8.02, 8.04, 8.05.) The total costs of the Settlement Administrator for both the TCA and 3M settlements[8] will be paid out of the Settlement Funds of those settlements and is estimated to be $1,648,346.94.

## IV.     PRELIMINARY APPROVAL IS APPROPRIATE

### A.     Legal Standards

Federal Rules of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement. First, a court must determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class for judgment. See Fed. R. Civ. P. 23(e)(1)(B). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

---

[8] The costs of the Settlement Administrator will be apportioned equitably between the two Settlements.

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### 1.    Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of FRCP 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, (2011). However, the court does not need to consider issues of manageability, as manageability is not a concern in certifying a settlement class where, by definition, there will be no trial. *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 556-57 (9th Cir. 2019).

### 2.    Fairness of the Proposed Class Action Settlement

Rule 23 provides that "the claims, issues, or defenses of … a class proposed to be certified for purposes of settlement may be settled. . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] Class Members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Service Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). Therefore, a district court must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); see Fed. R. Civ. Proc. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied, *Hoffer v. City of Seattle*, 506 U.S. 953 (1992). The Court may approve a settlement agreement "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"If the proposed settlement 'appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval,' the court should grant preliminary approval of the class and direct notice of the proposed settlement to the class." *Kenneth Glover, et al. v. City of Laguna Beach, et al.*, 2018 WL 6131601, at *2 (C.D. Cal. 2018) (Guilford, J.) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007)).

## B.     Discussion

### 1.     Class Certification

The Court has already certified a Privacy Class for litigation of the claims under Streets and Highways code § 31490.   *See* Dkt. 501 pp. 19-20. The proposed settlements define Settlement Classes that are slightly different than the certified Privacy Class. First, the 3M Settlement Class only covers the period of time between April 13, 2015 and June 30, 2015 as 3M's contract with the TCA ended on that date. Second, membership in the certified Privacy Class is defined based on whether the consumer used one of the toll roads during the Class Period. However, membership in the Settlement Classes is defined based on whether the consumer's PII was shared during the Class Period. Plaintiffs believe that the sharing of PII is the relevant factor as that is what triggers the application of SHC § 31490. Finally, the six bullet points in the Class Certification Order are combined into three broader bullet points in the Settlements.

At the Class Certification stage, Plaintiffs had moved to certify a broad class consisting of consumers who had their privacy rights violated by the improper dissemination of their PII in connection with the Toll Roads operated by the Defendants Dkt. 501 p. 3-4. In finding that the class definition was fail-safe, the Court used its discretion to redefine the class. *Id.* At 12-13. Using documents Plaintiffs submitted with their briefing, the Court redefined the class as consumers who used the

Toll Roads and whose PII was shared with various identified third parties during the class period. *Id.* at 19-20.

After Class Certification, the TCA identified additional third parties with whom they shared PII. Therefore, in order to ensure the settlement includes all individuals with whom Defendants shared PII, the Settlements encompass broader subclasses. These subclasses do not suffer from the same problem as the broad fail-safe class the court originally rejected, as membership in the Settlement subclasses is based on whether the class member's PII was shared with the third party and not whether the sharing was improper.

For the reasons outlined in the Court's order on Class Certification and as further discussed below, the Settlement Classes should be certified as they meet the requirements of FRCP 23(a) and 23(b)(3).

### a.     The Classes are Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone." Dkt. 501 at p.8 (citations omitted). Defendants estimate that, prior to deduplication, there are approximately 1.5 million individuals in the 3M Settlement Class and approximately 14 million individuals in the TCA Settlement Class, therefore numerosity is satisfied.

### b.     There are Common Questions of Law and Fact

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As this Court found in certifying the Privacy Class:

> So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2). Plaintiffs state in broad terms several questions that are common to the class, including whether Defendants violated privacy laws by sharing drivers' PII with

third parties.  That's enough to satisfy Rule 23(a)(2).

*See* Dkt. 501 at p.8 (internal citations and quotations marks omitted) Here, the Settlement Classes, while broader than the certified Privacy Class, involve the same questions of law and fact. This includes whether Defendants violated privacy laws by sharing Class Members' PII with third parties. The transmissions at issue were done on a uniform basis based on Standard Operating Procedures ("SOPs"), automated processes, and policies that ensure toll collection is executed in a uniform manner and not on an individualized basis.  Commonality is satisfied.[9]

### c. The Class Representatives' Claims Are Typical of Those of Other Class Members

Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the Class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs' claims stem from Defendants' uniform practices of sharing PII. Plaintiffs thus satisfy the typicality requirement of Rule 23(a)(3).

### d. Class Representatives and Class Counsel Adequately Represent Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative

---

[9] Pursuant to the Settlement Agreements, Defendants have agreed not to contest class certification solely for the purposes of settlement.  Pursuant to the Settlement Agreements, certification of the Settlement Classes will not be deemed a concession that certification of a litigation class is appropriate, nor are Defendants precluded from challenging class certification in further proceedings in this Litigation or in any other action if the Settlement Agreements are not finalized or finally approved.  TCA Settlement Agreement, ¶ 3.01; 3M Settlement Agreement, ¶ 3.01.

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

parties will fairly and adequately protect the interests of the class. FRCP 23(a)(4). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs and their counsel are adequate. First, the proposed Settlement Class Representatives and their Counsel do not have any conflicts of interest with the absent Class Members. *See* Dkt. 501 p. 10. Second, as the Court has found, Plaintiffs and Class Counsel have vigorously prosecuted the action on behalf of the Class for nearly four years. *Id.* As detailed above, Class Counsel engaged in significant discovery. *See supra*, §II.B. Class Counsel defended against over twenty dispositive motions and moved for and extensively litigated class certification issues. *See id.* The Settlement Class Representatives were likewise actively engaged—each produced numerous documents, sat for a lengthy deposition, and regularly communicated with counsel up to and including evaluating and approving the proposed Settlement. *See* §II.B. Each of them supported the terms of the settlement and have expressed their continued willingness to protect the Class until the Settlements are approved and their administration completed. *See* Zeldes Decl., ¶ 31.  Thus, adequacy is satisfied.

### e.      Common Issues of Law and Fact Predominate

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Rule 23(b)(3) allows certification of a class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry of Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

*Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ). As this Court found, "Since Plaintiffs seek to recover statutory damages for the class, the central issue of their § 31490 claim is determining what PII transfers violate § 31490 and what PII transfers fall under an exception. And since Defendants make PII available according to uniform policies, resolving that central issue can easily be done on a class-wide basis. So common questions prominently predominate the § 31490 claim." Dkt. 501 at p. 12.

### f.    Superior Method of Adjudication

Rule 23(b)(3) lists four factors relevant to the Court's decision on whether a class action is superior to other forms of litigation: (1) the class members' interests in individually controlling the litigation; (2) the extent and nature of any  litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. FRCP 23(b)(3). As this Court found, all four factors are met here. Dkt. 501 at P. 14

### 2.    The Proposed Settlements Should be Preliminarily Approved

Rule 23(e)(2) identifies criteria for the Court to use in deciding whether to grant preliminary approval of a proposed class settlement and direct notice to the proposed class. The Class Settlements proposed here satisfy each criterion.

### a.    The Class Representatives and Class Counsel have adequately represented the Settlement Classes

As set forth in the Zeldes Decl., ¶¶ 23-31, Class Representatives and Class Counsel have adequately represented the class.

### b.    The Proposals Were Negotiated At Arm's Length

As set forth above, Plaintiffs achieved the Settlements after five years of hard fought, contested litigation and through extensive, hard fought, arm's-length negotiations. Plaintiffs' counsel will be paid from the same non-reversionary Settlement Funds as Class Members, such that Plaintiffs' counsel had every incentive to secure the largest fund possible. There is no indication of collusion or fraud in the

settlement negotiations, and none exists.

### c. The Relief Provided for the Class Is Adequate

The Settlements provide substantial Class relief, considering (i) the costs, risks, and delay of trial and lengthy appeals; (ii) the effectiveness of the proposed distribution plan; and (iii) the terms of the proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C).

### i. The Costs, Risks, And Delay Of Trial and Appeal

This factor overwhelmingly weighs in favor of preliminary approval of the Settlements. The risk, expense, complexity, and likely duration of further litigation in this Action is substantial. This case involves a matter of first impression: the analysis of a novel state law. As evidenced in this case, there are many legal and factual issues that were unclear. There was a substantial risk that the Court would rule in favor of the Defendants. The Court's Order on the Motion to Decide Key Questions shows that Plaintiffs face substantial risk on their claims going forward, as the Court ruled against Plaintiffs on several key legal issues and dismissed several of Plaintiffs' claims under § 31490. Even if the Court were to rule in favor of Plaintiffs on the remaining "Key Questions" issues, Defendants have already indicated that they plan to appeal any such ruling. Defendants have also repeatedly stated throughout this litigation that given the statutory damages at issue in the case, if Plaintiffs were to prevail, it would bankrupt them and there would be no money to go after at the end of the day. Furthermore, since the amount of potential statutory damages in this case is substantial, Defendants have indicated that if judgment were entered against them, they would appeal such a judgment as a violation of due process, which may lead to the Court significantly reducing the amount of damages.  These risks are substantial.  On the other hand, the Settlements provide immediate significant relief to Class Members without the delay of trial and appeal. Therefore, this factor strongly supports preliminary approval of the Settlements.

### ii.    The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims

As discussed in Sections III.B., *supra*, the penalty forgiveness will be provided to the TCA Settlement Class members automatically without them having to submit a claim. For those in the 3M settlement class and for those TCA class members who are not entitled to penalty forgiveness, they will need to submit a claim form which can be filled out online or mailed in. Those class members will receive cash payments on a pro-rata basis.

### iii.    The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment

Attorneys' Fees are to be paid from the common funds after final approval in the amounts set forth in Section III, *supra*.

### d.    The Proposal Treats Class Members Equitably Relative to Each Other

In the 3M settlement, all class members whose inclusion in the class can be confirmed will receive pro rata shares of the net settlement fund and are therefore being treated equitably relative to each other.  Claimants whose class membership can be neither confirmed or denied will receive half of a pro rata share: this is an equitable way to protect legitimate class members against fraudulent depletion of the fund, while recognizing the difficulty that some members will have in verifying their records.

The TCA settlement class members are also being treated equitably relative to each other. For those who are entitled to penalty forgiveness, at the minimum they are all receiving the lesser of their outstanding penalties or $57.50 and are therefore receiving significant relief. After that, the remainder of the penalty forgiveness will be distributed to those class members starting with the oldest penalties first, thereby allowing those with older penalties, who are more likely to have been affected for a

longer period by the imposition of penalties and accompanying measures such as DMV holds, to get the penalties waived and be on equal footing with those with only recent penalties. Those who do not have outstanding penalties and whose class membership can be confirmed will be receiving pro rata shares from the net settlement fund, while those whose class membership can be neither confirmed nor denied will receive half of a pro rata share.

Class Counsel intend to apply for service awards for the Settlement Class Representatives. Service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). A service award is appropriate here and does not constitute preferential treatment. No Class Representative was promised, nor conditioned their representation on the expectation of a service award. *See* Zeldes Decl. ¶31. The Representatives have each spent substantial time developing the case, conferring with counsel, answering multiple sets of discovery requests, searching for and producing documents, and preparing and testifying at their lengthy depositions (which delved in to details about their personal and financial circumstances), over the past four years. *See, Id* ¶30. Given this significant commitment, service awards are particularly appropriate.

### 3. The Proposed Notice is Appropriate

"The court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Federal Rule of Civil Procedure 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections."
*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The amendments to Rule 23(c)(2)(B) provide that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

For class members whose names and addresses cannot be reasonably ascertained, "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 1161 (2016); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) (noting that "an extensive but targeted internet and print media campaign . . . aimed at providing notice to other potential class members," whose contact information was not on file, did not present due process concerns). Moreover, courts have routinely approved notice via email. See, e.g., *Spann v. J.C. Penney Corporation* (C.D. Cal. 2016) 314 F.R.D. 312, 331*; In re HP Inkjet Printer Litigation*, 2014 WL 4949584 (N.D. Cal, Sep, 30, 2014); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 605 (N.D. Cal., September 15, 2015). Plaintiffs' Notice Plan, set forth in more detail below, meets the requirements of Rule 23(c)(2)(B).

To provide efficiency and avoid confusing class members, the parties will combine both settlements into one Notice and Notice Program. The parties have developed a Notice Plan with Settlement Administrator – Epiq - that will include direct mail or email notice to Settlement Class Members with known addresses,

designed to reach between 80-90% of identifiable Settlement Class members supplemented by Publication Notice that will expand the reach of the notice effort even further. See Azari Decl. ¶30. The TCA will provide Epiq with the list of potential Settlement Class Members as well as their postal addresses and email addresses if available.

For a small portion of the Class, the TCA does not have names or contact information but rather only their license plate number and/or transponder numbers. This is because these class members have accounts with *other* Toll Roads in California and used their transponder to drive on the TCA's roads.[10] Because TCA has only the transponder number and not the names or contact information for these drivers, publication notice will be utilized. The media campaign will include a print notice in the Los Angeles Times, an informational press release as well as internet notice. Azari Decl. ¶¶18-26. In addition, Epiq will maintain a Settlement Website with detailed information about the Settlements, and a toll-free number that Settlement Class Members can call to obtain more information. *Id*. ¶¶ 27-28. All of the notices, attached as Exhibit B to the Settlement Agreements, are drafted in plain English so they will be easy to understand. They include key information about the Settlements, including the deadline to file a claim, the deadline to request exclusion or object to the Settlements, and the date of the Final Approval Hearing (and that the hearing date may

---

[10] With respect to Settlement Class members who have accounts with co-defendant OCTA, the parties are requesting that the Court order OCTA and Cofiroute to provide the name and either the last known email address or last known mailing address of such Settlement Class Members (the "OCTA Settlement Class Member Information"). TCA Settlement, ℙ 7.02(a). As explained in Section V, *infra*, the parties also request that, as part of the Preliminary Approval Order, the Court permanently enjoin each and every member of each of the Settlement Classes from filing or pursuing any claim or litigation against any person or entity – including OCTA and Cofiroute – asserting that compliance with the obligations imposed by the Preliminary Approval Order and/or the TCA and/or 3M Settlement Agreements violates California Streets & Highways Code section 31490 or any other federal, state or local statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information.

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

change without further notice). The notices state the maximum percentage for attorneys' fees and the cost awards Class Counsel will request and the amount of the Service Awards Plaintiffs will request.

The notices disclose that, by participating in the Settlement, Settlement Class Members give up the right to sue. It also discloses that class member can choose to participate in either, both, or neither of the settlements. The notices direct Settlement Class Members to the Settlement Website for further information, where copies of the notices, the Settlement Agreements, the complaint and answer, and motions and orders relating to the Settlements will be posted.  *See* 3M Settlement ¶8.03, TCA Settlement ¶8.03. The notices provide contact information for Class Counsel to answer questions and instructions on how to access the case docket via PACER or in person at any of the court's locations. Settlement Class Members will have 84 days from the date Epiq commences dissemination of notice by sending emails and postcards and publishing the online notices to submit a claim, object to one or both the Settlements, or request exclusion from or both of the Settlements. *See* 3M Settlement ¶¶ 2.14, 10.01; TCA Settlement ¶¶ 2.15, 9.01.  Epiq will post Class Counsel's motion for attorneys' fees on the Settlement Website at least thirty days before the deadline to object in accordance with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). *See* 3M Settlement ¶ 5.01; TCA Settlement ¶ 4.01.

### 4.    The Claims Process is not Cumbersome

The Claims process is straightforward and employs a tear-off postcard that Class Members can return to receive a cash payment or Class Members may submit a claim form online.  The Form is easy to read and may be quickly and easily submitted online.   The bulk of the class is self-identified/confirmed through Defendants' computer system so all that most class members will need to do is declare under penalty of perjury that they are entitled to relief.

### 5.    The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlements and filing papers in support of the Settlements. Plaintiffs propose the following schedule, which Plaintiffs believe will provide ample time and opportunity for Class Members to decide whether to participate, request exclusion or object.

| EVENT | DATE |
| --- | --- |
| Defendants provide notice of the Settlements to the appropriate federal and state officials, as required by the Class Action Fairness Act (CAFA) | Within 10 days of the filing of this Motion. |
| Notice Date (Date when Notices begin to issue) | 91st day after the Preliminary Approval Order |
| Deadline to Submit Claim Forms | 84 Days from the Notice Date |
| Deadline to Object to one or both Settlements | 84 Days from the Notice Date |
| Deadline to Request Exclusion from one or both Settlements | 84 Days from the Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs, and Service Awards | 14 Days prior to the Objection Deadline |
| Deadline to Submit Motion for Final Approval | No later than 28 days before the Final Approval Hearing and no earlier than 14 days after the Objection Deadline |
| Final Approval Hearing | At Least 42 Days after the Objection Deadline |

## V.    ENJOINING SUIT FOR THE PROVISION OF NOTICE

To effectuate the Preliminary Approval Order and to ensure adequate notice is provided to the members of the Settlement Classes, and in accordance with both the Court's general authority to protect its jurisdiction and the All Writs Act (28 USC § 1651), Plaintiffs also ask the Court to permanently enjoin each and every member of

each of the Settlement Classes from filing or pursuing any claim or litigation against any person or entity asserting that compliance with the obligations imposed by the Preliminary Approval Order and/or the TCA and/or 3M Settlement Agreements violates California Streets & Highways Code section 31490 or any other federal, state or local statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information. The Parties believe that this is necessary to allow the Defendants to provide contact information to the administrator and not be concerned that a Class Member will bring suit claiming that the provision of their information to the administrator violated §31490. This is a material aspect of the Settlement Agreements executed by the parties. *See* TCA Settlement, ₧ 5.01(f). Issuing such an Order is within the clear authority of the Court to effectuate the proposed Settlements. 28 U.S.C. § 1651; *see also United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained[.]"); *Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir. 1997) ("All Writs Act, 28 U.S.C. § 1651, empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements"); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 478 (E.D. Cal. 2009) (enjoining all class members "from commencing actions against Defendants for claims covered by the Settlement Agreement until the Court issues an order at the Final Fairness Hearing on the proposed Settlement Agreement" pursuant to the Court's authority under 28 U.S.C. § 1651(a)); *cf. Jacobs v. CSAA Inter-Ins.*, No. C07-00362MHP, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) ("The district court has discretion to issue a preliminary injunction where it is necessary and appropriate in aid of the court's jurisdiction and may enjoin named and absent members who have been given the opportunity to opt out of a class from participating in separate class actions in state court").

## VI.    CONCLUSION

Plaintiffs respectfully request that the Motion for Preliminary Approval be granted and the Court enter an Order: (1) certifying the proposed classes for settlement; (2) preliminarily approving the proposed class action settlements; (3) appointing class representatives and class counsel; (4) appointing the notice and settlement administrator; (5) approving the class notice and related settlement administration documents; and (6) approving the proposed class settlement administrative deadlines and procedures, including the proposed final fairness hearing date and procedures regarding objections, exclusions and submitting Claim Forms.

Respectfully submitted,

Date:    November 4, 2020

SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
HELEN I. ZELDES (220051)


By:  /s/ *Helen I. Zeldes*
Helen I. Zeldes

hzeldes@sshhzlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990
Facsimile: (310) 399-7040

*CO-LEAD CLASS COUNSEL*

Date:    November 4, 2020

LINDEMANN LAW FIRM, APC
BLAKE J. LINDEMANN (255747)


By:  /s/ *Blake J. Lindemann*
Blake J. Lindemann

blake@lawbl.com
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: 310-279-5269
Facsimile:  310-300-0267

*CO-LEAD CLASS COUNSEL*

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

Date:    November 4, 2020              CUNEO GILBERT & LADUCA LLP
                                       MICHAEL J. FLANNERY (196266)


                                       By:  /s/ *Michael J. Flannery*
                                             Michael J. Flannery

                                       mflannery@cuneolaw.com
                                       500 North Broadway, Suite 1450
                                       St. Louis, MO 63102
                                       Telephone: (314) 226-1015
                                       Facsimile: (202) 789-1813

                                       *CO-LEAD CLASS COUNSEL*

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), the above-listed filing attorney certifies that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

Date:    November 4, 2020                    SCHONBRUN SEPLOW HARRIS
                                             HOFFMAN & ZELDES, LLP
                                             HELEN I. ZELDES  (220051)


                                             By:  /s/ *Helen I. Zeldes*
                                                     Helen I. Zeldes

                                             ***CO-LEAD CLASS COUNSEL***

MEM. P&A ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT