1  Hon. Andrew J. Guilford, Ret.
   Judicate West
2  1851 East First Street
   Suite 1600
3  Santa Ana, CA 92705
   Phone: (714) 834-1340
4
   Special Master
5

6

7

8

9

10                         UNITED STATES DISTRICT COURT

11                        CENTRAL DISTRICT OF CALIFORNIA

12

13  IN RE: TOLL ROADS LITIGATION          Case No. 8:16-cv-00262 ODW (JCGx)
    PENNY DAVIDI BORSUK; DAVID COULTER;
14  EBRAHIM E. MAHDA; TODD QUARLES;       (JW Reference No.: A267204)
    TOOD CARPENTER; LORI MYERS; DAN
15  GOLKA; and JAMES WATKINS on Behalf    SPECIAL MASTER'S REPORT AND
    of Themselves and All Others Similarly RECOMMENDATION REGARDING MOTION FOR
16  Situated,                             PRELIMINARY APPROVAL OF TWO CLASS ACTION
                                          SETTLEMENTS (DKT. NO. 585)
17              Plaintiffs,

18       v.

19  FOOTHILL/EASTERN TRANSPORTATION
    CORRIDOR AGENCY; SAN JOAQUIN HILLS
20  TRANSPORTATION CORRIDOR AGENCY;
    ORANGE COUNTY TRANSPORTATION
21  AUTHORITY; 3M COMPANY; BRiC-TPS
    LLC; RHONDA REARDON; MICHAEL
22  KRAMAN; CRAIG YOUNG; SCOTT
    SCHOEFFEL; ROSS CHUN; DARREL
23  JOHNSON; LORI DONCHAK; COFIROUTE
    USA, LLC; and DOES 3-10, inclusive
24
                Defendants.
25

26

27

28

Eight plaintiffs, on behalf of themselves and others similarly situated, filed this lawsuit challenging the operation of certain California toll roads. Defendants are the transportation agencies in charge of those toll roads, and some of those agencies' employees and contractors.

After many years of protracted litigation, the retirement of the original District Judge presiding over the matter, and his reappointment by the honorable Otis D. Wright as a Special Master in this matter, Plaintiffs have now moved unopposed for preliminary approval of two class action settlement agreements. (Dkt. No. 585.)

Judge Wright appointed this Special Master to

> consider[ ] and recommend[ ] whether to approve, on preliminary and final bases, all proposed class settlements reached in this case, the notice plan including the proposed notice of the proposed settlements to be disseminated to members of the settlement class, and any administrative fees, attorneys' fees and costs, and service awards pursuant to Federal Rule of Civil Procedure 23.

(Dkt. No. 82 at 1.)

The Special Master held a hearing on the motion on December 10, 2020. Before the hearing, the parties were provided with a tentative ruling regarding the materials presented. The Special Master commends counsel on their professionalism and preparedness at the hearing. The Special Master focused the majority of the 90-minute hearing on extensively inquiring into specific details of the parties' proposed settlements. The Special Master held a follow-up telephonic conference with the parties on December 28, 2020 to address a few additional outstanding matters. The parties also submitted some further written materials and information at the Special Master's direction. The Special Master appreciated the candor and thoughtfulness counsel presented in responding to questions and comments at both hearings. This report and recommendation now reflects some of those discussions with counsel, as well as counsel's later submissions.

The Special Master has now considered all materials presented, and **RECOMMENDS GRANTING** the motion for preliminary approval.

## 1.   BRIEF BACKGROUND

This lawsuit concerns two sets of Southern California toll roads. One set of toll roads, referred to here as the "TCA toll roads," covers California Highway Routes 73, 133, 241, 261. It is operated by the Foothill/Eastern Transportation Corridor Agency and San Joaquin Hills Transportation Corridor Agency (collectively, "TCA entities"). The other set is operated by the Orange County Transportation Authority (or "OCTA") and is commonly referred to as the 91 Express Lanes.

Plaintiffs—Penny Davidi Borsuk, David Coulter, Ebrahim E. Madha, Todd Quarles, Todd Carpenter, Lori Myers, Dan Golka, and James Watkins—are eight drivers who have driven on the TCA toll roads without paying the toll, and who then received toll violation notices and penalties. Plaintiffs Golka and Coulter have also received toll violation notices and penalties for driving on the 91 Express Lanes without properly paying the toll.

The defendants named in Plaintiffs' operative complaint are associated with either the TCA toll roads or the 91 Express Lanes. Aside from the TCA entities, the defendants sued for their alleged role in the operation of the TCA toll roads (also referred to in this report as the "TCA Defendants") include: TCA employees Rhonda Reardon, Michael Kraman, Craig Young, Scott Schoeffel, and Ross Chun, and TCA contractor BRiC TPS LLC. Another TCA contractor, 3M Company ("3M") is separately referenced in this report, as 3M reached a separate settlement agreement with Plaintiffs that is submitted for preliminary approval here. As for the defendants sued regarding the 91 Express Lanes (or the "OCTA Defendants"), they include OCTA contractor Cofiroute USA, LLC, and OCTA employees Lori Donchak and Darrel Johnson. The OCTA Defendants are not involved in the currently-pending motion and its two proposed settlements. However, counsel for OCTA Defendants participated in the December 10, 2020 hearing and a motion for preliminary approval of a settlement agreement between Plaintiffs and OCTA Defendants is expected soon.

Broadly speaking, Plaintiffs' putative class action challenged the amount of the penalties Defendants charge, and Defendants' enforcement and collection practices. The second group of claims particularly called into question Defendants' efforts to provide notice of the penalties

assessed and the underlying tolls, and Defendants' practice of sharing drivers' personally identifiable information (commonly referred to as "PII") with third parties.

As mentioned, Plaintiffs now seek preliminary approval of two class settlements: one with the TCA Defendants and a separate one with 3M. The Special Master considers each of those proposed class settlements in this report.

## 2.    CLASS CERTIFICATION

A class was previously certified in this case for the litigation of claims under California Streets and Highways Code § 31490. That class was defined as:

> All consumers who used California Highway Routes 73, 133, 241, 261 between April 13, 2015 and now, or who used the 91 Express Lanes between June 29, 2015 and now, and:
> - Who had their travel pattern data (date and time of trip, or plaza and lane numeric identifiers) made available by Defendants to another transportation agency;
> - Who had the date of their toll transaction or violation sent to the California DMV;
> - Who had their license plate numbers sent by Defendants to the California DMV for a second inquiry, the Arizona DMV, DataTicket Incorporated, Law Enforcement Systems, LLC (Duncan Solutions);
> - Who had any personally identifiable information other than the amount of tolls and penalties owed, the violation number, or the violator's account number sent by Defendants to Linebarger Goggan Blair & Sampson LLP;
> - Who, without providing express written consent to receive communications about the products or services offered by a transportation agency or a transportation agency contractor, had any personally identifiable information sent by Defendants to Marshall Advertising; or
> - Who had any personally identifiable information sent by Defendants to a car rental company, LexisNexis, Julinne von KleinSmid, Microbilt, Experian, the California FTB, Rex L. Brady Attorney at Law, Judgment Recovery Assistance, or icontact.

(Dkt. No. 501 at 19–20 ("Class Certification Order").)

The parties now propose two different, new settlement class definitions for a TCA Settlement Class and a 3M Settlement Class. They explain that "[t]he proposed 3M Settlement Class is a subset of the TCA Settlement Class" (Dkt. No. 585-1 at 14) and 3M Settlement Class members are "eligible to receive relief from both settlements" (*id.* at 2).

They propose a definition of the TCA Settlement Class as:

All individuals whose PII [("Personally Identifiable Information")] was provided
by Defendants to any other individual or entity between April 13, 2015 and the
Settlement Class Period End Date, except as otherwise specified. The
Settlement Class consists of:
- o Any person with a transponder account with a Toll Agency whose PII
  was sent by Defendants to another Toll Agency between April 13,
  2015 and the Settlement Class Period End Date (the
  "Interoperability Subclass");
- o Any person who used any of the TCA Toll Roads whose PII was sent
  by Defendants to a third party between April 13, 2015 and the
  Settlement Class Period End Date in connection with TCA
  Defendants' efforts to collect tolls and/or penalties (the
  "Collection/Enforcement Subclass");
- o Any person whose PII was sent by Defendants to a third party
  between April 13, 2015 and the Settlement Class Period End Date
  for any reason other than those listed above (the "Communications
  Subclass").
Excluded from the Settlement Class are: (1) employees of TCA Defendants,
including their current and former directors, officers and counsel; (2) any entity
that has a controlling interest in TCA Defendants; (3) TCA Defendants' affiliates
and subsidiaries; and (4) the judge to whom this case is or was assigned, any
member of the judge's immediate family, and any member of the judge's staff.

(*Id.* at 7.) The term "Settlement Class Period End Date is defined as thirty (30) days after the

Court issues the Preliminary Approval Order." (*Id.* at 7 n.3.)

They propose a definition of the 3M Settlement Class as:

All individuals whose PII [("Personally Identifiable Information")] was provided
by 3M or TCA to any other individual or entity from April 13, 2015 to June 30,
2015, including:
- o Any person with a transponder account with a Toll Agency whose PII
  was sent by 3M or TCA from April 13, 2015 to June 30, 2015 to
  another Toll Agency (interoperability transmissions);
- o Any person who used any of the TCA Toll Roads whose PII was sent
  by 3M or TCA to a third party from April 13, 2015 to June 30, 2015
  in connection with efforts to collect tolls or penalties (collection
  transmissions); and
- o Any person whose PII was sent by 3M or TCA to a third party from
  April 13, 2015 to June 30, 2015 for any reason other than those
  listed above (other transmissions).
Excluded from the Settlement Class are: (1) employees of Defendant, including
their current and former directors, officers and counsel; (2) any entity that has
a controlling interest in Defendant; (3) Defendant's affiliates and subsidiaries;
and (4) the judge to whom this case is assigned, any member of the judge's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

immediate family, and any member of the judge's staff.

(*Id.* at 14.)

Plaintiffs explain that these "slightly different" definitions for the proposed Settlement Classes are intended to address a few things. (*Id.* at 19.) First, "membership in the Settlement Classes is defined based on whether the consumer's PII was shared during the Class period," rather than whether the consumer used one of the toll roads during the class period. (*Id.*) Second, Plaintiffs state that after class certification occurred, "TCA identified additional third parties with whom they shared PII." (*Id.* at 20.) Plaintiffs state that the Settlement Classes encompass broader subclasses to ensure that all individuals are included. (*Id.*) Third, and relatedly, "the six bullet points in the Class Certification Order are combined into three broader bullet points in the Settlements." (*Id.* at 19.)

The Special Master is satisfied that the reasoning of the Class Certification Order in certifying the class for litigation of Plaintiffs' § 31490 claim applies equally to Plaintiffs' two proposed Settlement Classes here. The Special Master will provide an analysis of the Settlement Classes in this section.

A plaintiff seeking class certification must first show that a proposed class satisfies all four of Federal Rule of Civil Procedure 23(a)'s elements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation by the class representatives and class counsel. Fed. R. Civ. P. 23(a). A plaintiff seeking class certification must also show that a proposed class satisfies the requirements of at least one of Rule 23(b)'s three subsections: (1) that prosecuting separate actions would create a risk of inconsistent or varying adjudications; (2) that the party opposing class certification has acted or failed to act on grounds that apply generally to the class; or (3) that questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for adjudicating the dispute. Fed. R. Civ. P. 23(b)(1)–(3).

These requirements aren't just pleading standards. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). A party seeking class certification must affirmatively

1    demonstrate that these requirements have been met and survive a rigorous analysis that may

2    dip into an evaluation of the case's merits. *Id.* at 350–51. And the class certification analysis

3    doesn't become less rigorous because a case is headed towards settlement. Indeed, courts

4    "must pay 'undiluted, even heightened, attention' to class certification requirements in a

5    settlement context." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)

6    (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). Among other things, courts

7    must be on the lookout for improper collusion among the parties. *See In re Bluetooth Headset*

8    *Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

9          The proposed Settlement Classes satisfy Rule 23(a)'s four elements. Defendants

10   estimate that "prior to deduplication, there are approximately 1.5 million individuals in the 3M

11   Settlement Class and approximately 14 million individuals in the TCA Settlement Class," so

12   numerosity is met. (Dkt. No. 585-1 at 20); *see Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588,

13   605–606 (N.D. Cal. 2014) ("[C]ourts have routinely found the numerosity requirement satisfied

14   when the class compromises 40 or more members."). As for commonality, the Special Master

15   concludes that the commonality requirement is met. *See Hanlon*, 150 F.3d at 1019 ("All

16   questions of fact and law need not be common to satisfy the rule."). As explained in the Class

17   Certification Order, a question common to the class includes "whether Defendants violated

18   privacy laws by sharing drivers' PII with third parties." (Dkt. No. 501 at 8 (citation omitted)). This

19   common question establishes commonality. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th

20   Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)

21   (explaining that courts generally find commonality where "the lawsuit challenges a systemwide

22   practice or policy that affects all of the putative class members[ ]"). Further, typicality is met

23   because Plaintiffs' individual claims "stem from Defendants' uniform practices." (Dkt. No. 501

24   at 9.) The Special Master also remains unaware of any conflicts between the Plaintiffs

25   representing the settlement class, Plaintiffs' attorneys, and the class. These and other facts

26   sufficiently establish that Plaintiffs and their attorneys adequately represent the class. (*Id.* at

27   10–11.)

28

The proposed settlement class also satisfies one of Rule 23(b)'s three subsections: Rule 23(b)(3)'s predominance and superiority standard. As explained in the Class Certification Order,

> [s]ince Plaintiffs seek to recover statutory damages for the class, the central issue of their § 31490 claim is determining what PII transfers violate § 31490 and what PII transfers fall under an exception. And since Defendants make PII available according to uniform policies, resolving that central issue can easily be done on a classwide basis. So common questions prominently predominate the § 31490 claim.

(*Id.* at 12.) Ultimately, issues common to the class predominate over any questions affecting only individual members and a class action is the best way to resolve this dispute.

During the class certification phase, Plaintiffs had asked that the class be defined based on users who "had their privacy rights violated by the improper dissemination of their PII." (*Id.*) The Class Certification Order redefined the proposed class to avoid a "fail-safe class" by focusing on the PII transfers themselves, not whether those transfers violated privacy rights. (*Id.*) Because the proposed Settlement Classes are similarly focused on the factual transfer of PII, they don't raise the "fail-safe class" issues that previously required consideration.

At the hearing, the Special Master inquired further regarding the Settlement Classes, including the fact that they define membership based on whether PII was shared rather than whether an individual drove on the toll roads during the relevant time period. The Special Master is satisfied that, in combination with the parties' notice distribution plan, this definition is sufficient.

The Special Master also finds this outcome appropriate because the parties' proposed settlements don't appear collusive. *See Bluetooth Litig.*, 654 F.3d at 947. Plaintiffs and the TCA Defendants reached their settlement after two mediation sessions with third-party mediators Robert Kaplan and Rachel Ehrlich. (Dkt. No. 585-1 at 6.) Indeed, they report that their second mediation, with Ms. Ehrlich, "lasted for 19 hours concluding at 4:30 a.m. in the morning." (*Id.*) Plaintiffs and 3M also reached their settlement after two mediation sessions, both with Robert Kaplan, and further communications and negotiations between themselves and with his assistance. (*Id.*)

This hard-fought case has also been pending for over five years. As Plaintiffs explain,

> [t]hese settlements were only achieved after five years of hard-fought litigation which included multiple Motions to Dismiss, Motions for Judgment on the Pleadings, three rounds of Motions for Summary Judgment, Class Certification, at 23(f) petition to the Ninth Circuit (which denied the petition), a Motion to Decide Key Questions, production and review of over 500,000 pages of documents, 34 depositions, expert discovery contested discovery disputes, and third party depositions across the country.

(*Id.* at 2.) Particularly important was the Court's Order Regarding Defendants' Motion To Decide Key Legal Questions. (Dkt. No. 566.) It included rulings on issues raised throughout the case. The Court had long proposed to make such rulings to facilitate the advancement of the case, and they ultimately affected numerous aspects of it. At the hearing, Plaintiffs' counsel agreed that the proceedings related to the Key Legal Questions Order, including the Court's agreement to hold the order while the parties negotiated potential settlements, were critical in the parties' ability to resolve the case. For these reasons, the Special Master is more than satisfied that these settlements represent a non-collusive compromise between the parties' strongly held and disputed positions.

The Special Master thus **RECOMMENDS CERTIFYING** the proposed Settlement Classes for settlement purposes only. (*See also* Dkt. No. 585-1 at 21 n.9.)

Eight named Plaintiffs were previously appointed to serve as class representatives, and Cuneo Gilbert & LaDuca LLP, Lindemann Law Firm, APC, and Schonbrun, Seplow, Harris, Hoffman & Zeldes were appointed to serve as class counsel. (Dkt. No. 501 at 18–20; Dkt. No. 554 at 6–8.)

Plaintiffs Todd Quarles' and Ebrahim E. Madha's claims against 3M were previously dismissed, such that they will only serve as class representatives for the TCA settlement. (*See* Dkt. No. 440 at 6–7.) In addition, Plaintiff James Watkins is not a party to either settlement agreement, and the parties thus request that Watkins isn't appointed as a settlement class representative. (Dkt. No. 585-1 at 12 n.5.) Because other class representatives remain to represent class members' interests under both settlement agreements, the Special Master agrees that Watkins' non-participation does not impact preliminary approval of the settlement

agreement. Blake Lindemann, counsel for Mr. Watkins, has also submitted to the Special Master a motion to withdraw as Watkins' counsel. Of course, these papers should be filed with the Court. The Special Master has reviewed the unopposed motion to withdraw and discussed the issue with the parties at the December 28, 2020 status conference, including confirming that Lindemann would provide notice to Watkins of the motion. Based on that review, the Special Master would recommend that the motion to withdraw be granted.

The Special Master thus recommends that except as otherwise explained in this section, the previous appointments of class counsel and class representatives in this case remain provisionally appropriate as to the Settlement Classes as well. The Special Master also recommends appointing Epiq Class Action & Claims Solutions, Inc. as the third-party settlement administrator.

## 3. PRELIMINARY APPROVAL OF SETTLEMENT TERMS AND COSTS

A court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts must consider various factors in assessing a settlement proposal:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. But "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

At the preliminary approval stage, "a court determines whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010); *see*

*also* 4 Newberg on Class Actions § 13:10 (5th ed.) (the primary objective a court at the preliminary approval stage is "to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."). A "full fairness analysis is unnecessary." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). If the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," the court should grant preliminary approval of the class and direct notice of the proposed settlement to the class. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

At any rate, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026. Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

There are some moving parts to the parties' proposed settlement agreements. The TCA settlement includes "$29 million dollars in cash, $135 million dollars in penalty forgiveness and substantial injunctive and programmatic relief (changes to TCA's practices)." (Dkt. No. 585-1 at 8.) The 3M settlement includes a $11.95 million dollar cash settlement fund. (*Id.* at 15.)

The Special Master turns first to listing some of the remedial measures that Plaintiffs state are included in the TCA settlement. (Dkt. No. 585-1 at 8 (listing remedial measures as "include[d], but not limited to.").)

- TCA will increase the time that drivers have available to pay tolls before a Notice of Evasion issues, from 5 days to 7 days.
- TCA will change their privacy policy to include lists of categories of PII sent or received from various entities.
- TCA asks that the Court approve that TCA can send "(i) a single email to all account holders notifying them that they have been opted out and asking them to select their

1    communications preferences in their online account; and (ii) a statement to be

2    included in any other communications that would otherwise be sent to TCA

3    customers advising them to update their communications preferences and/or

4    containing a link to a website that allows TCA customers to update their

5    communications preferences." (Dkt. No. 585-1 at 9.) If TCA receives approval, it will

6    perform a one-time removal of "the opt-in status [ ] for all current subscribers in the

7    VTX system (governing opt-ins for communications by TCA)." (*Id.*)

8    • TCA has agreed to certain limitations on PII transmissions. (*Id.* at 9–10.)

9    • TCA has already "undertaken significant signage enhancement projects . . . [and]

10       provided significant revisions and improvements to its privacy policy to now disclose

11       its current collection, and sharing PII practices." (*Id.* at 10.)

12   The Special Master recommends approving TCA's proposal to change every account

13   holder's status to opt out in conjunction with a single email and statements included in other

14   communications that would otherwise be sent to customers advising them to update their

15   communication preferences to opt in. The Special Master otherwise finds, at this stage, that

16   these obligations for TCA under the agreement sufficiently appear to provide "indivisible" relief

17   benefitting the class as a whole, as appropriate in a Rule 23(b)(2) class action. *See Dukes*, 564

18   U.S. at 360. As Plaintiffs' counsel emphasized at the hearing, the parties understand these

19   remedial measures to provide significant, real relief that will benefit class members as well as

20   toll roads users generally. Moreover, these obligations substantially answer the allegations in

21   Plaintiffs' operative pleading.

22   As noted, besides the remedial measures, the TCA settlement and the 3M settlement

23   include non-reversionary cash settlement funds. (Dkt. No. 585-1 at 1.) The TCA settlement also

24   includes substantial funds to direct towards penalty forgiveness. (*Id.*) The parties propose that

25   class notice and administration costs, the costs of the Special Master and his team, class

26   counsel's attorneys' fees and costs, and proposed service awards to class representatives be

27   paid out of the non-reversionary settlement funds (*not* TCA's penalty forgiveness value), in the

28   following breakdowns:

|  | TCA Defendants | 3M |
|---|---|---|
| **Penalty Forgiveness Value** | $135,000,000 | - - |
| **Total Initial Value of Non-Reversionary Settlement Fund** | $ 29,000,000 | $11,950,000 |
| Proposed Attorneys' Fees and Costs (estimate – parties state they will seek "no more than" these amounts) | $ 17,500,000 | $ 2,990,000 |
| Class Notice and Administration Costs (estimate; shown as split equally between TCA and 3M here, but in fact will be split between them on a *pro rata* basis) | $     824,173 | $     824,173 |
| Proposed Service Awards to Class Representatives (*up to* $15,000 per representative for TCA Settlement and *up to* $3,000 per representative for 3M Settlement) | $     105,000 | $     15,000 |
| Costs of Special Master (*very upper* estimate; shown as split equally among TCA and 3M for purposes of this chart only) | $     25,000 | $     25,000 |

TCA's $135 million penalty forgiveness fund will go toward Settlement Class Members with outstanding penalties. Plaintiffs explain,

> [f]irst, all Participating Penalty Forgiveness Class Members will receive the lesser of the total of their outstanding penalties or $57.50 (the equivalent of at least one penalty assessment) in penalty forgiveness. Second, the remainder of the Penalty Forgiveness Fund will be distributed to Penalty Forgiveness Class Members from those with the oldest outstanding penalties to the newest. There is no requirement to submit a Claim Form to receive penalty forgiveness, it will be electronically pushed out to Penalty Forgiveness Class Members.

(*Id.* at 8.) In response to the Special Master's questions about the penalty forgiveness fund at the hearing, Plaintiffs' counsel stated that about a million class members would receive some relief as a result of the fund. Counsel agreed that TCA has not written off these debts and has ongoing collection efforts related to these penalties. These collection efforts include DMV holds on some class members' licenses based on unpaid penalties. Plaintiffs' counsel again

emphasized her belief that the penalty forgiveness fund represents real, meaningful relief for class members.

Cash payments from the non-reversionary TCA settlement fund will be distributed on a pro-rata basis to Settlement Class Members "who submit valid Claim Forms **and are _not_ eligible for penalty forgiveness**." (Dkt. No. 585-1 at 8 (emphasis added).) Payments from the 3M settlement fund will be distributed on a pro-rata basis to each individual who submits valid claim forms. (*Id.* at 15.) Members of the 3M Settlement Class are also members of the TCA Settlement Class, and will be able to choose to seek claims from either or both settlement funds. (*Id.* at 2.) "[U]nconfirmed claims" for either fund will receive half of the pro rata share. (*Id.* at 8 n.4, 15 n.7.)

The Special Master has considered various factors in assessing these class settlements and finds that, at this stage, the settlements are overall fair, reasonable, and appropriate. One important factor is that the parties reached the settlements after significant arms-length negotiations with third-party mediators. *See In re First Capital Holdings Corp. Financial Prods.*, No. MDL 901, 1992 U.S. Dist. LEXIS 14337, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length."). Further, as noted, there has been significant discovery and motion practice in this case, including regarding unique questions of the interpretation of state law.

The significant litigation activity in this case tends to show that the settlements are based on a sufficient understanding of what's at stake. Plaintiffs' counsel are experienced litigators and have apparently concluded that the benefits of settlement outweigh the risks of continued litigation. (*See also* Dkt. No. 566 (Order Regarding Defendants' Motion To Decide Key Legal Questions, finding for some of the questions that section 31490 permits a transportation agency to send certain PII to particular third parties in particular circumstances).)

The Special Master is also satisfied that the proposed attorneys' fee award for the 3M settlement is likely reasonable. At this point, the requested fee reflects fair compensation for undertaking this complex, risky, expensive, and time-consuming class action, particularly since the parties have been actively litigating this case for many years. *See Morris v. Lifescan, Inc.*, 54

1   F. App'x 663, 664 (9th Cir. 2003) (affirming attorney fee award of 33% of a $14,800,000 cash

2   settlement); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *Tawfilis v.*

3   *Allergan, Inc.*, Case No. 8:15-cv-00307 JLS (JCGx), 2018 U.S. Dist. LEXIS 173687, 2018 WL

4   4849716, at *7 (C.D. Cal. Nov. 18, 2014).

5          Before the hearing, the Special Master expressed some concerns about the proposed

6   attorneys' fee award for the TCA settlement. The proposed attorneys' fees represent

7   approximately 10.7% of the simple total of both the penalty forgiveness fund and non-

8   reversionary cash fund. But they will be deducted solely from the non-reversionary cash fund,

9   and $17.5 million in attorneys' fees would represent about 40% of the total value of that fund.

10  At the hearing, the Special Master conveyed his thoughts on the matter to the parties and is

11  hopeful that Plaintiffs can either adjust the requested fee and cost amounts or provide

12  sufficient justification for the requests in their later papers to justify the majority of fees sought.

13         The Special Master also notes that the parties' proposed service awards – which will go

14  to seven of the eight Plaintiffs for the TCA settlement and five of the eight Plaintiffs for the 3M

15  settlement – appear reasonable and appropriate, given the substantial time and energy those

16  Plaintiffs dedicated to this case. The parties discussed the contemplated service awards and

17  the bases for them with the Special Master at the hearing as well.

18         The Special Master **RECOMMENDS GRANTING** preliminary approval of the class

19  settlements.

20  **4.     PROPOSED NOTICE**

21         When a court certifies a class under Rule 23(b)(3), it must "direct to class members the

22  best notice that is practicable under the circumstances, including individual notice to all

23  members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In "plain,

24  easily understood language" the notice must "clearly and concisely" state:

25         (i) the nature of the action;
       (ii) the definition of the class certified;
26       (iii) the class claims, issues, or defenses;
       (iv) that a class member may enter an appearance through an attorney if the
27       member so desires;

28

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion;

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Finally, "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill*, 361 F.3d at 575 (internal quotation marks omitted).

The parties agree that a third party, Epiq Class Action & Claims Solutions, Inc., will send most class members a settlement notice via email or, if email is not available, via U.S. mail. (Dkt. No. 585-1 at 11; *see also* Azari Decl. (Dkt. No. 585-2) ¶ 11.) Members of the 3M Settlement Class will be sent a single notice that presents their options for seeking claims from both the TCA and 3M non-reversionary settlement funds. (Dkt. No. 585-1 at 15.) These notices will include the website address for a case website where individuals can find relevant documents and information, including the Complaint, the Notices, Settlement Agreements, Claim Form, and answers to frequently asked questions. (Azari Decl. ¶ 27.) Epiq will also maintain a toll-free number that Settlement Class members can call for more information. (*Id.* ¶ 28.) The toll-free number will also be prominently listed on the notices. Counsel agreed with the Special Master that all efforts should be made to avoid inquiries being presented to the Court beyond what is necessary and proper.

Plaintiffs explain that for a small portion of the Settlement Class, TCA only has individuals' license plate numbers and/or transponder numbers. (Dkt. No. 585-1 at 28.) Plaintiffs state, "[b]ecause TCA has only the transponder number and not the names or contact information for these drivers, publication notice will be utilized. The media campaign will include a print notice in the *Los Angeles Times*, an information press release as well as internet notice." (*Id.*) Specifically, the print notice will appear as an 1/8 page ad in the *Los Angeles Times* twice – once on a weekday and once on a Sunday. (Azari Decl. ¶ 24.) The media campaign also includes "banner notices" on (1) social networking sites, including Facebook and Instagram, and (2) advertising networks, including Google Display Network and Verizon (Yahoo) Audience Network. (*Id.* ¶¶ 19–23.)

The long-form notice form attached to the parties' proposed settlement agreements is complex. It includes a two-page cover summary followed by ten pages with nine labeled sections (with subsections for each of them). (*See, e.g.* Dkt. No. 585-4 at ECF51–ECF64 (Exhibit B to the proposed Settlement Agreement between Plaintiffs and 3M).) The Notice provides detailed information in plain English, and it sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the Class and who is excluded; (3) the reasons the parties have proposed the settlement; (4) the amount of the settlement fund; (5) the Class's claims and issues; (6) the parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that lead counsel intend to seek with final settlement approval; (8) the value of the service awards that will be provided to lead Plaintiffs; (9) the plan for allocating the settlement proceeds to the Class; and (10) the date, time, and place of the settlement hearing. (*Id.*) The short-form post card and email notices similarly explain the requisite information and provide in bold the class website and toll-free number where class members may seek additional information, if they wish.

At the hearing, Plaintiffs' counsel explained that while the long-form notice would be available on the class website and upon request, Epiq would rely on the short-form notices for emailing and mailing class members. Despite the complexity of the long-form notice, which is likely simply the result of the complex nature of the case itself, the Special Master's own review of the proposed notice materials confirms that the documents are broken down into sufficiently-labeled categories and subcategories of information, and all the elements outlined in Rule 23(c)(2)(B) are adequately covered.

At the hearing, the Special Master also explained why a simple statement of the minimum potential recovery might be helpful in the summary notice. The parties agreed that they would consider the Special Master's comments and advice at the hearing, including on this point, in finalizing the draft notices. The Special Master emphasized that the parties should use their best judgment in making the notices as accessible as possible, and trusts that the parties will indeed do so.

The Special Master **RECOMMENDS FINDING** that the notice forms and plan comply with Federal Rule of Civil Procedure 23. The Court also appoints Epiq Class Action & Claims Solutions, Inc. as the third-party claims administrator.

## 5.    PROPOSED INJUNCTION

Plaintiffs request that "[t]o effectuate the Preliminary Approval Order and to ensure adequate notice is provided to the members of the Settlement Classes,"

> the Court permanently enjoin each and every member of each of the Settlement Classes from filing or pursing any claim or litigation against any person or entity asserting that compliance with the obligations imposed by the Preliminary Approval Order and/or the TCA and/or 3M Settlement Agreements violates California Streets & Highways Code section 31490 or any other federal, state or local statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information.

(Dkt. No. 585-1 at 30–31.) Plaintiffs further state, "[t]he Parties believe that this is necessary to allow the Defendants to provide contact information to the administrator and not be concerned that a Class Member will bring suit claiming that the provision of their information to the administrator violated §31490." (*Id.* at 31.)

Based on discussion with the parties at the hearing, the parties submitted the following updated proposed language for a proposed injunction:

> 9.    . . . the Court hereby permanently enjoins each and every member of each of the Settlement Classes from filing or pursuing any claim or litigation against any of the persons and/or entities listed below in 9(a)-(d), asserting that compliance with the obligations imposed by this Order or either of the Agreements violates California Streets & Highways Code section 31490 or any other federal, state or local constitution, statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information:
> a.   Any and all Released Parties (as defined in Section 2.26 of the TCA Agreement);
> b.   Any and all Released Parties (as defined in Section 2.26 of the 3M Agreement);
> c.   OCTA and Cofiroute, together with their respective officers, agents, employees and attorneys;
> d.   Any other person or entity who provides information to the Class Administrator pursuant to this Order, together with their respective officers, agents, employees and attorneys.

(*See* Attached Revised Proposed Order at 6.) The Special Master acknowledges the parties' stated need for an injunction of this kind in the very unique circumstances presented here, and finds that the scope of their proposed injunction appears appropriate. The Special Master does not provide any opinion on the enforceability of the injunction, but rather simply relies on the parties' joint agreement that an injunction according to their agreed, proposed language should be entered. The Special Master accordingly **RECOMMENDS** that Judge Wright enter the proposed injunction.

## 6.   RELEASE

At the hearing, the Special Master reviewed the language of the releases in the two proposed settlement agreements with the parties. *See* Dkt. No. 585-4 (3M Proposed Settlement Agreement) §§ 14.01–14.04; Dkt. No. 585-5 (TCA Proposed Settlement Agreement) §§ 15.01–15.04. As requested at the hearing, the parties engaged in further discussions and submitted proposed release language that addressed the Special Master's comments. The Special Master has reviewed the parties' proposed modified release language and recommends finding that it is appropriate given the nature of this case such that preliminary approval of the agreements should be granted.

## 7.   PROPOSED TIMELINE UP TO FINAL APPROVAL HEARING

Plaintiffs proposed the following schedule up to the final approval hearing. At the December 10, 2020 hearing, the parties further clarified some of these deadlines with the Special Master.

| Event | Date |
|---|---|
| Defendants provide notice of the Settlements to the appropriate federal and state officials, as required by the Class Action Fairness Act (CAFA) | Within 10 days of the filing of the motion (at the hearing, the parties stated that this deadline was met.) |
| Notice Date (Date when Notices begin to issue) | 91st day after Judge Wright's issuance of Preliminary Approval Order |
| Deadline to Submit Claim Forms | 84 Days from the Notice Date |

| Deadline to Object to one or both Settlements | 84 Days from the Notice Date |
|---|---|
| Deadline to Request Exclusion from one or both Settlements | 84 Days from the Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs, and Service Awards | 14 Days prior to the Objection Deadline |
| Deadline to Submit Motion for Final Approval | No later than 28 days before the Final Approval Hearing and no earlier than 14 days after the Objection Deadline |
| Final Approval Hearing before Special Master | At Least 42 Days after the Objection Deadline |

The Special Master notes that the parties should strongly consider sharing the costs of a court reporter for the final approval hearing, particularly so that the record accurately reflects comments provided by objectors, if any.

7.    CONCLUSION

The Special Master **RECOMMENDS GRANTING** Plaintiffs' motion for preliminary approval of class action settlement. The Special Master will work with the parties to schedule a date, time, and place for a hearing on a motion for final approval after the Court has considered any objections to this report and determined whether to adopt it.

In addition to the adoption of this report, the Special Master **RECCOMENDS** that Judge Wright sign the attached updated proposed order for preliminary approval of class action settlement, which was jointly submitted by the parties.


THUS, THIS IS ISSUED.


Dated:  December 30, 2020                        _____
                                                Hon. Andrew J. Guilford, Ret.
                                                Special Master

1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| IN RE: TOLL ROADS LITIGATION _____ PENNY DAVIDI BORSUK; DAVID COULTER; EBRAHIM E. MADHA; TODD QUARLES; TODD CARPENTER; LORI MYERS; DAN GOLKA; and JAMES WATKINS on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY; SAN JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY; ORANGE COUNTY TRANSPORTATION AUTHORITY; 3M COMPANY; BRiC-TPS LLC; RHONDA REARDON; MICHAEL KRAMAN; CRAIG YOUNG; SCOTT SCHOEFFEL; ROSS CHUN; DARRELL JOHNSON; LORI DONCHAK; COFIROUTE USA, LLC; and DOES 3-10; inclusive,<br><br>                Defendants | Case No: 8:16-cv-00262-ODW(ADSx)<br><br>Hon. Otis D. Wright II<br><br>**REVISED [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**<br><br><br>Date:   December 10, 2020<br>Time:   10:30 a.m.<br>Location:   Virtual<br><br>Special Master: Hon. Andrew J. Guilford (ret.) |
|---|---|

# ORDER GRANTING PRELIMINARY APPROVAL

On August 27, 2020, Plaintiffs and Defendants Foothill/Eastern Transportation Corridor Agency, San Joaquin Hills Transportation Corridor Agency, Michael Kraman, Craig Young, Scott Schoeffel, Ross Chun, Rhonda Reardon, and BRiC-TPS, LLC (collectively "TCA") entered into a Settlement Agreement and Release ("TCA Agreement"), after two arms-length mediations, one with the assistance of mediator Robert Kaplan, and the second with mediator Rachel Ehrlich, Esq.[1] Also on August 27, 2020, Plaintiffs and Defendant 3M Company ("3M") entered into a Settlement Agreement and Release ("3M Agreement"), after two arms-length mediations with the assistance of mediator Robert Kaplan, Esq. Collectively, the TCA Agreement and the 3M Agreement will be referred to as the Agreements, and the settlements reached in those Agreements will be referred to as the Settlements.

On November 4, 2020 Plaintiffs moved this Court, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), for an order preliminarily approving the Settlements upon the terms and conditions set forth in the respective Agreements.  The Motion was referred to the Special Master, Judge Andrew Guilford (ret.) (see Dkt. 582), and a hearing on the Motion occurred on December 10, 2020.  Special Master Guilford issued a Report and Recommendation recommending granting the Motion for Preliminary Approval of the Settlements.

After carefully considering Plaintiffs' Motion for Preliminary Approval and accompanying declarations; the Agreements, including the accompanying Exhibits; Special Master Guilford's Report and Recommendation; and the applicable law, the Court finds that:

---

[1] Unless otherwise defined, all terms used herein have the same meanings as set forth in the Agreements.

1    1.    The proposed Settlements are fair, reasonable, and adequate, and the

2    Court will likely be able to approve them under Rule 23(e)(2) and enter judgment on

3    them. The proposed Settlements do not improperly grant preferential treatment to any

4    segment of the TCA Settlement Class or the 3M Settlement Class (together, the

5    "Settlement Classes").   The proposed Settlements are sufficient to warrant sending

6    notice to the respective class members about the Settlements.   The procedures for

7    establishing and administering the benefits provided by the proposed Settlements and

8    for notice to class members satisfy Rule 23 and due process.

9    2.    The Court finds and determines that it will likely be able to certify the

10   Settlement Classes for purposes of judgment on the settlement proposals under Rule

11   23(b)(3) of the Federal Rules of Civil Procedure, because: (a) members of each

12   Settlement Class are so numerous that joinder of all members would be impracticable,

13   (b) there are questions of law and fact that are common to each Settlement Class, and

14   those questions of law and fact common to the Settlement Class predominate over any

15   questions affecting any individual class member; (c) the claims of the Plaintiffs are

16   typical of the claims of the Settlement Classes they seek to represent for purposes of

17   settlement; (d) a class action on behalf of each Settlement Class is superior to other

18   available means of adjudicating this dispute; and (e) Plaintiffs and Class Counsel are

19   adequate representatives of the Settlement Classes. Defendants retain all rights to

20   assert that this action may not be certified as a class action, other than for settlement

21   purposes.

22   3.    The Court has reviewed the class notices for each Settlement Class and

23   the methods for providing notice and has determined that the parties will employ

24   forms and methods of notice that constitute the best notice practicable under the

25   circumstances; are reasonably calculated to apprise class members of the terms of the

26   Settlements and of their right to participate in them, object, or opt-out; are reasonable

27   and constitute due, adequate, and sufficient notice to all persons entitled to receive

28

notice; and meet all applicable requirements of Rule 23, the United States Constitution, and due process.

**Accordingly, IT IS HEREBY ORDERED that**:

1.      The Motion for Preliminary Approval is **GRANTED**. The Court preliminarily approves the Settlements.

2.      The Court hereby certifies, for settlement purposes only:

a.      A 3M Settlement Class consisting of:  All individuals whose PII was provided by 3M or TCA to any other individual or entity from April 13, 2015 to June 30, 2015, including:

- Any person with a transponder account with a Toll Agency whose PII was sent by 3M or TCA from April 13, 2015 to June 30, 2015 to another Toll Agency (interoperability transmissions);
- Any person who used any of the TCA Toll Roads whose PII was sent by 3M or TCA to a third party from April 13, 2015 to June 30, 2015 in connection with efforts to collect tolls or penalties (collection transmissions); and
- Any person whose PII was sent by 3M or TCA to a third party from April 13, 2015 to June 30, 2015 for any reason other than those listed above (other transmissions).

Excluded from the 3M Settlement Class are: (1) employees of 3M, including their current and former directors, officers and counsel; (2) any entity that has a controlling interest in 3M; (3) 3M's affiliates and subsidiaries; and (4) the judge to whom this case is or was assigned, any member of the judge's immediate family, and any member of the judge's staff.

b.      A TCA Settlement Class consisting of:  All individuals whose PII was provided by 3M or TCA to any other individual or entity from April 13, 2015 through 30 days after the date of this order, including:

- Any person with a transponder account with a Toll Agency

whose PII was sent by 3M or TCA from April 13, 2015 through 30 days after the date of this order to another Toll Agency (interoperability transmissions);

- Any person who used any of the TCA Toll Roads whose PII was sent by 3M or TCA to a third party from April 13, 2015 through 30 days after the date of this order in connection with efforts to collect tolls or penalties (collection transmissions); and

- Any person whose PII was sent by 3M or TCA to a third party from April 13, 2015 through 30 days after the date of this order for any reason other than those listed above (other transmissions).

Excluded from the TCA Settlement Class are: (1) employees of TCA Defendants, including their current and former directors, officers and counsel; (2) any entity that has a controlling interest in TCA Defendants; (3) TCA Defendants' affiliates and subsidiaries; and 4) the judge to whom this case is or was assigned, any member of the judge's immediate family, and any member of the judge's staff.

3.     <u>TCA Class Representatives</u>. For purposes of the TCA Settlement only, the Court preliminarily finds and determines, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that Plaintiffs Penny Davidi Borsuk; David Coulter; Todd Carpenter; Lori Myers; Dan Golka; Todd Quarles; and Ebrahim E. Madha will fairly and adequately represent the interests of the Class in enforcing their rights in the action and appoints them as Class Representatives. The Court preliminarily finds that they are similarly situated to absent Settlement Class Members and therefore typical of the Class, and that they will be adequate Class Representatives.

4.     <u>3M Class Representatives</u>. For purposes of the 3M Settlement only, the Court preliminarily finds and determines, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that Plaintiffs Penny Davidi Borsuk; David Coulter; Todd Carpenter; Lori Myers; and Dan Golka will fairly and adequately represent the

interests of the Class in enforcing their rights in the action and appoints them as Class Representatives. The Court preliminarily finds that they are similarly situated to absent Settlement Class Members and therefore typical of the Class, and that they will be adequate Class Representatives.

5.     <u>Class Counsel.</u> For purposes of the Settlements, the Court appoints Helen I. Zeldes of Schonbrun Seplow Harris Hoffman & Zeldes, LLP; Blake J. Lindemann of Lindemann Law APC; and Michael J. Flannery of Cuneo Gilbert & LaDuca, LLP as Class Counsel to act on behalf of each Settlement Class and the respective Class Representatives with respect to the respective Settlements. The Court authorizes Class Counsel to enter into the Settlements on behalf of the respective Class Representatives and Settlement Classes, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlements.

6.     <u>Administration.</u> Epiq Class Action & Claims Solutions, Inc is appointed as Class Administrator to administer the notice procedure and the processing of claims for the Settlement Classes, under the supervision of Class Counsel.

7.     <u>Class Notice.</u> The form and content of the proposed Notice of Class Action Settlement ("Long Form Notice"), the Email Notice, Mail Notice, and Publication Notice are hereby approved. The Parties and Class Administrator may amend the Class Notice documents as necessary to add dates, correct errors, and improve the information provided to Settlement Class Members consistent with the guidance provided by the Special Master.

8.     Cofiroute USA, LLC ("Cofiroute"), and the Orange County Transportation Authority ("OCTA") are hereby ordered to provide to the Class Administrator, in an electronically searchable and readable format, the names, email addresses and, if necessary (i.e., if an email address is unavailable or if the Class Administrator notifies Cofiroute that an email was returned as undeliverable) the last known mailing addresses of OCTA account holders who used their OCTA FasTrak account to pay for a toll on a toll road operated by TCA between April 13, 2015 and

the thirtieth day after the date of this Order. TCA is hereby ordered to provide to the Class Administrator, in an electronically searchable and readable format, information to be identified by TCA in TCA's discretion, that the Class Administrator will use to determine the names, last known email address, and last known mailing addresses held by Settlement Class Members, to the extent TCA determines that such information exists in its reasonably available computerized account records. The Court finds that the provision of the foregoing information by OCTA, Cofiroute, and TCA to the Class Administrator is necessary so that reasonable notice can be given to the class, as required by state and federal constitutional provisions and FRCP 23, and so the Class Administrator can verify membership in the Settlement Classes. The Court further finds and orders that compliance with this Order by OCTA, TCA, and/or Cofiroute will not and does not violate California Streets & Highways Code section 31490 or any other federal, state or local constitution, statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information.

9.     To effectuate this Order and to ensure adequate notice is provided to the members of the Settlement Classes, and in accordance with both the Court's general authority to protect its jurisdiction and the All Writs Act (28 USC § 1651), the Court hereby permanently enjoins each and every member of each of the Settlement Classes from filing or pursuing any claim or litigation against any of the persons and/or entities listed below in 9(a)-(d), asserting that compliance with the obligations imposed by this Order or either of the Agreements violates California Streets & Highways Code section 31490 or any other federal, state or local constitution, statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information:

a.     Any and all Released Parties (as defined in Section 2.26 of the TCA Agreement);

b.     Any and all Released Parties (as defined in Section 2.26 of the 3M Agreement);

c.      OCTA and Cofiroute, together with their respective officers, agents, employees and attorneys;

d.      Any other person or entity who provides information to the Class Administrator pursuant to this Order, together with their respective officers, agents, employees and attorneys.

10.    The Class Administrator shall send the applicable Class Notice as provided by the respective Agreements via: (i) electronic mail, to the most recent email address of all persons in the respective Settlement Classes for whom such information is reasonably available from the computerized records of OCTA, TCA or Cofiroute;  (ii) first class mail, to the most recent mailing address of all persons in the respective Settlement Classes for whom there was no reasonably available email address or whose email notice was returned as undeliverable and for whom such mailing address is reasonably available from the computerized records of OCTA, Cofiroute or TCA; and (iii) via publication and social media ads for members of the interoperability transmissions subgroups of the respective Settlement Classes for whom no email or mailing address is reasonably available to OCTA, Cofiroute or TCA. The Notice will advise the respective class members of their ability to update their email address and/or mailing address with the Class Administrator.

11.    The Class Administrator shall treat the records of class members as confidential and shall not disclose all or any portion of those records to any person or entity except as authorized by Court order.  The Class Administrator shall use the records containing class member information solely for the purposes of providing notice to class members, verifying claim forms, and calculating and paying settlement awards.  No copies of files containing the records may be made, nor may the records be utilized by the Class Administrator for any other purpose not specified in this Order.

12.    Settlement Website. By the respective Settlement Notice Dates, the Class Administrator will maintain and administer a dedicated Settlement Website

containing class information and related documents. At a minimum, such documents will include the Agreements and attached exhibits, E-mail Notice, Mail Notice, this Preliminary Approval Order, all submissions regarding final settlement approval, any motion(s) for attorney's fees, costs, and/or service awards for the respective Class Representatives, and the Final Approval Order. The Settlement Website will permit members of the respective Settlement Classes who elect to do so to register online to receive (a) email notice that the Court has granted Final Approval of the Settlements, (b) updates on the deadlines to submit Requests for Exclusion and make Objections, and (c) the status of payments under the terms of the Settlements. The Settlement Website will be taken down and rendered inaccessible by the Final Distribution Date.

13.     **Claims.** All claims must be postmarked or submitted electronically within **eighty-four (84) days after the Settlement Notice Date ("Claims Deadline")** as specified by the respective Agreements.  Any class member who does not timely and properly submit a claim within the time provided for shall be forever barred from sharing in the distribution of the proceeds of the respective Settlements, unless otherwise agreed by the Parties or ordered by the Court, but will in all other respects be subject to and bound by the provisions of the Agreements, the releases contained therein, this Order, the Final Judgment, and the Final Approval Order.

14.     The Class Administrator shall review and process each claim to determine whether it qualifies for a settlement award, and in what amount, in accordance with the terms of the respective Agreements. Claims that do not meet the submission requirements may be rejected.  Prior to rejecting a claim, in whole or in part, the Class Administrator shall communicate with the claimant in writing to give the claimant a reasonable opportunity to remedy any deficiencies in the claim.

15.     Exclusions from the Settlement. Members of the Settlement Classes who wish to exclude themselves from one or both of the Settlement Classes must advise the Class Administrator by providing a written Request for Exclusion. The Request for Exclusion must be postmarked no later than **eighty-four (84) days after the**

**Settlement Notice Date** (the "Exclusion Deadline"). In it, the  class member must state his or her full name and address and must state that he or she wishes to be excluded from the Settlement(s). Any member of a Settlement Class who submits a valid and timely Request for Exclusion will not be a final class member of the Settlement he/she is excluded from and will not be bound by the terms of the Agreement(s) (but will be bound by the injunction in paragraph 9, above). All members of the Settlement Classes who do not submit a timely, valid Request for Exclusion, however, will be bound by the Agreement(s) and the Judgment, including the releases and covenant not to sue.

16.    <u>Objections</u>. Any Settlement class member who intends to object to one or both Settlements must file a written Objection with the Court, located at 350 W. 1st Street, Los Angeles California, 90012, Courtroom 5D, no later than **eighty-four (84) days after the Settlement Notice Date** (the "Objection Deadline"). In the written Objection, the Settlement class member must state his or her (1) full name and address; (2) account number with the TCA, if one exists; and (3) any other proof of Settlement Class membership if such proof exists. The written Objection must also state the reasons for the Settlement class member's Objection and indicate whether he or she intends to appear at the Final Approval Hearing on his or her own behalf or through counsel. Any documents supporting the Objection must be attached to the Objection. The Parties shall have the right to obtain document discovery from and take the deposition of any objector relevant to the Objection. Any Settlement class member who has timely filed an Objection and indicated an intent to appear may appear at the Final Approval Hearing, either in person or through an attorney hired at the Settlement class member's own expense, to object to the fairness, reasonableness, or adequacy of one or both of the Settlements.

17.    <u>Declaration of Class Administrator</u>. No later than fourteen (14) calendar days before the Final Approval Hearing, the Class Administrator shall file with the

Court and serve on counsel for all Parties a declaration stating that the Notice required by this Order has been completed.

18. <u>Motion for Final Approval.</u> The motion for final approval shall be filed and served **at least twenty-eight (28) days before the Final Approval Hearing**. Any replies to any Objections shall be filed and served at least **fourteen (14) calendar days prior to the Final Approval Hearing**.

19. The motion for attorneys' fees and costs and Service Awards shall be filed **at least two weeks before the Objection and Exclusion Deadlines.** Any replies to any Objections shall be filed and served at least **fourteen (14) calendar days prior to the Final Approval Hearing**.

20. Defendants shall bear no responsibility for any application for attorneys' fees and costs and service awards, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  At or after the Final Approval Hearing, the Court shall determine whether any application for attorneys' fees and costs to Class Counsel and any service awards to Court-appointed Class Representatives shall be approved.

21. All reasonable expenses incurred in identifying and notifying Class Members, as well as administering the Settlements, shall be paid in accordance with the terms set forth in the Agreements.

22. The Court preliminarily approves Section 14 of the 3M Settlement Agreement and Section 15 of the TCA Settlement Agreement in which the TCA, the OCTA, Cofiroute, other Toll Agencies, 3M, and the Class Administrator are released from any and all claims that any Settlement class member could assert arising out of or in any way related to the transmission, collection, or use of the Settlement Class Member Information pursuant to the Settlement Agreements to administer the Settlements.

23. The Special Master, Hon. Andrew J. Guilford (ret.), shall hold a Final Approval Hearing on a date selected by the Special Master at Judicate West, to

determine: (a) whether the Settlements on the terms and conditions provided for in the Agreements are fair, reasonable and adequate to class members and should be finally approved by the Court; (b) whether a judgment should be entered; (c) whether Class Counsel should be awarded attorneys' fees and costs, and if so, in what amount; and (d) whether service awards should be awarded to the Court-appointed Class Representatives, and if so, in what amount.  The Special Master may postpone the Final Approval Hearing and will provide notice of any such postponement on the Class Administrator's website without further notice to class members. The Special Master shall produce a Report and Recommendation as to whether he believes the Settlements should be finally approved.

24.    Neither the Agreements or any of their terms or provisions, nor any of the negotiations or proceedings connected with the Settlements, whether or not consummated, shall be construed as an admission or concession of any kind by any of the Parties.  Neither the Agreements or any of their terms or provisions, nor any of the negotiations or proceedings connected with the Settlements, may be offered against any of the Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of the Parties regarding any issue whatsoever including: (i) whether it was appropriate for class certification; (ii) the validity of any allegation or claim that was, could have been or will be asserted against any of the Defendants; (iii) liability, negligence, fault, or wrongdoing of any kind; and (iv) the existence or scope of any damages.

25.    The Court retains exclusive and continuing jurisdiction over the Parties and the class members to consider all further motions and applications arising out of, or connected with, the Agreements or related Settlement matters.  The Court may approve the Settlements with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Classes. The Court shall also retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreements, and all Parties hereto submit to the jurisdiction of the Court for

purposes of implementing and enforcing the Settlements embodied in the Agreements.

26.     All class members shall be bound by all determinations and judgments of the Court in the Action concerning the Settlements and related matters, whether favorable or unfavorable to the Settlement Classes.

27.     All proceedings in this action relating to TCA, 3M, and BRiC shall be stayed until further order of the Court, except for proceedings that may be necessary to implement this Preliminary Approval Order, the Agreements, their Exhibits, or to comply with or effectuate the terms and conditions of the Agreements.

28.     Pending final determination of whether the proposed Settlements should be approved, neither Plaintiffs nor any class member, directly or indirectly, representatively, or in any other capacity, shall commence or prosecute against any of the settling Defendants, any action or proceeding in any court or tribunal asserting any of the respective Released Claims.

**IT IS SO ORDERED:**

Dated: _____, 2020       _____

Otis D. Wright II
*United States District Judge*

**JUDICATE WEST**
Alternative Dispute Resolution
*Results Beyond Dispute™*

**Santa Ana Office**
1851 E. First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

*www.Judicatewest.com*

**PROOF OF SERVICE**

## In Re Toll Roads Litigation
### A267204

I, the undersigned, an employee of Judicate West, located at 1851 E. First Street, Suite 1600, Santa Ana, CA 92705 declare under penalty of perjury that I am over the age of eighteen (18) and not a party to this matter or proceeding.

On December 30, 2020, I served the foregoing documents, described as:

**SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING MOTION FOR PRELIMINARY APPROVAL OF TWO CLASS ACTION SETTLEMENTS (DKT. NO. 585)**

to the following parties:

### SEE ATTACHED MAILING LIST

**( X )  BY E-MAIL** I caused the above-referenced document to be transmitted via electronic mail (e-mail) to the parties as listed on this Proof of Service

**(   )  BY ELECTRONIC FILING** I caused such document to be sent via electronic service by submitting an electronic version of the document(s) to One Legal, LLC, through the user interface at www.onelegal.com.

**(   )  BY FASCIMILE** I caused the above-referenced document to be transmitted via facsimile to the parties as listed on this Proof of Service. The document was transmitted by facsimile transmission and the transmission was reported as complete and without error.

**(   )  BY PERSONAL SERVICE** I personally delivered the documents to the persons at the address (es): by leaving the documents at the person (s) office, in an envelope or package clearly labeled to identify the person(s) being served, with a receptionist or an individual in charge of the office.

**(   )  BY UNITED STATES PARCEL SERVICE** I am readily familiar with the business' practice for collection and processing of correspondence and mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit with postage thereon fully prepaid at Nicole Baney, California in the ordinary course of business

**(   )  STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**(   )  FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **December 30, 2020,** at Santa Ana, California

Nicole Baney
Judicate West

Downtown Los Angeles Office • 601 S. Figueroa Street Suite 3400, Los Angeles, CA 90017 • (213) 223-1113 • Fax (213) 223-1114
San Diego Office • 402 W. Broadway Suite 2400, San Diego, CA 92101 • (619) 814-1966 • Fax (619) 814-1967
San Francisco Office • 100 Pine Street Suite 1950, San Francisco, CA 94111 • (415) 266-1242 • Fax (415) 266-1243
West Los Angeles Office • 11601 Wilshire Blvd Suite 2040, Los Angeles, CA 90025 • (310) 442-2100 • Fax (310) 442-2125
Sacramento Office • 980 9th Street Suite 2200, Sacramento, CA 95814 • (916) 394-8490 • Fax (916) 394-8495



**JUDICATE WEST** — Alternative Dispute Resolution

*Results Beyond Dispute℠*

**Santa Ana Office**
1851 East First Street
Ste 1600
Santa Ana, CA  92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

# Case Contact List

as of Wednesday, December 30, 2020

**JW Case #: A267204**

## *Case Caption: In Re Toll Roads Litigation*

Michael J. Flannery, Esq.
Cuneo, Gilbert & LaDuca, LLP
7733 Forsyth Blvd.
Suite 1675
Saint Louis, MO 63105
Phone: (314) 226-1015   Fax: (202) 789-1813
Email: mflannery@cuneolaw.com
Representing Penny D. Borsuk; Todd Carpenter; David Coulter; Dan Golka; Ebrahim E. Mahda; Lori Myers; Todd Quarles; James Watkins, et al.


Blake J. Lindemann, Esq.
Lindemann Law Firm
433 N. Camden Dr.
4th Floor
Beverly Hills, CA 90210
Phone: (310) 279-5269   Fax: (310) 300-0267
Email: blake@lawbl.com
Representing Penny D. Borsuk; Todd Carpenter; David Coulter; Dan Golka; Ebrahim E. Mahda; Lori Myers; Todd Quarles; James Watkins, et al.


Paul L. Hoffman, Esq.
Schonbrun, Seplow, Harris, Hoffman & Zeldes, LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Phone: (310) 396-0731   Fax: (310) 399-7040
Email: hoffpaul@aol.com
Representing Penny D. Borsuk; Todd Carpenter; David Coulter; Dan Golka; Ebrahim E. Mahda; Lori Myers; Todd Quarles; James Watkins, et al.


Ben Travis, Esq.
Schonbrun, Seplow, Harris, Hoffman & Zeldes, LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Phone: (310) 396-0731   Fax: (310) 399-7040
Email: btravis@sshhlaw.com
Representing Penny D. Borsuk; Todd Carpenter; David Coulter; Dan Golka; Ebrahim E. Mahda; Lori Myers; Todd Quarles; James Watkins, et al.

Downtown Los Angeles Office ● 601 S. Figueroa Ste 3400 ● Los Angeles, CA  90017 ● (213) 223-1113 ● Fax (213) 223-1114
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA  95814 ● (916) 394-8490 ● Fax (916) 394-8495
San Diego Office ● 402 W. Broadway Ste 2400 ● San Diego, CA  92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Ste 1950 ● San Francisco, CA  94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Ste 2040 ● Los Angeles, CA  90025 ● (310) 442-2100 ● Fax (310) 442-2125



**Santa Ana Office**
1851 East First Street
Ste 1600
Santa Ana, CA  92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Helen I. Zeldes, Esq.
Schonbrun, Seplow, Harris, Hoffman & Zeldes, LLP
501 W. Broadway
Suite 800
San Diego, CA 92101
Phone: (760) 400-4990  Fax:
Email: hzeldes@sshhlaw.com
Representing Penny D. Borsuk; Todd Carpenter; David Coulter; Dan Golka; Ebrahim E. Mahda; Lori Myers; Todd Quarles; James Watkins, et al.


Nate Brennaman, Esq.
Faegre Drinker Biddle & Reath, LLP
2200 Wells Fargo Center
90 S. 7th St.
Minneapolis, MN 55402
Phone: (612) 766-7000  Fax: (612) 766-1600
Email: nate.brennaman@faegrebd.com
Representing 3M Company


Aaron D. Van Oort, Esq.
Faegre Drinker Biddle & Reath, LLP
2200 Wells Fargo Center
90 S. 7th St.
Minneapolis, MN 55402
Phone: (612) 766-7000   Fax: (612) 766-1600
Email: aaron.vanoort@faegrebd.com
Representing 3M Company


Stephen J. Erigero, Esq.
Ropers Majeski, PC
445 South Figueroa St.
Suite 3000
Los Angeles, CA 90071
Phone: (213) 312-2000  Fax:
Email: stephen.erigero@rmkb.com
Representing BRiC-TPS, LLC


Timothy J. Lepore, Esq.
Ropers Majeski, PC
445 South Figueroa St.
Suite 3000
Los Angeles, CA 90071
Phone: (213) 312-2000  Fax:
Email: timothy.lepore@rmkb.com
Representing BRiC-TPS, LLC

Downtown Los Angeles Office ● 601 S. Figueroa Ste 3400 ● Los Angeles, CA  90017 ● (213) 223-1113 ● Fax (213) 223-1114
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA  95814 ● (916) 394-8490 ● Fax (916) 394-8495
San Diego Office ● 402 W. Broadway Ste 2400 ● San Diego, CA  92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Ste 1950 ● San Francisco, CA  94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Ste 2040 ● Los Angeles, CA  90025 ● (310) 442-2100 ● Fax (310) 442-2125



**Santa Ana Office**
1851 East First Street
Ste 1600
Santa Ana, CA  92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Kenny E. Steelman, Esq.
Cofiroute USA, LLC
200 Spectrum Center Dr.
Suite 1650
Irvine, CA 92618
Phone: (949) 754-0198  Fax:
Email: ksteelman@cofirouteusa.com
Representing Cofiroute USA, LLC


David F. Brown, Esq.
Corbett, Steelman & Specter
27281 Las Ramblas
Suite 200
Mission Viejo, CA 92691
Phone: (949) 553-9266  Fax:
Email: dbrown@corbsteel.com
Representing Cofiroute USA, LLC


M. Lois Bobak, Esq.
Woodruff, Spradlin & Smart
555 Anton Blvd.
Suite 1200
Costa Mesa, CA 92626
Phone: (714) 558-7000  Fax: (714) 835-7787
Email: lbobak@wss-law.com
Representing OCTA; Darrell Johnson; Lori Donchak


Patrick M. Desmond, Esq.
Woodruff, Spradlin & Smart
555 Anton Blvd.
Suite 1200
Costa Mesa, CA 92626
Phone: (714) 558-7000  Fax: (714) 835-7787
Email: pdesmond@wss-law.com
Representing OCTA; Darrell Johnson; Lori Donchak


Hyongsoon Kim, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
4 Park Plaza
Suite 1900
Irvine, CA 92614-2585
Phone: (949) 885-4100  Fax: (949) 885-4101
Email: kimh@akingump.com
Representing The Foothill/Eastern Transportation Corridor Agency; The San Joaquin Hills Transportation Corridor Agency; Rhonda Reardon; Michael Kraman; Craig Young; Scott Schoeffel; Ross Chun

Downtown Los Angeles Office ● 601 S. Figueroa Ste 3400 ● Los Angeles, CA  90017 ● (213) 223-1113 ● Fax (213) 223-1114
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA  95814 ● (916) 394-8490 ● Fax (916) 394-8495
San Diego Office ● 402 W. Broadway Ste 2400 ● San Diego, CA  92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Ste 1950 ● San Francisco, CA  94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Ste 2040 ● Los Angeles, CA  90025 ● (310) 442-2100 ● Fax (310) 442-2125

**JUDICATE WEST**
Alternative Dispute Resolution

*Results Beyond Dispute℠*

**Santa Ana Office**
1851 East First Street
Ste 1600
Santa Ana, CA  92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

Anthony T. Pierce, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
2001 "K" St. N.W.
Washington, DC 20006
Phone: (202) 887-4411   Fax:
Email: apierce@akingump.com
Representing The Foothill/Eastern Transportation Corridor Agency; The San Joaquin Hills Transportation Corridor Agency; Rhonda Reardon; Michael Kraman; Craig Young; Scott Schoeffel; Ross Chun

Downtown Los Angeles Office ● 601 S. Figueroa Ste 3400 ● Los Angeles, CA  90017 ● (213) 223-1113 ● Fax (213) 223-1114
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA  95814 ● (916) 394-8490 ● Fax (916) 394-8495
San Diego Office ● 402 W. Broadway Ste 2400 ● San Diego, CA  92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Ste 1950 ● San Francisco, CA  94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Ste 2040 ● Los Angeles, CA  90025 ● (310) 442-2100 ● Fax (310) 442-2125