1  **SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
2  HELEN I. ZELDES (220051)
3  hzeldes@sshhzlaw.com
   BEN TRAVIS (305641)
4  btravis@sshhzlaw.com
   501 W. Broadway, Suite 800
5  San Diego, CA 92101
   Telephone: (619) 400-4990
6  Facsimile: (310) 399-7040
7
   *Co-Lead Class Counsel*
8
   [*Additional counsel listed on signature page*]

9

10  **UNITED STATES DISTRICT COURT**

11  **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

12

13  IN RE: TOLL ROADS LITIGATION
    _____

14  PENNY DAVIDI BORSUK; DAVID
15  COULTER; EBRAHIM E. MAHDA;
    TODD QUARLES; TODD
16  CARPENTER; LORI MYERS; DAN
    GOLKA; and JAMES WATKINS on
17  behalf of themselves and all others
    similarly situated,
18           Plaintiffs,
19       vs.
20  FOOTHILL/EASTERN
    TRANSPORTATION CORRIDOR
21  AGENCY; SAN JOAQUIN HILLS
    TRANSPORTATION CORRIDOR
22  AGENCY; ORANGE COUNTY
    TRANSPORTATION AUTHORITY;
23  3M COMPANY; BRiC-TPS LLC;
    RHONDA REARDON; MICHAEL
24  KRAMAN; CRAIG YOUNG; SCOTT
    SCHOEFFEL; ROSS CHUN;
25  DARRELL JOHNSON; LORI
    DONCHAK; COFIROUTE USA, LLC;
26  and DOES 3-10; inclusive,
27           Defendants.
    _____

Case No:  8:16-cv-00262-ODW(ADSx)

Hon. Otis D. Wright II

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date:   April 23, 2021,
Time:  11:00 a.m.
Location:   Judicate West
            55 Park Plaza, Suite 400
            Irvine, CA 92614

Special Master: Hon. Andrew J. Guilford (ret.)

[*Filed Concurrently with Declarations and Proposed Order*]

28

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................1

II.    BACKGROUND AND PROCEDURAL HISTORY ......................................3

       A.    The Complaint ...................................................................3

       B.    Discovery .........................................................................3

       C.    Judgment on the Pleadings ...................................................4

       D.    Summary Judgment ............................................................4

       E.    Class Certification .............................................................4

       F.    Ruling on Key Questions......................................................5

       G.    The Parties' Extensive Mediation Efforts ................................6

III.   TERMS OF THE SETTLEMENT AGREEMENT.......................................6

       A.    The Settlement Class Definition.............................................6

       B.    The Settlement Benefits.......................................................7

             1.    Cash Payments ..........................................................7

             2.    Penalty Forgiveness.....................................................8

             3.    Remedial Measures Attributable to the Settlement .......9

       C.    Notice to the Class ...........................................................10

       D.    Proposed Class Representative Service Award.........................11

       E.    Attorneys' Fees and Costs ..................................................11

       F.    The Class Administrator.....................................................12

IV.    PRELIMINARY APPROVAL IS APPROPRIATE ...................................12

       A.    Legal Standards ...............................................................12

       B.    Class Certification ............................................................14

             1.    The Class is Sufficiently Numerous...............................14

             2.    There are Common Questions of Law and Fact .........15

             3.    The Class Representative's Claim is Typical of Those of
                   Other Class Members................................................16

             4.    Class Representative and Class Counsel Adequately
                   Represent Class Members ...........................................16

**TABLE OF CONTENTS - CONT'D**

5. Common Issues of Law and Fact Predominate..........................17

6. Superior Method of Adjudication ................................................17

C. The Proposed Settlement Should be Preliminarily Approved ...............18

1. The Class Representatives and Class Counsel have adequately    represented the Settlement Class ...........................18

2. The Settlement Was Negotiated at Arm's Length.......................18

3. The Relief Provided for the Class is Adequate ...........................18

   i. The Costs, Risks, And Delay of Trial and Appeal.................18

   ii. The Effectiveness of The Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims ..........................................20

   iii. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment ...................................................21

4. The Proposal Treats Class Members Equitably Relative to Each Other, Considering the Court Rulings to Date...................22

D. The Proposed Notice is Appropriate ......................................................22

E. The Claims Process is not Cumbersome ................................................26

F. The Court Should Set Settlement Deadlines and Schedule a Hearing on Final Approval of the Settlement. ......................................26

V. ENJOINING SUIT BASED ON PROVIDING INFORMATION TO CLASS ADMINISTRATOR FOR NOTICE PURPOSES. ...........................27

VI. THE SETLEMENT COMPARES FAVORABLE TO THE RECENTLY APPROVED TCA SETTLEMNT ....................................................................28

VII. CARVE-OUTS ..................................................................................................31

VIII. CONCLUSION.................................................................................................31

1

# TABLE OF AUTHORITIES

2

Page(s)

3   *Federal Cases*

4   *Carr v. Tadin, Inc.*,
5      51 F. Supp. 3d 970 (S.D. Cal. 2014) ............................................................... 21

6   *Class Plaintiffs. v. City of Seattle*,
7      955 F.2d 1268 (9th Cir. 1992) ...................................................................... 13

8   *Deluca v. Farmers Insurance Exchange*,
9      2020 WL 5071700 (N.D. Cal. August 24, 2020) ...................................... 11

10   *Green v. Am. Exp. Co.*,
11      200 F.R.D. 211 (S.D.N.Y. 2001) ................................................................. 21

12   *Hanlon v. Chrysler Corp.*,
13      150 F.3d 1011 (9th Cir. 1998) .......................................................... 14, 16, 21

14   *In re HP Inkjet Printer Litigation*,
15      2014 WL 4949584 (N.D. Cal, Sept., 30, 2014) ........................................ 24

16   *In re Online DVD-Rental Antitrust Litig.*,
17      779 F.3d 934 (9th Cir. 2015) ...................................................................... 12

18   *In re Tableware Antitrust Litig.*,
19      484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................... 14

20   *In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
21      571 F.3d 953 (9th Cir. 2009) ...................................................................... 17

22   *Jacobs v. CSAA Inter-Ins.*,
23      2009 WL 1201996 (N.D. Cal. May 1, 2009) ............................................ 28

24   *Keith v. Volpe*,
25      118 F.3d 1386 (9th Cir. 1997) .................................................................... 28

26   *Kenneth Glover, et al. v. City of Laguna Beach, et al.*,
27      2018 WL 6131601 (C.D. Cal. 2018) .......................................................... 13

28   *Lane v. Facebook*,
   696 F.3d (9th Cir. 2012) .............................................................................. 21

# TABLE OF AUTHORITIES – CONT'D

Page(s)

*Federal Cases (Continued)*

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) ............................................................... 23

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) .................................................................... 17

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
    641 F. App'x 146 (3d Cir. 2015) ................................................................ 21

*Mercury Interactive Corp. Sec. Litig. v. Mercury*,
    618 F.3d 988 (9th Cir. 2010) ................................................................ 12, 26

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................... 23

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...................................................................... 23

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal., September 15, 2015) ...................................... 24

*Officers for Justice v. Civil Service Comm'n of the City & Cnty. of San Francisco*,
    688 F.2d 615 (9th  Cir. 1982) ..................................................................... 13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...................................................................... 16

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................ 22, 23

*Schulein v. Petroleum Dev. Corp.*,
    2015 WL 12698312 (C.D. Cal. Mar. 16, 2015) ......................................... 12

*Spann v. J.C. Penney Corporation*,
    (C.D. Cal. 2016) 314 F.R.D. 312 .............................................................. 24

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................... 13

# TABLE OF AUTHORITIES – CONT'D

Page(s)

*Federal Cases* (Continued)

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977) ................................................................ 28

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................ 12

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. 338 (2011) ................................................................ 14

*Wright v. Linkus Enterprises, Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009)............................................ 28

*Federal Statutes*

28 USC § 1651 ............................................................... 27, 28

*State Statutes*

California Streets and Highways Code § 31490 ................................. Passim

*Federal Rules*

Fed. R. Civ. P. 23 ................................................................ Passim

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

 After five years of contentious litigation, Plaintiff Dan Golka ("Plaintiff") is pleased to announce that a settlement has been reached with the Orange County Transportation Authority ("OCTA"), Darrell Johnson, Lori Donchak and Cofiroute USA, LLC ("Cofiroute") (the "Settling Defendants")[1] to resolve all claims and end the litigation. In this motion, Plaintiff seeks preliminary approval of the class settlement, which he and Class Counsel believe is fair, reasonable and adequate, as described in more detail below.

This litigation concerns Plaintiff's claim – and the claims of the certified Class of toll road drivers on the 91 Express Lanes and other California toll roads, including State Routes 73, 133, 241, 261, that Plaintiff represents – that Defendants improperly share their personally identifiable information ("PII") with third parties in violation of California Streets and Highways Code § 31490, as well as several other consumer, constitutional and common law claims. Plaintiff's claims have been vigorously prosecuted by Class Counsel and aggressively challenged by the five Defendants in this action. An agreement to settle was reached only after multiple extensive and lengthy arms' length negotiations over a period of more than a year.

The class settlement provides significant and meaningful relief to the OCTA/Cofiroute subclasses: the total monetary value of the settlement is $41 million, consisting of cash of $1 million as well as penalty forgiveness of $40 million. Any remaining cash after distribution to eligible class members will be donated to Privacy Rights Clearinghouse as a *cy pres* award. The settlement also provides important programmatic relief relating to, among other things, the reduction of the maximum

---

[1] Defendants Foothill/Eastern Transportation Corridor Agency, San Joaquin Hills Transportation Corridor Agency, Michael Kraman, Craig Young, Scott Schoeffel, Ross Chun, Rhonda Reardon (collectively "TCA"), BRiC-TPS, LLC ("BRiC") and 3M Company ("3M") are not the subject of this Motion. Their settlements with the Plaintiffs were the subject of an earlier motion for preliminary approval.

penalty imposed by OCTA for toll violations and an agreement that OCTA and Cofiroute will not provide additional PII to third-party debt collectors.

The settlement was only achieved after five years of hard-fought litigation which included multiple Motions to Dismiss, Motions for Judgment on the Pleadings, three rounds of Motions for Summary Judgment, Class Certification, a 23(f) petition to the Ninth Circuit (which denied the petition), a Motion to Decide Key Questions, production and review of over 500,000 pages of documents, 34 depositions, expert discovery, and third-party depositions across the country.  The settlement negotiations were just as intense and hard-fought, including three rounds of good faith, arms'-length mediation before highly respected mediators – the last two before Robert Kaplan. The history of the litigation is described in more detail in the Declaration of Helen I. Zeldes ("Zeldes Decl."), one of the three Co-Lead Class Counsel, filed concurrently with this Memorandum.

Class Counsel believe that the settlement amounts reached here are an excellent result for the Settlement Class, particularly given the risks attendant to further litigation. The settlement provides meaningful monetary and programmatic relief.  As discussed further below, the settlement is similar in structure to and compares favorably to the TCA settlement, which the Special Master recommended preliminary approval of on December 30, 2020. In particular, in light of the valuable benefits to members of the Settlement Class, and the significant risks the Settlement Class would face if the litigation continued - including taking into account the Court's January 17, 2020 order on Key Legal Questions (defined below) ruling against Plaintiff on several of Plaintiff's class claims against Settling Defendants - the terms of the settlement are "fair, reasonable, and adequate" and merit preliminary and ultimately final approval. Class Counsel therefore respectfully request that this Court grant preliminary approval of the settlement.

//

//

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     The Complaint

This action was initially filed in California state court on October 2, 2015, and later removed to federal court on February 16, 2016. OCTA and Cofiroute were served after removal. Two additional federal actions were filed against the TCA and 3M Defendants and eventually consolidated into the current litigation in 2016.  Motions to Dismiss were granted in part and denied in part on December 20, 2016. Plaintiff filed the operative Corrected First Amended Class Action Complaint on January 19, 2017 (Dkt. 119-1). OCTA answered on February 15, 2017, and Cofiroute answered on March 6, 2017.

Plaintiff's complaint brought a claim under California Streets and Highways Code section 31490 ("§ 31490") (the only cause of action to which class certification was granted) alleging that Defendants improperly provide PII of users and subscribers of Orange County toll roads (including Plaintiff) to dozens of third parties in violation of § 31490(a), subjecting them to statutory damages of $2,500 to $4,000 per violation under § 31490(q). Plaintiff also alleged that Defendants violated other laws and statutes, including an excessive fines claim (stemming from penalties they imposed on toll violations), due process claims (stemming from their toll violation notices, administrative review procedures and lack of signage), as well as other related claims.

### B.     Discovery

The parties engaged in extensive discovery, including the production of and review of over 500,000 pages of documents, depositions of 34 witnesses, expert discovery, and a site inspection of the computerized database and software system maintained by Cofiroute on behalf of OCTA.  *See* Zeldes Decl. at ¶ 7.  Discovery took place over the course of two years. *Id*. Third party subpoenas were issued to 15 parties, and depositions of several of those third parties were also undertaken.  *Id*.

///

///

### C.     Judgment on the Pleadings

Defendants filed Motions for Judgment on the Pleadings on March 24, 2017. After extensive briefing and oral argument, the Court granted in part and denied in part each motion on August 2, 2017. Dkt. 204. The Court dismissed Plaintiff's Rosenthal Act claim and also dismissed claims for damages under the California Constitution. The parties continued with discovery on Plaintiff's § 31490, negligence, constitutional privacy, due process and excessive fines claims.

### D.     Summary Judgment

Defendants sought summary judgment on multiple occasions, requiring extensive briefing each time. Zeldes Decl. at ¶12. Motions for partial summary judgment were first filed in March of 2017, but later withdrawn, only to be renewed in September of 2017. Among other things, at issue in the summary judgment motions were Plaintiff's claims under § 31490, which became the focus of the litigation. *Id.*

On January 12, 2018, the Court granted Defendants summary judgment on the portion of Plaintiff's claim based on alleged violations of the privacy policy but denied the motions without prejudice as to the rest of Plaintiff's claim for improper sharing of PII. Dkt. 297. Discovery continued on the remainder of the claims. *Id.* at ¶13.

Settling Defendants' third motions for summary judgment were filed on July 17, 2018. The motions, which challenged both the individual claims of the two plaintiffs with claims against OCTA and Cofiroute and privacy claims that were later certified, were fully briefed. But before oral argument was held on the motions, the case was stayed to allow the petition for an appeal of the class certification to be decided and the parties to pursue possible settlement through mediation. There have not been rulings on those summary judgment motions. *Id.* at ¶14.

### E.     Class Certification

Plaintiff's Motion for Class Certification was filed on April 27, 2018 with a class certification hearing on July 31, 2018.  The Court certified a class based on claims under § 31490 ("Privacy Class") and amended the class definition a few

months later, but declined to certify any other claims. Dkt Nos. 439, 501. Defendants 3M and TCA filed a motion for reconsideration, which the Court denied. 3M then filed a petition seeking permission to appeal the Class Certification Order in the Ninth Circuit, which OCTA and Cofiroute joined. That petition was denied in April of 2019. After the Class Certification Order, Plaintiff filed a motion for approval of a Privacy Class notice plan. However, the case was stayed pending 3M's petition while the parties pursued mediation and, therefore, there wasn't a hearing or ruling on the motion and notice of the Class Certification Order wasn't given to the Privacy Class. Zeldes Decl. at ¶9.

### F.    Ruling on Key Questions

Over the course of the litigation, Defendants suggested to the Court that, with respect to certain issues concerning elements of the § 31490 claim, resolution of particular "key questions" would help the parties resolve the matter. After two mediations were unsuccessful in resolving the case, and following denial of 3M's petition, Defendants filed their motion to determine key questions on June 10, 2019 ("Key Questions Motion"), and the parties briefed the motion. The Court withheld its ruling on the matter for several months, which provided an impetus for further settlement negotiations. Plaintiffs reached settlements in principle with TCA and 3M before the ruling was issued, but despite good faith continuing efforts, were not able to reach an agreement with OCTA and Cofiroute. Zeldes Decl. at ¶10.

On January 17, 2020, the Court issued its ruling on the Key Questions Motion. In its ruling, the Court found that certain types of transmissions for interoperability and/or collection and enforcement of toll and toll violation penalties did not violate § 31490. [Dkt. No. 566] Specifically, the Court found in favor of Settling Defendants on the merits of the claims asserted by the Interoperability, DMV and Car Rental Subclasses. With regard to the Debt Collection Subclass, the Court found that providing information to a third-party collection agency to collect unpaid delinquent tolls and penalties is permitted by § 31490, but that insufficient information had been

presented as to what specific information is provided and whether that information is reasonably necessary for enforcement and collection purposes. Zeldes Decl. at ¶11.

### G.   The Parties' Extensive Mediation Efforts

The Parties held an unsuccessful full-day mediation with mediator Lynn Frank early in the case. On February 25, 2019, Plaintiff and all Defendants participated in a mediation with Robert Kaplan. Hard fought, intensive and arms' length negotiations over the course of a full day did not result in a settlement. Nevertheless, Class Counsel and counsel for Settling Defendants continued to discuss settlement informally. On March 2, 2020, Plaintiff and Settling Defendants participated in a second mediation with Mr. Kaplan. The parties made significant progress toward a resolution, including a conceptual agreement on many of the basic terms of a settlement. Mr. Kaplan submitted a Mediator's Proposal, which was accepted by all of the Parties subject to approval of the OCTA Board of Directors. The settlement was approved by the OCTA Board of Directors on April 27, 2020.  *See* Zeldes Decl. at ¶15.

## III.   TERMS OF THE SETTLEMENT AGREEMENT

### A.   The Settlement Class Definition

The proposed Settlement Class is similar to the class certified as to Settling Defendants. It consists of the following individuals whose PII was provided by OCTA or Cofiroute to an entity described below between June 29, 2015 and 10 days after preliminary approval is granted:

- • Any person with a non-OCTA transponder account whose PII, including the date, time and location of a toll transaction, was sent by Settling Defendants to the TCA or other California toll agency for purposes of collecting a toll incurred on the 91 Express Lanes (the "Interoperability Subclass");

- • Any person whose license plate number was sent by Settling Defendants to the California Department of Motor Vehicles or out-of-state equivalent, directly or through a subcontractor, in connection with more than one alleged toll violation incurred on the 91 Express Lanes (the "DMV Subclass")

• Any person whose PII was sent by Settling Defendants to a car rental company in connection with an alleged toll violation incurred on the 91 Express Lanes (the "Car Rental Subclass"); and

• Any person whose PII, other than the amount of tolls and penalties owed, the violation number, or the violator's account number, was sent by Settling Defendants to a third-party debt collector for collection of unpaid tolls and/or toll violation penalties incurred on the 91 Express Lanes (the "Debt Collection Subclass").

The following individuals are excluded from the Settlement Class: Current members of the OCTA Board of Directors, OCTA's Chief Executive Officer, the General Manager of the 91 Express Lanes, OCTA's 91 Express Lanes Project Manager III, the attorneys representing OCTA and Cofiroute in this Litigation. and the judge to whom this case is or was assigned, any member of the judge's immediate family, and any member of the judge's staff.

## B.   The Settlement Benefits

The total settlement includes $1 million dollars in cash, $40 million dollars in penalty forgiveness, and programmatic relief, including a reduction in OCTA's maximum toll violation penalty.  Specifically, the settlement provides:

### 1.   Cash Payments

OCTA will contribute $1 million dollars to a cash settlement fund. Subject to the Court's approval, the cash contribution will be used to fund the Cash Awards, class notice and administration costs, cost of the Special Master, any attorneys' fees awarded to Class Counsel, and Service Award to the Class Representative. The remainder will be distributed: 1) on a pro rata basis to the members of the Debt Collection Subclass who are not eligible for penalty forgiveness because they do not have outstanding unpaid penalties and who submit valid claims, up to a maximum of $15.00 per person; 2) any remaining funds will be donated to Privacy Rights Clearinghouse as a *cy pres* award.

There are approximately 320,000 members in the Debt Collection Subclass[2]. Of those, approximately 180,000 will be eligible to submit a claim for a cash award/distribution. Assuming even a healthy 10% response rate, each claimant would receive the full $15.00 payment.

## 2.    Penalty Forgiveness

OCTA will also provide a substantial $40 million dollars in penalty forgiveness to Debt Collection Subclass Members with outstanding penalties ("Penalty Forgiveness Eligible Class Members"). The penalty forgiveness amount will be distributed in two steps: First, all penalties owed as of the Settlement Class Period End Date by Penalty Forgiveness Eligible Class Members will be reduced to $100.00 per violation (from a current maximum of between $150 and $190). Second, the remainder of the $40 million penalty forgiveness fund will be allocated on a per capita basis to all Penalty Forgiveness Eligible Class Members and applied to the remaining balance of their outstanding penalties,

Of the approximately 320,000 members of the Debt Collection Subclass, approximately 140,000 still owe tolls and penalties. Reduction of each outstanding penalty to no more than $100 will use approximately $34.2 million of the $40 million in penalty forgiveness. Each eligible class member would then receive an additional penalty reduction of approximately $40. Here are a few examples to illustrate the possible reductions:

-   If a Class Member had 10 toll violations in a one-year period, the total penalty owed (not including tolls) would be $1,810 ($100 for the first

---

[2] The counts of Debt Collection Subclass members were generated during negotiation of the terms of the Cash Award and penalty forgiveness provisions of the settlement. To avoid an expected delay to obtain current counts, the June 30, 2020 counts are used herein. An estimate of current counts can be extrapolated from the counts used herein. But given that the class period is approaching six years it is not believed that an update of the counts from nine months ago would materially affect the evaluation of the settlement benefits. This is particularly true since OCTA slowed enforcement efforts during the COVID pandemic.

violation, $150 for the second violation, and up to $195 for each successive violation). After reduction of all penalties to $100 and allocation of the additional $40 forgiveness, this Class Member would owe $960.00 in penalties.

- If a Class Member had 35 unresolved violations in a one-year period, the penalties owed would be $6,685. After allocation of the forgiveness, the Class Member would owe $3,460 in penalties.

- And if a Class Member had just one violation, the post-forgiveness penalty amount owed would be $60.00.

Approximately 25% of all toll violators on the 91 Express Lanes are referred for debt collection. The other 75% of violations are resolved by Cofiroute. There is currently approximately $92 million owed by members of the Debt Collection Subclass. Cofiroute's subcontracted debt collection agency continues active measures to collect this debt. Any debt over $5,000 that is not resolved by the debt collection agency is reduced to a judgment, and judgments are renewed if they remain unresolved. Another method for collecting unpaid tolls and penalties is a tax refund intercept with the Franchise Tax Board.

There is no requirement to submit a claim form to receive penalty forgiveness - it will be electronically credited to the violation accounts of the Penalty Forgiveness Eligible Class Members. For debts that have been reduced to judgments, partial satisfaction of judgments will be filed.

### 3.      Remedial Measures Attributable to the Settlement

In addition to the cash and penalty forgiveness, as additional benefits of the settlement, OCTA will reduce the maximum per-violation penalty to $100.00 from a maximum penalty of 20x the highest system wide toll. The highest the toll penalty has been during the class period is $195.00. In addition, absent a change in existing California law regarding the PII that can be provided to a third-party debt collector, and without conceding that a unique violator ID number assigned to each toll violator

is PII, the Parties have agreed that the only PII of toll violators that Settling Defendants will provide to a subcontracted third-party debt collector will be the information contained in the relevant toll violation notice(s), together with any updated contact, address and/or email information, and a unique toll violator identification number assigned by Cofiroute.

## C.    Notice to the Class

Pursuant to Rule 23(e), the Class Administrator will provide Settlement Class Members with settlement notice as follows:

-    Members of the Debt Collection Subclass and those members of the Interoperability Subclass for whom TCA does not have email addresses or the email bounces back will be sent postcard notice via U.S. mail to the Class Member's last known address.  (Settlement Agreement ¶8.01; Declaration of Cameron R. Azari Esq. on OCTA Settlement Notice Plan. ("Azari Decl.") ¶ 18.) The mailed settlement notice will contain a detachable claim form allowing participating eligible Class Members to claim in for a cash distribution. The mailed settlement notice will also provide the web address for the website where Class Members may electronically submit a claim form.

-    Members of the Interoperability Subclass for whom TCA provides names and email addresses will be emailed written settlement notice. (Settlement Agreement ¶8.01; Azari Decl. ¶ 16). Settlement Class Members who receive settlement notice by email will receive a link in the email that will take them directly to the settlement website, which will contain the long form of the settlement notice. Azari Decl. ¶ 17.

-    For the remaining Settlement Class members, settlement notice will be provided by print publication and social media. Azari Decl. ¶6. This includes toll violators who had their license plate numbers submitted more than once to the DMV, individuals who incurred toll violations while driving a rental car, and individuals with an account with another California toll agency other than

TCA who paid a toll through the interoperability system for whom no contact information is reasonably available.

### D.    Proposed Class Representative Service Award

Subject to Court approval, Class Counsel will seek a payment of up to $5,000 as a service award to Dan Golka for his service as Class Representative[3]. (Settlement Agreement ¶ 4.01).    Mr. Golka has been an enthusiastic and active class representative. He has actively participated in the prosecution of this action by: reviewing and approving his original complaint and the Consolidated Complaint; sitting for a full-day deposition; responding to multiple lengthy sets of written discovery; communicating regularly with Class Counsel; submitting a declaration in opposition to Settling Defendants' motions for summary adjudication; and generally staying informed about the progress of the litigation and acting in the interests of the proposed Class. He put his name and reputation on the line for the sake of the Class, and no recovery would have been possible without his critical role. Zeldes Decl. ¶31. The proposed maximum $5,000 service award is consistent with those approved in other consumer class action settlements that have been pending as long as this one has.

### E.    Attorneys' Fees and Costs

The settlement value of the monetary component of the settlement is $41 million, which includes cash and monetary forgiveness. Class Counsel will seek $250,000.  This amount represents one-quarter of the settlement fund and less than 1% of the monetary components of the settlement. Such a request is well below the Ninth Circuit's 25% "benchmark" percentage for such awards. *See, e.g.*, *Deluca v. Farmers Insurance Exchange*, 2020 WL 5071700 (N.D. Cal. August 24, 2020); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *see also Schulein v.*

---

[3] Only two of the named plaintiffs have claims against Settling Defendants. David Coulter is not a party to the Settlement Agreement.

*Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANX), 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (30% of the settlement is "certainly not unique, especially in common fund cases" and "is similar to awards in other cases, which favors granting the motion."). Nonetheless, an upward adjustment above the benchmark percentage would have been warranted under these circumstances.

The Proposed Order Granting Preliminary Approval provides that Class Counsel will file a motion for payment of attorneys' fees and expenses prior to the Final Approval Hearing. As that motion will make clear, the $250,000 to be sought is reasonable as a percentage of the fund and is also commensurate with the substantial lodestar incurred in this matter. Class Members will have the opportunity to comment on or object to the fee petition under Rule 23(h), consistent with Ninth Circuit authority. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

### F.    The Class Administrator

The Parties propose that Epiq Class Action & Claims Solutions, Inc.—an experienced and reputable national class action administrator—serve as Class Administrator to provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the settlement. (Settlement Agreement ¶¶ 6.01, 6.03, 7.01, 7.02, 8.01, 8.02, 8.04, 8.05, 8.06.) This is the same administrator being used for the TCA and 3M settlements. The costs of the Class Administrator will be paid out of the settlement fund. Pre-final approval costs are estimated to be $217,000.

## IV.    PRELIMINARY APPROVAL IS APPROPRIATE

### A.    Legal Standards

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement. First, a court must determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class

for judgment. See Fed. R. Civ. P. 23(e)(1)(B). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. See Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

Rule 23 provides that "the claims, issues, or defenses of … a class proposed to be certified for purposes of settlement may be settled. . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] Class Members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Service Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). Therefore, a district court must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); see Fed. R. Civ. Proc. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied, *Hoffer v. City of Seattle*, 506 U.S. 953 (1992). The Court may approve a settlement agreement "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

"If the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval,' the court should grant preliminary approval of the class and direct notice of the proposed settlement to the class." *Kenneth Glover, et al. v. City of Laguna Beach, et al.*, 2018 WL 6131601, at *2 (C.D. Cal. 2018) (Guilford, J.) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007)).

A court reviewing a proposed class action settlement must balance a number of factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)). Balancing these factors and the factors identified in Rule 23(e) in this case support approval of the proposed settlement.

### B.    Class Certification

The Court has already certified the Privacy Class for litigation of the claims under Streets and Highways Code § 31490.  *See* Dkt. 501 pp. 19-20. The proposed Settlement Class is similar to the certified Privacy Class with regard to the claims asserted against OCTA and Cofiroute. It is slightly different as membership in the certified Privacy Class is defined based on whether the consumer used one of the toll roads during the Class Period. However, membership in the Settlement Class is defined based on whether the consumer's PII was shared during the Class Period. Plaintiff believes that the sharing of PII is the relevant factor as that is what triggers the application of SHC § 31490. Second, the certified privacy class in the Class Certification Order contains six bullet points which include some claims pertaining to only the other defendants in the litigation. The Settlement Class includes only those relating to the Settling Defendants. For the reasons outlined in the Court's order on Class Certification and as further discussed below, the Settlement Class should be certified as it meets the requirements of FRCP 23(a) and 23(b)(3).

### 1.    The Class is Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "It's generally accepted that when a proposed

class has at least forty members, joinder is presumptively impracticable based on numbers alone." Dkt. 501 at p.8 (citations omitted). Settling Defendants estimate that there are approximately 1.3 million individuals in the Settlement Class, therefore numerosity is satisfied.

### 2.    There are Common Questions of Law and Fact

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As this Court found in certifying the Privacy Class:

> So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2). Plaintiffs state in broad terms several questions that are common to the class, including whether Defendants violated privacy laws by sharing drivers' PII with third parties. That's enough to satisfy Rule 23(a)(2).

*See* Dkt. 501 at p.8 (internal citations and quotations marks omitted) Here, the Settlement Class involves the same questions of law and fact. This includes whether Settling Defendants violated privacy laws by sharing Class Members' PII with third parties. The transmissions at issue were done on a uniform basis based on Standard Operating Procedures ("SOPs"), automated processes, and policies that ensure toll collection is executed in a uniform manner and not on an individualized basis. Commonality is satisfied.[4]

///

///

---

[4] Pursuant to the Settlement Agreement, Settling Defendants have agreed not to contest class certification solely for the purposes of settlement. Pursuant to the Settlement Agreement, certification of the Settlement Class will not be deemed a concession that certification of a litigation class is appropriate, nor are Settling Defendants precluded from challenging class certification in further proceedings in this Litigation or in any other action if the Settlement Agreements are not finalized or finally approved.  Settlement Agreement, ¶3.01.

### 3.    The Class Representative's Claim is Typical of Those of Other Class Members

Rule 23(a)(3) requires that the Class Representative's claims be typical of those of the Class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff Dan Golka's claims stem from Settling Defendants' uniform practices of sharing PII. Mr. Golka thus satisfies the typicality requirement of Rule 23(a)(3).

### 4.    Class Representative and Class Counsel Adequately Represent Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class. FRCP 23(a)(4). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff and his counsel are adequate. First, the proposed Settlement Class Representative and his Counsel do not have any conflicts of interest with the absent Class Members. *See* Dkt. 501 p. 10. Second, as the Court has found, Plaintiff and Class Counsel have vigorously prosecuted the action on behalf of the Class for nearly four years. *Id.* As detailed above, Class Counsel engaged in significant discovery. *See supra*, §II.B. Class Counsel defended against over twenty dispositive motions and moved for and extensively litigated class certification issues. *See id*. The Settlement Class Representative was likewise actively engaged—he produced numerous

documents, sat for a lengthy deposition, and regularly communicated with counsel up to and including evaluating and approving the proposed Settlement. *See* §III.D. He supported the terms of the settlement and has expressed his continued willingness to protect the Class until the Settlement is approved and its administration completed. *See* Zeldes Decl., ¶ 32. Thus, adequacy is satisfied.

### 5.      Common Issues of Law and Fact Predominate

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Rule 23(b)(3) allows certification of a class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry of Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)). As this Court found, "Since Plaintiffs seek to recover statutory damages for the class, the central issue of their § 31490 claim is determining what PII transfers violate § 31490 and what PII transfers fall under an exception. And since Settling Defendants make PII available according to uniform policies, resolving that central issue can easily be done on a class-wide basis. So common questions prominently predominate the § 31490 claim." Dkt. 501 at p. 12.

### 6.      Superior Method of Adjudication

Rule 23(b)(3) lists four factors relevant to the Court's decision on whether a class action is superior to other forms of litigation: (1) the class members' interests in individually controlling the litigation; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. FRCP

23(b)(3). As this Court found, all four factors are met here. Dkt. 501 at P. 14.

### C.    The Proposed Settlement Should be Preliminarily Approved

Rule 23(e)(2) identifies criteria for the Court to use in deciding whether to grant preliminary approval of a proposed class settlement and direct notice to the proposed class. The Class Settlement proposed here satisfies each criterion.

### 1.    The Class Representatives and Class Counsel have adequately represented the Settlement Class

As set forth in the Zeldes Decl., ¶¶ 24-32, the Class Representative and Class Counsel have adequately represented the class.

### 2.    The Settlement Was Negotiated at Arm's Length

As set forth above, Plaintiff achieved the settlement after five years of hard fought, contested litigation and through extensive, hard fought, arm's-length negotiations. Class Counsel will be paid from the same settlement fund as eligible Class Members and the amount of their fees will be measured in part against the value of the settlement, such that Class Counsel had every incentive to secure the largest fund possible. There is no indication of collusion or fraud in the settlement negotiations, and none exists.

### 3.    The Relief Provided for the Class is Adequate

The settlement provides substantial Class relief, considering (i) the costs, risks, and delay of trial and lengthy appeals; (ii) the effectiveness of the proposed distribution plan; and (iii) the terms of the proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C).

### i.    The Costs, Risks, And Delay of Trial and Appeal

This factor overwhelmingly weighs in favor of preliminary approval of the settlement. The risk, expense, complexity, and likely duration of further litigation in this action are substantial. This case involves a matter of first impression: the analysis of a novel state law with no federal equivalent. As evidenced in this case, there were

many legal and factual issues raised in many motions throughout the five years the case was litigated.

On January 17, 2020, the Court ruled in favor of Settling Defendants on three of the four § 31490 claims asserted by the class: the interoperability claims, the DMV license plate lookup claims, and the car rental company claims. These rulings had a significant adverse impact on the claims of more than 80% of the class members and almost 95% of the challenged PII transmissions. While the Settlement Class could eventually appeal that ruling, any such appeal would have to wait until after trial on the remaining certified and uncertified claims. Given current court congestion and slow-downs due to the Covid-19 pandemic, as well as the need to give class notice of the Certification Order under FRCP 23(c) if the settlement is not approved, the filing of any appeal could be delayed a year or more. The appeal itself could then take another year or more.

The only remaining unresolved § 31490 claim asserted by the Settlement Class against OCTA and Cofiroute is the allegation that too much PII is provided to the contracted third-party debt collector who pursues unpaid toll violation penalties on behalf of OCTA. Many of the individual federal and state law claims of the Representative Plaintiff are also not yet resolved. Resolution of the remaining claims would likely entail additional expensive motion practice, including a renewed motion for summary judgment by Settling Defendants. Any claims left after that motion would have to be tried. As noted above, it could be a year or more before the remaining claims are resolved at the trial court level. And there remains a risk that the Court would eventually rule in favor of the Settling Defendants on the remaining § 31490 claim.

Even if the Court were to rule in favor of Plaintiff on the remaining § 31490 issue, Settling Defendants have already indicated that they would appeal any such ruling. Settling Defendants have also repeatedly stated throughout this litigation that given the statutory damages at issue in the case, if Plaintiff was to prevail, it could

bankrupt them and there would be no money to go after at the end of the day. Furthermore, since the amount of potential statutory damages in this case is substantial and the liability issues are ones of first impression, Settling Defendants have stated that if judgment were entered against them, they would challenge such a judgment as a violation of due process, which may lead to the Court significantly reducing the amount of damages. These risks are substantial. On the other hand, the settlement provides immediate significant relief to Settlement Class Members without the delay of trial and appeal. Therefore, this factor strongly supports preliminary approval of the settlement.

**ii.**      **The Effectiveness of The Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims**

As discussed in Sections III.B., *supra*, the penalty forgiveness will be provided to the Debt Collection Settlement Subclass members automatically without them having to submit a claim. For those in the Debt Collection Subclass who are not eligible for penalty forgiveness, they will need to submit a claim form, which can be filled out online or mailed in. Those class members will receive cash payments on a pro-rata basis up to a maximum of $15.00.

The remaining Settlement Class Members (Interoperability, DMV and Car Rental Subclasses) will not receive a direct monetary benefit. This is appropriate for at least two reasons. First, the merits of the claims of these class members have been decided against them in the ruling on the Key Questions Motion. Overcoming that ruling through an appeal would be difficult, time consuming and expensive. Given the substantive rulings against these class members, any monetary award through a settlement would necessarily be very small. The cost of mailed notice, claims administration, and distribution of any such small awards would be prohibitive – indeed, likely much more than the awards themselves.

Second, the Interoperability, DMV and Car Rental Subclass members will receive the benefit of a possible *cy pres* award to a local non-profit privacy advocacy group, Privacy Rights Clearinghouse.[5] And to the extent any of them incur toll violations in the future, they will benefit from the lower maximum toll violation penalty and the agreement regarding the information that can be provided to a third-party debt collector. The Ninth Circuit has repeatedly held that a settlement does not have to provide financial compensation to be fair, reasonable, and adequate. *Hanlon v. Chrysler Corp.*, *supra*, 150 F.3d 1011, 1026-27 (approving a settlement that provided a fix to defective cars with no cash payments); *Lane v. Facebook*, 696 F.3d at 819, 826 (9th Cir. 2012) (approving a purely *cy pres* settlement in a consumer privacy class action where direct distribution would be infeasible), reh'g en banc denied, 709 F.3d 791 (9th Cir. 2013). Other courts have also approved such class action settlements. *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976-77 (S.D. Cal. 2014) (approving a settlement for injunctive relief in the form of labeling changes where a damages award was unlikely and the cost of administering monetary relief would have been prohibitive); *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 151 (3d Cir. 2015) ("a [class] settlement can be fair without involving pecuniary relief"); *Green v. Am. Exp. Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (approving a class action settlement for improved disclosures and no cash award).

### iii. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment

Any attorneys' fees awarded to Class Counsel are to be paid from the settlement fund after final approval in the up to amount set forth in Section III, *supra* and as will be further discussed in Plaintiff's motion for attorneys' fees that will be filed before the Objection deadline.

---

[5] The Privacy Rights Clearinghouse was founded in 1992 as part of the University of San Diego School of Law's Center for Public Interest Law. The Clearinghouse, which became an independent 501(c)(3) nonprofit organization.in 2014, focuses exclusively on consumer privacy rights, privacy education, and privacy advocacy. *See,* https://privacyrights.org/history

4.   **The Proposal Treats Class Members Equitably Relative to Each Other, Considering the Court Rulings to Date**

The proposed settlement fairly allocates the relief among the class members given the current status of the various claims. As noted above, only the members of the Debt Collection Subclass have privacy claims that have not yet been decided in favor of the Settling Defendants on the merits.  The settlement provides that all of the class members with unresolved privacy claims will receive monetary relief.

The remaining class members will benefit from the *cy pres* award, the reduction of OCTA's maximum toll violation penalty going forward, and the agreement on the PII that can be given to a third-party debt collector.

Class Counsel intend to apply for a service award for the Settlement Class Representative. Service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). A service award is appropriate here and does not constitute preferential treatment. The Class Representative was not promised, nor conditioned his representation on the expectation of a service award. *See* Zeldes Decl. ¶32. The Representative has spent substantial time developing the case, conferring with counsel, answering multiple sets of discovery requests, searching for and producing documents, and preparing and testifying at his lengthy deposition (which delved in to details about his personal and financial circumstances), over the past four years. *See, Id* ¶31. Given this significant commitment, a service award is particularly appropriate.

D.   **The Proposed Notice is Appropriate**

Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Recent amendments to Rule 23(c)(2)(B) provide that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Rule 23(c)(3) requires that class notice state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.

For class members whose names and addresses cannot be reasonably ascertained, "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 1161 (2016); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) (noting that "an extensive but targeted internet and print media campaign . . . aimed at providing notice to other potential class members," whose contact information was not on file, did not present due process concerns). Moreover, courts have routinely approved notice via email. See, e.g., *Spann v. J.C. Penney Corporation* (C.D. Cal. 2016) 314 F.R.D. 312, 331*; In re HP Inkjet Printer Litigation*, 2014 WL 4949584 (N.D. Cal, Sept., 30, 2014); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 605 (N.D. Cal., September 15, 2015). Plaintiff's notice

plan, set forth in more detail below, meets the requirements of Rule 23(e)[6].

The parties have developed a notice plan with the Class Administrator that will include direct mail or email notice to the Debt Collection and Interoperability Subclass members with known email or mailing addresses.[7] The remaining class members will be notified via publication and social media. Publication and social media are the only way to provide notice to the members of the Interoperability Subclass who do not have transponder accounts with the TCA. This is because names and addresses of account holders are not shared for purposes of interoperability, and the only information Settling Defendants have is license plate numbers and/or transponder hexID numbers. That information cannot be converted to names and addresses by Settling Defendants and is only available to the other toll agencies where such accounts are maintained.

Publication and social media notice to the members of the Interoperability, DMV and Car Rental Subclasses is reasonable under the circumstances of this case because the claims of those individuals have already been resolved in favor of Settling Defendants. Settling Defendants do not collect email addresses as part of the toll

---

[6] The Parties have agreed that if the settlement is not approved, Plaintiff will be required to give notice under FRCP 23(c) to those members of the class whose claims will be pursued, without regard or reference to the settlement notice.

[7] Regarding Interoperability Subclass members who have accounts with the TCA, the parties are requesting that the Court order the TCA to provide the name and either the last known email address or last known mailing address of such Settlement Class members (the "TCA Interoperability Subclass Member Information"). Settlement Agreement, ¶ 7.02(a). As explained in Section V, *infra*, the parties also request that, as part of the Preliminary Approval Order, the Court permanently enjoin each member of the Settlement Class from filing or pursuing any claim or litigation against any Settling Defendants, TCA, BRiC, any other person or entity who provides information to the Class Administrator, and their respective officers, agents, employees and attorneys asserting that compliance with the obligations imposed by the Preliminary Approval Order and/or the Settlement Agreement violates California Streets & Highways Code section 31490 or any other federal, state or local constitution, statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information.

enforcement process. And giving notice to these subclasses by mail would be cost prohibitive – likely over $400,000. That would leave no cash for distribution to those class members who still have unresolved claims.

The publication notice campaign will include a print notice in the Los Angeles Times, Orange County Register, Press-Enterprise as well as internet notice. Azari Decl. ¶¶ 20-26. In addition, the Class Administrator will maintain a settlement website with detailed information about the settlement, and a toll-free number that Settlement Class Members can call to obtain more information. *Id*. ¶¶ 27-28.

All of the notices, attached as Exhibit B to the Settlement Agreement, are drafted in plain English so they will be easy to understand. They include key information about the Settlement, including the deadline to file a claim, the deadline to request exclusion or object to the Settlement, and the date of the Final Approval Hearing (and that the hearing date may change without further notice). The notices state the maximum amount for attorneys' fees and the cost awards Class Counsel will request and the amount of the Service Award the Class Representative will request.

The notices disclose that, by participating in the Settlement, Settlement Class Members give up the right to sue. They also disclose that Settlement Class Members can choose not to participate in the settlement. The notices direct Settlement Class Members to the settlement website for further information, where copies of the notices, the Settlement Agreement, the complaint, the ruling on the Key Questions Motion, and motions and orders relating to the Settlement will be posted. *See* Settlement Agreement ¶8.02. The notices provide contact information for Class Counsel to answer questions and instructions on how to access the case docket via PACER or in person at any of the Court's locations. Settlement Class Members will have 84 days from the date the Class Administrator commences dissemination of notice of the settlement to the Settlement Class Members to submit a claim, object to the Settlement, or request exclusion from the Settlement. *See* Settlement Agreement ¶¶ 2.07, 2.37.  Class Administrator will post Class Counsel's motion for attorneys'

fees on the settlement website at least 14 days before the deadline to object in accordance with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). *See* Settlement Agreement ¶ 4.02.

### E.     The Claims Process is not Cumbersome

The claims process is straightforward and employs a tear-off postcard that eligible Settlement Class members can return to submit a claim for a cash distribution. Alternatively, eligible Settlement Class members may submit a claim form online. The claim form is easy to read and may be quickly and easily submitted online. The eligible Settlement Class members are identifiable from Settling Defendants' violator database on their computer system so that class members will not need to declare under penalty of perjury that they are entitled to monetary relief.

### F.     The Court Should Set Settlement Deadlines and Schedule a Hearing on Final Approval of the Settlement.

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing the notices, and deadlines for objecting to the settlement, filing papers in support of the settlement, or request exclusion from the settlement. Plaintiff proposes the following schedule, which Plaintiff believes will provide ample time and opportunity for Settlement Class Members to decide whether to participate, request exclusion or object.

| EVENT | DATE |
|---|---|
| Settling Defendants provide notice of the settlement to the appropriate federal and state officials, as required by the Class Action Fairness Act (CAFA) | Within 10 days of the filing of this Motion. |
| Notice Date (Date when notices begin to issue) | No later than 71 days after the Preliminary Approval Order is signed (unless the TCA and 3M notices go out later than that, in which case the notices will be coordinated to go out at or around the same time) |
| Deadline to Submit Claim Forms | 84 Days from the Notice Date |

| Deadline to Object to the Settlement | 84 Days from the Notice Date |
|---|---|
| Deadline to Request Exclusion from the Settlement | 84 Days from the Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs, and Service Awards | 14 Days prior to the Objection Deadline |
| Deadline to Submit Motion for Final Approval | No later than 28 days before the Final Approval Hearing and no earlier than 14 days after the Objection Deadline |
| Final Approval Hearing | At Least 42 Days after the Objection Deadline |

## V.    ENJOINING SUIT BASED ON PROVIDING INFORMATION TO CLASS ADMINISTRATOR FOR NOTICE PURPOSES.

To effectuate the Preliminary Approval Order and to ensure adequate notice is provided to the members of the Settlement Class, and in accordance with both the Court's general authority to protect its jurisdiction and the All Writs Act (28 USC § 1651), Plaintiff also asks the Court to permanently enjoin each and every member of the Settlement Class from filing or pursuing any claim or litigation against Settling Defendants, TCA, and other persons or entities who provide information to the Class Administrator for notice purposes, asserting that compliance with the obligations imposed by the Preliminary Approval Order and/or the Settlement Agreement violates California Streets & Highways Code section 31490 or any other federal, state or local constitution, statute, rule, regulation or policy purporting to limit the disclosure of personally identifiable information. The Parties believe that this is necessary to allow the Settling Defendants and the TCA to provide contact information to the administrator and not be concerned that a Settlement Class member will bring suit claiming that the provision of their information to the administrator violated §31490 or other privacy law. This is a material aspect of the Settlement Agreement executed by the parties. *See* Settlement Agreement, ¶ 5.01(f). Issuing such an Order is within the clear authority of the Court to effectuate the proposed settlement.  28 U.S.C. §

1651; *see also United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained[.]"); *Keith v. Volpe*, 118 F.3d 1386, 1390 (9th Cir. 1997) ("All Writs Act, 28 U.S.C. § 1651, empowers the federal courts to enjoin state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements"); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 478 (E.D. Cal. 2009) (enjoining all class members "from commencing actions against Defendants for claims covered by the Settlement Agreement until the Court issues an order at the Final Fairness Hearing on the proposed Settlement Agreement" pursuant to the Court's authority under 28 U.S.C. § 1651(a)); *cf. Jacobs v. CSAA Inter-Ins.*, No. C07-00362MHP, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) ("The district court has discretion to issue a preliminary injunction where it is necessary and appropriate in aid of the court's jurisdiction and may enjoin named and absent members who have been given the opportunity to opt out of a class from participating in separate class actions in state court").

## VI.   THE SETLEMENT COMPARES FAVORABLE TO THE RECENTLY APPROVED TCA SETTLEMNT

Plaintiff recognizes that there is a natural inclination to want to compare this settlement with the TCA settlement, which the Special Master recommended preliminary approval of on December 30, 2020. There are significant substantive reasons why the monetary amounts of this settlement are lower than the TCA settlement.

First, TCA is settling claims that were not asserted against Settling Defendants. Most significant among those is a claim that the TCA used the PII of drivers who used TCA toll roads to market and advertise goods and services to those drivers without first obtaining consent in violation of § 31490(j). The plaintiffs allege that the TCA provided the PII of users of its toll roads to one or more third-party advertising

consultants who then used that PII to send advertising to class members. That claim involves at least 13 million transmissions of PII. If plaintiffs proved this violation, the TCA would face statutory penalties of $2,500 to $4,000 per transmission under § 31490. The TCA thus faced potential liability of over a billion dollars on the marketing claim alone. Settling Defendants do not face that potential liability as Plaintiff is not asserting and has seen no evidence that Settling Defendants provided PII of users of the 91 Express Lanes to third-party advertisers. In addition, the TCA marketing claim was not submitted to the Court for determination in the Key Questions Motion, and thus remained entirely unresolved before the settlement with the TCA was reached.

Second, TCA's interoperability and enforcement settlement classes are significantly larger than the Settlement Class. The TCA settlement has approximately 14 million class members, whereas this Settlement Class has approximately 1.3 million members. Thus, even without considering the impact of the ruling on the Key Questions Motion, TCA had much greater exposure to § 31490 claims arising from toll collection and enforcement procedures.

Third, TCA reached its tentative settlement both before the Court heard oral argument on and before the Court issued its January 17, 2020 ruling on the Key Questions Motion. So, at the time the TCA settled, it was not known whether the TCA would prevail on the § 31490 claims submitted for determination. That lack of certainty justifies the higher monetary amounts of the TCA settlement. The TCA and the plaintiffs agreed that the issuance of the then-anticipated ruling would not be binding on the TCA or impact the settlement and could not be used by either party to back out of the settlement. In contrast, by the time Plaintiff and Settling Defendants reached an agreement in principle on the terms of this settlement the parties all knew that, at least at the trial court level, the Privacy Class would lose three of the four certified class claims under § 31490. The claims on which the Court ruled against the Plaintiff on the Key Questions Motion represent almost 4.5 million of the approximately 4.8 million challenged PII transmissions (the vast majority of which

involve interoperability) – or about 93.5% of the challenged transmissions. After the Court's ruling on the Key Questions Motion, Settling Defendants faced just about 6.5% of the potential liability they faced before that decision was issued. At the time the TCA settled, it faced 100% of its potential liability on the certified class claims.

Fourth, the TCA settlement class is broader than the previously certified TCA class. The TCA settlement class includes all persons whose PII was shared in any way by TCA during the class period, not just the persons who fall within the specific certified subclasses. In contrast, this Settlement Class is limited to the certified subclasses.

Fifth, the monetary benefits to eligible class members in this settlement are not lower than the monetary benefits eligible members of the TCA class can receive. Assuming a 5% response rate, each member of the TCA settlement class who submits a valid claim will receive just under $14.00. Assuming a higher 10% response rate, each member of the Debt Collection Subclass eligible for a cash distribution (those who do not have outstanding penalties that will be reduced) will receive $15.00. Each member of the TCA enforcement class who still owes a penalty is guaranteed a penalty forgiveness of $57.50. Each member of the Debt Collection Subclass who still owes a penalty is guaranteed a penalty forgiveness of approximately $40.00, plus the reduction of every penalty that currently exceeds $100.00 (maximum penalties are currently between $150 and $195, depending on the number of violations) to $100.00. The amount of penalty forgiveness by TCA is higher than the amount to be forgiven by TCA because TCA has significantly more outstanding debt than OCTA (primarily because TCA has many more miles of roads, many more daily users of those roads, and therefore, statistically, many more violators).

The TCA settlement includes a number of changes to the TCA's practices that are not relevant to Settling Defendants' toll and penalty collection procedures and PII sharing practice. The TCA agreed to limit the PII sent to the DMV for purposes of DMV vehicle registration holds to only that information required by the DMV for

such holds. Settling Defendants haven't used DMV registration holds as an enforcement mechanism during any portion of the class period. TCA also agreed to reset all of its customers' "opt-in" status for receiving advertising and other similar materials to "opt-out." Each TCA customer will now have to affirmatively change their opt-in status before their PII is shared with an advertising company and such materials are sent to them. Settling Defendants don't share customer PII with advertisers and thus don't need to change the opt-in status of their customers.

Finally, the TCA settlement required the TCA to amend its privacy policy. But OCTA already modified the privacy policy for the 91 Express Lanes to address some of the claims asserted by the Plaintiff Class in late 2019. The amended privacy policy went into effect on January 1, 2020.

## VII.   CARVE-OUTS

The following claims, none of which were asserted in this litigation, are expressly carved out of the settlement:

-   The claims expressly asserted in the January 6, 2020 First Amended Complaint on file in the case entitled *Mathew Skogebo et al., vs. Cofiroute USA, LLC, et al.*, Orange County Superior Court Case No. 30-2019-01118474;

-   The claims expressly asserted in the January 13, 2020 Second Amended Complaint on file in the case entitled *Harvey J. Thompson, et al., vs. Cofiroute USA, LLC, et al*., Orange County Superior Court Case No. 30-2019-01108804; and

-   The claims expressly asserted in the January 3, 2020 Corrected First Amended Complaint on file in the case entitled *Sanket Vinod Thakur, et al., vs. Cofiroute USA, LLC, et al,* United States District Court, Central District of California, Case No. 8:19-CV-02233 ODW (JDEx).

## VIII. CONCLUSION

Plaintiff respectfully requests that the Motion for Preliminary Approval be granted and the Court enter an Order: (1) certifying the proposed Settlement Class for purposes of this settlement; (2) preliminarily approving the proposed settlement; (3)

1    appointing the Class Representative and Class Counsel for purposes of this settlement;

2    (4) appointing Epiq Class Action & Claims Solutions, Inc. as the Class Administrator;

3    (5) approving the class notice and related settlement administration documents; and

4    (6) approving the proposed class settlement administrative deadlines and procedures,

5    including the proposed final approval hearing date and procedures regarding

6    objections, exclusions and submitting claim forms.

7

8                                     Respectfully submitted,

9    Date:    April 12, 2021          SCHONBRUN SEPLOW HARRIS
                                      HOFFMAN & ZELDES, LLP
10                                    HELEN I. ZELDES (220051)

11

12                                    By:  /s/ *Helen I. Zeldes*
                                           Helen I. Zeldes
13

14                                    hzeldes@sshhzlaw.com
                                      501 W. Broadway, Suite 800
15                                    San Diego, CA 92101
                                      Telephone: (619) 400-4990
16                                    Facsimile: (310) 399-7040

17                                    *CO-LEAD CLASS COUNSEL*

18
     Date:    April 12, 2021          LINDEMANN LAW FIRM, APC
19                                    BLAKE J. LINDEMANN (255747)

20

21                                    By:  /s/ *Blake J. Lindemann*
                                           Blake J. Lindemann
22

23                                    blake@lawbl.com
                                      433 N. Camden Drive, 4th Floor
24                                    Beverly Hills, CA 90210
                                      Telephone: 310-279-5269
25                                    Facsimile:  310-300-0267

26                                    *CO-LEAD CLASS COUNSEL*

27

28

Date:    April 12, 2021

CUNEO GILBERT & LADUCA LLP
MICHAEL J. FLANNERY (196266)


By:  /s/ *Michael J. Flannery*
            Michael J. Flannery

mflannery@cuneolaw.com
500 North Broadway, Suite 1450
St. Louis, MO 63102
Telephone: (314) 226-1015
Facsimile: (202) 789-1813

***CO-LEAD CLASS COUNSEL***

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), the above-listed filing attorney certifies that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

Date:    April 12, 2021                  SCHONBRUN SEPLOW HARRIS
                                         HOFFMAN & ZELDES, LLP
                                         HELEN I. ZELDES  (220051)


                                         By:  /s/ *Helen I. Zeldes*
                                              Helen I. Zeldes

                                         ***CO-LEAD CLASS COUNSEL***